Vol. XXXIV

THE CHANCERY COURT
DAVIDSON COUNTY, TENNESSEE

HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

MARIA M. SALAS, CLERK AND MASTER

ABU-ALI-ABDUR'RAHMAN, ET AL
Plaintiffs/Appellants

FILED
AUG 2 2 2018
Clerk of the Appellate Courts
Rec'd By _____

VOLUME 11 of 28

| CERTIFIED TRANSCRIPT OF Cause | Appearance No. 18-183-III CHANCERY COURT | Vs<br>No. M2018-01385-SC-RDO-CV<br>SUPREME COURT<br>TRANSMITTED ON:<br>August 21, 2018 | Execution No SUPREME COURT | APPEALED TO Next Term, 20 |
|---|---|---|---|---|

TONY PARKER, IN HIS OFFICIAL CAPACITY AS TENNESSEE COMMISSIONER OF CORRECTION, ET AL
Defendants/Appellees

Trial Transcript from July 12, 2018
Pages 1029 - 1136

Kelley J. Henry, #21113
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville TN 37202
(615) 736-5047

*Attorney for Plaintiffs/Appellants Abu-Ali-Abdur'Rahman, John Michael Bane, Byron Black, Andre Bland, Kevin Burns, Tony Carruthers, Tyrone Chalmers, James Dellinger, David Duncan, Kenneth Henderson, Anthony Darrell Hines, Henry Hodges, Stephen Hugueley, Akil Jahi, David Ivy, Donnie Johnson, David Jordan, David Keen, Donald Middlebrooks, Farris Morris, Pervis Payne, Gerald Powers, William Glenn Rogers, Michael Sample, Oscar Smith, Charles Walton Wright and Edmund Zagorski*

1  Q.     And that the need for a defense
2  attorney to be able to reach the Court should
3  something go awry in an execution is also
4  important?
5  A.     Yes.
6  Q.     And you're aware, Commissioner Parker,
7  that currently attorneys are not permitted to
8  bring their cell phones on their person if
9  they are selected to witness an execution?
10 A.     That's correct.
11 Q.     And currently attorneys are not
12 allowed to use the telephone in the official
13 witness room; is that correct?
14 A.     I believe that's correct.
15 Q.     And during your deposition, you agreed
16 with me that providing telephone access to
17 defense counsel witnessing an execution was
18 something you thought you could arrange?
19 A.     Yes.  If I recall, I believe we
20 discussed that and I said it's something I
21 would certainly look at and consider and talk
22 to my team about.  And I do remember saying
23 that it's important that you have
24 communications you need.
25 Q.     Do you recall, Mr. Parker, my asking

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Case 3:18-cv-01234  Document 1-22  Filed 11/02/18  Page 2 of 17 PageID #: 723

**Attachment 21**

```
 1   you whether or not it would affect the safety
 2   and security of the institution if an
 3   attorney would be permitted to have access to
 4   a landline during the execution?  Do you
 5   recall that question?
 6   A.      I vaguely remember that question, yes.
 7   Q.      And you told me that an attorney
 8   having access to a landline would pose no
 9   concerns as far as the safety and security of
10   the institution, correct?
11   A.      I remember saying that, yes.
12   Q.      And I asked you if it would be
13   possible for if, say, for example, that
14   telephone in the observation room didn't have
15   a direct outside line if the Department of
16   Correction had the funds to run a wire to
17   create an outside landline on a telephone,
18   correct?
19   A.      May have.  I don't remember the exact
20   conversation.  It seems to me there was a
21   question about cell phones and I said cell
22   phones probably -- personal cell phones
23   probably would not be allowed, that the
24   Department would certainly look at options.
25   So I don't remember the exact conversation.
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 3 of 17 PageID #: 724
**Attachment 21**

```
              In THE CHANCERY COURT
         FOR DAVIDSON COUNTY, TENNESSEE

ABU ALI ABDUR'RAHMAN,   )
et al,                  )
                        )
         Plaintiffs,    )
                        )
vs.                     )   NO. 18-183-II(III)
                        )
TONY PARKER, et al,     )
                        )
         Defendants.    )
_____)




         Transcript of Proceedings

         Before the Honorable Ellen Hobbs Lyle

         July 13, 2018

         Volume 5




_____
              HUSEBY, INC.
         Court Reporting Services
       207 Washington Square Building
          214 Second Avenue North
       Nashville, Tennessee  37201
              (615) 256-1935
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 4 of 17 PageID #: 725
Attachment 21

```
 1   high-risk sterile compounding products that
 2   were imported into the State of Tennessee
 3   from the New England Compounding Company?
 4   You're aware of this, correct?
 5   A.    Not specifically, no.
 6   Q.    You're aware of the meningitis
 7   outbreak?
 8   A.    Yes.
 9   Q.    And you were aware that the FDA or are
10   you aware that the U.S. Department of Health
11   and Human Services, Food and Drug
12   Administration, and the Center for Drug
13   Evaluation and Research has issued a guidance
14   for the industry?  Are you aware of that?
15   A.    I'm familiar that they have issued.  I
16   don't know the particulars of it.
17   Q.    Are you aware, sir, that there is a
18   statute that Congress passed a statute called
19   The Drug Quality and Safety Act?
20   A.    I'm not familiar with the details of
21   that, no.
22   Q.    Do you know it exists?
23   A.    No.
24   Q.    Are you aware, sir, that federal law
25   prohibits the compounding of drugs that are
```

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 5 of 17 PageID #: 726
Attachment 21

```
 1   commercially available?
 2   A.      Yes.  I've heard that, yes.
 3   Q.      Are you aware, sir, that Pentobarbital
 4   is commercially available in the United
 5   States?
 6   A.      For the purpose of medical procedures?
 7   Q.      Are you aware that Pentobarbital is
 8   available in the United States generally?
 9   A.      Yes.
10   Q.      And so under federal law in normal
11   circumstances, it would violate federal law
12   to compound Pentobarbital, correct?
13   A.      My interpretation of that, not being
14   an attorney, yes, it would be if you were
15   using it for the purpose of a medical
16   procedure there would be no reason to
17   compound it if you can purchase it for a
18   medical procedure.
19   Q.      And the same is true for Midazolam,
20   correct?
21   A.      Correct.
22   Q.      And you are aware, sir, that federal
23   law or are you aware, sir, that federal law
24   defines a copy of the commercially available
25   drug is made when the same API, active
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 6 of 17 PageID #: 727

Attachment 21

1  pharmaceutical ingredient, as is used in a
2  commercially available drug is also used for
3  the compounded drug, that the FDA calls that
4  a copy?  Are you aware of that?
5  A.     I'm not.
6  Q.     Are you aware that federal law
7  prohibits the compounding of what is
8  essentially a copy?
9  A.     I am not.
10 Q.     And are you aware that federal law
11 requires that there must be documentation
12 provided of the shortage before a drug can be
13 compounded?
14 A.     I am not.
15 Q.     I want to ask you, sir, now about some
16 questions regarding the commercially prepared
17 Midazolam that the Department of Correction
18 had in its possession that has since expired.
19 Okay?
20 A.     Okay.
21 Q.     That drug had -- the manufacturer of
22 that drug sent you a letter requesting that
23 it be returned, did they not?
24 A.     They did.
25 Q.     You didn't read the entire letter,

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 7 of 17 PageID #: 728

Attachment 21

```
 1  correct?
 2  A.      Correct.
 3  Q.      Do you have retention policies at the
 4  Department of Correction?
 5  A.      We do.
 6  Q.      Would a letter such as that be
 7  required to be retained?
 8  A.      I'm not sure.  I don't think so, but
 9  I'm not sure.  I'd have to check with legal.
10  Q.      So is it your testimony that a letter
11  from a manufacturer of a drug to be used in
12  the lethal injection execution --
13              MR. SUTHERLAND:  Your Honor, I
14  object to relevancy.
15              THE COURT:  What is the
16  relevance?
17              MS. HENRY:  The relevancy is,
18  Your Honor, to the transparency at the
19  Department of Correction.  I believe
20  testimony from Debra Inglis will be that she
21  threw the letter away.  And I think this is
22  important information where the Defendants
23  are alleging issues with respect to the
24  availability of drugs and whether they can or
25  can't get them because of certain division
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 8 of 17 PageID #: 729
Attachment 21

 1   controls.
 2              MR. SUTHERLAND:  You're talking
 3   about Midazolam?  The letter is about
 4   Midazolam.  So I don't know what relevance a
 5   letter from a manufacturer has to do with a
 6   facial challenge.
 7              THE COURT:  The Court overrules
 8   the objection.  Go ahead.
 9   BY MS. HENRY:
10   Q.    Is it your testimony, sir, that the
11   Department of Correction is not required to
12   keep a letter from a manufacturer that they
13   sent to the Department of Correction
14   regarding a drug that they made that we used
15   in a lethal injection execution?
16   A.    I wouldn't know of no requirement.
17   Again, it's something I can research here
18   today.  I don't know of any particular
19   requirement that requires us to maintain it,
20   no.
21   Q.    Do you know where that letter is?
22   A.    I do not.
23   Q.    Did you pass that letter on to the
24   governor?
25   A.    I didn't.

www.huseby.com           Huseby, Inc. Regional Centers           800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 9 of 17 PageID #: 730
Attachment 21

```
 1   Q.      The reason that they asked for the
 2   drugs back is because they were delivered to
 3   the Department of Correction in violation of
 4   their distribution laws, correct?
 5              MR. SUTHERLAND:  Your Honor, I'm
 6   going to object to Ms. Henry testifying about
 7   what the letter says.  We don't have a
 8   letter.  I mean, she's --
 9              THE COURT:  Yes.  The Court
10   sustains the objection.  We need to lay a
11   foundation.  Is there a witness to testify to
12   this?  Is this a phantom witness situation?
13   What's the foundation?
14              MS. HENRY:  He testified to it in
15   his deposition.  I wasn't going to impeach
16   him with his deposition.
17              THE COURT:  Sure.  Let's keep
18   asking.  The Court overrules the objection.
19   BY MS. HENRY:
20   Q.      The basis for the letter was that the
21   drugs had been obtained in violation of the
22   manufacturer's distribution controls,
23   correct?
24   A.      Correct.
25   Q.      However, you did decline to return to
```

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 10 of 17 PageID #: 731

Attachment 21

```
 1   the drugs at the time they were requested,
 2   correct?
 3   A.    That's correct.
 4   Q.    Those same distribution controls exist
 5   for Pentobarbital, correct?
 6   A.    I'm assuming they do, yes.
 7   Q.    And yet, other states have been able
 8   to continue to obtain Pentobarbital, have
 9   they not?
10         MR. SUTHERLAND:  Objection.
11   Speculation and foundation.
12         THE COURT:  Yes.  Foundation.
13   BY MS. HENRY:
14   Q.    Commissioner, you testified again that
15   you've done research on lethal injection,
16   correct?
17   A.    Correct.
18   Q.    You've spoken to your colleagues at
19   other Department of Correction, correct?
20   A.    Correct.
21   Q.    You have spoken with your colleagues
22   at the Department of Correction since this
23   issue of obtaining Pentobarbital came up,
24   correct?
25   A.    That's correct.
```

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 11 of 17 PageID #: 732

Attachment 21

```
 1   Q.     And are you aware that Texas has
 2   executed seven inmates this year using
 3   compounded Pentobarbital?
 4   A.     I'm aware that they have executed
 5   inmates using Pentobarbital, yes.
 6   Q.     And are you aware that Georgia, as
 7   recent as May 4th, 2018, has executed inmates
 8   using compounded Pentobarbital?
 9   A.     That's correct.
10   Q.     The rest of the information that you
11   possess with respect to the Department's
12   attempts to obtain any lethal injection
13   chemicals is based completely on information
14   that you heard from a third party, correct?
15   A.     Let me get more clear.
16          Your drug procurer at the Department
17   of Correction, he's the person who's provided
18   you with information about what efforts or
19   lack of efforts the Department has made,
20   correct?
21              MR. SUTHERLAND:  I object to the
22   pronoun, Your Honor.
23              THE COURT:  It was meant
24   generically.  Okay.  Just use drug procurer
25   again.
```

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 12 of 17 PageID #: 733

Attachment 21

```
 1            THE WITNESS:  The drug procurer
 2   who has been charged with finding
 3   Pentobarbital for the Department along with
 4   myself and my conversations with other
 5   individuals across America, we have failed to
 6   find a solution --
 7            MS. HENRY:  Your Honor, I'm going
 8   to object at this point in time.  Attempting
 9   to establish the basis of his knowledge is
10   hearsay, that is any further answer on behalf
11   of this witness as he just testified is going
12   to be hearsay.  I would ask that the witness
13   be instructed not to respond further.
14            THE COURT:  If you will ask him
15   the question again.  Because the question was
16   is his knowledge limited to what he learns or
17   hears from the procurer and his answer is --
18   give me yes or no, Commissioner.
19            MR. SUTHERLAND:  Your Honor, if I
20   could interject.
21            THE COURT:  Yes.
22            MR. SUTHERLAND:  Because this
23   will come up again.  The Commissioner, this
24   information is relevant to a not hearsay
25   basis as to why the Department has taken the
```

www.huseby.com     Huseby, Inc. Regional Centers     800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 13 of 17 PageID #: 734
Attachment 21

1  steps to adopt a protocol, in other words,
2  not for the truth of what they have done, but
3  for the fact that as a result of what has
4  been done.  Whatever that is irregardless of
5  the truth, it caused the Department,
6  specifically this individual --
7              THE COURT:  You can ask about
8  that on cross-examination.  They're asking
9  for a different reason, loss of availability
10 and for the Court to know what the universe
11 of information is here.  I need the
12 Commissioner to give me a yes or no answer.
13 If you will repeat the question.
14 BY MS. HENRY:
15 Q.    We'll just go straight to your
16 deposition.  Okay?
17           In your deposition, sir, did you tell
18 me that you have not personally had a
19 conversation with any pharmacist or supplier
20 of LIC requesting whether they could provide
21 LIC?
22 A.    That's correct.
23 Q.    And did you tell me that any knowledge
24 you had is based upon conversations you had
25 with other individuals who are not pharmacies

www.huseby.com           Huseby, Inc. Regional Centers           800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 14 of 17 PageID #: 735
Attachment 21

```
 1   or manufacturers of drugs?
 2   A.      That's correct.
 3   Q.      Commission Parker, the Department of
 4   Correction has a pharmacy on site, correct?
 5   A.      That's correct.
 6   Q.      At the DeBerry Special Needs facility,
 7   correct?
 8   A.      Correct.
 9   Q.      And that pharmacy has a DEA license,
10   correct?
11   A.      That's correct.
12   Q.      So they're capable of purchasing
13   controlled substances, correct?
14   A.      Correct.
15   Q.      And on June the 5th, 2018, you
16   testified that both protocols, Protocol A and
17   Protocol B, were selected, correct?
18   A.      Correct.
19   Q.      And that either protocol could be used
20   in an execution, correct?
21   A.      Correct.
22   Q.      And that it was your preference to use
23   Pentobarbital, correct?
24   A.      Correct.
25   Q.      You testified that Pentobarbital was
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 15 of 17 PageID #: 736
Attachment 21

```
 1   the preferred method of execution, correct?
 2   A.     Correct.
 3   Q.     Commissioner, is the Department of
 4   Correction able to carry out an execution
 5   using just Midazolam and Potassium Chloride?
 6   A.     I don't understand your question.  We
 7   have a three-drug protocol.  We would have to
 8   have all three drugs to carry out an
 9   execution.
10   Q.     If the second drug -- what role does
11   the second drug play in the execution?
12   A.     The second drug is a paralytic that
13   paralyzes and stops the breathing.
14   Q.     Will the Potassium Chloride alone kill
15   an inmate?
16              MR. SUTHERLAND:  Objection.
17   Foundation.
18              THE COURT:  The Court overrules
19   the objection.
20              THE WITNESS:  I'm assuming it
21   could, yes.
22   BY MS. HENRY:
23   Q.     If the Midazolam works as you intend
24   it to work and the Potasium Chloride will
25   kill the inmate, then the Vecuronium Bromide
```

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 16 of 17 PageID #: 737

**Attachment 21**

```
 1    really serves no purpose as far as bringing
 2    about the death of the inmate, does it?
 3    A.     Well, from a layman's term or my
 4    opinion, which I'm not a medical
 5    professional, if the Potassium Chloride were
 6    to stop the heart, obviously, that could kill
 7    the inmate.  So yes.
 8    Q.     And with respect to the issue of not
 9    being a medical professional, when I asked
10    you in your deposition regarding the
11    consciousness check about signs that the
12    inmate might be conscious, what sorts of
13    signals they might give, you told me that
14    that called for a medical opinion, correct?
15    A.     I may have.  I don't remember exactly
16    what I said.
17    Q.     So to be more specific, let's go to
18    Page 258.  I'll back up a little bit for my
19    question and I'm going to try and ask these
20    questions quickly.
21           Do you need to see a copy of your
22    deposition?
23    A.     Sure.  That's okay.  If you can put it
24    up on the monitor.
25    Q.     If you could turn, sir, to Page 258.
```

www.huseby.com           Huseby, Inc. Regional Centers           800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-22   Filed 11/02/18   Page 17 of 17 PageID #: 738

Attachment 21