```
 1                 IN THE CHANCERY COURT
               FOR THE STATE OF TENNESSEE
 2             TWENTIETH JUDICIAL DISTRICT
                DAVIDSON COUNTY, PART III
 3

 4
     ABU-ALI ABDUR'RAHMAN, et al.,    )
 5                                    )
                   Plaintiffs,        )
 6                                    )
     vs.                              )  CASE NO.
 7                                    )  18-183-III
     TONY PARKER, et al.,             )
 8                                    )
                   Defendants.        )
 9   _____)

10

11

12

13

14        DEPOSITION OF:

15        TONY PARKER

16        Taken on behalf of the Plaintiffs

17        June 5, 2018

18

19

20

21

22

23

24

25
```

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 1 of 358 PageID #: 739

Attachment 22

```
 1    APPEARANCES:

 2    For the Plaintiffs:

 3    KELLEY HENRY, ESQ.
      Federal Public Defenders Office Middle
 4    District of Tennessee
      810 Broadway, Suite 200
 5    Nashville, Tennessee 37203
      615.736.5047
 6    Kelley_henry@fd.org

 7    STEPHEN M. KISSINGER, ESQ.
      Federal Defender Services of Eastern
 8    Tennessee, Inc.
      800 South Gay Street, Suite 2400
 9    Knoxville, Tennessee 37929-9714
      Stephen_Kissinger@fd.org
10
      BRADLEY MACLEAN, ESQ.
11    Attorney at Law
      1702 Villa Place
12    Nashville, Tennessee 37212
      615.943.8716
13    Brad.maclean9@gmail.com

14    and

15    KATHLEEN MORRIS, ESQ.
      Law Office of Kathleen Morris
16    42 Rutledge Street
      Nashville, Tennessee 37210
17    615.242.3200

18    For the Defendants:

19    SCOTT C. SUTHERLAND, ESQ.
      CHARLOTTE M. DAVIS, ESQ.
20    ROBERT MITCHELL, ESQ.
      Assistant Attorney General
21    Law Enforcement and Special Prosecutions
      Division
22    John Sevier Building
      500 Charlotte Avenue
23    Nashville, Tennessee 37243
      615.532.6032
24    Robert.Mitchell@ag.tn.gov

25
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 2 of 358 PageID #: 740

Attachment 22

```
 1   Also Present:

 2   Jerome Del Pino, Esq.
     Amy Harwell, Esq.
 3   Richard Tennent, Esq.
     Katherine Dix, Esq.
 4   Rachel Ann Stephens, Intern
     Tenia Miles, Intern
 5   Erin Drake, Intern

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 3 of 358 PageID #: 741

**Attachment 22**

```
 1                    I N D E X
                                          Page/Line
 2

 3     THE WITNESS:   TONY PARKER

 4     EXAMINATION BY MS. HENRY                    8      4

 5

 6                    INDEX OF EXHIBITS

 7     Exhibits          Description          Page/Line

 8     Exhibit  A   Notice of Deposition        11     18

 9     Exhibit  B   Memorandum and Order        12      6
                    Denying Motion for
10                  Protective Order Seeking
                    to Quash Parker and Mays
11                  Depositions But Issuing
                    Limitations on Time and
12                  Scope of Depositions;
                    and Additional Orders on
13                  Deadlines on Expert
                    Disclosures and
14                  Defendants' Summary
                    Judgment Filing
15
       Exhibit  C   Plaintiffs' Notice of       13      7
16                  Depositions

17     Exhibit  D   Amended Complaint for       18     10
                    Declaratory Judgment
18
       Exhibit  E   April 3, 2018 Letter        46     16
19
       Exhibit  F   Tennessee Code Annotated    47     17
20                  10-7-503

21     Exhibit  G   May 4, 2018 Letter          49      4

22     Exhibit  H   Defendants' Answer to       52     18
                    Amended Complaint
23
       Exhibit  I   Plaintiffs' First           59      6
24                  Request for Production
                    of Documents
25
```

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 4 of 358 PageID #: 742

**Attachment 22**

| 1  | Exhibit J | Defendants' Response to Plaintiffs' Request for Production of Documents | 61  | 1  |
| 2  | | | | |
| 3  | Exhibit K | Order | 116 | 15 |
| 4  | Exhibit L | Motion to Set Execution Dates | 130 | 21 |
| 5  | | | | |
| 6  | Exhibit M | October 18, 2017 E-mail Chain | 134 | 15 |
| 7  | Exhibit N | Photographs (three) | 135 | 20 |
| 8  | Exhibit O | Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel | 140 | 19 |
| 9  | | | | |
| 10 | | | | |
| 11 | Exhibit P | September 7, 2017 E-mail | 142 | 5  |
| 12 | Exhibit Q | Defendants Parker and Mays Answer to Interrogatory 1 and Supplemental Response to Request for Production of Documents Pursuant to the Court's Order Dated May 7, 2018 | 143 | 2  |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | Exhibit R | September 7, 2017 E-mail Chain | 173 | 8  |
| 17 | | | | |
| 18 | Exhibit S | Agreement Between Riverbend Maximum Security Institution Tennessee Department of Corrections | 181 | 19 |
| 19 | | | | |
| 20 | | | | |
| 21 | Exhibit T | "Lethal Injection Stalled: Non-accessibility of Pentobarbital Affects Execution in Tennessee" Article | 185 | 8  |
| 22 | | | | |
| 23 | | | | |
| 24 | Exhibit U | Department of Correction PowerPoint and Discovery Documents | 190 | 8  |
| 25 | | | | |

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 5 of 358 PageID #: 743

**Attachment 22**

```
 1    Exhibit  V  April 2, 2018 Letter        251    7
                  with Attachments
 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 6 of 358 PageID #: 744

**Attachment 22**

1              The deposition of TONY PARKER was

2      taken by counsel for the Plaintiffs, on

3      June 5, 2018, commencing at 9:30 a.m., in The

4      Federal Public Defenders Office, 810

5      Broadway, Suite 200, Nashville, Tennessee,

6      for all purposes under the Tennessee Rules of

7      Civil Procedure.

8              The formalities as to notice,

9      caption, certificate, et cetera, are not

10     waived.  All objections, except as to the

11     form of the questions, are reserved to the

12     hearing.

13             It is agreed that Carissa L.

14     Boone, being a Notary Public and Court

15     Reporter, may swear the witness, and that the

16     reading and signing of the completed

17     deposition by the witness are not waived.

18

19

20                    *     *     *

21

22

23

24

25

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 7 of 358 PageID #: 745

**Attachment 22**

1                          TONY PARKER,

2      having been first duly sworn, was examined

3      and testified as follows:

4                          EXAMINATION

5      BY MS. HENRY:

6      Q.      Good morning, Commissioner Parker.

7      We'll start by asking you to state your name

8      and position on the record, please?

9      A.      Tony Parker, Commissioner of the

10     Tennessee Department of Corrections.

11     Q.      Thank you, Commissioner Parker.  My

12     name is Kelley Henry, and I am lead counsel

13     on behalf of the Plaintiffs in the case of

14     Abu-Ali Abdur'Rahman versus Parker.

15             I'm the Supervisor of the Capital

16     Habeas Unit for the Federal Public Defenders

17     Office, and we're in my conference room at

18     810 Broadway this morning; is that correct?

19     A.      That's correct.

20     Q.      And we have not met before this

21     morning; is that correct?

22     A.      That's correct.

23     Q.      Have you had your deposition taken

24     before?

25     A.      I have.

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 8 of 358 PageID #: 746

**Attachment 22**

1   Q.    All right.  I'm just going to go over,

2   then, briefly, some of the ground rules for

3   depositions and also talk about what the

4   ground rules are specifically for today.

5         Is that all right?

6   A.    Sure.

7   Q.    Before I do that, I'd like to go ahead

8   and introduce you to everyone here.  But

9   before I do that, I should note that we

10  started at 9:30 on the dot as agreed with

11  your counsel.

12        But seated next to me is

13  Stephen Kissinger, and he's lead counsel for

14  the East Tennessee Plaintiff and he's with

15  the Federal Defenders Office in Knoxville.

16  Next to him is Bradley Maclean, who is

17  counsel for Abu-Ali Abdur'Rahman, and he's in

18  private practice.

19        Over here we have Katherine Dix who is

20  an Assistant Federal Defender in my office

21  and is assisting me; Jerome Del Pino,

22  Assistant Federal Defender, who is also

23  assisting me from my office.  Next to Jerome

24  is Richard Tennent, another Assistant Federal

25  Defender from my office.  Next to him is

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 9 of 358 PageID #: 747

Attachment 22

```
 1   Amy Harwell, another Assistant Federal

 2   Defender from my office.

 3   A.     Okay.

 4   Q.     And they're all on my team.

 5          And Kathleen Morris is counsel for

 6   Leroy Hall, and she's in private practice,

 7   pro bono.  Mr. Maclean and Ms. Morris are pro

 8   bono lawyers.

 9          Then we have Robert Mitchell with the

10   Attorney General's Office.  He's on your

11   team.

12   A.     Uh-huh.

13   Q.     And we have Charlotte Davis and

14   Scott Sutherland also with the AG's office.

15          Seated right behind me are three

16   interns who are volunteering with us for the

17   Summer.  We have Rachel Ann Stephens,

18   Erin Drake and Tenia Miles, all right?

19   A.     Okay.

20   Q.     It's possible that during the course

21   of this deposition, my boss might check in on

22   me to make sure I'm not embarrassing the

23   family, as they say.

24   A.     Uh-huh.

25   Q.     His name is Henry Martin.
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 10 of 358 PageID #: 748

**Attachment 22**

1  A.     Okay.

2  Q.     Other than that, I don't expect any

3  other guests today, all right?

4  A.     Okay.

5  Q.     The Court has ordered that we have six

6  hours today, which is maybe why I'm speaking

7  a little quickly, and also because this is

8  just preliminary stuff.  But the six hours

9  does not include breaks nor does it include

10  lunch.  I have my timer going and the court

11  reporter's also keeping a record as well, all

12  right?

13  A.     All right.

14  Q.     So, Mr. Parker, I'm going to start

15  this morning by showing you a document.

16         MS. HENRY:  I'm going to ask the

17  court reporter to make this Exhibit A.

18         (Exhibit A was marked.)

19  BY MS. HENRY:

20  Q.     Have you seen this document before?

21  A.     Yes.

22  Q.     All right.  And do you recognize this

23  document as a Notice of Deposition?

24  A.     Yes.

25  Q.     And are you here today pursuant to

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 11 of 358 PageID #: 749

**Attachment 22**

1   that Notice of Deposition?

2   A.      I am.

3   Q.      All righty.  The next thing I'd like

4   to show you, Mr. Parker, I'll have the court

5   reporter mark as Deposition Exhibit B.

6              (Exhibit B was marked.)

7   BY MS. HENRY:

8   Q.      And I'll represent to you, Mr. Parker,

9   that Deposition Exhibit B is the Court's

10  order on a Motion to Compel your testimony

11  that sets forth the parameters of the

12  deposition.

13             Have you seen that document before?

14  A.      I have.

15  Q.      All right.  And when did you see it?

16  A.      Over the last couple of weeks.

17  Q.      All right.

18  A.      During different times.

19  Q.      All right.  So are you familiar with

20  the contents of the document?

21  A.      Yes.

22  Q.      All right.  We'll be following the

23  parameters set forth by the Court in that

24  order, which is Deposition Exhibit B.  If

25  during the course of the deposition, your

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 12 of 358 PageID #: 750

**Attachment 22**

1  counsel has some objections, the Court has

2  actually been kind enough to provide us with

3  specific guidance on how to handle them.  And

4  that was in a subsequent order, which I'm

5  going to have the court reporter mark as

6  Deposition Exhibit C.

7              (Exhibit C was marked.)

8  BY MS. HENRY:

9  Q.     And basically what that order says --

10  and you can keep it in front of you, sir, if

11  you need to refer to it -- is that during the

12  course of the deposition, from time to time

13  your lawyer might have some objections to

14  questions I asked because I didn't ask them

15  correctly or he doesn't like them or he

16  doesn't like the way they sound.  And he'll

17  make those objections, but you'll be allowed

18  to go ahead and answer the question.  He's

19  just preserving the record.

20              If he instructs you not to answer a

21  question, because he believes it's in

22  violation of the Court's order, which is our

23  Deposition Exhibit B, then we'll ask those

24  questions to be certified.  And you are not

25  to answer those questions.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 13 of 358 PageID #: 751

Attachment 22

1          Is that clear?

2    A.      That's clear.

3    Q.      All right.  That just keeps everybody

4    rolling, so we know sometimes Mr. Sutherland

5    might object.  He'll say "Relevance, hearsay.

6    Asked and answered," and that sort of thing.

7    And you can go ahead and answer the question

8    without me having to repeat it and without

9    him having to reobject.  It just moves things

10   along a little quicker, okay?

11   A.      Okay.

12   Q.      Mr. Parker, let me ask you this

13   morning, have you taken any medications that

14   impact your ability to remember or answer

15   questions clearly or hear questions?

16   A.      No, I have not.

17   Q.      Are you clearheaded and able to

18   understand the questions I'm asking you so

19   far this morning?

20   A.      Yes.

21   Q.      During the course of the deposition,

22   there will be no trick questions.  I'm not

23   that clever.  If I ask a question poorly,

24   it's because it's poorly worded, and I will

25   not be offended if you tell me it's poorly

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 14 of 358 PageID #: 752

**Attachment 22**

1  worded, okay?

2  A.      Okay.

3  Q.      I'm not trying to confuse you, and I

4  don't want you to be confused, all right?

5  A.      Okay.

6  Q.      What I want you to do is answer the

7  question as, you know, fully as you need to.

8  If it's a "yes" or "no," but you need to

9  explain, I want you to explain, okay?

10  A.      Absolutely.

11  Q.      We want to understand your position

12  and all the knowledge that you have, okay?

13  A.      Okay.

14  Q.      And do you understand that the parties

15  will be relying on the truthfulness and

16  completeness of your answers to prepare this

17  case for court?

18  A.      I do.

19  Q.      And you understand that myself and my

20  fellow lawyers are representing men who are

21  under a sentence of death, correct?

22  A.      That's correct.

23  Q.      And so this is pretty important?

24  A.      Absolutely.

25  Q.      And so what we want to do today is

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 15 of 358 PageID #: 753

**Attachment 22**

1  just get your honest answers.  And if you say

2  "uh-huh" "or huh-uh," I'm probably going to

3  correct you.  Not because I'm treating you

4  like my 19-year-old son, but because I need

5  to make sure the record reflects exactly what

6  your answers are, okay?

7  A.    Okay.

8  Q.    So I'm -- I promise you I'm not trying

9  to be rude or embarrass you.

10  A.    That's fine.

11  Q.    During the day, what my plan is, is to

12  go for about an hour-and-15, hour-and-a-half,

13  just whenever there's a natural break this

14  morning.  Then we'll also break, you know, at

15  noon, 12:15, 12:30, natural breaking time for

16  an hour lunch.  We'll come back, have a short

17  afternoon break, and we will complete within

18  that six-hour time frame, okay?

19  A.    Okay.

20  Q.    Do you have any plans today that are

21  going to interfere with that?

22  A.    No.

23  Q.    All right.  Also, Commissioner Parker,

24  should an emergency arise -- I know that

25  you're an important man and there might be

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 16 of 358 PageID #: 754

**Attachment 22**

1  something that happens -- we have arranged

2  for you to have a private conference room on

3  our first floor, that has a landline and

4  privacy, okay?

5  A.      Okay.  Let's hope that don't [sic]

6  happen.

7  Q.      I hope it doesn't happen, either.  But

8  we wanted to make sure and have those

9  contingencies taken care of.

10  A.      Absolutely.

11  Q.      All right?

12  A.      Thank you.

13  Q.      There's water and there are some

14  snacks and there's coffee available.  If --

15  A.      Thank you.

16  Q.      -- your blood sugar gets low, you

17  know, please tell us.  I don't control all

18  the breaks.  If you need to take a break, you

19  just tell me and we'll do it, all right?

20  A.      Absolutely.

21  Q.      And if you need to take a smoke break,

22  you can do that too, but you got to go --

23  A.      Yeah.

24  Q.      -- you know, several blocks away.  So

25  anyway, all right, we'll get started.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 17 of 358 PageID #: 755

**Attachment 22**

1        Do you have any questions of me before

2   we get started?

3   A.    I don't have any questions.  No, thank

4   you.

5   Q.    The next document I want to show you

6   is kind of big.

7             MS. HENRY:  And I'll ask the court

8   reporter to mark that as Deposition

9   Exhibit D.

10             (Exhibit D was marked.)

11             THE WITNESS:  Thank you.

12   BY MS. HENRY:

13   Q.    Sure.

14        Do you recognize that document, sir?

15   A.    I do.

16   Q.    And what is that?

17   A.    That's the Complaint that was filed

18   and our -- I'm assuming our responses to --

19   Q.    This -- I'll tell you --

20   A.    -- the action.

21   Q.    --  yeah, this is just the Complaint.

22   A.    Okay.

23   Q.    Do you recognize that?

24   A.    Yes.

25   Q.    So it contains 90 pages, and it has an

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 18 of 358 PageID #: 756

Attachment 22

1    exhibit which is Exhibit A, the January 8th,

2    2018 Lethal Injection Execution Manual,

3    Execution Procedures for Lethal Injection,

4    and Exhibit B, which is an e-mail dated

5    September 7th, 2017.

6           You just look through there and see if

7    that seems to be accurate.

8    A.      (Witness reviews document.)

9           Seems to be.  I'm not -- I don't see

10   the e-mail, but that's okay.  I'm sure it's

11   here.

12   Q.      If you flip over to the last page, the

13   very last page --

14   A.      Oh, I see.

15   Q.      It's double-sided.

16   A.      It's on the back side.

17   Q.      Yes, sir.

18   A.      Okay.  All right.

19   Q.      And so you've seen that document

20   before?

21   A.      Yes.

22   Q.      When did you first see that document?

23   A.      The -- which document are you talking

24   about?

25   Q.      I'm sorry, the Complaint.

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 19 of 358 PageID #: 757

**Attachment 22**

1  A.      Oh, weeks ago.  I -- I don't remember

2  the exact date, but I've seen it in the past.

3  Q.      All right.

4  A.      Yeah.

5  Q.      And you know what?  I skipped a whole

6  section.  I got excited about the Complaint,

7  and I forgot to ask you about your

8  background.  Can you tell us -- you told us

9  you're the Commissioner of the Department of

10  Correction.  How long have you held that

11  position?

12  A.      Approximately two years.

13  Q.      All right.  Before that, how were you

14  employed?

15  A.      I was the Assistant Commissioner of

16  Prisons for the Department of Correction.

17  Q.      And as the Assistant Commissioner of

18  Prisons, what was your duty?

19  A.      To oversee and supervise the Prison

20  Operations division for the Department of

21  Corrections.

22  Q.      And when you were the Assistant

23  Commissioner of Prisons, did you have any

24  responsibilities with respect to lethal

25  injection and executions?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 20 of 358 PageID #: 758

**Attachment 22**

1   A.     I was -- I directly supervised the

2   wardens of the facilities who -- and that

3   includes the one at Riverbend, so, yes, I

4   did.

5   Q.     As the direct supervisor of the Warden

6   at Riverbend, what was your specific role

7   with respect to the Warden, regarding

8   executions?

9   A.     I -- kind of a -- I guess a dual role

10  with the Commissioner over the Department who

11  oversees the protocols and the administration

12  of the lethal injection or executions in

13  Tennessee.  As me being the direct supervisor

14  of the Warden, basically monitoring the

15  execution trainings and things like that.

16        And from time to time, reviewing the

17  protocols and the procedures for the

18  executions in Tennessee.

19  Q.     How long did you hold that position?

20  A.     Approximately four years.  I -- don't

21  hold me to that, but that's an approximate

22  number.  I lose track of time as I get older

23  every year.

24  Q.     I hear that.

25        So during the time that you were the

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 21 of 358 PageID #: 759

**Attachment 22**

1   Assistant Commissioner of Prisons, was that

2   the time period when Tennessee changed their

3   protocol from the three-drug protocol to a

4   single-drug protocol involving the use of

5   pentobarbital?

6   A.     I'm not sure.  I -- it could have

7   been, but my -- I don't remember the exact

8   dates, so could have been.

9   Q.     So if I represent to you that it

10  occurred in 2013, would that be the -- during

11  the time frame that you were the Assistant

12  Commissioner?

13  A.     I was the Assistant Commissioner in

14  2013, yes.

15  Q.     Okay.  I'm going to get back to your

16  role as the Assistant Commissioner in just a

17  minute.  But prior to that position, how were

18  you employed?

19  A.     I was the Correctional Administrator

20  for the West Region in the state.

21  Q.     And what did you do as a Correctional

22  Administrator for the West Region?

23  A.     Again, I supervised Prison Operations

24  for the facilities in the West Region,

25  primarily Northwest Correctional Complex,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 22 of 358 PageID #: 760

**Attachment 22**

1   West Tennessee State Penitentiary, Mark

2   Luttrell, Hardeman and Whiteville.

3   Q.     How long did you have that position?

4   A.     Approximately two years, I believe.

5   Q.     Did that position cause you to have

6   any role with lethal injection executions?

7   A.     No.

8   Q.     And prior to that position, how were

9   you employed?

10  A.     I was the Warden at two facilities in

11  the West Region:  Northwest Correctional

12  Complex and West Tennessee State

13  Penitentiary.

14  Q.     And how long did you hold those

15  positions?

16  A.     Approximately eight years.

17  Q.     Prior to that, were you still with

18  TDOC?

19  A.     I was.

20  Q.     And in what role?

21  A.     I was the Associate Warden of

22  Operations at Northwest Correctional Complex

23  -- I'm sorry.  I was the Deputy Warden at

24  Northwest Correctional Complex.

25  Q.     And I assume as Deputy Warden of

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 23 of 358 PageID #: 761

**Attachment 22**

1  Northwest Correctional Complex, you didn't

2  have anything to do with executions?

3  A.     No.

4  Q.     Did you have anything to do with

5  executions in the state of Tennessee prior to

6  assuming your role as the Associate

7  Commissioner of Prisons [sic]?

8  A.     Assistant, no.

9  Q.     Assistant.

10 A.     I did not.

11 Q.     Okay.  All right.  So then we won't go

12 through all of that.  I'm going to ask you

13 this sort of general question:  Has your

14 entire career been in correction?

15 A.     It has.

16 Q.     Has it always been with the Tennessee

17 Department of Correction, or were you at

18 another facility?

19 A.     It's always been with the Tennessee

20 Department of Corrections.

21 Q.     And for how long?

22 A.     Approximately 35 years.

23 Q.     And what is your educational

24 background, sir?

25 A.     I have a Master's degree in Security

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 24 of 358 PageID #: 762

**Attachment 22**

1    Studies from the Naval Postgraduate School.

2    I have a Bachelor of Science in Criminal

3    Justice from the University of Tennessee at

4    Martin.  And an Associate of Criminal Justice

5    degree from Dyersburg State Community

6    College.

7    Q.    Did you have to write a thesis for

8    your master's degree?

9    A.    I did.

10   Q.    What was the topic?

11   A.    Prison radicalization in U.S. prisons.

12   Q.    Prison radicalization in U.S. prisons.

13   A.    Yes, basically establishing a

14   deradicalization program for U.S. prisons.

15   Q.    And was it based on a model of another

16   country?

17   A.    I studied two different countries

18   really.  Singapore and Saudi Arabia.

19   Q.    And do you endorse the Saudi Arabia

20   model?

21   A.    I somewhat did.  I think there's

22   elements in -- in the Saudi model that we

23   could use in Tennessee that would help us as

24   far as trying to counter radicalization in

25   our prisons.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 25 of 358 PageID #: 763
**Attachment 22**

1   Q.    And you did that as part of the Navy,

2   sir?

3   A.    It was at the Naval Postgraduate

4   School in Monterey, California.

5   Q.    So were you in the Navy?

6   A.    I was not in the Navy.

7   Q.    I want to get back, if I might,

8   Commissioner, to your role as the Assistant

9   Commissioner of Prisons.  Am I saying that

10  right?

11  A.    Yes.

12  Q.    And you said during -- when you served

13  in that role, part of your duties was to

14  monitor execution training.  "Monitor" could

15  mean a lot of things.  Can you tell me what

16  "monitor" means to you?

17  A.    As the -- again, basically as the

18  Assistant Commissioner of Prisons, I would

19  attend and observe the execution trainings at

20  Riverbend and basically supervise the Warden

21  in his daily activities at the facility.

22  Q.    And so when you say "supervise the

23  Warden," what does that mean in the context

24  of an execution rehearsal?  Would you tell

25  him what to do?  Did you provide him

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 26 of 358 PageID #: 764

**Attachment 22**

1    training?  Or did you just watch him do it?

2    A.      I would say basically monitored the

3    activity.

4    Q.      Uh-huh.

5    A.      If he had questions, of course I would

6    have to answer questions.  And that's

7    basically it.

8    Q.      Okay.  And how did you prepare to

9    carry out that role?

10   A.      My preparation was really, I guess, to

11   review the protocol, to keep the Commissioner

12   informed of -- of activities, things like

13   that.

14   Q.      And so when you say "review the

15   protocol," does that mean you read the

16   protocol?

17   A.      Yes.

18   Q.      If you had questions about what the

19   protocol meant, was there somebody you could

20   ask?

21   A.      There was.

22   Q.      Okay.  And who was that?

23   A.      People on staff in the Department,

24   different individuals, Commissioner.

25   Q.      Uh-huh.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 27 of 358 PageID #: 765

**Attachment 22**

1  A.     Legal staff, different individuals in

2  the Department.

3  Q.     Did you find that there was anyone in

4  the Department who was particularly

5  knowledgeable with any questions that you

6  might have?

7  A.     Well, I felt like the Legal team in

8  the Department was very knowledgeable.  The

9  Commissioner was knowledgeable.

10  Q.     Okay.

11  A.     That's primarily it.

12  Q.     During the time that you spent as the

13  Assistant Commissioner of Prisons, did you

14  have a role in obtaining lethal injection

15  drugs for executions?

16  A.     No.  Not that I remember a particular

17  role, no.

18  Q.     Okay.  Did you obtain knowledge about

19  the Department's attempts to obtain execution

20  drugs?

21  A.     As Assistant Commissioner?

22  Q.     Yes.

23  A.     I would say that -- again, it's been a

24  while.  I'm trying to recall.

25         I -- I would say that I was

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 28 of 358 PageID #: 766

**Attachment 22**

1  knowledgeable of the fact that it had become

2  a challenge to obtain lethal injection

3  chemicals across -- not only in Tennessee,

4  but in other states also.

5  Q.      Were you aware of the efforts that the

6  Department engaged in, in terms of obtaining

7  an individual who was willing to compound

8  pentobarbital?

9  A.      Not specifically at the time I was

10  Assistant Commissioner.

11  Q.      Okay.

12  A.      Those would have probably been

13  conversations that -- at the Department level

14  that I would probably not have been directly

15  involved in at that time.

16  Q.      Those are -- that's information you've

17  learned subsequent to your role as

18  Commissioner?

19  A.      Yes.  It's -- it's information that,

20  as my role as Commissioner would require me

21  to be -- I guess ask more direct questions

22  regarding the availability and the -- the

23  search and the attempts to find lethal

24  injection chemicals.

25  Q.      I'm going to ask you some questions

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 29 of 358 PageID #: 767

**Attachment 22**

1  about your monitoring of the lethal injection

2  rehearsals during the time that you were

3  Assistant Commissioner of Warden [sic].  But

4  I want to preface those questions with the

5  following provision:  If I ask a question

6  that seems to require you to name individuals

7  who participated in those rehearsals, I'm not

8  asking for that information.  And we do not

9  want you to provide that; is that okay?

10  A.     Well, that's okay.

11  Q.     Okay.  So as an individual who was

12  charged with supervising and monitoring those

13  practice sessions, did you supervise and

14  monitor the person who served the role of

15  executioner as they would push the chemicals

16  into the line?

17  A.     Let me -- let me clarify one thing.

18  Q.     Sure.

19  A.     My role as Assistant Commissioner, I

20  just want to make sure you understand, was --

21  I did not have a direct responsibility to

22  monitor every rehearsal that took place --

23  Q.     Okay.

24  A.     -- as part of that process that they

25  do monthly.  I -- I was not there at every

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 30 of 358 PageID #: 768

**Attachment 22**

1   single rehearsal.  In regards to my direct

2   supervision of the individual who is the

3   Executioner who pushes the drug, I'm aware of

4   that procedure, I'm aware of the individual

5   who does that and the process, but as far as

6   directly supervising that individual, no, I'm

7   not.

8   Q.     Okay.

9   A.     Although, as the Commissioner, I am

10  responsible for the overall management and

11  the carrying out of legal executions in

12  Tennessee.

13  Q.     Sure.  As you -- well, how many

14  rehearsal sessions would you say you

15  attended?  Can you estimate?

16  A.     Attended as Assistant Commissioner --

17  Q.     Yes, sir.

18  A.     -- or in total?

19  Q.     As Assistant Commissioner.

20  A.     I would -- several.  I don't know the

21  exact number.

22  Q.     More than a dozen?

23  A.     Oh, I'm sure more than a dozen, yes.

24  Q.     During those rehearsal sessions that

25  you attended as Assistant Commissioner, were

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 31 of 358 PageID #: 769

**Attachment 22**

1  you ever in a position to be in the same room

2  with the individual who serves the role as

3  executioner while he or she was pushing the

4  chemicals?

5  A.     Not that I recall.

6  Q.     And I should clarify.  When I say

7  "chemicals," during the rehearsal sessions,

8  you-all use saline; is that correct?

9  A.     That's correct.

10 Q.     And is it your understanding that

11 basically saline is an adequate substitute

12 for what it would be like in an actual

13 execution?

14 A.     Yes.

15 Q.     There's not really any substantive

16 difference in terms of the speed in which you

17 deliver the chemicals, whether it's saline or

18 pentaobarbital or midazolam; is that your --

19 A.     Not that I'm aware of.

20 Q.     Okay.  What sorts of questions would

21 be brought to you when you were Assistant

22 Commissioner of Prisons?

23 A.     From who?

24 Q.     During an execution rehearsal.  What

25 sorts of questions would you be asked?

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 32 of 358 PageID #: 770

**Attachment 22**

1   A.     You know, very seldom was I asked

2   questions.

3   Q.     Uh-huh.

4   A.     So, you know, just right now, I can't

5   remember the exact questions that I would

6   have been asked.  It would have been general

7   questions, I'm assuming, regarding protocol

8   or simple questions regarding notification.

9   But not anything specific that I can recall

10  right now.

11  Q.     All right.  I want to talk with you

12  now about your role as Commissioner of

13  Correction if I might.  Can you tell me, as

14  Commissioner of Correction, what are your

15  overall responsibilities?

16  A.     My overall responsibility is to

17  basically oversee the operations of the

18  Tennessee Department of Corrections, all

19  divisions, ensure that -- with the assistance

20  of my staff, that we operate facilities

21  according to law and by policy and procedure

22  and that -- among many other things, but

23  that's generally my responsibility.

24  Q.     How many employees do you supervise --

25  or are you responsible for, I should say?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 33 of 358 PageID #: 771

**Attachment 22**

1   A.      The Department has 6,400-plus

2   employees.

3   Q.      And how many inmates are you charged

4   with the safety and security of?

5   A.      We have approximately 22,000, 22- to

6   23,000 offenders incarcerated.  That doesn't

7   include the number of offenders that are in

8   local jails, plus about 78,000 offenders,

9   give or take a few, in the community under

10  Probation and Parole.

11  Q.      And Probation and Parole also is under

12  your umbrella; is that correct?

13  A.      The supervision of Probation and

14  Parole, yes.  Well, I do not supervise the

15  Board of Probation and Parole, but I -- the

16  officers of -- Probation and Parole officers

17  for the State of Tennessee and the Community

18  Supervision section is under the Department's

19  responsibility.

20  Q.      How many facilities are you

21  responsible for the orderly running of?

22  A.      We have 14 facilities in the state.

23  Q.      All right.

24  A.      Ten are operated by the State of

25  Tennessee.  One is contracted directly with a

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 34 of 358 PageID #: 772

**Attachment 22**

1  private entity, CoreCivic.  And we have three

2  contracted through the County that CoreCivic

3  operates through the County.

4  Q.      What is your role in government?  Are

5  you part of the executive branch?

6  A.      I am.

7  Q.      Do you have a cabinet-level position?

8  A.      I do.

9  Q.      So do you report directly to the

10  Governor?

11  A.      I report directly to the Governor and

12  the Chief Operations Officer for the State,

13  Mr. Greg Adams.

14  Q.      Greg Adams?

15  A.      (Witness moves head up and down.)

16  Q.      I'm sorry.  Is that a "yes"?

17  A.      Yes.

18  Q.      Okay.  And I would expect as a member

19  of the cabinet and somebody who's in charge

20  of all of these thousands of employees and

21  tens of thousands of inmates, that you find a

22  need to delegate quite a bit of your

23  responsibilities; is that fair to say?

24  A.      There -- yes, that's fair.

25  Q.      And when -- who in the Department --

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 35 of 358 PageID #: 773

**Attachment 22**

1  let me strike that question.

2       Is there anyone in the Department who

3  serves a role that assists you with

4  implementing executions?

5  A.    Well, of course the Warden of the

6  facility and other staff in the Central

7  Office.  You know, executive staff within the

8  Department.

9  Q.    And is there, for example, an

10  Assistant Commissioner of Prisons right now?

11  A.    There is.

12  Q.    And who is that?

13  A.    His name is David Sexton.  /

14  Q.    Does Mr. Sexton serve the same role

15  that you did when you were the Assistant

16  Commissioner of Correction?

17  A.    His responsibilities are pretty much

18  the same.

19  Q.    So does he attend -- periodically

20  attend the monthly rehearsal sessions?

21  A.    To my knowledge, yes, he does.

22  Q.    Has he received training on the

23  implementation of lethal injection protocols?

24  A.    He has.  Yes, he has.

25  Q.    And where did he receive that

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 36 of 358 PageID #: 774

**Attachment 22**

1   training?

2   A.      I'm not sure.  He's reviewed the --

3   when I said training, let me -- let me make

4   sure I clarify that.

5   Q.      Sure.

6   A.      He has been involved in the protocol

7   review process.  As far as any specific

8   training regarding the delivery of lethal

9   injection drugs, I'm not aware of any

10  specific training regarding that element.

11  Q.      Well, thank you for that

12  clarification.

13          Can you tell me what the protocol

14  review process is?

15  A.      The protocol review process?

16  Q.      Yes.

17  A.      It's what we do annually.  The

18  protocols are reviewed annually.  And the

19  Warden assembles the team there at the

20  facility, too, and they review the protocols

21  from time to time.

22  Q.      Is there a written report when they

23  review the protocol?

24  A.      I'm not sure.

25  Q.      Once the protocol is reviewed, are you

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 37 of 358 PageID #: 775

**Attachment 22**

1    verbally given a report on the results of the

2    protocol review?

3    A.     As Commissioner?

4    Q.     Yes.

5    A.     Not always.

6    Q.     What is the -- when there's a review,

7    what are they looking at?

8    A.     Well there's-- so there's -- there

9    would be two, right?  I mean, so if you have

10   your annual -- or you review the protocol --

11   and there's a team that's -- that does that

12   in conjunction with the Warden and the

13   Department staff that reviews the protocol.

14         But as far as when you prepare for an

15   execution, time leading up to executions, the

16   Warden also would go over the protocol.  And

17   the Execution Team would review that protocol

18   also.

19   Q.     Okay.  So there's two different review

20   processes.  One is just --

21   A.     What I would classify as two different

22   reviews, yes.

23   Q.     Okay.  So there's an annual process

24   that the Warden is engaged in and the Warden

25   picks his team -- don't tell me who they are.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 38 of 358 PageID #: 776

**Attachment 22**

1  But he picks his team; is that correct?

2  A.      Well, I think it's the -- the protocol

3  for the Department of Corrections for

4  executions would be reviewed not only at the

5  Warden's level but at the Department's level

6  to see if there's any necessary changes,

7  modifications.  That's done.  And then, I

8  guess, again, a refresher for the people who

9  are directly involved in the execution

10 process.

11 Q.      And what sorts of things would you be

12 looking for to determine whether there needs

13 to be a change in the protocol or a revision?

14 A.      At -- at my level?

15 Q.      Or at the Warden's review level.  When

16 he's conducting those annual reviews, what

17 sorts of things is he concerned --

18 A.      Well, again, let me make sure I'm

19 clear.

20 Q.      Sure.

21 A.      The annual review process and our

22 annual review of these protocols would be

23 more at the executive level to include the

24 Warden.

25 Q.      Okay.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 39 of 358 PageID #: 777

**Attachment 22**

1    A.      But it would be a review of -- a

2    departmental review to ensure that you were

3    -- the protocol was current with any changes

4    in statute or any changes in the protocol

5    that needed to be made.

6    Q.      And what would cause you at the

7    executive level to determine that there's a

8    change in the protocol that needs to be made?

9    A.      Either my knowledge or my staff's

10   knowledge of any kind of changes that might

11   be necessary.  I mean, it could -- there's

12   different things that could trigger that.

13   Obviously a change in the legislature or a

14   law or many other things.

15   Q.      As Commissioner of Correction, do you

16   -- and without telling me who -- but do you

17   consult with other individuals from various

18   states who serve at your level who are also

19   Commissioners of Corrections who are

20   responsible for executions?

21   A.      I do.

22   Q.      Could they provide you information

23   from their experience that might cause you to

24   need to revise the protocol?

25   A.      Well, they could provide me

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 40 of 358 PageID #: 778

**Attachment 22**

1   information.  And I guess it's possible --

2   Q.      Uh-huh.

3   A.      -- that could happen.

4   Q.      Okay.  When these annual reviews

5   occur, do you -- what sorts of materials do

6   you review?  Is it just the protocol in the

7   statute, or do you obtain literature or news

8   articles about other executions and factor

9   that into that consideration in your annual

10  review?

11  A.      I think we consider all information

12  that's available.

13  Q.      And how would the public know what

14  information was available to you?

15          MR. SUTHERLAND:  I'm going to

16  object to the form of the question.  He's not

17  qualified to answer how the public would....

18          THE WITNESS:  I -- I don't really

19  know.  I mean, I -- a lot of the information

20  that I would see, have available to me, I'm

21  assuming would be available to the public.

22  So, I mean....

23  BY MS. HENRY:

24  Q.      So --

25  A.      I don't -- I don't -- just -- I don't

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 41 of 358 PageID #: 779

**Attachment 22**

1   do a report that goes out to the public of

2   how the -- how the review process is done or

3   anything like that, that I'm aware of.  But

4   if that helps -- if that answers your

5   question.

6   Q.    Sure.  Were you on the 2007 committee

7   that reviewed the lethal injection protocol,

8   Commissioner Little's committee?

9   A.    I was not.

10  Q.    And there was a committee report that

11  came out of that; is that correct?

12  A.    I believe so.

13  Q.    Have you read that?

14  A.    I don't remember reading it entirely,

15  no.

16  Q.    Would you have access to that as

17  Commissioner of Correction?

18  A.    I probably would.

19  Q.    And certainly individuals who have

20  worked for you for a number of years would

21  have access to that; is that correct?

22  A.    I'm assuming they would.

23  Q.    And if I tell you that it's publicly

24  known and, in fact, she's testified to the

25  fact that she served on the committee, that

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 42 of 358 PageID #: 780

**Attachment 22**

1   Debra Inglis sat on that committee and is

2   aware of that information, she would be able

3   to make that information available to you; is

4   that correct?

5   A.      Yes.

6   Q.      And who is Debra Inglis?

7   A.      She's the Chief Legal Counsel for the

8   Department and the assistant -- Deputy

9   Commissioner for the --

10  Q.      And your counsel has interposed an

11  objection of what the public has a right to

12  know and what the public doesn't.  So I want

13  to go into that a little more.

14          MR. SUTHERLAND:  Wait a minute.

15  Let me clarify that.  I didn't say that they

16  have a right to know.  Your question was:

17  How would the public get access?  And I'm

18  saying he's --

19  BY MS. HENRY:

20  Q.      And I want to get into that, how the

21  public would get access to the --

22          MR. SUTHERLAND:  If he knows.

23  BY MS. HENRY:

24  Q.      -- Department of Correction records.

25  So let me ask you a couple of background

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 43 of 358 PageID #: 781

**Attachment 22**

1   questions, okay?

2          You stated that you hold a position at

3   the executive department level; is that

4   correct?

5   A.      That's correct.

6   Q.      And you are appointed by the Governor;

7   is that correct?

8   A.      That's correct.

9   Q.      And that makes you a State employee;

10  is that correct?

11  A.      That's correct.

12  Q.      And you run a Department of Correction

13  that maintains a number of records, some of

14  which are confidential and some of which are

15  subject to public review; is that correct?

16  A.      That's correct.

17  Q.      And the Department of Correction gets

18  a number of Tennessee Public Record Act

19  Requests; is that correct?

20  A.      That's correct.

21  Q.      And the Department gets a number of

22  records requests regarding materials that the

23  Department has reviewed in crafting lethal

24  injection protocols; is that correct?

25  A.      I -- if they ask for a Public Records

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 44 of 358 PageID #: 782

**Attachment 22**

1   Request I'm assuming so, yes.

2   Q.      And if someone asks for a Public

3   Records Request, where does that request go?

4   A.      It goes to the Legal division of the

5   Department.

6   Q.      And so have you delegated to the Legal

7   division of the Department the duties of the

8   Department in terms of responding to Public

9   Records Requests?

10  A.      Yes.  They're -- they primarily have

11  the responsibility for that function, yes.

12  Q.      Do you review every public records

13  response that goes from the Department?

14  A.      No.

15  Q.      Have you ever been consulted on

16  whether you -- certain documents should or

17  should not be disclosed in the response to a

18  Public Records Request regarding executions?

19  A.      Clarify your question.

20  Q.      Has Ms. Inglis, for example, just as

21  an example, come to you and said:  "I've

22  gotten this Tennessee Public Records Acts

23  Request asking for these materials about

24  executions in Tennessee.  Is this document

25  something I can turn over, or is it

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 45 of 358 PageID #: 783

**Attachment 22**

1  confidential? "

2  A.    No, Ms. -- the Legal division makes

3  that decision based on law.  They -- I don't

4  recall her ever coming to me saying:  "We

5  have this Public Records Request.  Do you or

6  do you not want me to turn this over?"  No.

7  Q.    And while we're on the topic of Public

8  Records Request, just so I don't forget, I'm

9  going to show you a couple of documents.

10             MS. HENRY:  Are we on E?

11             THE COURT REPORTER:  E.

12  BY MS. HENRY:

13  Q.    I'm going to show you, Mr. Parker,

14  what I'm going to ask the court reporter to

15  mark as Deposition Exhibit E.

16             (Exhibit E was marked.)

17             MR. SUTHERLAND:  Do you have one

18  for me?

19             MS. HENRY:  I'm sorry.  There you

20  go, Mr. Sutherland (tendering).

21  BY MS. HENRY:

22  Q.    I've handed you, Mr. Parker -- or

23  Commissioner Parker, Deposition Exhibit E,

24  which is a letter addressed to you, Mr. Mays

25  and Ms. Inglis, dated April 3rd, 2018.  And

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 46 of 358 PageID #: 784

**Attachment 22**

1   it is -- does not have my signature, but I'll

2   represent to you the copy that was sent to

3   you did, and my paralegal, Janet Santana.

4   This is a Tennessee Public Records Act

5   Request sent April 3, 2018.  Have you ever

6   seen that letter?

7   A.     I may have.  I don't specifically

8   recall.

9   Q.     If I tell you, Commissioner Parker --

10  let me ask you this, Commissioner Parker:  Do

11  you know how long the Department has to

12  respond to a Public Records Act Request?

13  A.     I do not.

14  Q.     I want to show you, sir, what I'm

15  going to ask the court reporter to mark as

16  Deposition Exhibit F.

17          (Exhibit F was marked.)

18  BY MS. HENRY:

19  Q.     And, sir, I've provided you with a

20  copy of a statute, which is Tennessee Code

21  Annotated Section 10-7-503, which is the

22  Tennessee Public Records Act and I would

23  direct your attention to Subparagraph

24  Little A, Numeral 2, Large A and Large -- I'm

25  sorry, Large B, where it says:  The custodian

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 47 of 358 PageID #: 785

Attachment 22

1  of public records or the custodian's designee

2  shall promptly make available for inspection

3  any public record not specifically exempt

4  from disclosure.  In the event it is not

5  practical for the record to be promptly

6  available for the inspection, the custodian

7  shall, within seven business days -- Sub

8  Little Roman I, make the information

9  available to the responder, Little Roman II,

10  deny the request, et cetera.

11        So would you agree with me, sir, that

12  the statute requires a response of some sort

13  within seven days?

14  A.    I would.

15  Q.    If I tell you, sir, that the April 3rd

16  Tennessee Public Records Act Request which

17  was sent to you, Mr. Mays and Ms. Inglis has

18  not been responded to, can you explain to me

19  the reason for the delay?

20  A.    I cannot.

21  Q.    Is the person who could tell me the

22  reason for the delay Ms. Inglis?

23  A.    I'm assuming she would probably have a

24  better response than I'm able to give you.

25  Q.    Thank you, sir.

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 48 of 358 PageID #: 786

**Attachment 22**

1          I'm next going to show you a document

2    I'm going to ask the court reporter to mark

3    as Deposition Exhibit G.

4               (Exhibit G was marked.)

5    BY MS. HENRY:

6    Q.    And that, sir, is a letter dated

7    May the 4th of 2018.  Again, addressed to

8    you, Mr. Mays and Ms. Inglis, and it is an

9    identical letter which was sent by me and

10   Ms. Santana on May 4th, 2018.

11          Have you seen that letter?

12   A.    I don't recall seeing it.  I may have.

13   Q.    And you would affirm with me, sir,

14   that as we sit here today on June 5, 2018,

15   that's more than seven days since May 4th,

16   2017; is that correct?

17   A.    That's correct.

18   Q.    And do you have any reason as to why

19   this letter has gone unresponded to?

20   A.    I do not.

21   Q.    Did you direct Ms. Inglis to withhold

22   responses to our letter?

23   A.    I did not.

24   Q.    Would Ms. Inglis be in the best

25   position to explain why these letters have

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 49 of 358 PageID #: 787

**Attachment 22**

1  gone unanswered?

2  A.    She would have a better answer than I

3  would have, probably.

4  Q.    Would you object, Mr. Parker, to going

5  back to the Department today and asking

6  Ms. Inglis to please respond to the letters

7  which I've shown you as Exhibits E and G?

8  A.    I would certainly be willing to

9  inquire of General Counsel what the issue

10  was, assuming that we haven't responded, to

11  find out why, why we haven't responded.

12  Q.    Thank you.

13        And you would agree, sir, that if I

14  tell you I live in Nashville, Tennessee --

15        MR. SUTHERLAND:  Objection to the

16  leading.

17  BY MS. HENRY:

18  Q.    -- if I live in Nashville, Tennessee,

19  Davidson County, that I'm a citizen of the

20  state of Tennessee?

21  A.    I would agree to that, yes.

22  Q.    All right.  And my clients are

23  citizens of the state of Tennessee, aren't

24  they?

25  A.    Yes.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 50 of 358 PageID #: 788

**Attachment 22**

1    Q.      And citizens of the state of Tennessee

2    have the right to public records; is that

3    correct?

4    A.      That's correct.

5    Q.      And the materials considered by the

6    Protocol Review Committee, would those

7    materials be public records?

8    A.      Restate the question, I'm sorry.

9    Q.      Any materials that you consider in

10   your annual protocol review process, would

11   those materials be subject to a Tennessee

12   Public Records Act Request?

13   A.      I'm assuming that parts of it would.

14   Q.      And what parts wouldn't be?

15   A.      The parts that reveal identity of

16   individuals, the parts regarding the security

17   protocols for the facility and the security

18   operations of the protocol, things like that.

19   Q.      And when you say "security," you're

20   talking about, for example, on the evening of

21   the execution, what security procedures are

22   put in place to make sure that everyone

23   involved in the process is safe; is that --

24   A.      Yeah, that.  And the -- the different

25   security protocols for the inside of the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 51 of 358 PageID #: 789

**Attachment 22**

1   facility as far as access to areas, things

2   like that.

3   Q.     All right.  So other than those

4   portions of the materials reviewed, which are

5   subject to the Public Records Act exclusion,

6   because they're confidential and the security

7   materials, any other materials considered by

8   you would be subject to a Tennessee Public

9   Records Act Request by a citizen of the state

10  of Tennessee?

11  A.     To the best of my knowledge, yes.

12  Q.     I will let you go ahead and keep

13  Exhibit D handy, and I'm going to show you

14  now a document that I will ask the court

15  reporter to give the next letter.

16          MS. HENRY:  Which I believe is H?

17          THE COURT REPORTER:  Correct.

18          (Exhibit H was marked.)

19  BY MS. HENRY:

20  Q.     I'll ask you, Mr. Parker, have you

21  seen Deposition Exhibit No. -- Letter H

22  before?

23  A.     I have.

24  Q.     And when did you see it?

25  A.     Several times.  Over the last three or

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 52 of 358 PageID #: 790

**Attachment 22**

1   four weeks, probably, several times.  I don't

2   -- I don't remember specific dates, things

3   like that, but....

4   Q.    So this Defendant's Answer to the

5   Complaint, Amended Complaint, will you agree

6   with me that it has paragraph numbers?

7   A.    Yes.

8   Q.    And next to the paragraph numbers,

9   there are answers that say things like:

10  "Admit" or "Deny;" is that correct?

11  A.    Yes.

12  Q.    Did you have any input as to whether

13  certain paragraphs should be admitted or

14  denied?

15  A.    I did.  I -- my discussion with my

16  staff in regards to answering this, the Legal

17  team, so, yes, I did have input.

18  Q.    All right.  And when you say "the

19  Legal team," are you referring to

20  Mr. Sutherland, Ms. Davis and Mr. Mitchell,

21  or are you referring to Ms. Inglis and the

22  Department of General Counsel?

23  A.    I'm referring to the Department's

24  Legal team.

25  Q.    Okay.  And that's the General

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 53 of 358 PageID #: 791

**Attachment 22**

1   Counsel's office?

2   A.    Yes.

3   Q.    Okay.  It's a little confusing because

4   you're represented here by the State Attorney

5   General's Office.

6   A.    Uh-huh.

7   Q.    So I want to make sure when you say

8   "Legal team" you're referring to Ms. Inglis

9   and Department of General Counsel?

10  A.    Yes.

11  Q.    All right.  So you have specific

12  knowledge to -- as to the materials or the

13  answers provided in Defendant's answer?

14  A.    In some -- in some of them, I do.  And

15  some of them, I do not.

16  Q.    Okay.  And can you broadly categorize

17  those answers of which you do have knowledge

18  -- personal knowledge?

19          MR. SUTHERLAND:  I'm going to

20  object to the form of the question.

21          I think you'd have to ask him if

22  he knows.

23          THE WITNESS:  There -- there are

24  specific questions that would relate to

25  things that I have personal knowledge about

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 54 of 358 PageID #: 792

**Attachment 22**

1   in this -- in this document.  And then

2   there's some that, just as an example, would

3   require a medical opinion that I would not

4   have.  So that's as general as basically I

5   can put it.

6   BY MS. HENRY:

7   Q.    Great.  Thanks.

8         And that's what I'm trying to get at

9   so that we can maybe -- I'm not going to ask

10  you questions --

11  A.    Sure.

12  Q.    -- about things that require expert

13  opinions.  But I think I'm hearing you say

14  that you do have personal knowledge with

15  respect to basic facts about the execution

16  protocol and allegations regarding the

17  protocol itself?

18  A.    Yes.

19  Q.    Am I hearing you right?

20  A.    Yes.

21  Q.    And so you would have been able to

22  provide that information so that it got into

23  this document so that we could understand the

24  Department's position; is that correct?

25  A.    Yes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 55 of 358 PageID #: 793

**Attachment 22**

1    Q.    Okay.  We'll get back to your answer

2    again.  I just kind of wanted to be clear on

3    that.

4          With respect to Deposition Exhibit D,

5    which is the Amended Complaint, there was an

6    original Complaint filed on February 20th of

7    2018.  And a hand-delivered copy of that and

8    the summons was delivered to your office.

9    Did you receive that copy on February 20th of

10   2018?

11   A.    I may have.  I don't specifically

12   remember receiving it.

13   Q.    Okay.  When did you first become

14   engaged with the facts as they were pled in

15   the Complaint?

16   A.    I don't remember a specific date or

17   time and place.  As you can imagine, I have a

18   lot of things go on every day.

19   Q.    Yes.

20   A.    I -- I remember the Complaint.  I

21   remember vaguely speaking to the Legal team

22   and giving responses.  But I don't -- I

23   couldn't give you a date or time, a specific

24   time.

25   Q.    Okay.  And is dealing with the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 56 of 358 PageID #: 794

**Attachment 22**

1   substance of the Complaint and how an

2   individual -- or how you were going -- strike

3   that question.  It's a bad question.

4        What role has General Counsel's Office

5   played as far as answering the Complaint that

6   was filed?

7   A.    I think assisting the Commissioner in

8   the response.  In some cases, talking about

9   things that we have done in regards to the

10  execution process, steps that had been taken

11  sometimes to discuss with me things --

12            MR. SUTHERLAND:  Let me stop you

13  there.  We're getting -- you're getting to

14  attorney/client.

15            MS. HENRY:  I'm trying to figure

16  out what is and what isn't attorney/client.

17  That's the reason for asking the question.

18  BY MS. HENRY:

19  Q.    I really don't want to get into

20  attorney/client.  I'm trying -- as the Court

21  has ruled, Commissioner, there are some

22  things that are attorney/client that the

23  General Counsel does and there are some

24  things that aren't.  So I am just sort of

25  asking you to give me a broad brush and not

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 57 of 358 PageID #: 795

**Attachment 22**

1   the specifics.  And then we'll figure out

2   whether we can delve further, okay?

3          Does that make sense?

4   A.     Not really.

5   Q.     Does that address your concern?

6   A.     So --

7   Q.     I appreciate that answer.

8   A.     So here -- again, assisting the

9   Commissioner with my review of the Complaint

10  and my answers, in some cases helping me

11  remember, because my memory is terrible.  I

12  have a terrible memory sometimes.  And I --

13  helping me remember things that --

14  conversations or information to do the best

15  job I can at answering the Complaint.

16  Q.     All right.

17  A.     I hope that helps.

18  Q.     It does.  Thank you.

19         And because this is a timed

20  deposition, I'm going to move on.  And if I

21  have time, I might move back --

22  A.     Okay.

23  Q.     -- to this, okay?

24         I want to move on to some

25  interrogatories because that's going to get

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 58 of 358 PageID #: 796

**Attachment 22**

1   us to the -- the protocol itself.  I'm going

2   to show you, Commissioner Parker, a document

3   that I would ask to be marked as Exhibit I.

4   And that is the Plaintiffs' First Request for

5   Production of Documents.

6               (Exhibit I was marked.)

7   BY MS. HENRY:

8   Q.    Have you ever seen that document

9   before?

10  A.    I may have.  I don't specifically

11  remember seeing it.

12  Q.    And this, Commissioner Parker, I will

13  represent to you, was delivered along with

14  our summons on February the 20th, and

15  requests the Department, you, and -- and

16  Mr. Mays and anyone else in the Department

17  who may be an unnamed party, to provide

18  information relating to and/or reflecting on

19  TDOC's January 8th, 2018 lethal injection

20  protocol and any amendments thereto.

21          Do you see that there in the first

22  paragraph?

23  A.    I do.

24  Q.    And so we asked you to produce certain

25  documents; is that correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 59 of 358 PageID #: 797

Attachment 22

1   A.      It -- it's -- that's correct.

2   Q.      Did you have any role in putting

3   together the documents that were ultimately

4   produced in response to that request --

5   initially produced in response to that

6   request?

7   A.      My role, other than turning over any

8   information I would have regarding the

9   request to the officials at the Department --

10  that would have been it.  I remember looking

11  and checking my documents and my e-mails and

12  things like that for documents.

13  Q.      You recall specifically checking your

14  e-mails?

15  A.      I remember checking the -- doing the

16  search and checking the data, yes.  I -- I

17  don't remember -- I don't remember the

18  specifics of what I found, if anything --

19  Q.      Okay.

20  A.      -- but it -- that would have been

21  turned over to the Legal team or the

22  Department.

23  Q.      I'm going to show you a document that

24  I will ask the court reporter to mark as

25  Exhibit J.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 60 of 358 PageID #: 798

**Attachment 22**

 1              (Exhibit J was marked.)

 2              MS. HENRY:  And, I'm sorry,

 3    Mr. Sutherland, I don't have a copy for you.

 4              MR. SUTHERLAND:  I'll just scooch

 5    over here.

 6    BY MS. HENRY:

 7    Q.      Commissioner Parker, I've handed you a

 8    document that is titled Defendant's Response

 9    to Plaintiffs' Request for Production of

10    Documents.  And it is Letter J.

11    A.      Okay.

12    Q.      Do you see that there?

13    A.      I do.

14    Q.      Have you seen that document before?

15    A.      I may have.  I don't specifically

16    recall.

17    Q.      And if you would take a moment, sir,

18    to review the attachment to Exhibit J.

19    A.      (Witness reviews document.)  Okay.

20    Q.      Does the attachment to Exhibit J

21    appear to be the Lethal Injection Execution

22    Manual, Execution Procedures For Lethal

23    Injection?

24    A.      It does.

25    Q.      And is that the revision that is

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 61 of 358 PageID #: 799

**Attachment 22**

1    January 8th, 2018?

2    A.      It is.

3    Q.      And does that -- is that document 112

4    pages in length?

5    A.      (Witness reviews documents.)

6            Yes.

7    Q.      And does that document appear to be

8    the same document which is as Attachment A to

9    the Amended Complaint, which is -- the

10   Amended Complaint is Deposition Exhibit D?

11   A.      Uh-huh, it appears to be, yes.

12   Q.      So in response to our Request for

13   Production of Documents, you provided us a

14   copy of the Lethal Injection Manual, which we

15   had already attached as an attachment to our

16   Complaint; is that correct?

17   A.      Uh-huh, that's correct.

18   Q.      And that Request for Production of

19   Documents -- or that response to our Request

20   for Production of Documents is dated

21   April 6th, 2018; is that correct?

22   A.      What's dated April?  I'm sorry.  I

23   missed your question.

24   Q.      Sure.  If you'll turn to Page 3 of

25   Exhibit J --

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 62 of 358 PageID #: 800

**Attachment 22**

1   A.      Uh-huh.

2   Q.      -- for the Certificate of Service.

3   A.      (Witness complies.)

4   Q.      Do you see there that the document is

5   dated April the 6th, 2018?

6   A.      (Witness reviews documents.)

7   Q.      The page before that.

8   A.      This page (indicating)?

9   Q.      Yes.

10  A.      I do, uh-huh.

11  Q.      All right.  So on April the 6th, 2018,

12  in response to our Request for Production of

13  Documents regarding the January 8th, 2018

14  protocol, the only documents provided to

15  Plaintiffs' counsel was a copy of the Lethal

16  Injection Manual that we already had; is that

17  correct?

18  A.      That's correct.

19  Q.      As we refer to this manual throughout

20  today's execution [sic], can we agree that

21  the word "manual" or "protocol" is

22  synonymous?

23  A.      Yes.

24  Q.      So if you or I say "manual" or we say

25  "protocol," we agree that we are talking

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 63 of 358 PageID #: 801

**Attachment 22**

1   about this same January 8th, 2018 document;

2   is that correct?

3   A.    That's correct.

4   Q.    At no time today will I be asking you

5   about the electrocution protocol, okay?

6   A.    Okay.

7   Q.    And that's because I would be

8   prohibited from doing so, and Mr. Sutherland

9   would object vociferously, okay?

10          MR. SUTHERLAND:  I don't know

11  about vociferously.

12  BY MS. HENRY:

13  Q.    It's not because I don't want to.

14  A.    All right.

15  Q.    All right.  So when we talk about this

16  manual, if we could look at Page 1 of the

17  manual.

18  A.    (Witness complies.)

19  Q.    And the first sentence states:  "This

20  manual contains a summary of the most

21  significant events and departmental

22  procedures to be followed in the process of

23  carrying out the orders of the Tennessee

24  Supreme Court regarding the imposition of

25  death by lethal injection."

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 64 of 358 PageID #: 802

**Attachment 22**

1          What do you mean by "summary"?

2    A.    I think that it's basically a -- well,

3    a summation.  I -- I don't know to say it

4    without saying summary again.  A summation of

5    things that occur during the process of

6    carrying out lethal injection.

7    Q.    I want you to turn --

8    A.    And let me just say that I -- when I

9    say "summary" or -- or "summation," it's not

10   -- it's obvious that it's not going to be

11   all-inclusive of every single thing that

12   occurs, but I think it's a best attempt at

13   providing a manual that describes the

14   process.

15   Q.    So let me see if I'm hearing you

16   correctly.  And so -- I don't want to

17   misunderstand.  I -- I think you're using

18   "summary" the way that I understand

19   "summary," but I just want to make sure that

20   we're on the same page.  What you're saying

21   to me is that there are things that you're

22   going -- and when I say "you," I mean the

23   Department, the individuals involved with the

24   execution.  There are steps that must be

25   taken in every lethal injection, and you

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 65 of 358 PageID #: 803

**Attachment 22**

1   can't write everything down?

2   A.      True.

3   Q.      And so you've put together --

4   A.      Well, I don't know that you can't, but

5   we -- we -- we have not, but, yes.

6   Q.      Okay.  So this is not -- this written

7   document is not every single thing that's

8   done in an execution, but it's a summary?

9   A.      I think it's, again, the most

10  significant events that occur.

11  Q.      All right.  The next sentence there,

12  sir, states:  "It contains a detailed listing

13  of some of the duties and responsibilities of

14  certain key departmental personnel."  And of

15  course I put some emphasis on the word

16  "some," because to me the word "some" means

17  that there are other duties that are not

18  listed in the manual.  Is that a fair

19  interpretation?

20  A.      Other duties of?

21  Q.      Other duties and responsibilities of

22  certain key department personnel that are not

23  listed.

24  A.      Could be, yes.

25  Q.      Does the word "some" indicate to you

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 66 of 358 PageID #: 804

**Attachment 22**

1  that not all are listed?

2  A.     Right, sure.

3  Q.     Okay.  The first sentence of the

4  second paragraph states:  "It will be used as

5  a guideline for the Warden to assure that

6  operational functions are properly planned

7  with staff who have designated

8  responsibilities in performing a judicially

9  ordered execution by lethal injection."

10         And, again, sir, I want to direct your

11  attention to the word I put emphasis on,

12  which is "guideline."  To me, "guideline"

13  means it's a guide, but the Warden is free to

14  use his own discretion in carrying out the

15  execution.  He's guided by it, but ultimately

16  he's in charge with how the execution will

17  move forward?

18  A.     Well, the Warden has certain

19  responsibilities in regard to the protocol,

20  as does the Commissioner of the Department,

21  who is ultimately responsible for the overall

22  administration of -- of the -- of executing

23  offenders.

24  Q.     So what does "guideline" mean?

25  A.     I think it's a -- it -- as much as

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 67 of 358 PageID #: 805

**Attachment 22**

1   you've said, a guide that gives instructions

2   and clarification in some areas and that --

3   that can be used as a guide.

4   Q.    Okay.  Other than the Lethal Injection

5   Manual, is the Warden provided with any

6   additional training to understand how he

7   should exercise his role in a lethal

8   injection should an event arise that's not

9   covered in the manual?

10  A.    The execution protocols is the primary

11  instruction or guide.  Other than that and my

12  involvement in -- in consultation with the

13  Warden.

14  Q.    Okay.  And what would be the basis of

15  your training to assist the Warden in

16  understanding how to discharge his duties

17  under the Lethal Injection Manual?

18  A.    Specifically as related to what

19  procedure?

20  Q.    As related to his responsibilities in

21  carrying out a lethal injection.

22  A.    It would be -- what my understanding

23  of the protocol itself, my understanding of

24  the processes and procedures that each

25  individual is responsible for in -- in the

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 68 of 358 PageID #: 806

**Attachment 22**

1  protocol itself, and then basically my role

2  as Commissioner of the Department who is

3  ultimately responsible for the administration

4  of the protocol.

5  Q.     So other than this document, though,

6  what I'm trying to get at, though, is there

7  any other source of information that you draw

8  upon in order to provide wisdom and guidance

9  to the Warden in his duties of carrying out a

10  lethal injection under the protocol?

11  A.     Well, as Commissioner, there's -- I

12  think my communications or my, I guess,

13  discussions that I've had with other

14  officials, other professionals both in

15  Tennessee and other areas, other States

16  regarding executions and the responsibility

17  as the Commissioner helps in that process.

18  Helps me make decisions and provides

19  information that I would use in making

20  decisions.

21  Q.     So am I hearing you say that as a

22  corrections professional, you have networked

23  and spoken with other corrections

24  professionals who faced lethal injection

25  executions, and obtained knowledge from them

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 69 of 358 PageID #: 807

**Attachment 22**

1   about how to conduct an execution?

2   A.     I have -- not about how to conduct an

3   execution.

4   Q.     Okay.

5   A.     About their experiences, things

6   regarding executions.  So, yes, I have spoken

7   with other officials in other states.

8   Q.     Has that been at conferences?

9   A.     It's been at conferences.  It's been

10  personal discussions, one-on-one discussions.

11  It's been in several ways, not just at

12  conferences.

13  Q.     Okay.  So in addition to conferences,

14  one-on-one discussions on the phone?

15  A.     Possibly.

16  Q.     And by e-mail?

17  A.     No.

18  Q.     By site visits?

19  A.     No.  Not site -- not -- not site

20  visits for the particular -- to attend an

21  execution.  No, that's not the case.

22  Q.     So you've not traveled to other states

23  to attend executions?

24  A.     I have not.

25  Q.     Has any -- without telling me names or

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 70 of 358 PageID #: 808

**Attachment 22**

1  where, but has anyone in the Department who's

2  currently serving in the Department attended

3  executions in other states?

4  A.     I believe they have.

5  Q.     And do you know whether those

6  executions that these Department employees

7  have attended involved the use of the drug

8  midazolam?

9  A.     I'm not sure about that.

10  Q.     Do you have any knowledge as to what

11  sort of drug was used?

12  A.     Not specifically, not at this point, I

13  do not.

14  Q.     Do you have a way of determining what

15  kind of an execution they attended?

16  A.     Not without asking them.

17  Q.     Okay.  Was it -- is it more than one

18  employee?

19  A.     I'm not sure about that.

20  Q.     Do you know whether Department of

21  Corrections staff -- and I'm sorry for my

22  wording; I'm trying to not to identify

23  anybody --

24  A.     That's okay.

25  Q.     -- by gender.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 71 of 358 PageID #: 809

**Attachment 22**

1          Do you know whether or not the

2    Department of Corrections staff member or

3    members who have attended an execution

4    attended an execution that used a three-drug

5    protocol?

6    A.     I'm not sure.

7    Q.     And so then I would assume you don't

8    know if it involved a one-drug protocol?

9    A.     Exactly.

10   Q.     Or a two-drug protocol?

11   A.     Right.

12   Q.     What was the purpose of sending the

13   Department of Correction member or members to

14   view an execution in another state?

15   A.     So let me say that -- well, I'll

16   answer it.  I don't -- I don't know.

17   Q.     Okay.

18   A.     At the time, I was not the

19   Commissioner, so I'm not sure about that.

20   Q.     Okay.  So this is an event that

21   occurred prior to you assuming your role as

22   Commissioner of Correction?

23   A.     That's correct.

24   Q.     So earlier I asked you about whether

25   or not you gained information from another

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 72 of 358 PageID #: 810

**Attachment 22**

1    Department by site visit, and you clarified

2    for me that certainly not a site visit to

3    attend an execution, but that begs a certain

4    question.  So have you traveled and had

5    in-person meetings at other Department of

6    Corrections regarding their lethal injection

7    protocols?

8    A.     Well, not for the specific purpose of

9    inquiring about lethal injection protocols.

10           I visit a lot of states.  I talk to a

11   lot of people.  And I would just say that the

12   -- most of the -- most of the commissioners

13   and directors of corrections in America, this

14   is a discussion that comes up quite often

15   because of the difficulty in obtaining lethal

16   injection chemicals and them not being

17   available.  It's a discussion that comes up

18   quite often.  So it's -- it's a -- it's one

19   of those common subjects that --

20   Q.     Okay.

21   A.     -- comes up.

22   Q.     So at this point, I just want to put

23   -- I want to ask Mr. Sutherland the question

24   before I ask you the question.

25   A.     Okay.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 73 of 358 PageID #: 811

**Attachment 22**

1   Q.     Because I think I anticipate that he

2   would object.

3   A.     Okay.

4         MS. HENRY:   Foso, Mr. Sutherland,

5   at this point I would want to ask

6   Commissioner Parker which Departments of

7   Correction he has consulted with.

8         MR. SUTHERLAND:   Yes.

9         MS. HENRY:   And I would assume you

10   would object?

11         MR. SUTHERLAND:   I will instruct

12   him not to answer based on the Court's

13   April 24th order.

14         MS. DAVIS:   May.

15         MR. SUTHERLAND:   I'm sorry.   I was

16   in the wrong date.   May 24th, 2018,

17   10:39 a.m., based on the second paragraph on

18   Page 20 that says:   "While the Deponents may

19   generally describe their efforts to obtain

20   Protocol A, including whether Protocol A was

21   obtained, and if not, the reasons why it

22   could not be obtained, the scope of this

23   discovery shall not extend to the identity of

24   any suppliers, pharmacies, manufacturers,

25   retailers, wholesalers, distributors, or

www.huseby.com      Huseby, Inc. Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 74 of 358 PageID #: 812

**Attachment 22**

1   other sources or suppliers, or any agency,

2   institution, or party, including Departments

3   of Corrections of other states, from which it

4   has or has attempted to obtain

5   pentaobarbital."

6              So I would instruct him not to

7   answer based on that.

8              MS. HENRY:  And so given

9   Mr. Sutherland's objection, I will state for

10  the record that we disagree with

11  Mr. Sutherland's interpretation of the

12  Court's order.

13  BY MS. HENRY:

14  Q.     And that we believe that we are

15  entitled to inquire as to States that you

16  have had general discussions with about the

17  ability to obtain pentaobarbital and other

18  execution drugs for execution and that we

19  would want to ask you the specific names of

20  places that you have consulted.  And we

21  believe we're entitled to do so under the

22  Court's order.

23       Mr. Sutherland has instructed you not

24  to answer the question.

25              MS. HENRY:  And I'm going to ask

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 75 of 358 PageID #: 813

Attachment 22

1  the court reporter to please certify the

2  question.

3  BY MS. HENRY:

4  Q.    We'll go to court on June 12th and

5  make our case in front of the judge.

6  A.    Okay.

7  Q.    And if she orders that you are to

8  respond, we'll all gather back together

9  again, okay?

10  A.    Okay.

11  Q.    Although for a much briefer time at

12  that point, I'm sure.

13        So without naming any of the

14  institution -- other departments that you

15  have had conversation with, is it a fair

16  statement that you have discussed with other

17  Department of Correction officials

18  difficulties in obtaining lethal injection

19  drugs?

20  A.    It's fair to say that I have

21  communicated with other officials in other

22  states who would have knowledge of the

23  difficulties in obtaining lethal injection

24  chemicals, yes.

25  Q.    And would those chemicals include

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 76 of 358 PageID #: 814

**Attachment 22**

1    pentaobarbital?

2    A.      Yes.

3    Q.      And would they -- that include the

4    active pharmaceutical ingredient or API

5    necessary to compound pentaobarbital?

6    A.      Yes.

7    Q.      Would that also include difficulties

8    in obtaining midazolam?

9    A.      Yes.

10   Q.      And would that also include

11   difficulties in obtaining vecuronium bromide?

12   A.      Yes.

13   Q.      Would that include difficulties in

14   obtaining potassium chloride?

15   A.      Yes.

16   Q.      Would that include difficulties in

17   obtaining saline?

18   A.      That is not a discussion that we

19   have -- and that I have -- that I can recall

20   having with other officials, the difficulty

21   in obtaining saline.

22   Q.      All right.  Are you aware that there's

23   a national shortage on saline?

24   A.      There is -- there's been -- I've heard

25   people in the Department talk about that, but

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 77 of 358 PageID #: 815

Attachment 22

1    my wife is a -- is a nurse practitioner, so

2    I've heard her say that.

3    Q.      Okay.

4    A.      So -- but that's basically my

5    knowledge.

6    Q.      When people in the -- I'm sorry.  I

7    didn't mean to cut you off.

8    A.      No, that's okay.

9    Q.      When people in the Department have

10   discussed the shortage of saline, what has

11   that been in reference to?

12   A.      Our issues at DeBerry Special Needs

13   facility would -- caring for the inmates that

14   are sick there and would have issues from

15   time to time finding saline.  That's

16   basically it.

17   Q.      You mentioned DeBerry Special Needs

18   facility.  So this would probably be a good

19   point to have you state what DeBerry Special

20   Needs facility is.

21   A.      It is the facility in Nashville that

22   houses the main medical facility for the

23   Department, cares for the sickest offenders

24   we have, basically.

25   Q.      The sickest offenders, is that what

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 78 of 358 PageID #: 816

**Attachment 22**

1   you said?

2   A.      Yes, I'm sorry.

3   Q.      So is that a prison -- the prison

4   hospital?

5   A.      It is.

6   Q.      All right.  Does the -- does DeBerry

7   Special Needs have an on-site pharmacy?

8   A.      We have a pharmacy -- central pharmacy

9   at DeBerry, yes.

10  Q.      And does that central pharmacy have a

11  DEA license?

12  A.      They do.

13  Q.      Are they able to obtain controlled

14  substances, purchase controlled substances?

15  A.      They do.

16  Q.      And if the Department were to obtain

17  lethal injection chemicals, would they have

18  to be delivered to the pharmacy at DeBerry

19  Special Needs before being transferred to

20  Riverbend?

21  A.      I don't know that they would have to.

22  I'm not sure.

23  Q.      Are they --

24          MR. SUTHERLAND:  I'm going to

25  object, relevance.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 79 of 358 PageID #: 817

**Attachment 22**

1  BY MS. HENRY:

2  Q.     You can go ahead and answer.

3  A.     The -- it's my understanding that --

4  that has occurred.  And I believe that's the

5  process, yes.

6  Q.     Commissioner, it is now a quarter till

7  11:00 by my watch.  And for me, this would be

8  a good point to take a break.  Is that okay

9  with you?

10  A.     That's fine.

11  Q.     All right.

12         MS. HENRY:  We'll take a break and

13  go off the record.

14         (Brief recess observed.)

15         MS. HENRY:  All right.  It is

16  11:01 by my watch, and we're back on the

17  record.

18  BY MS. HENRY:

19  Q.     So, Commissioner, thank you for

20  allowing me to take a little break.

21  A.     Sure.

22  Q.     And, of course, what normally happens

23  when you take a little break and there are a

24  lot of lawyers in the room, they have some

25  ideas of some questions that I missed.  So

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 80 of 358 PageID #: 818

**Attachment 22**

1   I'm going to try and get some real quick, and

2   then we'll move along, okay?

3   A.      Okay.

4   Q.      So when we broke, we were discussing

5   Page 1 of the Lethal Injection Manual, and I

6   was asking you about the use of the word

7   "guideline" and that the manual is a

8   guideline for the Warden.

9           Is the Warden free to deviate from the

10  guideline?

11  A.      Well, how would you -- give me an

12  example.  How -- what do you mean, deviate?

13  Q.      Is the Warden free to -- I don't know

14  how he might deviate.  That's a good

15  question.

16          Is he free to order -- I'll just give

17  you an example and get right to it.  If he

18  were to administer -- signal to the

19  Executioner to administer the midazolam and

20  conduct a consciousness check, as is defined

21  in the manual, and determine that the inmate

22  responded in some way that was ambiguous as

23  to whether or not he was sedated or not

24  sedated, would the Warden be free to signal

25  the Executioner to move forward with the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 81 of 358 PageID #: 819

**Attachment 22**

1   execution?

2   A.      No, that would not be following the

3   protocol.

4   Q.      Would the Warden be free to not order

5   execution drugs as he is directed to do by

6   the execution people?

7   A.      No.  The ordering of -- let me just --

8   the ordering of the drugs, again, by the

9   Warden or his designee, it's obvious the

10  Department has to order the chemicals.  So if

11  you're asking me if the Warden decided that

12  the expiration dates were checked and our

13  chemical, say, for instance was no good or

14  not -- not current, for him just to

15  arbitrarily say, "I'm not going to order the

16  drugs," no, that would not be -- that would

17  not be acceptable either.

18  Q.      Does the Warden have to receive

19  instruction from someone in order to order

20  the drugs?

21  A.      The Warden and his designee is

22  responsible for that, and the Warden would

23  work in conjunction with the staff to ensure

24  that the drugs were ordered.

25  Q.      Would you -- let me give you this

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 82 of 358 PageID #: 820

**Attachment 22**

1   scenario, Commissioner.  Let's say, for

2   example, the Warden signals the Executioner

3   to inject the first protocol involving

4   midazolam and conduct the consciousness check

5   as that is defined in the manual, and he

6   determines that the inmate is responsive.

7           You follow me so far?

8   A.     I do.

9   Q.     And then he orders a second -- the

10  Executioner to move to the second set and to

11  give a second dose of midazolam.

12  A.     Uh-huh.

13  Q.     You following me?

14  A.     Uh-huh.

15  Q.     Is that a "yes"?

16  A.     Yes, I'm sorry.

17  Q.     And then the protocol does not require

18  the Warden to conduct a consciousness check

19  at that point; is that correct?

20  A.     It's my understanding the

21  consciousness check would be conducted after

22  the first chemicals are injected, which would

23  be the 500 milligrams of midazolam,

24  regardless if it's at first or second -- the

25  red set or blue set, there's a consciousness

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 83 of 358 PageID #: 821

Attachment 22

1  check made at that point to determine that

2  the offender is unconscious.

3  Q.    Would you agree with me that the

4  second consciousness check is not in the

5  Lethal Injection Manual?

6  A.    I'm not -- I'd have to go back and

7  take a look at it.

8  Q.    Sure.  Let's just take a quick minute

9  to do that.  I'm going to direct your

10  attention to Page 70 of the manual.  And at

11  the top of the page, it reads "7:10 p.m.,"

12  and this is Day 3 of the evening schedule for

13  Protocol B.  And Paragraph 6 instructs the

14  Warden to conduct a consciousness check after

15  the first 500 milligrams of midazolam is

16  administered.

17        Do you see that?

18  A.    Uh-huh.

19  Q.    "Yes"?

20  A.    Yes.  I'm sorry.

21  Q.    And the last sentence states:  "If the

22  condemned inmate is responsive, the Warden

23  shall direct the Executioner to switch to the

24  secondary IV line.  See Contingency Issues on

25  Page 73."

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 84 of 358 PageID #: 822

**Attachment 22**

1          Is that correct?

2    A.     That's correct.

3    Q.     So if we turn to Page 73 -- and that's

4    the Contingency Issues page; is that correct?

5    A.     Correct.

6    Q.     And that page applies for both

7    Protocol A and Protocol B?

8    A.     Yes.

9    Q.     And I don't think we've said it so far

10   today, but Protocol A is the pentaobarbital

11   protocol; is that correct?

12   A.     Yes.

13   Q.     And Protocol B is the three-drug

14   protocol involving midazolam; is that

15   correct?

16   A.     That's correct.

17   Q.     Both protocols are still active in the

18   Department of Correction; is that correct?

19   A.     Yes.

20   Q.     Either one could be used?

21   A.     Correct.

22   Q.     If the Department obtains drugs prior

23   to any execution of the 33 Plaintiffs,

24   Protocol A is available; is that correct?

25   A.     If we were to be able to obtain the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 85 of 358 PageID #: 823

**Attachment 22**

1  drugs for Protocol A, it would be available,

2  yes.

3  Q.    Okay.  And if you were able to obtain

4  the drugs for Protocol B, it would be

5  available; is that correct?

6  A.    Yes.

7  Q.    So Tennessee has a choice built into

8  the lethal injection protocol; is that

9  correct?

10  A.    We have a choice based on the

11  availability of the -- of the chemicals.

12  Q.    Now, I want to get back to that

13  question in a minute, the choice based on

14  availability.  But I want to stick with where

15  we were right now, about what the Warden is

16  to do in a contingency.

17        The first deals with IV line

18  alternatives, and we're not dealing with that

19  situation if we have to go to the second set,

20  correct?  So we'll agree that's not

21  applicable?

22  A.    Okay.

23  Q.    The second:  Interruption of the

24  delivery of the lethal injection drugs in the

25  primary IV line."  It states:  "The

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 86 of 358 PageID #: 824

**Attachment 22**

1   Executioner switches to the secondary IV line

2   and starting with Syringe No. 1 (blue) begins

3   the administration of the second set of

4   syringes using the reserve tray."

5            Do you see that there?

6   A.      I do.

7   Q.      And of the other possible contingency

8   that could be followed is the last one listed

9   on the page:  "Repeating the Lethal Injection

10  Process."

11           "If the inmate is not deceased after

12  the initial set of syringes has been

13  injected and [sic] the physician has returned

14  to the designated waiting area."

15           When I stop after the end of that

16  first sentence, that doesn't really seem to

17  apply to our scenario either, as to what he's

18  supposed to do, correct?

19  A.      As to who is supposed to do?

20  Q.      As to the Warden.

21  A.      Warden?  No.

22  Q.      So when we move to the secondary line,

23  it appears that that second contingency issue

24  is what is to be followed if the inmate is

25  responsive after the delivery of the first

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 87 of 358 PageID #: 825

**Attachment 22**

1  dose of midazolam; is that correct?

2  A.    I think the second applies, but I also

3  think part of the third would apply where we

4  talk about repeating the lethal injection

5  procedure with the second set of syringes

6  which would -- in my interpretation would

7  include the -- the processes that apply to

8  using the -- the second set of chemicals.

9  Q.    So you read the word "repeat" there as

10  the ex-- the Warden goes back to Paragraph 6

11  and repeats it exactly the same?

12  A.    Well, I think -- what I'm saying is

13  that when we say "repeat the lethal injection

14  procedure," I agree there -- there's nothing

15  mentioned in the second paragraph regarding a

16  consciousness check.  But I think when you go

17  to the second set of syringes and begin the

18  process again with the first drug being

19  midazolam, that you would follow the same

20  procedure as laid out in the protocol.

21  Q.    So --

22  A.    Which would include a consciousness

23  check.

24  Q.    So you would agree with me, then,

25  that's an ambiguity in the written protocol

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 88 of 358 PageID #: 826

**Attachment 22**

1   as to what the Warden should do in that

2   situation?

3   A.      I think it could be ambiguous to

4   someone who is not familiar with the process.

5   I think to the people who carry this process

6   out, that's -- that's the intent.  I'll say

7   that.

8   Q.      All right.  Have you specifically

9   counseled the Warden on the necessity of

10  conducting a second consciousness check

11  should the need arise?

12  A.      I don't -- I don't know that me and

13  the Warden specifically have had that

14  conversation in particular.

15  Q.      And during an execution, it's my

16  understanding that you would be up in the

17  Warden's office, not back in the execution

18  chamber itself; is that correct?

19  A.      Correct.

20  Q.      And so in the execution chamber during

21  the execution process, once it begins, the

22  Warden is in charge; is that correct?

23  A.      That's -- well, the Warden is in

24  charge of carrying out the process, the

25  mechanics of the -- of the protocol.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 89 of 358 PageID #: 827

**Attachment 22**

1    Q.     Are you aware, Commissioner Parker, of
2    instances where an inmate was not rendered
3    insensate and unresponsive after a second
4    dose of midazolam?
5    A.     In anywhere?  Are you talking about
6    across the United States?
7    Q.     Yes, anywhere in the United States.
8    A.     I have read reports or -- news reports
9    and all of what was reported as inmates who
10   were not completely unconscious at the time,
11   yes.
12   Q.     Okay.  And does our protocol give the
13   Warden any guidance as to what he should do,
14   if after the administration of a second dose
15   of midazolam, the inmate is still responsive?
16   A.     I don't know that the -- that the
17   protocol specifically says what you do.  The
18   procedure is he would notify the
19   Commissioner.
20   Q.     And what would happen then?
21   A.     The -- if -- if after the second dose
22   or the second round of drugs and the second
23   check of midazolam and the offender was still
24   conscious, then I would delay the execution,
25   stop the execution.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 90 of 358 PageID #: 828

**Attachment 22**

1  Q.    So there would be no further drugs?

2  A.    No.

3  Q.    No?  It's two sets and that's it?

4  A.    Exactly.

5  Q.    All right.  Does the Warden know that?

6  A.    I'm assuming he does.  He should know,

7  but that's -- that's the protocol.  That's my

8  procedure.

9  Q.    Okay.  Is that written down anywhere?

10  A.    No, not that I'm aware of.

11         MR. KISSINGER:  Excuse me, I'm

12  sorry.

13         MS. HENRY:  Let the record reflect

14  that Mr. Kissinger is having a coughing fit.

15  BY MS. HENRY:

16  Q.    Turning back to Page 1 of the Lethal

17  Injection Manual, it indicates that

18  Section 8, "Perimeter security is

19  confidential and not subject for public

20  release."

21         So other than Section 8, was the

22  entire Lethal Injection Manual provided to

23  Plaintiffs' counsel?

24  A.    With the -- it's my understanding it

25  was with the exception of this Section 8.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 91 of 358 PageID #: 829

Attachment 22

1    Q.      Okay.  And can I ask you to turn now,

2    sir, to Page 6 of the protocol, the

3    January 8th, 2018 protocol?

4    A.      Okay.

5    Q.      Does that page bear your signature,

6    sir?

7    A.      It does.

8    Q.      And what does your signature on that

9    page signify?

10   A.      It signifies that the protocol is the

11   official protocol of the Department of

12   Corrections and my signature as Commissioner

13   verifies that.

14   Q.      So does your signature indicate that

15   you have adopted the protocol as the

16   Commissioner of the Department of Correction?

17   A.      Yes.

18   Q.      And as they say, the buck stops with

19   you?

20   A.      Yes.

21   Q.      And so you are responsible for the

22   content of this protocol?

23   A.      I am responsible, yes.

24   Q.      Okay.  If I could ask you, sir, to now

25   turn -- let me ask you this before I back up.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 92 of 358 PageID #: 830

**Attachment 22**

1       The protocol designates

2  responsibilities in a lethal injection

3  according to a person's position; is that

4  correct?

5  A.      I don't understand your question.

6  Q.      So, for example, the Warden has

7  certain responsibilities, the Associate

8  Deputy Warden of Security has certain

9  responsibilities, the Commissioner has

10  certain responsibilities; is that correct?

11  A.      That's correct.

12  Q.      And those particular positions are

13  designated by individuals who are known; is

14  that correct?

15  A.      That's correct.

16  Q.      By virtue of the Warden assuming the

17  role of Warden of the Riverbend Maximum

18  Security Institution, the fact that he's

19  going to oversee an execution is known?

20  A.      Correct.

21  Q.      Publicly?

22  A.      Correct.

23  Q.      And your role is known publicly?

24  A.      Correct.

25  Q.      And the Associate Deputy Warden's role

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 93 of 358 PageID #: 831

**Attachment 22**

1    is known publicly?

2    A.      Yes.

3    Q.      There are other individuals who are

4    described herein by titles that are unique to

5    being a part of the lethal injection team.

6    Would you agree with me?

7    A.      Yes.  That's correct.

8    Q.      So, for example, the Lethal Injection

9    Recorder, Death Watch Supervisor; is that

10   correct?

11   A.      That's correct.

12   Q.      The Institutional Chaplain is known;

13   is that correct?

14   A.      That position is known, yes.

15   Q.      But that person doesn't take part in

16   carrying out an execution; he's -- he or she

17   is there really to counsel the inmate; is

18   that --

19   A.      Which is part of the process, but,

20   yes, I agree.

21   Q.      They're not going to take part in

22   delivering the chemicals?

23   A.      Exactly.

24   Q.      And they won't strap him down?

25   A.      Exactly.

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 94 of 358 PageID #: 832

**Attachment 22**

1  Q.    There is a Physician's role; is that

2  correct?

3  A.    That's correct.

4  Q.    And that person is known to you, but

5  is kept -- his name -- his or her name is

6  kept confidential; is that correct?

7  A.    That's correct.

8  Q.    Does the Department currently have a

9  contract with a physician who is willing to

10  participate in the execution scheduled for

11  August 9th of Billy Ray Irick?

12  A.    I believe -- I would have to check

13  with counsel on that to -- to be sure.

14  Q.    And is that because it is General

15  Counsel's role to identify that person and to

16  secure their contract?

17  A.    It's because General Counsel would

18  handle contracts of a legal nature regarding

19  the process and -- which would, you know, be

20  in their purview.  And so to answer your

21  question correctly, I would need to talk to

22  counsel.

23  Q.    All right.  So you don't currently

24  know if there's a physician under contract

25  for the upcoming execution on August the 9th?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 95 of 358 PageID #: 833

**Attachment 22**

1   A.     It's -- I am -- I would say 95 percent

2   sure that it is.  I believe that's taken

3   place, but I would -- again to be certain, I

4   would have to talk with counsel.

5          MR. SUTHERLAND:  Just note my

6   objection for the record.  The protocol calls

7   for a physician.  And so for a facial

8   challenge, we assume for the purposes of the

9   protocol there is a physician, so this line

10  of questioning is irrelevant.

11         MS. HENRY:  And I would state for

12  the record that the fact that there is a

13  physician involved is directly relevant to

14  the question of availability.

15  BY MS. HENRY:

16  Q.     But we're -- you've already answered

17  my question, so we'll move on.

18         You have IV Team members; they're

19  confidential.  Facility Maintenance,

20  Extraction Team Members, those are all

21  confidential employees; is that correct?

22  A.     Yes.

23  Q.     But they attend the monthly

24  rehearsals; is that correct?

25  A.     Yes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 96 of 358 PageID #: 834

**Attachment 22**

1  Q.     How many monthly rehearsals have you

2  attended since being Commissioner?

3  A.     I don't know the exact number.  I

4  would just say approximately two or three,

5  probably.  Four, maybe.  I don't know.  The

6  last one I remember was a couple months ago.

7  But I -- I don't remember -- I don't keep the

8  exact dates on those.

9  Q.     Okay.  So I will represent to you,

10  Commissioner Parker, that in response to

11  Tennessee Public Records Act Requests on my

12  behalf, the Department has produced exactly

13  one rehearsal of the three-drug protocol

14  which occurred on February 20th of 2018.

15        Are you aware if there have been more

16  than one rehearsal of the three-drug

17  protocol?

18  A.     So define "rehearsal."

19  Q.     Well, why don't you tell me what

20  rehearsal means to you?

21  A.     Well, here's the reason I ask the

22  question.

23  Q.     Yeah.

24  A.     The facility has the process of going

25  over the protocol monthly, okay?  They do

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 97 of 358 PageID #: 835

**Attachment 22**

1  that often there.  There are occasions where

2  the Department of Corrections would complete

3  a full-scale practice rehearsal that would

4  involve outside law enforcement, setting up

5  perimeter, going through all the steps in

6  regards to the complete protocol itself, and

7  that's on a much larger scale than what they

8  do monthly.

9       So obviously when we prepare for an

10  upcoming execution, as Commissioner, I would

11  ask the Warden to conduct those more often,

12  to be -- make people more familiar with the

13  process, more practice, I guess you would

14  say, and that would happen more.  The

15  full-scale rehearsal that I think you're

16  referring to is not something that happens

17  every month.

18  Q.     Okay.

19  A.     So that's the reason I asked for the

20  clarification.

21  Q.     Sure.  I've heard the phrase "band

22  practice" before.  Have you heard the phrase

23  "band practice"?

24  A.     I have.

25  Q.     And what is "band practice"?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 98 of 358 PageID #: 836

Attachment 22

1    A.    It's my understanding that that's the

2    term they use for the monthly practice they

3    use at Riverbend.

4    Q.    Okay.  And I guess what I'm very

5    interested in knowing about is how often the

6    Department gathers together for band practice

7    wherein an individual is actually placed in

8    the same position as an inmate and the

9    Executioner practices pushing the chemicals.

10   A.    Okay.  Is that a question?

11   Q.    How often does that happen?

12   A.    It's my understanding that that

13   happens monthly whenever they have the -- go

14   through the process, that that's part of the

15   -- the monthly training.

16   Q.    And at -- during the monthly training,

17   is there someone there who's responsible for

18   keeping a recording of everything that

19   happens, just like if they were in an actual

20   execution?

21   A.    I'm assuming there -- there is, but

22   specifically, I wouldn't be able to tell you

23   who that is.

24   Q.    And so, Commissioner Parker, what I

25   was mentioning earlier is that those sheets

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 99 of 358 PageID #: 837

**Attachment 22**

1  have been provided to us from your General

2  Counsel for a band practice session on

3  February 20th of 2018, and we've received no

4  further responses to our Public Records Act

5  Request for such documents, and so I'm

6  wondering have those practice sessions

7  occurred?

8  A.     To my knowledge, they have occurred

9  monthly like they're supposed to.

10  Q.     To your knowledge, was the three-drug

11  protocol practiced prior to February 20th of

12  2018?

13  A.     Oh, I'm sure it was.  I'm --

14  Q.     When do you believe it was first

15  practiced?

16  A.     I don't know for certain.  I would

17  have to talk with the Warden.  But -- so I

18  don't know the exact date.

19  Q.     Would it have been practiced prior to

20  January 8th, 2018?

21  A.     I think it would have been -- we would

22  have began that process once we discussed

23  changing the protocol.  But, again, I'm not

24  sure.  I'd have to go back and check on that.

25  Q.     Okay.  Could you do that for me?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 100 of 358 PageID #: 838

**Attachment 22**

1    A.      Sure.

2    Q.      And if those documents exist, would

3    you mind providing them to us?

4    A.      What documents?

5    Q.      The documents documenting the

6    practices.

7    A.      Yes.  Yes.

8    Q.      You would provide those?

9    A.      Yeah, as long as the --

10   Q.      Redacted?

11   A.      Counsel -- yeah, yeah.  My counsel

12   would -- I could talk to them and they would

13   provide it.

14   Q.      Okay.  Thank you.  We appreciate that.

15           From the records that we've seen, the

16   Department continues to also practice

17   Protocol A as well as Protocol B.

18           Is that your understanding?

19   A.      I'm not aware of the -- the current

20   practices that's been conducted, I have not

21   been made aware that they're currently

22   practicing Protocol A, which would be the

23   pentobarbital --

24   Q.      Okay.

25   A.      -- the three-syringe solution or the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 101 of 358 PageID #: 839
Attachment 22

1  three -- two drugs -- the two syringes of the

2  drug and the saline flush.

3  Q.    And why aren't they practicing

4  Protocol A?

5  A.    Well, again, it's the same principle

6  of -- of pushing a drug or delivering a drug

7  through an IV, but the fact that the number

8  of syringes that are laid out in Protocol B

9  is different than Protocol A, and the fact

10  that currently, although, it's ongoing, a

11  search for pentaobarbital -- we've been

12  unable to find it.  And I have no reasonable

13  expectation that I'll be able to find it.  So

14  that's basically the reason.

15  Q.    And your search for pentobarbital is

16  ongoing?

17  A.    Absolutely.

18  Q.    And so if you're able to secure

19  pentaobarbital prior to August the 9th, 2018,

20  it would be available?

21  A.    If we were to be able to find

22  pentaobarbital, a source, and have it

23  available before the execution, yes, it would

24  be available.  That -- that Protocol A would

25  be available.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 102 of 358 PageID #: 840

Attachment 22

1  Q.     And the fact that the members of the

2  Execution Team are practicing Protocol B, the

3  practical difference of that in a practice

4  session means that they are simply pushing --

5  the Executioner is pushing more syringes?

6  A.     They're -- they're -- well, yeah, it's

7  a different -- it's a different setup as far

8  as the number of syringes.  And it's a

9  different drug, of course.  But that's

10  primarily it, yes.

11  Q.     Are you confident that by engaging in

12  practice sessions for Protocol B, the

13  Execution Team would be in a position to be

14  able to carry out Protocol A without having

15  to have a whole new practice session?

16  A.     Well, let me just say that, yes, I am

17  -- I'm confident in that.

18  Q.     Okay.

19  A.     Yes.

20  Q.     During the practice sessions that

21  you've attended as Commissioner, and even

22  those that you've attended as the Assistant

23  Commissioner of --

24  A.     Prisons.

25  Q.     -- Prisons, has there been, without

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 103 of 358 PageID #: 841

**Attachment 22**

1   identifying him or her, a physician present

2   to provide guidance during the execution

3   process?

4   A.      During the practices?

5   Q.      The practice session, yes.

6   A.      There has.

7   Q.      On more than one occasion?

8   A.      There has.

9   Q.      And what has the purpose -- what role

10  has the physician served in that practice

11  session?

12  A.      The role of the physician is to assist

13  with the process; of course, to check the

14  offender for death or signs of death, and to

15  declare the offender deceased.  And also to

16  provide guidance or assistance in finding an

17  alternative site for IV if -- if one cannot

18  be found.  And possibly even doing a

19  procedure, a cutdown procedure to find an

20  access point.

21  Q.      During the practice --

22  A.      But.

23  Q.      I'm sorry, go ahead.

24  A.      They would also -- and, again, the

25  physician is there also to assist in the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 104 of 358 PageID #: 842

**Attachment 22**

1  process.

2  Q.     Does the physician provide training or

3  guidance to the Warden as to how to determine

4  whether an inmate is sensate to pain?

5  A.     The protocol does not call for that.

6  I think that's an option that, should the

7  Warden need assistance, the physician

8  possibly could do that, but it's not in the

9  protocol.

10  Q.     How would the Warden know to exercise

11  that option?

12  A.     Well, the -- the Warden would have to

13  make a determination based on his check of

14  the offender to see if he is conscious or

15  not.  That would be a decision the Warden

16  would have to make.

17  Q.     During the practice sessions, has the

18  physician provided training or guidance as to

19  whether or not the consciousness check, as

20  defined in the protocol, is sufficient to

21  determine whether the inmate is sensate?

22  A.     I don't know that that question has

23  been asked of the physician, and I -- not to

24  my knowledge.

25  Q.     Does the physician provide training or

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 105 of 358 PageID #: 843

**Attachment 22**

1    guidance to the Warden or any member of the

2    Execution Team as to how to recognize signs

3    that the inmate, though initially sedated,

4    has regained the ability to feel pain?

5    A.      No.

6    Q.      Has the Department sought that

7    training?

8    A.      Sought the training from anyone about

9    the --

10   Q.      Correct.

11   A.      No.

12   Q.      Where did the Department obtain the

13   consciousness check?  On what basis did the

14   Department decide that the consciousness

15   check as it exists in the protocol is

16   sufficient to determine that the inmate is

17   insensate to pain?

18   A.      That was a determination made by the

19   Department of staff, senior members of the

20   staff, in conjunction or in consultation with

21   other people, other individuals.  Both

22   professional and administrative -- or senior

23   executive staff from other areas.

24   Q.      Individuals outside the state?

25   Outside of State employees?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 106 of 358 PageID #: 844

**Attachment 22**

1   A.      Yes, in some cases.

2   Q.      Okay.  I'll get back to that later,

3   but, again, since we are on a timer, I'm

4   going to move on.

5           And I want to talk about the

6   different --

7              MR. SUTHERLAND:  Kelley, if I

8   could interrupt you for just a second.  In

9   the event you do decide you want to go back

10  there on Page 21, in the last paragraph, it

11  says that:  No questioning is allowed as to

12  "information gathered and considered

13  regarding safeguards against harm caused by

14  any alternative methods and Protocol B."

15             MS. HENRY:  And if you look

16  earlier in the order, the Court specifically

17  provides that -- I believe at the bottom of

18  Page 20; I don't have it right in front of

19  me -- that we're permitted to discuss

20  contingency plans and the implementation of

21  Protocol B, but we won't get back there until

22  after lunch, so....

23  BY MS. HENRY:

24  Q.      Let's move to Page 25 of the Lethal

25  Injection Manual, if we can.  This --

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 107 of 358 PageID #: 845

**Attachment 22**

1  Page 25, at the top it says "Commissioner."

2  Is that you?

3  A.    That's me, yes.

4  Q.    And does that page define your primary

5  role in the execution?

6  A.    It does.

7  Q.    And can you tell us what your primary

8  role is?

9  A.    "To oversee the administration of

10  judicial executions in Tennessee."

11  Q.    And is "oversee" then defined by the

12  duties as set forth below?

13  A.    I think that covers some of it.  It's

14  -- it's -- as you know, it's very broad as

15  far as overseeing the -- the process and the

16  requirements by statute and law.

17  Q.    So the first duty is pretty

18  straightforward:  "...ten minutes prior to

19  the time scheduled for the execution, the

20  Commissioner will establish telephone contact

21  with the Governor's Legal Counsel."

22        That's pretty straightforward; is that

23  right?  Fair to say?

24  A.    That's correct.

25  Q.    And is that a direct line from the

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 108 of 358 PageID #: 846

Attachment 22

1  Warden's office into the Governor's --

2  wherever the Governor may be?

3  A.    Well, that's a direct communication

4  that I would have with the Governor's legal

5  counsel.

6  Q.    Is that a landline or a cell phone?

7  A.    It could be both.  There's options

8  available for both.

9  Q.    Okay.

10 A.    Yeah.

11 Q.    Do you know if there's a landline

12 available to the Warden in the execution

13 chamber?

14 A.    Yes, there's a -- there's a line

15 available that he would contact me in his

16 office.

17 Q.    Does that line provide the Warden

18 access outside the institution or only up to

19 the Commissioner's office?

20 A.    I'm not sure.  I would have to check

21 that.  I'm not sure.

22 Q.    The second duty there states that your

23 -- that your duty is:  "To communicate to the

24 Warden any circumstances that could alter or

25 delay the execution."

www.huseby.com      Huseby, Inc.  Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 109 of 358 PageID #: 847

**Attachment 22**

1              Can you tell me what that means?

2      A.      Well, in my communications with the

3      Governor's legal counsel and with others, if

4      there was any reason to delay or halt the

5      execution, I would communicate that to the --

6      to the Warden.

7      Q.      So, for example, a stay of execution?

8      A.      Yes.

9      Q.      Either from the Court or the Governor?

10     A.      Yes.

11     Q.      And then the third duty has to do with

12     taking care of the employees who participate

13     in an execution, providing them with Employee

14     Assistance.

15             And we can agree that's not the

16     subject of your deposition --

17     A.      Right.

18     Q.      -- is that fair to say?

19     A.      Yes.

20     Q.      Other than these duties -- I know you

21     said it's pretty general -- what else is

22     encompassed in your responsibilities to

23     oversee the administration of a judicial

24     execution?

25     A.      Well, again, as far as the oversight

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 110 of 358 PageID #: 848

**Attachment 22**

1    of the employees that participate in the

2    execution process, keeping the Governor's

3    Office informed to the best of my ability,

4    ensuring that policies and protocols are

5    followed, general oversight of the entire

6    process.  Ensuring that practice sessions are

7    -- are conducted and that the Department is

8    prepared to carry out the execution as

9    ordered by the Court.  Working with staff

10   members and other people to do everything

11   possible to obtain the chemicals that have

12   become so difficult to find.

13          So there's a lot of -- there's a lot

14   of different areas that fall -- as far as

15   oversight.

16   Q.    And that's enough that could keep you

17   busy 40 hours a week every week for a year,

18   it sounds like.  So do you delegate a lot of

19   that responsibility to individuals you trust?

20   A.    In my job, there's some -- yeah, it's

21   delegated in a lot of cases.  In some cases,

22   you know, it's -- sometimes I have a tendency

23   to delegate, and then I get back involved.  I

24   have trouble keeping my hand out of that.

25   Q.    I'm familiar with that problem.

www.huseby.com         Huseby, Inc.  Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 111 of 358 PageID #: 849

Attachment 22

1  A.    Yeah.  But it's -- it's safe to say

2  that it is delegated.

3  Q.    And fair to say in any team, the

4  people you delegate to are individuals who

5  you trust?

6  A.    Yes.

7  Q.    And so you take their word when they

8  report to you?

9  A.    Well, let me -- yeah.  It's kind of

10  like Ronald Reagan once said, "Trust but

11  verify."

12  Q.    Yeah.

13  A.    But you -- you have to trust, yes, to

14  a certain extent.

15  Q.    Otherwise nothing would ever get done?

16  A.    Correct.

17  Q.    Now, if we could turn now, sir, to

18  Page 13 of the protocol.  And those are the

19  duties of the Warden; is that correct?

20  A.    I'm having trouble seeing this.  My

21  contacts are....

22        Yes, it is.

23  Q.    All right.  And the Warden has 15

24  specified duties during an execution; is

25  that --

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 112 of 358 PageID #: 850

**Attachment 22**

1    A.      That's correct.

2    Q.      Okay.  And then on Page 70 -- or I'm

3    sorry, 14, we have the Associate Warden of

4    Security; is that correct?

5    A.      That's correct.

6    Q.      And he has seven designated duties; is

7    that correct?

8    A.      That's correct.

9    Q.      And he would, if called upon, fill the

10   role of Warden should the Warden be unable to

11   carry out his duties; is that correct?

12   A.      That would be an option.

13   Q.      Who else would fill in for the Warden

14   other than the Associate Deputy Warden of

15   Security?

16   A.      Well, again, if -- there's a lot of

17   circumstances.  Say, for instance the Warden

18   becomes ill --

19   Q.      Right.

20   A.      -- or the Assistant Warden, some issue

21   was going on, I would have the authority to

22   appoint somebody as Acting Warden for that

23   process.  And it would more than likely be

24   somebody in the senior management role that I

25   would place in that position, should that be

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 113 of 358 PageID #: 851

**Attachment 22**

1    necessary.

2    Q.      So if the Warden took ill and the

3    Associate Deputy Warden was unwilling or

4    unable to fulfill the role of Warden, you

5    could appoint somebody to fulfill that role?

6    A.      I could.

7    Q.      And would that be someone who had

8    attended the practice sessions?

9    A.      I would not want to appoint somebody

10   or -- in an acting position, certainly, to

11   carry out an execution that has not

12   participated -- or familiar with -- with the

13   protocol.

14   Q.      And that process that you've just

15   discussed, the ability to appoint an Acting

16   Warden, that's not addressed anywhere within

17   the Lethal Injection Manual, is it?

18   A.      No, it's not.

19   Q.      When we look at the Warden's role in

20   carrying out a lethal injection under

21   Protocol A, if you could turn with me, sir,

22   to Page 20 of the protocol.  I'm sorry, Page

23   36 -- 35.  Where is my eyes -- 35 of the

24   protocol.

25   A.      Okay.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 114 of 358 PageID #: 852

**Attachment 22**

1    Q.     Where it says "Protocol A:

2    Procurement, Storage, Accountability, and

3    Transfer of the Chemical.

4           Do you see that there?

5    A.     Yes, uh-huh.

6    Q.     Under the first paragraph,

7    Procurement, it states:  "Upon receipt of an

8    order setting an execution date, the Warden

9    or his designee shall contact a physician to

10   obtain the physician's order for the LIC."

11          Do you see that sentence there?

12   A.     I do.

13   Q.     And "LIC" means lethal injection

14   chemical, correct?

15   A.     Yes.

16   Q.     And under Protocol A, that would be

17   pentobarbital; is that correct?

18   A.     Correct.

19   Q.     And that could be compounded

20   pentobarbital or manufactured pentobarbital,

21   correct?

22   A.     Correct.

23   Q.     Is the physician who is referred to in

24   that sentence the same physician who would

25   attend an execution, or is that a different

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 115 of 358 PageID #: 853

**Attachment 22**

1  individual, without giving me a name?

2  A.     It could be.  I don't know that that

3  limits us to one particular physician, but it

4  could be.

5  Q.     Okay.  It could be, but it doesn't

6  have to be?

7  A.     Correct.

8  Q.     Okay.

9           MS. HENRY:  Just one second.

10  BY MS. HENRY:

11  Q.     I'm going to hand you now, sir, a

12  packet of orders that I'm going to ask the

13  court reporter to mark as Deposition

14  Exhibit K.

15           (Exhibit K was marked.)

16           MS. HENRY:  And, I'm sorry,

17  Mr. Sutherland, I don't have a copy for you,

18  but I think you've seen these before.

19           MR. SUTHERLAND:  Whatever.

20           I'm just kidding.

21  BY MS. HENRY:

22  Q.     So in Deposition Exhibit K, there's a

23  three orders of the Tennessee Supreme Court.

24  The first page is State of Tennessee versus

25  Billy Ray Irick, dated January 18th, 2018.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 116 of 358 PageID #: 854

**Attachment 22**

1  Do you see that there, the file stamp in the

2  upper right-hand corner?

3  A.    Yes, I do.

4  Q.    And in this order, the Court set an

5  execution date for Mr. Irick of

6  August the 9th, 2018.

7       Do you see that at the bottom of the

8  page, midway through the last paragraph?

9  A.    Yes.

10  Q.    And the second page of this exhibit is

11  an order from the Tennessee Supreme Court and

12  State of Tennessee versus Edmund Zagorski

13  with a file stamp in the upper right-hand

14  corner of March 18th, 2018.

15       Do you see that there?

16  A.    I do.

17  Q.    Do you see that Mr. Zagorski had an

18  execution date set of October 11th, 2018 by

19  the Court on that date?

20  A.    Yes.

21  Q.    And the third page is an order from

22  the Tennessee Supreme Court and State of

23  Tennessee versus David Earl Miller with the

24  file stamp date of March 18, 2018.

25       Do you see that there?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 117 of 358 PageID #: 855
**Attachment 22**

1   A.     I do.

2   Q.     And do you see that the Court set an

3   execution date for Mr. Miller of December

4   the 6th of 2018; is that correct?

5   A.     That's correct.

6   Q.     Under Protocol A, upon the Tennessee

7   Supreme Court setting of those execution

8   dates, the Warden is to have obtained a

9   physician's order for the LIC; is that

10  correct?

11  A.     That is correct.

12  Q.     Do you know if the Warden's done that?

13  A.     The Warden -- as far as Protocol A,

14  obtaining the drug has not -- is not a

15  possibility at this time.  We've been unable

16  to locate a source.  And there has been, to

17  my knowledge, no physician's order or

18  prescription for the drug because we have

19  nobody to send it to.  There's no

20  availability of the drug.

21  Q.     And thank you for that explanation.

22  And we're going to get into that in some

23  detail after lunch.  But my question for you

24  right now -- and you would agree with me,

25  obtaining a physician's order is different

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 118 of 358 PageID #: 856

**Attachment 22**

1  from actually obtaining the LIC, correct?

2  A.     Correct.

3  Q.     And under Protocol A, the first thing

4  the Warden is supposed to do upon the Court

5  setting an execution date, to trigger the

6  protocol, is to obtain a physician's order,

7  correct?

8  A.     That's correct.  As -- but now, my

9  interpretation of that would be to have an --

10 order a prescription for the drug.  That

11 would need to be sent to a pharmacist or

12 somebody that could fill the order, and it's

13 my understanding and it's a fact, that we

14 don't have a source at this point to send an

15 order to.  So it's, to me, having the order

16 without a source to fill the drug would be

17 useless.

18 Q.     And I understand that's your

19 interpretation of the protocol.

20 A.     Sure.

21 Q.     As Mr. Sutherland continues to remind

22 us, this is a facial challenge, and we're

23 supposed to look at the face of the protocol.

24 A.     I understand.

25 Q.     Under the protocol as it's written,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 119 of 358 PageID #: 857

**Attachment 22**

 1  upon the Court setting an execution date, the

 2  Warden is to obtain a physician's order for

 3  the LIC; is that correct?

 4  A.     That's correct.

 5  Q.     And I want to make sure that I

 6  understood your answer correctly.  You used

 7  the phrase "prescription."  Are you familiar

 8  with the fact that prescription and

 9  physician's orders are two different things?

10  A.     I -- I am.  I am.

11  Q.     Okay.  So is the Warden to get a

12  physician's order or a prescription?

13  A.     It's my -- my interpretation of this

14  in the protocol would be a prescription for

15  the LIC.

16  Q.     Okay.  And have you discussed your

17  interpretation of this protocol with the

18  Warden?

19  A.     I have not.

20  Q.     How would -- is the Warden to know, if

21  he's not following the protocol as it's

22  written, when to obtain the prescription for

23  the LIC under Protocol A?

24  A.     Once we have -- once we have a date

25  set, and as we approach that date, based on

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 120 of 358 PageID #: 858

**Attachment 22**

1  the availability of the drug, the Warden or

2  his designee would work with the physician

3  and the supplier to obtain the chemical.

4  Q.     So the Warden -- the Warden would have

5  direct contact with the supplier?

6  A.     Not necessarily.

7  Q.     Okay.

8  A.     The Warden or designee.  And that

9  would be somebody -- an official in the

10  Department of Corrections that would be

11  responsible for assisting the Department in

12  obtaining the drugs.

13  Q.     So the Warden would -- it's either the

14  Warden who deals with the supplier or the

15  physician, or the Warden's designee?

16  A.     It's -- it's the -- the -- well, let

17  me -- let me clarify this to you.

18  Q.     Sure.

19  A.     This -- if -- if -- let's assume that

20  we could obtain the chemicals by simply

21  contacting the physician and him writing an

22  order or a prescription for the drug, and it

23  was readily available, that the Warden could

24  make that -- set those things in motion to

25  obtain the drug.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 121 of 358 PageID #: 859

**Attachment 22**

1           The reality is, is that the chemicals

2    are not available.  And my role as

3    Commissioner and my staff have worked to find

4    -- try to find sources for the drug.  Now, we

5    communicate with the Warden and also with

6    individuals who would supply the chemicals,

7    and so it's a combination of -- of three or

8    four different entities working together,

9    really.

10          This protocol would be, I guess,

11   easier to understand if the drugs were

12   available, readily available.  But because of

13   the situation at hand, the Warden -- or --

14   and really the designee who assists the

15   Department in finding these drugs, plays the

16   primary role in obtaining the lethal

17   injection chemicals.

18   Q.    And there's a lot there to unpack this

19   afternoon, but I guess what I'm getting at

20   right now is the protocol says on its face

21   under Protocol A that upon the receipt of

22   setting of an execution date, the Warden or

23   his -- and I read "his" to modify Warden --

24   so the Warden designee shall contact a

25   physician to obtain a physician's order for

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 122 of 358 PageID #: 860

**Attachment 22**

1  the LIC.

2        And you're telling me that hasn't

3  happened.  And I'm asking you how would the

4  Warden know under the protocol when he should

5  obtain the LIC for the -- the physician's

6  order for the LIC?

7  A.    He would know basically by

8  communicating with Central Office or -- or

9  Central Office -- I say Central Office.  TDOC

10  staff, senior staff, would assist in that

11  process and notify the Warden of the fact

12  that we had the chemical.

13  Q.    So somebody from downtown would call

14  the Warden and tell him, "We have the

15  chemicals, so move forward with Protocol A"?

16  A.    Somebody -- the Department would

17  obtain -- it -- say, for instance, we were

18  able to obtain pentobarbital.

19  Q.    Uh-huh.

20  A.    The Warden would be notified that we

21  have the drugs for -- for Protocol A, and we

22  would proceed with Protocol A, yes.

23  Q.    And I may have in the course of asking

24  you these questions -- and I may have gotten

25  you to use loose language there, so I don't

www.huseby.com         Huseby, Inc.  Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 123 of 358 PageID #: 861

**Attachment 22**

1   want to hold you to it.

2          When you say that "We have the

3   chemicals," would that mean you already had

4   them in your possession, or you had access to

5   them?

6   A.     It would mean we have access to a

7   source that I feel confident in that could

8   supply the drugs for the process.

9   Q.     Okay.  Commissioner Parker, I think

10  we've established that you served a role in

11  supervising the lethal injection protocol

12  prior to becoming Commissioner, and certainly

13  during the previous litigation regarding the

14  one drug pentobarbital.

15         Were you familiar with the litigation

16  that occurred --

17  A.     I was -- no, I'm not.

18  Q.     Okay.

19  A.     I'm not that familiar with it.  In my

20  role as Assistant Commissioner, at that time

21  most of that, I am assuming, was at the

22  Commissioner's level and the other senior

23  staff of the Department.

24  Q.     Were you familiar -- are you familiar

25  with how pentobarbital is compounded?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 124 of 358 PageID #: 862
**Attachment 22**

1  A.     Specifically?  No.  I know there's raw

2  ingredients that are involved, and it's

3  compounded by a compounding pharmacy, but as

4  far as the particulars, I am not.

5  Q.     Are you familiar with the fact that

6  compounded pentobarbital has a -- once it's

7  compounded has a very short shelf life?

8  A.     I have been told that, yes.

9            MR. SUTHERLAND:  So I'm going to

10  object because it's -- this is outside the

11  scope of -- of what the Court -- first of

12  all, pentobarbital has been upheld as

13  Constitutional, the use of it; and, secondly,

14  the only issue that you can ask him about is

15  availability, unless you want to show me.

16            MS. HENRY:  The short shelf live

17  has absolutely everything to do with

18  availability.  And that's where I'm going.

19  I'm not going with the Constitutionality of

20  it.  You'll see with my questions.

21            MR. SUTHERLAND:  Okay.

22  BY MS. HENRY:

23  Q.    So, Commissioner, it is my

24  understanding that because of the short shelf

25  life -- let me back up.

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 125 of 358 PageID #: 863

**Attachment 22**

1          Has there been an execution date for

2    any inmate where the Department was within 30

3    days of carrying out an execution since the

4    Department adopted a compounded pentobarbital

5    protocol?

6    A.     I'm not sure.

7    Q.     Are you aware of any Warden for

8    Riverbend Maximum Security Institution ever

9    receiving a physician's order for compounded

10   pentobarbital?

11   A.     Yes.

12   Q.     And when was that?

13   A.     I don't remember the exact year, but

14   it was a few years ago.  And I don't remember

15   the year.  But I do know that there was a --

16   and when I say -- now, again, "order," I'm

17   referring to a, what I call a prescription --

18   Q.     Right.

19   A.     -- for the drug.  But I don't -- I

20   don't remember the year or when that

21   occurred.

22   Q.     Was that prescription filled?

23   A.     I'm not sure.  Again, I -- at the

24   time, I was an Assistant Commissioner, and I

25   don't know that I would have had direct

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 126 of 358 PageID #: 864

**Attachment 22**

1    knowledge of that.

2    Q.    So, Commissioner Parker, what we've

3    been led to believe is that the Department

4    does not obtain compounded pentobarbital

5    until such time as an execution is imminent,

6    because of its short shelf life; is that

7    fair?

8    A.    That's fair.

9    Q.    And let me stop there for a second.

10         The first date, the execution date for

11   Billy Ray Irick was set on January 15th of

12   2018.

13         Do you see that there?

14   A.    Is it in this order?  I'm assuming --

15   Q.    It's the file stamp date --

16   A.    Oh, okay.  Yeah.

17   Q.    -- January 15, 2018; is that correct?

18   A.    That's correct.

19   Q.    On January 15th, 2018 or prior to

20   January 15th, 2018, did you inform anyone

21   with the Tennessee Attorney General's Office

22   that the Department of Correction did not

23   have access to pentobarbital?

24   A.    I'm not sure.  I -- I've informed just

25   about everybody that I had communication with

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 127 of 358 PageID #: 865

**Attachment 22**

1   that access to pentobarbital is almost -- I

2   can't -- we can't obtain it, and I have no

3   credible sources or availability of the drug.

4        Now, at one time -- at one time, there

5   was a -- there was a potential source where

6   the Department was told that we -- that a

7   source had the raw ingredients and was

8   willing to do the compounding, but that kind

9   of fell through at the midnight hour, to say,

10  because there was a -- it was my

11  understanding there was a -- some type of

12  agreement that the supplier sent to the

13  pharmacist that would preclude them from

14  selling the ingredients or the drug to a

15  correctional agency.

16  Q.    And, again, we're going to get into

17  that in detail.  But my question is:  Prior

18  to January 15th, 2018, do you know if you

19  informed anyone at the Tennessee Attorney

20  General's Office that you were unable to

21  obtain pentobarbital?

22  A.    I'm sure I did.

23  Q.    Okay.

24  A.    I'm sure I did.  I -- I don't remember

25  a specific conversation, but, again, it was

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 128 of 358 PageID #: 866

**Attachment 22**

1  common knowledge that I could not, although

2  we did have one potential source that fell

3  through.  But it's very possible that I did.

4  I'm sure that if I was asked the question, I

5  -- I -- I would have told them that.

6  Q.    What do you mean by "common

7  knowledge"?

8  A.    With myself and my staff, the -- the

9  people who are responsible for assisting me

10 in trying to go to every effort to find the

11 drug.  We are very aware that it's very hard,

12 that you can't find the source or the

13 ingredients or anybody willing to provide it

14 for the purpose of executions or a lethal

15 injection.

16 Q.    Did that include the Governor and his

17 legal counsel?

18 A.    Did what include?

19 Q.    Common knowledge.

20 A.    Oh, I'm not sure.  You'd have to ask

21 them.  I -- I -- they -- any conversations I

22 had with anyone regarding the -- if the

23 question was posed to me:  "Do you have

24 pentobarbital," my response would have been:

25 "I do not have it, and I don't have a source

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 129 of 358 PageID #: 867

**Attachment 22**

1  that I believe I will have it."

2        So without having a specific

3  remembrance of a particular conversation,

4  that's -- would have been my response.

5  Q.    And you have stated that you are a

6  member of the cabinet?

7  A.    I am.

8  Q.    And you attend cabinet meetings?

9  A.    I do.

10  Q.    Has this topic come up at cabinet

11  meetings?

12  A.    Not that I remember, no.

13  Q.    On February the 16th, sir, the

14  Tennessee Attorney General's Office

15  represented certain things to the Tennessee

16  Supreme Court that appear to come from you,

17  and so I'm going to ask you about them.

18          MS. HENRY:  And I'll have, first,

19  the court reporter mark this as Deposition

20  Letter L.

21          (Exhibit L was marked.)

22  BY MS. HENRY:

23  Q.    I want to first direct your attention

24  to Page 2, Footnote 1, that states:  "The

25  Defendant's supply of pentobarbital expired

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 130 of 358 PageID #: 868

**Attachment 22**

1    while the West proceeding was pending."

2          What was -- did you provide that

3    information to the State Attorney General's

4    Office that there was expired pentobarbital?

5    A.      You mean me in my special -- official

6    capacity as Commissioner?

7    Q.      Yes.

8    A.      I'm not aware.  My staff may have, but

9    I personally did not.

10   Q.      Earlier today, sir, we were discussing

11   the Tennessee Public Records Act Request.

12   And if I were to tell you that we have made

13   ongoing requests to the Department for

14   information about the department's supply of

15   pentobarbital for five years, and that those

16   logs show that the Department has never been

17   in the possession of pentobarbital, would you

18   have any reason to disagree with that?

19   A.      I don't know.  I would have to talk to

20   the staff to determine if -- the nature of

21   that and the correct answer.  I don't -- I

22   don't know.

23   Q.      And since there hasn't been an

24   execution in Tennessee since 2009, and

25   compounded pentobarbital has a short shelf

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 131 of 358 PageID #: 869

**Attachment 22**

1   life once it's compounded, it would make

2   sense the Department has never actually been

3   in possession; isn't that fair to say?

4   A.      I would say so, yes.

5   Q.      Page 1 of Exhibit L, second paragraph

6   begins:  "The State, through it's Department

7   of Correction, is required by law to carry

8   out death sentences by lethal injection, but

9   its ability to do so after June 1st, 2018 is

10  uncertain due to un-" -- "ongoing difficulty

11  in obtaining the necessary lethal injection

12  chemicals."

13          Did you provide the State Attorney

14  General with the information that supports

15  the factual basis of that sentence?

16  A.      I would say, again, any conversations

17  I would have had to anyone, whether it be the

18  Attorney General or anyone else, would have

19  been:  "We are having a difficult time

20  obtaining the chemicals for lethal

21  injection."

22  Q.      Is that statement true today, that the

23  Department -- the ability of the Department

24  to carry out an execution is currently

25  uncertain?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 132 of 358 PageID #: 870

**Attachment 22**

1  A.      Currently, I wouldn't say that it's

2  uncertain.  I feel confident that we have the

3  drugs for a three-drug protocol to carry out

4  the executions in Tennessee.  I do not have

5  -- I can't say the same thing about

6  Protocol A because I can't obtain the

7  chemicals or the pentobarbital.

8  Q.      What is the basis of your confidence

9  that the Department currently has drugs that

10 it can use to carry out a three-drug protocol

11 after June 1st?

12           MR. SUTHERLAND:  Objection,

13 irrelevant.

14           MS. HENRY:  Noted.

15           THE WITNESS:  Based on the fact

16 that the supply -- we -- we have a current

17 supplier that has indicated and we feel

18 confident in, that we can obtain the drug --

19 the drugs for the protocol.

20 BY MS. HENRY:

21 Q.      On February 15th of 2018, was it true

22 that the Department's ability to carry out a

23 lethal injection past June 1st, 2018 was

24 uncertain?

25 A.      Very possible.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 133 of 358 PageID #: 871

**Attachment 22**

1    Q.    Is it possible that someone else

2    within the Department of Corrections provided

3    that information to the State Attorney

4    General's office?

5    A.    It's possible.

6    Q.    And is it possible that that person

7    was General Counsel Debra Inglis?

8    A.    It's -- I would say it's possible,

9    yes.

10   Q.    Sorry, I have a lot of exhibits.  It's

11   right in front of me.

12         Commissioner, I'm going to show you a

13   document that I will have the court reporter

14   mark as Exhibit M.

15         (Exhibit M was marked.)

16   BY MS. HENRY:

17   Q.    And that is an e-mail that was

18   produced by Ms. Inglis pursuant to a Public

19   Records Act Request dated October 18th, 2017.

20         MR. SUTHERLAND:  Are you going to

21   make me look over here, Kelley?

22         MS. HENRY:  Oh, I'm sorry

23   (tendering).

24         MR. SUTHERLAND:  I have vision

25   issues.

www.huseby.com         Huseby, Inc. Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 134 of 358 PageID #: 872

**Attachment 22**

1   BY MS. HENRY:

2   Q.      In that e-mail, there's a listing of

3   drugs used for the three-drug protocol

4   midazolam, vecuronium and potassium chloride.

5           Do you see that there?

6   A.      Uh-huh I do.

7   Q.      And do you see where it lists that the

8   midazolam expires June 1st, 2018?

9   A.      I see that, yes.

10  Q.      And do you see where it says the

11  potassium chloride expires May of 2018?

12  A.      I see that, yes.

13  Q.      And I'm going to show you another

14  exhibit that I'll ask the court reporter to

15  mark as Exhibit N.

16          MS. HENRY:  I'm sorry,

17  Mr. Sutherland.  I don't have a copy for you.

18          MR. SUTHERLAND:  That's okay.

19  I've seen it.

20          (Exhibit N was marked.)

21  BY MS. HENRY:

22  Q.      Exhibit N is photographs -- contains

23  photographs of three sets of drugs, again

24  provided from Ms. Inglis pursuant to a

25  Tennessee Public Records Act Request.  The

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 135 of 358 PageID #: 873

**Attachment 22**

1   first is for midazolam, the second for

2   potassium chloride, and the third for

3   vecuronium bromide.

4           Do you see that?

5   A.      I do.

6   Q.      We don't see the expiration date on

7   the label for the midazolam, but the

8   potassium has an expiration date of 1 May

9   2018.

10          Do you see that?

11  A.      I do.

12  Q.      Were these the drugs that were in the

13  Department of Correction's possession at the

14  time the Tennessee -- the Tennessee State

15  Attorney General represented to the Tennessee

16  Supreme Court that the Department's ability

17  to carry out an execution after June 1st was

18  uncertain?

19  A.      More than likely, yes, I believe so.

20  Q.      Does the -- has the Department since

21  obtained a new set?

22  A.      We have -- I am confident that we have

23  obtained the drugs to carry out the

24  three-drug protocol in Tennessee.

25  Q.      Would the Department use expired

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 136 of 358 PageID #: 874

**Attachment 22**

1   drugs?

2   A.      No.

3   Q.      Would the -- strike that question.

4           So you're telling us today that the

5   Department has obtained additional drugs in

6   your physical possession?

7   A.      I'm saying that the Department of

8   Corrections has a source that we feel

9   confident in providing the drugs for the

10  three-drug protocol going forward.

11  Q.      Okay.  But they're not in your

12  physical possession?

13  A.      Some are and some are not.

14  Q.      Which are?

15  A.      Any drug that would not have expired,

16  the expiration date.

17  Q.      So that would be the vecuronium

18  bromide, with an expiration date of December

19  2018?

20  A.      Correct.

21  Q.      Do you have documentation available to

22  support your statement that you have a

23  supplier who's willing to -- that you are

24  confident in who would supply the other two

25  drugs necessary for a lethal injection

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 137 of 358 PageID #: 875

**Attachment 22**

1   execution?

2   A.      When you say do I have documentation,

3   what specifically are you asking?  I -- I

4   have assurance from the individuals that work

5   and have been designated by myself to assist

6   in obtaining the drugs, that we have access

7   and in some cases procured the drugs for the

8   three-drug protocol or any -- or for

9   midazolam.

10   Q.      So you have assurances from TDOC

11   employees?

12   A.      And TDOC employees and suppliers.

13   Q.      Does your knowledge of the assurance

14   from the suppliers rest on what you were told

15   is true by a TDOC employee?

16           MR. SUTHERLAND:  I'm just going to

17   object for the record, the availability for

18   the drugs for Protocol B is not an issue.

19           MS. HENRY:  Actually, it is, but

20   noted.

21   BY MS. HENRY:

22   Q.      Go ahead.

23   A.      Yes, it does.

24   Q.      Okay.  So it depends on believing the

25   person who told you this information; you

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 138 of 358 PageID #: 876

**Attachment 22**

1   don't have direct personal knowledge?

2   A.      Correct.

3   Q.      Okay.  It is now ten minutes after

4   12:00.  I think it's a good time to stop for

5   lunch, if that's all right.  And we will come

6   back at 1:15.

7   A.      Okay.

8            (Lunch recess was observed.)

9   BY MS. HENRY:

10  Q.      We are back on the record.  And by my

11  clock, it is -- I have no idea.  I believe

12  it's 1:16.  More like 1:17.

13           MR. SUTHERLAND:  Close enough.

14  BY MS. HENRY:

15  Q.      Commissioner, thank you so much for

16  coming back this afternoon, not that you had

17  a choice.

18  A.      I was going to ask that question.

19           MR. KISSINGER:  Seriously.

20  BY MS. HENRY:

21  Q.      So I want to sort of give you an

22  outline of where we're going to go this

23  afternoon.  I'm not sure we're going to get

24  to cover it all, but it's just so you have a

25  sense of where we're going and to make sure

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 139 of 358 PageID #: 877

**Attachment 22**

```
 1   that you know my game plan.

 2          We're going to move now to discuss the

 3   December 7th, 2017 e-mail which is the

 4   subject of Court-ordered discovery and then

 5   we're going to move back to the question of

 6   availability of drugs of the LIC for

 7   executions.  And then we're going to move to

 8   a discussion about the implementation --

 9   further discussion about implementation of

10   Protocol B as time allows and pursuant to the

11   Court's order.

12   A.     Okay.

13   Q.     And when I start to ask you questions

14   now as we move to the e-mail in question, I'm

15   going to refer you to an order from the Court

16   which I will have marked as Deposition

17   Letter O.

18              MS. HENRY:  Letter O.

19              (Exhibit O was marked.)

20   BY MS. HENRY:

21   Q.     Commissioner, Deposition Exhibit

22   Letter O is a May 7th, 2018 order from

23   Chancellor Lyle compelling certain items of

24   discovery to be produced from the Defendants

25   in this case.  Have you seen this order?
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 140 of 358 PageID #: 878

**Attachment 22**

1   A.      Not that I recall.  My staff may have

2   seen it, but I don't recall -- particularly

3   recall seeing it.

4   Q.      All right.  If you could, turn for me

5   to Page 12.  At the top of Page 12, the Court

6   orders the Defendant -- I'll let you get

7   there, sorry.

8   A.      Okay.

9   Q.      It orders the Defendants Parker and

10  Mays to produce all documents related to the

11  following, and the first item is:  "The date,

12  medium (electronic, telephone call, meeting,

13  et cetera) and all information you were

14  provided when you first learned of the

15  September 7th, 2017 e-mail and the actions

16  you took concerning this information."

17          Were you aware that the Court had

18  entered that order on May the 7th of 2018?

19  A.      Okay.  The 7th -- the September 7th

20  e-mail, let's -- is this -- do I have a copy

21  of it?

22  Q.      You don't yet.  Let me get you a copy

23  of that, and then we'll go back to my

24  question.  Actually, it's a -- was attached

25  to the Complaint, but we're going to make it

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 141 of 358 PageID #: 879

**Attachment 22**

1   a separate --

2   A.      Okay.

3   Q.      -- exhibit as well.

4           MS. HENRY:  We'll have this as P.

5           (Exhibit P was marked.)

6           THE WITNESS:  Thank you.

7   BY MS. HENRY:

8   Q.      Uh-huh.  And placed in front of you,

9   Commissioner Parker, is Deposition Exhibit P,

10  which contains a redacted e-mail dated

11  September 7th, 2017, 12:58 p.m. and begins

12  with:  "Hello, that stuff is readily

13  available."

14          Do you see that there?

15  A.      Uh-huh.

16  Q.      Okay.  Let me then refer you back to

17  Deposition Exhibit Letter O with respect to

18  the Court's order that you provide the date,

19  medium, and all information you were provided

20  when you first learned of the September 7th,

21  2017 e-mail.  Were you aware of that Court

22  order?

23  A.      Not personally, no.

24          MS. HENRY:  I'll ask the court

25  reporter to mark this document Deposition

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 142 of 358 PageID #: 880

**Attachment 22**

1    Letter Q.

2            (Exhibit Q was marked.)

3    BY MS. HENRY:

4    Q.    Commissioner, Deposition Exhibit Q is

5    a pleading signed by your lawyers,

6    Mr. Sutherland, Ms. Davis and Mr. Mitchell,

7    entitled:  Defendant Parker and Mays Answer

8    to Interrogatory 1 and Supplemental Response

9    to Request for Production of Documents

10   Pursuant to the Court's Order Dated May 7th,

11   2018.

12           Do you see that title there?

13   A.    I do.

14   Q.    And I am referring you now to Page 2.

15   At the top it states:  "Defendants" --

16   "Defendants Parker and Mays submit the

17   following supplemental response to

18   Plaintiffs' First Request for Production of

19   Documents Pursuant to the Court's Order Dated

20   May 7th, 2018?"

21           "No. 1:  All documents related to the

22   date, medium, (electronic, telephone call,

23   meeting, et cetera) and all information that

24   they were provided when they first learned of

25   the September 7th, 2017 e-mail and the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 143 of 358 PageID #: 881

**Attachment 22**

1   actions they took concerning this

2   information."

3          Do you see that there?

4   A.     I do.

5   Q.     And what is the response?

6   A.     The response:  "Defendants Parker and

7   Mays have no such documents."

8   Q.     Were you consulted as to -- as far as

9   providing information to back up that

10  response?

11  A.     To back up the response regarding

12  documents --

13  Q.     Right.

14  A.     -- that I have in my possession?

15  Q.     Right.

16  A.     I could have been.  I'm not sure.  I

17  could have been.  Again, I have a lot of

18  people that talk to me.

19  Q.     Right.

20  A.     And in regards to this, there was

21  discussions with legal counsel regarding

22  documents that I may or may not had, and --

23  but I don't recall the specifics of this

24  particular order for them.

25  Q.     And as we discussed earlier today, you

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 144 of 358 PageID #: 882

**Attachment 22**

1  have many agents who you've delegated

2  authority to.  Is it possible that the person

3  or persons who provided the information to

4  support this response could be one of your

5  agents, specifically General Counsel

6  Ms. Inglis?

7  A.     It's possible, yes.

8  Q.     I want to refer you to

9  Deposition Exhibit P, the September 7th, 2017

10  e-mail in question, and I want to ask some

11  questions about that now, if I may.

12        This e-mail was provided pursuant to a

13  Tennessee Public Records Act Request to

14  myself and Ms. Santana, and it was provided

15  by your General Counsel Ms. Inglis.  It

16  appears to be a copy of an e-mail exchange

17  between someone inside the Department of

18  Correction and someone who appears to have

19  information about providing drugs for a

20  lethal injection.  Would you agree with that

21  description?

22  A.     I would.

23  Q.     Have you seen this e-mail before?

24  A.     I don't know that I've seen the actual

25  e-mail, but I'm familiar with the content.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 145 of 358 PageID #: 883

**Attachment 22**

1    Somewhat familiar with the content.

2    Q.    How did you become familiar with the

3    content?

4    A.    Through a discussion with my staff,

5    members of my staff and myself.

6    Q.    When did that discussion first occur?

7    A.    I don't remember the exact date.  I

8    don't remember the exact date and time.

9    Q.    Was it prior to the adoption of the

10   January 8th, 2018 protocol?

11   A.    I believe so.

12   Q.    Was it prior to Halloween of 2017?

13   A.    I'm not sure.

14   Q.    Can you place a season of the year?

15   A.    No.  I -- I can't.  Again, there's too

16   many things.  Too much time has occurred, too

17   many things have happened, so I can't tell

18   you a season of the year.  I don't remember.

19   Q.    Okay.  So sometime after September 7th

20   but before January -- 2017 but before

21   January 8th, 2018?

22   A.    Yes.  Yes.

23   Q.    The e-mail begins:  "That stuff is

24   readily available, along with potassium

25   chloride."

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 146 of 358 PageID #: 884

**Attachment 22**

1          Do you know what "that stuff" refers

2     to?

3     A.     I do not.  I can make an assumption,

4     but it would only be an assumption.

5     Q.     You don't have personal knowledge?

6     A.     No.

7     Q.     The next sentence states:  "I reviewed

8     several protocols from states that currently

9     use that method.  Most have a three-drug

10    protocol including a paralytic and potassium

11    chloride.  Here is my concern with midazolam.

12    Being a benzodiazapine, it does not elicit

13    strong analgesic effects."

14         What does that sentence, "being a

15    diazapine [sic], it does not elicit strong

16    analgesic effects" mean to you?

17    A.     It means that being a benzodiazapine,

18    it does not elicit strong analgesic effects.

19    I'm assuming that is -- to me, it would mean

20    strong effects regarding a person's

21    consciousness or pain tolerance or something

22    like that.

23    Q.     Ability to feel pain?

24    A.     Yes.

25    Q.     Okay.  This next sentence reads:  "The

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 147 of 358 PageID #: 885

**Attachment 22**

1  subjects may be able to feel pain from the

2  administration of the second and third drugs.

3  Potassium chloride, especially."

4         What do those sentences mean to you?

5  A.    The sentence would -- basically

6  describing that someone would be able to feel

7  pain with the injection of those two drugs.

8  Q.    The next sentence reads:  "It may not

9  be a huge concern but can open the door to

10  some scrutiny on your end."

11         What do you take that sentence to

12  mean?

13  A.    That it could open up questioning

14  regarding the use of the drug.

15  Q.    The next sentence reads:  "Consider

16  the use of an alternative like ketamine or

17  use in conjunction with an opioid.

18  Availability of the paralytic agent is

19  spotty.  Pancuronium, rocuronium and

20  vecuronium are currently unavailable."

21         And then the next word, I cannot

22  pronounce, but S-u-c-c-i-n-y-l-c-h-o-l-i-n-e.

23  Mr. Kissinger is whispering it to me, but I

24  still can't pronounce it -- "is available in

25  limited quantity.  I'm currently checking

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 148 of 358 PageID #: 886

**Attachment 22**

1    other sources.  I'll let you know shortly."

2         So the person who wrote this e-mail at

3    least on September 7th of 2017 said that the

4    paralytic was currently unavailable but it

5    then became available; is that correct?  It

6    was unavailable on September 7th, but you've

7    since obtained some?

8    A.     Which sentence are you referring to?

9    Q.     "Availability of the paralytic agent

10   is spotty.  Pancuronium, rocuronium, and

11   vecuronium are currently unavailable"?

12   A.      Correct.  That's what it says.

13   Q.      So the information the Department

14   received was that one of the lethal injection

15   chemicals necessary was unavailable on

16   September 7th, but it became available

17   because it came into your possession; is that

18   correct?

19   A.      It appears that's the intent of the --

20   what the writer was saying, yes.

21   Q.      When you -- I'm sorry.

22   A.      No, that's -- go ahead.  I'm sorry.

23   Q.      You stated that you became aware of

24   the contents of this e-mail by having a

25   discussion between yourself and members of

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 149 of 358 PageID #: 887

**Attachment 22**

1  your staff.  Without providing me the names

2  of the members of your staff, does that mean

3  that you had conversations with people within

4  the Department of Corrections who were

5  advising you as to which drugs to use in a

6  lethal injection?

7  A.     They were providing me information

8  regarding what this e-mail said.

9  Q.     Okay.  And what did they say to you?

10        MR. SUTHERLAND:  Kelley, I'm going

11  to -- we're going to stop there.  Page 18 of

12  the Court's May 24th Order says that "his

13  knowledge as to the efficacy of Protocol B is

14  not relevant to the Plaintiffs' facial

15  challenge."  The last sentence, first --

16        MS. HENRY:  I'm not asking him

17  about the efficacy.  I'm asking him about

18  what the Court ordered.

19        MR. SUTHERLAND:  What knowledge is

20  it that you're trying to get from him here?

21        MS. HENRY:  His knowledge of the

22  e-mail and the actions that he took which is

23  specifically covered by Page 20.  That's

24  exactly why we're here to have this

25  deposition.  He was first ordered to provide

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 150 of 358 PageID #: 888

Attachment 22

1   that information in an interrogatory.  It was

2   not done, and then she provides that we are

3   to take his deposition and we are to discuss

4   with him the information the Deponents were

5   provided when they first learned of the

6   September 7th, 2017 e-mail and the actions

7   they took concerning that information.

8                I'm asking him what he was told.

9   BY MS. HENRY:

10  Q.    Commissioner, what were you told about

11  this e-mail in that discussion?

12  A.    Basically what it says here.  That the

13  e-mail -- that the discussion of the

14  three-drug protocol was in the form of this

15  e-mail, and that this individual expressed

16  possible issues with the use of midazolam as

17  described in this e-mail.

18  Q.    Did you dismiss this e-mail?

19  A.    By "dismiss," what do you mean?

20  Q.    Disregard it?

21  A.    No, I didn't disregard it.

22  Q.    Did you consider this e-mail important

23  information?

24  A.    I did.

25  Q.    What action did you take as a result

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 151 of 358 PageID #: 889

**Attachment 22**

1    of this e-mail?

2    A.      Well, I think the action that I took

3    had been, again, in considering the protocol

4    and considering the three-drug protocol with

5    midazolam.

6    Q.      Uh-huh.

7    A.      My discussions with both officials in

8    the Department, officials outside the

9    Department, professionals outside the

10   Department, as well as officials in other

11   states, discussions relative to the subject

12   matter of this paragraph regarding midazolam

13   and the experiences that other people had

14   seen regarding the use of midazolam obviously

15   was in my mind.  And there was some questions

16   I wanted to answer for myself.

17   Q.      I want to take that apart a little

18   bit, if I might.  So as a result of learning

19   about this -- the contents of this e-mail,

20   you took it upon yourself to seek out

21   additional information from other members of

22   the Department?

23   A.      Yes.

24   Q.      And other Corrections officials

25   outside the state of Tennessee?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 152 of 358 PageID #: 890

**Attachment 22**

1  A.      Correct.

2  Q.      And expert witnesses in the area of

3  lethal injection chemicals?

4  A.      Well, I'm not sure if I would call

5  them experts in the effects of lethal

6  injection chemicals or the use of lethal

7  injection chemicals, but people who I relied

8  on as reliable and people who had firsthand

9  knowledge of the use of midazolam.

10 Q.      And when you say that you relied upon

11 them, what about them made them reliable?

12 A.      In some cases, their profession.

13 Q.      And what do you mean --

14 A.      In some --

15 Q.      -- by that?

16 A.      Their training, their -- their

17 positions, credibility --

18 Q.      So are you saying --

19 A.      -- regarding -- I'm sorry, go ahead.

20 Q.      When you say their credibility, are

21 you -- and, again, I'm not asking you to tell

22 me who it was.

23 A.      Sure.

24 Q.      Are you saying that you sought out --

25 that you consulted with individuals who have

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 153 of 358 PageID #: 891

**Attachment 22**

1  experience using midazolam in their practice

2  professionally?

3  A.    In some cases, that could be -- that

4  could be true.

5  Q.    So there's more than one person that

6  you consulted?

7  A.    True.  Yes, absolutely.

8  Q.    How many people?

9  A.    I don't know the exact number.  I

10  didn't keep a list and don't know the -- the

11  exact number of people, but it's several.

12  Q.    More than a half dozen?

13  A.    Several would -- yeah, I would say

14  probably close to between, I don't know, ten

15  and 20, somewhere in that neighborhood.

16  Q.    Did you take notes of those

17  conversations?

18  A.    No.

19  Q.    Did you share the information you

20  learned from those conversations with anyone

21  else within TDOC?

22  A.    Not that I'm aware of.

23  Q.    You kept it to yourself?

24  A.    (Witness moves head up and down.)

25  Q.    You're nodding?

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 154 of 358 PageID #: 892

**Attachment 22**

1   A.      Pretty much so.

2   Q.      You're nodding in the affirmative.  So

3   you obtained this information but did not

4   share it with others?

5   A.      I obtained this information in helping

6   me become, I guess, comfortable with the use

7   of the drugs that had been listed in the

8   protocol and to answer any questions that I

9   might have as Commissioner regarding what

10  drugs we used.

11  Q.      What questions did you have as

12  Commissioner?

13  A.      Well, obviously, I would -- I wanted

14  to -- I was -- wanted to question this

15  statement that was made to ensure that, to

16  the best of my ability, that the drugs we

17  were using, the first drug, did render an

18  offender unconscious where they couldn't feel

19  pain and that it was reliable -- it was a

20  reliable drug that had been used.  And that I

21  was comfortable using it in our protocol.

22  Q.      Did you speak to the author of this

23  e-mail?

24  A.      No, I did not.

25  Q.      Did you consider the author of this

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 155 of 358 PageID #: 893

Attachment 22

1  e-mail reliable?

2  A.     I didn't know the author of the

3  e-mail.

4  Q.     Did you try to find out who the author

5  was?

6  A.     I did ask someone about that and was

7  provided an answer.  But to be honest with

8  you, today I could not tell you their

9  position, the author's position, of what his

10  job was or what his title was.

11  Q.     If you look down at the footer on that

12  e-mail -- and I'm going to have to pull out

13  my glasses.  I don't know if you have....

14        The footer uses a confidentiality

15  provision that states the document -- the

16  "document may contain information covered

17  under the Privacy Act," et cetera, et cetera,

18  basically citing the HIPAA provisions.  That

19  confidentiality provision is not a

20  confidentiality provision that accompanies a

21  TDOC e-mail; is that correct?

22  A.     Regarding HIPAA?

23  Q.     Yes.

24  A.     I don't understand --

25  Q.     Yeah.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 156 of 358 PageID #: 894

**Attachment 22**

1   A.       -- your question.

2   Q.       In other words, this e-mail looks like

3   it came from somebody outside of TDOC.  Would

4   you agree?  Because it doesn't use the same

5   confidentiality language that the TDOC

6   e-mails use.

7   A.       Yes, it's my understanding that that

8   e-mail did not come from somebody within

9   TDOC.

10  Q.       And are you aware, sir, that the

11  exchange -- the e-mail chain to which this is

12  attached makes it appear as if this is the

13  person who provided you with the midazolam

14  that expired on June 1st, 2017?

15  A.       I'm not sure.

16  Q.       But you did not contact this person?

17  A.       No.

18  Q.       Why did you not consider this person

19  reliable?

20  A.       Well, I'm not -- I don't know that I

21  had a question --

22           MR. SUTHERLAND:  I'm going to

23  object because the Court has said that you

24  can ask what he -- what he did when he got

25  the information.  Why is not part of what --

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 157 of 358 PageID #: 895

**Attachment 22**

1          MS. HENRY:  I disagree with your

2    objection, but it is noted.

3    BY MS. HENRY:

4    Q.    Why did you not contact this

5    individual?

6    A.    Well, I mean, first of all, he'd

7    already stated what his opinion was here --

8    Q.    Uh-huh.

9    A.    -- or his statement.

10   Q.    Right.

11   A.    I wanted to talk to people who I

12   personally knew who I felt was reliable, and

13   I did not know this individual.

14   Q.    Did you do anything to ascertain

15   whether or not this individual had sufficient

16   background, training and experience with

17   midazolam, to be a reliable source?

18   A.    I don't remember that I did.  Again, I

19   can't remember the person's -- his exact role

20   or what his job was or who he was.  I would,

21   again, make the assumption that my staff, in

22   talking to him in -- in an effort to find the

23   drug, that he would have some knowledge of

24   the drug itself that -- that's in question.

25   Q.    Did you have any reason to disbelieve

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 158 of 358 PageID #: 896

**Attachment 22**

1  the statements made in this e-mail?

2  A.    No reason to disbelieve it, no.

3  Q.    All right.  But you preferred to

4  contact people who you knew personally?

5  A.    I preferred to contact people who I

6  knew personally as being individuals that I

7  trusted would have firsthand knowledge of the

8  use of the drug and would be able to tell me

9  a firsthand version of how the drug

10  performed.

11  Q.    And what about those individuals gave

12  you trust?

13            MR. SUTHERLAND:  You -- just so

14  we're clear:  We're staying away from

15  anything close to identity.

16            MS. HENRY:  Right.

17  BY MS. HENRY:

18  Q.    I'm not asking for identity.  I'm just

19  asking, what about them gave you a sense of

20  trust?

21  A.    In some cases it was their -- again,

22  their profession.  In some cases, it was

23  their role in their job in a particular

24  field.  In some cases, it was their position

25  in government operations and -- and....

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 159 of 358 PageID #: 897

**Attachment 22**

1   Q.      What would a position in government

2   operations have to do with whether or not an

3   individual had reliable knowledge about the

4   drug midazolam?

5   A.      Their experience in the job and their

6   knowledge of lethal injection procedures.

7   Q.      I'm going to tell you what I assume,

8   because I'm trying to stay away from getting

9   into confidentiality, but I don't want to

10  make an assumption that's wrong and I also

11  don't want to belabor this line of

12  questioning.

13          What I'm hearing you say about that

14  last category of people is that you were

15  interested in talking to individuals who had

16  information about carrying out a lethal

17  injection but not specifically about

18  experience with the use of midazolam.  In

19  other words, you wanted to talk to people who

20  knew about three-drug protocol, but you

21  weren't specifically interested in their

22  experience with midazolam?

23  A.      I'm not -- not only knew about a

24  three-drug protocol, but had had enough

25  knowledge about its use and had personally

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 160 of 358 PageID #: 898

Attachment 22

1   had experience with its use in a correctional

2   setting.

3   Q.     Okay.  And so, again, without telling

4   me which states, it sounds like you're

5   telling me you wanted to talk to other

6   individuals who had experienced, gone

7   through, witnessed an execution that used

8   midazolam?

9   A.     Correct.

10  Q.     And they would be able to tell you

11  about what they witnessed with their naked

12  eye?

13  A.     They would be able to tell me what

14  they witnessed, what they -- as well as other

15  information that they would have at their

16  disposal that they could share with me, yes.

17  Q.     And what was that information?

18  A.     That could be, again, what they

19  personally witnessed, reports or information

20  that they would have regarding the lethal

21  injection protocol.

22  Q.     I heard you say "reports."  Did they

23  share with you reports?

24  A.     No.

25  Q.     Did they provide you with an oral

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 161 of 358 PageID #: 899

**Attachment 22**

1   summary of those reports?

2   A.      No.  I wouldn't say that, no.

3   Q.      So what was the significance of the

4   reports?

5   A.      Again, discussions with people who I

6   trusted as reliable to provide me answers to

7   questions related to the use of midazolam.

8   Q.      Again, I'm just trying to make sure

9   I'm not misunderstanding your question [sic].

10  When you mentioned reports, are you saying

11  you found those individuals to be reliable

12  because you assumed they received reports,

13  but you didn't specifically ask about the

14  reports?  Or are you saying that they told

15  you about the reports?

16  A.      They shared with me their -- they

17  shared with me information that they had

18  regarding the use of the three-drug protocol

19  and both their experiences, what they

20  observed, and information that was relative

21  to them and also to me regarding the process.

22  Q.      And what was that information that was

23  relevant to you?

24  A.      As to whether or not midazolam in

25  these incidents basically rendered somebody

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 162 of 358 PageID #: 900

**Attachment 22**

1    unconscious, and what effects, if any, they

2    may have witnessed or observed during the

3    process of an execution.

4    Q.      And what did you learn that was

5    relevant to you?

6    A.      I learned that midazolam was a -- in

7    my opinion, a viable option that had worked

8    in other states.

9    Q.      What do you mean "had worked"?

10   A.      That had, for the most part, rendered

11   people unconscious and performed as it was

12   intended to perform in a three-drug protocol.

13   Q.      What do you mean:  "For the most part

14   rendered someone unconscious"?

15   A.      Well, that basically that when

16   administered correctly, that it rendered the

17   offender unconscious in -- in the -- in those

18   cases and -- where they could basically

19   provide a level of confidence that the

20   offender was unconscious and unable to feel

21   pain.

22   Q.      What about the quality of that

23   information that you received from

24   individuals who you knew who had participated

25   in executions made that information more

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 163 of 358 PageID #: 901

**Attachment 22**

1  reliable to you than the information

2  contained in the September 7th, 2017 e-mail?

3  A.     Again, it was people that I knew,

4  people that -- people that had firsthand

5  knowledge and who had been directly involved

6  and who I trusted as a reliable source.

7  Q.     So, again, I want to define "firsthand

8  knowledge" because I think we're talking

9  about firsthand knowledge in two different

10  ways.

11       There's firsthand knowledge that is

12  observing midazolam used in a lethal

13  injection execution, and then there's

14  firsthand knowledge of the chemical

15  properties and use of midazolam.

16       Would you agree with me those are two

17  separate things?

18  A.     Absolutely.

19  Q.     And sounds to me like as a result of

20  reading -- or receiving the contents of this

21  e-mail, the action you took was to consult

22  with the people in that first category, the

23  individuals who have firsthand knowledge of

24  midazolam being used in a lethal injection

25  execution; is that correct?

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 164 of 358 PageID #: 902

**Attachment 22**

1    A.    That's correct.

2    Q.    But you did not consult with people in

3    that second category, which are individuals

4    who are familiar with the chemical

5    properties -- I think they call it

6    pharmacokinetics -- of the drug midazolam; is

7    that correct?

8    A.    So who would those people in the

9    second category be?  Give me an example.

10    Q.    Sure.

11        So that would encompass, for example,

12    a pharmacologist or an anesthesiologist or a

13    medical doctor or a nurse practitioner or a

14    nurse anesthetist.

15        Did you contact anyone in those

16    categories?

17    A.    I'm trying to remember.  I spoke to

18    medical professionals about -- inquiring with

19    medical professionals also, yes.  Physicians

20    basically.

21    Q.    And when you say "physicians," are we

22    talking a general practitioner, a medical

23    examiner?  When you say "physician," can you

24    provide me....

25    A.    A regular -- yeah, not -- not a -- not

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 165 of 358 PageID #: 903

Attachment 22

1    an anesthesiologist or a pharmacologist or

2    whatever.  Medical physicians regarding --

3    with that, the use of midazolam.

4    Q.    And in what context did this occur?

5    And let me give you an example.  If I'm at a

6    soccer game and I'm asked what am I working

7    on right now, the topic might come up and

8    there might be somebody at the soccer game

9    who's a parent of another child, who's a

10   doctor.

11   A.    Uh-huh.

12   Q.    And I might engage in a conversation

13   with them about midazolam.  Or there's

14   actually contacting someone in their

15   professional capacity specifically seeking

16   them out to ask this question.

17   A.    Uh-huh.

18   Q.    Did the conversation you have with

19   medical professionals occur in that more

20   casual atmosphere, or did it occur in a very

21   deliberate, specific, professional

22   atmosphere?

23   A.    Well, I would say it was not in a --

24   it was not in a formal request for

25   information --

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 166 of 358 PageID #: 904

**Attachment 22**

1   Q.      Uh-huh.

2   A.      -- in any -- by any means, but it was

3   my attempt --

4   Q.      Uh-huh.

5   A.      -- to speak with people who, in some

6   cases, had medical training, who had what I

7   would consider a professional who had

8   knowledge of the use of midazolam and its

9   effects --

10  Q.      Uh-huh.

11  A.      -- in the process to help me make the

12  decision regarding the three-drug protocol.

13  Q.      And I don't mean to belabor this point

14  and I know you're being super careful and so

15  am I.  But, again, I'm hearing this

16  information and I'm picturing myself at my

17  dentist having some work done and they're

18  giving me some Versed, and I'm saying, "Hey,

19  is this the stuff they use in the lethal

20  injection?  Is it going to work?"

21          Are we talking about that kind of a

22  conversation where you're talking to a doctor

23  who you know and it just happens to come up,

24  or are we talking about "I called this person

25  because they're a physician and I wanted to

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 167 of 358 PageID #: 905

**Attachment 22**

1    ask them about midazolam"?

2    A.      Yeah, I mean, my specific point in

3    talking to these individuals was to get their

4    opinion or to get their -- their knowledge of

5    the use of midazolam --

6    Q.      Uh-huh.

7    A.      -- and its effects.

8    Q.      And what about those medical

9    professionals gave you greater trust in their

10   opinions than the author in the

11   September 7th, 2017 e-mail?

12   A.      Well, I think, again, I knew these

13   people and I trusted their opinion, their

14   professional opinion and their -- both in the

15   capacity of a medical professional as well as

16   individuals who were serving in an official

17   capacity, that I knew would provide adequate

18   information and reliable information.

19   Q.      Uh-huh.

20   A.      Not something that was read in a

21   newspaper article or -- but actual

22   information that I would use in helping me

23   make a determination.

24   Q.      Did you ask those medical

25   professionals to provide you with any

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 168 of 358 PageID #: 906

Attachment 22

1   literature or referrals to other medical

2   professionals with more relevant experience?

3   A.     No, I did not.

4   Q.     For how long a period of time -- you

5   said 10 to 20 conversations with a number of

6   different people.  Over what period of time

7   did those conversations take place?

8             MR. SUTHERLAND:  That's been asked

9   and answered.  Between September and January.

10            MS. HENRY:  I don't think that was

11  his answer about the period of time of the

12  conversation.

13            MR. SUTHERLAND:  I think you

14  answered the question for him.  Something

15  between September and January.

16            MS. HENRY:  That was when he

17  learned about the e-mail, not about when he

18  had the conversations.

19  BY MS. HENRY:

20  Q.     And I certainly don't want to provide

21  your answers, so let me be clear since

22  Mr. Sutherland and I have a disagreement.

23         Over what period of time did those

24  conversations occur?

25  A.     I would say for a few months,

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 169 of 358 PageID #: 907

**Attachment 22**

1  probably, and I don't remember specifically

2  the amount of time.  It's not something I did

3  in a week, okay?  So it was -- it was over a

4  period of time.

5  Q.    Okay.  And what did you do as the

6  Commissioner of Correction with the

7  information that you obtained from these

8  conversations?

9  A.    I used it to make a decision regarding

10  my being confident in the three-drug protocol

11  that's in that --

12  Q.    Uh-huh.

13  A.    -- in the procedures.

14  Q.    And who did you share, if anyone, the

15  information you learned from these

16  conversations with?

17          MR. SUTHERLAND:  Be careful about.

18          MS. HENRY:  I'm sorry.  Let me --

19  BY MS. HENRY:

20  Q.    Did you share -- I'll strike that,

21  Mr. Sutherland is right.  I don't want to ask

22  names.

23          Did you share the information that you

24  learned from these conversations with anyone

25  at TDOC?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 170 of 358 PageID #: 908

**Attachment 22**

1   A.      So, again, the information that I

2   obtained, I used in making my decision.  I

3   did not go out and have discussions with

4   people about, "Well, this person told me this

5   or this person told me that."  I used it to

6   make the decision.

7           And what information I would have

8   shared was that I would be confident in the

9   protocol that we have established as being a

10  -- an effective, efficient protocol based on

11  the drugs that we have available.

12  Q.      What is effective and efficient to

13  you?

14  A.      Effective and efficient would be a

15  protocol that would basically allow us to

16  carry out the orders of the Court for

17  execution, again, using the drugs -- the best

18  drugs that are available to render a person

19  unconscious and basically, ultimately stop

20  their breathing and their -- their heart from

21  beating and render them dead.

22  Q.      Did you alone make that decision?

23  A.      What decision?

24  Q.      The decision that the midazolam

25  protocol would render an inmate unconscious.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 171 of 358 PageID #: 909

**Attachment 22**

1  A.    I made the decision regarding the

2  three-drug protocol and the use of midazolam.

3  That was its purpose.  So, yes, that was --

4  that was my decision.

5  Q.    That is the purpose that's used in the

6  protocol?

7  A.    I'm sorry?

8  Q.    The purpose that it's used in the

9  protocol was to render the inmate

10  unconscious?

11  A.    The purpose of one of the drugs that's

12  in the protocol is to render the offender

13  unconscious.

14  Q.    Well, and that's not the purpose of

15  the vecuronium or the potassium?

16  A.    Well, exactly.

17  Q.    So that's the purpose -- that's the

18  reason that the midazolam is there?

19  A.    Yes.

20  Q.    Okay.  And I want to again explore

21  this e-mail and the author of the e-mail

22  without getting into who he or she may be.

23  But it is of paramount importance to our case

24  why his or her information was not considered

25  reliable.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 172 of 358 PageID #: 910

**Attachment 22**

1          So I'm going to hand you a packet so

2     that we can have a clearer copy of that

3     September 7th e-mail and sort of trace its

4     journey.

5                MS. HENRY:  Ask the court reporter

6     to make this our next-lettered exhibit, which

7     I believe is R.

8                (Exhibit R was marked.)

9     BY MS. HENRY:

10    Q.     Mr. -- or Commissioner Parker, I've

11    placed in front of you a packet of e-mails

12    that I will represent to you was provided by

13    Debra Inglis in response to a November 2017

14    Tennessee Public Records Act Request.

15         It is a compilation of e-mails.  The

16    first -- this is in the order it was provided

17    to us.  So the first page is September 7th,

18    2017 at 1:39 p.m., reference --

19                MR. KISSINGER:  I'm sorry, Kelley.

20    Is this Exhibit R?

21                MS. HENRY:  This is Exhibit R.

22                MR. KISSINGER:  Thank you.

23    BY MS. HENRY:

24    Q.     Entitled "Update," although "update"

25    is misspelled.  And the first line there is:

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 173 of 358 PageID #: 911

**Attachment 22**

1   "Etomidate, ketamine and sodium

2   thiopental" -- and that's just for purposes

3   of our reference.

4          And if you will turn to what is the

5   fourth page -- the numbers are very tiny at

6   the bottom of the e-mail -- of that packet.

7   We see another copy of the September 7th,

8   2017 e-mail that we've been discussing.

9          Do you see that there?

10  A.     I do.

11  Q.     And it's a cleaner copy, obviously.

12  A.     Yeah.

13  Q.     And we see that the subject matter is

14  still "Update" spelled "U-P-D-T-A-E-"?

15  A.     Yeah.

16  Q.     And that timestamp is 12:58 p.m.  And

17  if you turn to the page before, Page 5 -- the

18  next page, Page 5, we see the first -- what

19  appears to be the first in that e-mail chain,

20  September 7th, 10:12 a.m. and it says:  So

21  the word from the powers that be is that they

22  first want to try to find midazolam and then

23  go from there if there -- this is obviously a

24  typo -- if there none out there to get.

25          Do you see that there?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 174 of 358 PageID #: 912

**Attachment 22**

1    A.      Uh-huh.

2    Q.      Is that "yes"?

3    A.      I do, yes.

4    Q.      And there is a confidentiality notice

5    at the bottom of that e-mail.  The signature

6    line is blanked out.  Is that confident- --

7    do you recognize that confidentiality notice

8    to be a confidentiality notice that is used

9    within TDOC?  In other words, does this

10   appear to be an e-mail from someone inside

11   TDOC, attempting to obtain drugs?

12   A.      (Witness reviews documents.)

13           You know, it could be.  I'll say this:

14   Different individuals have different

15   confident- -- confidentiality statements.  So

16   it could be.  It very well could be.

17   Q.      Have you seen that e-mail before?

18   A.      I have not.

19   Q.      Do you know who the "powers that be"

20   are?

21   A.      I do not.

22   Q.      Do you think it's fair to assume that

23   you're included in the powers that be?

24   A.      I could be, if this is an e-mail from

25   someone in DOC.  I've been called that and

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 175 of 358 PageID #: 913

**Attachment 22**

1   I've been called worse.

2   Q.    Me, too.

3   A.    Possibly.

4   Q.    So it appears -- again, we'd have to

5   ask Ms. Inglis since she's the one that

6   produced this document -- that the e-mail

7   regarding midazolam not having strong

8   analgesic effects is the response from the

9   recipient asking to obtain midazolam.

10         And then you see at the top of the

11  Page 4 is an e-mail that says:  "The places

12  that it is readily available from, do they

13  have disclaimer requirements like what" --

14  redacted -- "hit us with on the Pento"?

15         Do you see that there?

16  A.    I do.

17  Q.    And then do you see the response to

18  that e-mail at 1:02 p.m. on Page 3 is:  "They

19  do not.  It's from our primary vendor"?

20  A.    I see it, yes.

21  Q.    Okay.  Do you think it's a fair

22  assumption, sir, then, if someone is saying

23  that the midazolam is from their prior [sic]

24  vendor, that the person who's providing the

25  information about midazolam --

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 176 of 358 PageID #: 914

**Attachment 22**

1          MR. SUTHERLAND:  I'm going to

2    object to having the witness assume anything

3    about e-mails he didn't write and isn't a

4    party to.

5          MS. HENRY:  Thanks.  The objection

6    is noted.

7    BY MS. HENRY:

8    Q.    Again, we're look -- trying to

9    understand why the e-mail author of

10   September 7th, 2017 was discounted, and it

11   appears from this e-mail chain that the

12   author of the September 7th, 2017 e-mail is

13   the individual who provided the drugs for

14   executions in Tennessee, based on the fact

15   that he's talking about vendors.  And that

16   would appear to be a pharmacist.  So I'm

17   wondering why the pharmacist who provided the

18   midazolam is not a reliable source about

19   midazolam?

20         MR. SUTHERLAND:  He's already

21   asked and answered this question.  He says --

22         MS. HENRY:  Your objection is

23   noted.

24         MR. SUTHERLAND:  He's already

25   asked and answered.

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 177 of 358 PageID #: 915

**Attachment 22**

1              MS. HENRY:  Your objection is

2    noted.

3              MR. SUTHERLAND:  Oh.

4    BY MS. HENRY:

5    Q.    Why is a pharmacist not a reliable

6    source?

7              MR. SUTHERLAND:  There's no

8    testimony he is a pharmacist.

9              MS. HENRY:  We'll get there.

10             MR. SUTHERLAND:  Or she is a

11   pharmacist, Kelley.  You're asking an

12   improper question "Why is a pharmacist not

13   a" -- this isn't -- there isn't -- you have

14   no information this person's a pharmacist.

15             MS. HENRY:  We can take that up in

16   future discovery but right now we're trying

17   to deal with these e-mails and what we're

18   limited to.

19             MR. SUTHERLAND:  You're asking --

20             MS. HENRY:  If the vendor -- if

21   the person who is providing drugs -- if the

22   person who is providing drugs isn't a

23   pharmacist, well, that's a whole other

24   constitutional issue now, isn't it?

25             MR. SUTHERLAND:  What's your

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 178 of 358 PageID #: 916

**Attachment 22**

1   question?

2   BY MS. HENRY:

3   Q.      Right now my question is:  Why is the

4   person who provided you the drugs, whoever

5   they are, not a reliable source of

6   information about the drugs, just because you

7   didn't know them?

8               MR. SUTHERLAND:  He didn't say

9   that they weren't reliable.  He said that he

10  did not consult them.

11              MS. HENRY:  Your objection is

12  noted.

13              THE WITNESS:  Well -- so am I to

14  answer the question?

15  BY MS. HENRY:

16  Q.      You're to answer.

17  A.      So, again, let me just say -- and I

18  think the point's been made.  I am not -- I

19  didn't say, again, that he wasn't a reliable

20  source.  But there were sources that I felt

21  like that I knew personally and people who

22  that I trusted that I personally knew and had

23  trust and confidence in.

24              So in regards to this individual, I

25  didn't know who they -- I didn't personally

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 179 of 358 PageID #: 917

**Attachment 22**

1  know them.  And, again, not saying that it's

2  not reliable.  It was certainly something

3  that I considered relevant, very relevant,

4  because I -- again, in my discussions with

5  other officials and people, that was, again,

6  some of the subject of my questioning about

7  the use of the drug and its effect on

8  individuals in this process.

9  Q.    Was there anything that prevented you

10 from learning, getting to know the person who

11 wrote this e-mail?

12 A.    No.  I -- if -- if -- I guess if I had

13 chosen to go and seek out this individual and

14 -- I could have that.  That's fair, a fair

15 assumption.

16 Q.    So the only difference between the

17 author of the e-mail and the people you

18 consulted is that you knew them and had a

19 personal relationship with them?

20 A.    And my level of confidence in them in

21 my position as Commissioner and the decisions

22 that I had to make.  Certainly, I would --

23 felt more comfortable in people who I

24 personally -- and when I say "personally

25 knew," people that I knew in their position

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 180 of 358 PageID #: 918

**Attachment 22**

1    and felt confident that they would provide me

2    accurate information regarding the drug.

3    Q.      And I guess I'm trying to figure out

4    why knowing someone personally gives you more

5    confidence in them than someone you don't

6    know personally.

7    A.      I guess it's different for different

8    people.

9    Q.      So this individual who is e-mailing

10   back and forth with someone in TDOC about

11   obtaining the drugs and providing the drugs

12   also -- we'll get back to him or her.

13          I'm going to move now to discussing

14   pentobarbital.  I'm going to hand you, sir,

15   what I'm going to ask the court reporter to

16   mark as Deposition Exhibit S.

17              MR. KISSINGER:  That's my fault

18   totally.  iPhones.  I hate iPhones.

19              (Exhibit S was marked.)

20              MS. HENRY:  The record should

21   reflect it's now approximately 2:13.  And we

22   have -- three hours and 20 minutes of the

23   deposition have elapsed.

24   BY MS. HENRY:

25   Q.      Sir, I've handed you

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 181 of 358 PageID #: 919

Attachment 22

1    Deposition Exhibit S, which is an agreement

2    titled "Agreement between Riverbend Maximum

3    Security Institution Tennessee Department of

4    Correction" and there's a redaction and the

5    word "Pharmacist."

6         Do you see that?

7    A.    I do.

8    Q.    If you'll flip to the third page, do

9    you see where that contract bears the

10   signature of Derrick Schofield?

11   A.    I do.

12   Q.    And what is the date?

13   A.    September 25th, 2014.

14   Q.    And does it appear that there was also

15   a signature of a pharmacist that's been

16   redacted?

17   A.    Yes.

18   Q.    And the pharmacist appears to have

19   dated this contract September the 21st of

20   2014?

21   A.    Yes.

22   Q.    If you'll flip to Page 1 of this

23   contract between the pharmacist and TDOC, do

24   you see where the contract between TDOC and

25   the pharmacist requests the pharmacist to

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 182 of 358 PageID #: 920

**Attachment 22**

1   provide drugs necessary to carry out an

2   execution by lethal injection at Roman I,

3   Paragraph 1?

4   A.     Yes.

5   Q.     And Paragraph 2, that the pharmacist

6   will compound the drugs necessary to carry

7   out an execution in a clean, sterile

8   environment.

9       Do you see that?

10   A.     What number is that, I'm sorry?

11   Q.     Roman I, No. 2.

12   A.     Yes, I do.

13   Q.     And that under 3: "Arrange for

14   independent testing of the compounded

15   solution for potency, sterility and

16   endotoxins"?

17   A.     Yes.

18   Q.     Have you seen this contract before?

19   A.     This particular contract, I can't

20   recall that I have, no.

21   Q.     If you'll flip to Page 2, Roman III,

22   Paragraph 1: "This agreement shall be

23   effective immediately upon acceptance and

24   signing by both parties and shall remain in

25   effect until terminated by either party."

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 183 of 358 PageID #: 921

**Attachment 22**

1         Do you see that?

2    A.    I do.

3    Q.    And Paragraph 2:  "This agreement may

4    be terminated by either party by giving

5    written notice to the other party at least 30

6    days in advance.  In that event, the

7    pharmacist shall be entitled to receive just

8    and equitable compensation for any

9    satisfactory authorized work completed as of

10   the termination date."

11        Do you see that?

12   A.    I do.

13   Q.    And so by the terms of this contract,

14   it remains in force and effect until it's

15   terminated, correct?

16   A.    I'm assuming so, based on what I've

17   read.

18   Q.    Has TDOC terminated this contract with

19   the pharmacist who signed it?

20   A.    I would have to confer with the Legal

21   team and the people who handle contracts.

22   Q.    Do you have -- have you received a

23   notice that this individual terminated his

24   contract or her contract?

25   A.    Not that I recall.

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 184 of 358 PageID #: 922

**Attachment 22**

1    Q.    And you would agree with me that in

2    September of 2014, the lethal injection

3    chemical was compounded pentobarbital?

4    A.    Yes.

5    Q.    Going to hand you now, sir, a document

6    that I'm going to ask the court reporter to

7    mark as Deposition Exhibit T.

8              (Exhibit T was marked.)

9    BY MS. HENRY:

10   Q.    And, sir, that is a printout of a

11   newspaper article from the Tennessean dated

12   March 3rd, 2017.  And if you could look in

13   the body of the e-mail -- of the -- I'm

14   sorry, the article, the fourth full paragraph

15   that starts with "Inglis."

16             And there that paragraph reads:

17   "Inglis, who also serves as Deputy

18   Commissioner of Administration for the

19   Department told reporters Thursday after a

20   tour of Riverbend Maximum Security

21   Institution in Nashville that the

22   Department," quote, "'anticipates we could

23   carry out,'" end quote, "an execution by

24   lethal injection as needed.  She said that

25   means the State could obtain the drug closer

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 185 of 358 PageID #: 923

**Attachment 22**

```
 1   to the time of the execution.  However,
 2   Inglis didn't elaborate on how the Department
 3   would actually get those drugs."
 4         Do you see that there?
 5   A.    I do.
 6   Q.    Do you believe that Ms. Inglis --
 7   Ms. Inglis is also the -- strike that
 8   question.
 9         Ms. Inglis is also your General
10   Counsel; is that right?
11   A.    Correct.
12   Q.    And she made public statements about
13   the availability of pentobarbital on March
14   the 3rd, 2017; isn't that correct?
15   A.    Is this when the art -- is this when
16   the statement was made, or is this when the
17   article was printed?
18   Q.    Well, the article says:  The Tennessee
19   prison system does not have drugs needed.
20   That's what they said.  It starts:  "The
21   State will be ready to administer lethal
22   injection," said Tennessee Department of
23   Correction General Counsel Debbie Inglis.
24         And then the next sentence -- I'm
25   sorry.  The next paragraph, Paragraph 5:
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 186 of 358 PageID #: 924

**Attachment 22**

1    "'We cannot discuss how we will procure the

2    lethal injection chemicals,'" Department

3    spokeswoman Neysa Taylor said in response to

4    follow-up questions e-mailed Thursday."

5    A.    Okay.

6    Q.    And I'll represent to you that

7    March the 3rd, 2017 was a Thursday.

8    A.    Okay.

9    Q.    Neysa Taylor is the Public Information

10   Officer --

11   A.    She is.

12   Q.    -- for the Department?

13   A.    Yes.  Neysa, N-e-y-s-a.

14   Q.    So on March the 3rd, 2017, Ms. Inglis

15   publicly represented that the Department

16   could obtain pentobarbital; isn't that true?

17   A.    Yes, according to this.  That's --

18   that's correct.

19         And this is an article from the

20   Tennessean, right?

21   Q.    Yes, sir.

22   A.    A newspaper --

23         MR. SUTHERLAND:  Does it say

24   "pentobarbital"?

25         THE WITNESS:  It doesn't.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 187 of 358 PageID #: 925

**Attachment 22**

1   BY MS. HENRY:

2   Q.      March the 3rd, 2017, did the -- was

3   the Department looking at midazolam March the

4   3rd, 2017?

5              MR. SUTHERLAND:  I'm just asking:

6   Does it say "pentobarbital" on there?

7              MS. HENRY:  It says -- no.  It

8   says the Department can get the drug.

9              MR. SUTHERLAND:  What -- can I see

10  it?

11             THE WITNESS:  Yeah, I'm sorry

12  (tendering).

13             MR. SUTHERLAND:  What -- where are

14  we talking about?

15             THE WITNESS:  It's right here.

16  Fourth paragraph.

17             MS. HENRY:  Paragraph 4.

18  BY MS. HENRY:

19  Q.      Let me back up, Commissioner.  You

20  adopted midazolam as an option in your

21  protocol on January 8, 2013, correct?

22  A.      Correct.

23  Q.      E-mails that we'll get to later will

24  show that the Department was continuing to

25  search for pentobarbital in July of 2017 and

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 188 of 358 PageID #: 926

**Attachment 22**

1  that the Department did not begin looking at

2  midazolam until September of 2017.

3  A.      Okay.

4  Q.      As of March 2017, the only protocol

5  that was in place in Tennessee was a

6  single-drug pentobarbital protocol; is that

7  correct?

8  A.      Correct.

9  Q.      So is it a fair assumption, then, on

10  March 3rd, 2017, when the Department wasn't

11  looking at midazolam and only had a

12  single-drug compounded pentobarbital

13  protocol, Ms. Inglis was talking about the

14  ability to get pentobarbital?

15  A.      Yes.

16  Q.      And it would make sense that the

17  Department didn't have compounded

18  pentobarbital at that time because there were

19  no executions scheduled at that time --

20  A.      Exactly.

21  Q.      -- correct?

22  A.      Yes, that's true.

23  Q.      And under the protocol, you don't

24  order the compounded pentobarbital until an

25  execution date is set?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 189 of 358 PageID #: 927

**Attachment 22**

1    A.     Right.

2    Q.     Now I want to turn to the documents

3    that your counsel produced in response to a

4    Motion to Compel.

5              MS. HENRY:  And I'm going to ask

6    the court reporter to mark this packet as

7    Deposition Exhibit U.

8              (Exhibit U was marked.)

9    BY MS. HENRY:

10   Q.     As I sing the alphabet song in my

11   head.

12          Commissioner Parker, this packet of

13   materials was provided by your counsel in

14   response to an order from Chancellor Lyle to

15   provide certain documents to Plaintiffs'

16   counsel.

17          Have you seen this packet before?

18   A.     I have.

19   Q.     And when did you see it?

20   A.     I've seen it in the last month.  I've

21   seen it -- I saw it when the update was given

22   also.

23   Q.     I'm sorry, what update?

24   A.     When we used this to brief staff on

25   the -- the protocol.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 190 of 358 PageID #: 928

**Attachment 22**

1  Q.    So Pages 1 through 17 of the

2  production appear to be a PowerPoint.  And

3  you have seen the PowerPoint in previous --

4  A.    Yes.

5  Q.    You saw it at the time that it was

6  actually presented?

7  A.    Yes.

8  Q.    And that date appears to be

9  August 31st, 2017?

10  A.    Correct.

11  Q.    There are some additional documents

12  beginning at Bates No. 19.  Had you seen

13  those documents prior to within the past

14  month?

15  A.    (Witness reviews documents.)

16      I haven't seen each one specifically.

17  I -- I saw a packet that had this information

18  in it, along with this printout (indicating),

19  in my office.

20  Q.    Did you gather these documents to

21  provide to counsel for production, or did

22  someone else gather these documents?

23  A.    Someone else gathered these documents.

24  Q.    Okay.  And that someone else was a

25  TDOC employee?

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 191 of 358 PageID #: 929

**Attachment 22**

1    A.      Yes.

2    Q.      I'd like to first focus on the

3    PowerPoint, which is titled "Lethal Injection

4    Update, August 31st, 2017."

5            Without providing any names, what was

6    the purpose of this PowerPoint?

7    A.      To give officials in the Department an

8    -- updates regarding the lethal injection

9    protocols in Tennessee.

10   Q.      Are you the author of this PowerPoint?

11   A.      No, not totally, no.

12   Q.      Was this a PowerPoint that was

13   presented to you?

14   A.      It was.

15   Q.      So you were the intended audience or

16   part of --

17   A.      I was part of the intended audience.

18   Yes, that's fair to say.

19   Q.      Was this presented by somebody -- a

20   person who has personal knowledge of the

21   contents of the PowerPoint?

22   A.      Yes.  Yes.

23   Q.      And is that -- again, without

24   providing the name, is the person who put

25   together this PowerPoint the person who has

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 192 of 358 PageID #: 930

Attachment 22

1  been -- who you have delegated the duty of

2  obtaining the lethal injection chemicals?

3  A.     I think this PowerPoint was put

4  together by probably a couple of officials in

5  DOC, one of which would be the person who

6  assists in the process of obtaining drugs,

7  yes.

8  Q.     The first page of the PowerPoint is

9  just a general explanation of why it's being

10  placed -- put together.  Was this presented

11  at a meeting that was called specifically to

12  discuss lethal injection in Tennessee?

13  A.     This was presented -- yes, it was.

14  That was the purpose of the meeting.

15  Q.     And the PowerPoint at Page 3 provides

16  the demographics of Tennessee's death row.

17  And it -- on Page 4, it states that there are

18  no execution dates scheduled in 2017.

19  Provides two execution dates in 2018, but

20  notes that those cases have additional steps

21  in the legal process.

22         And so they were not, as we call them,

23  real execution dates; is that correct?

24  A.     That's correct.

25  Q.     And so the Department was not

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 193 of 358 PageID #: 931

**Attachment 22**

1    concerned about providing -- gathering lethal

2    injection drugs for an execution date of

3    January 3rd, 2018 or May 9th, 2018, correct?

4    A.      Correct.

5    Q.      The next page, Page 5, sets forth the

6    law, the statutory law on lethal injection;

7    is that correct?

8    A.      It is.

9    Q.      The next page, Page 6, discusses that

10   alternative means of execution shall -- and

11   that's in bold -- be electrocution if the

12   chemicals for the LIC are unavailable and/or

13   lethal injection is found to be an

14   unconstitutional method of carrying out the

15   sentence of death.

16           Is that correct?

17   A.      That's correct.

18   Q.      The next page, Page 7, describes the

19   Tennessee protocol as of August 31st, 2017 as

20   being compounded pentobarbital in an

21   injectable solution, correct?

22   A.      Correct.

23   Q.      The next page, Page 8, is titled

24   "Search for Source;" is that correct?

25   A.      Correct.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 194 of 358 PageID #: 932

Attachment 22

1    Q.      And there, the author of the
2    PowerPoint describes that they reached out to
3    someone who they understood to have a source,
4    but that someone was unwilling to share the
5    identity of their source or provide our
6    contact information; is that correct?
7    A.      That's correct.
8    Q.      Page 9, again, is a summary of the
9    steps that that individual took, correct?
10   A.      Correct.
11   Q.      The third bullet point states:
12   "Several pharmacies declined to be involved
13   in any way.  Finally a compounding pharmacy
14   agreed to compound the LIC and aid in the
15   search for a source," correct?
16   A.      Correct.
17   Q.      The next page, Page 10, states:
18   "There were 100 potential sources, and then
19   none of those worked for one of the following
20   reasons."
21          Those reasons are given, correct?
22   A.      Correct.
23   Q.      The next page, Page 11, discusses the
24   possibility of importing the chemical from
25   overseas, correct?

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 195 of 358 PageID #: 933

**Attachment 22**

1   A.      Correct.

2   Q.      Was there discussion at the Department

3   of Correction about importing pentobarbital

4   from overseas?

5   A.      There was.

6   Q.      And what was the result of those

7   discussions, or what did you discuss?

8   A.      Basically, that we were looking at all

9   available -- potential available options to

10  find a source for pentobarbital, to include

11  all legal means both in the U.S. and outside

12  the United States.

13  Q.      And so you were looking for drugs

14  overseas.  Do you know where overseas?

15  A.      No, not particular.  Just, again, any

16  legal method of obtaining the -- the chemical

17  necessary for the protocol, both in the

18  United States and -- as well as outside the

19  United States.

20  Q.      And that next -- that bullet point

21  paragraph there sets out the CFR governing

22  the DEA's authority to issue permits for the

23  importation of Schedule II narcotics, i.e.,

24  pentobarbital, when it is necessary to

25  provide for a legitimate need of the U.S. and

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 196 of 358 PageID #: 934

**Attachment 22**

1   the domestic supply is inadequate, correct?

2   A.      Uh-huh, correct.

3   Q.      And then we have redactions.  And

4   there it describes a meeting with agents.

5           Do you know what that meeting was

6   about on Page 12?

7   A.      Yes, I know what it's about.

8   Q.      Can you please tell us?

9   A.      I don't know that I can tell you, not

10  without identifying who the agents work for.

11              MR. SUTHERLAND:  Are you asking

12  what the meeting was about?

13  BY MS. HENRY:

14  Q.      I'm trying to figure it out.  Early --

15  the page before talks about the DEA or the

16  DEA -- are these DEA agents?

17              MR. SUTHERLAND:  We're not going

18  to talk about the identities of people.

19              MS. HENRY:  This has to do with

20  availability.  And if you don't want to rely

21  on that page of the discovery, I'm fine with

22  not relying on it.  If you're going to rely

23  on it in your trial, I want to ask about it.

24              MR. SUTHERLAND:  We can ask the

25  Court about it.  But we're not going to

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 197 of 358 PageID #: 935

**Attachment 22**

1  identify individuals.

2           MS. HENRY:  I don't think DEA

3  agents identifies who they are.  I'm not

4  asking for people inside the Department of

5  Correction.  These are individuals who I

6  believe informed someone that there is a

7  supply of pentobarbital available in the

8  United States.  That's what it says there.

9  BY MS. HENRY:

10  Q.    Do you agree that's what it says?

11  A.    You asking me?

12  Q.    Yes.

13  A.    Yes.

14  Q.    All right.  So agents from some place

15  said that there is a supply of pentobarbital

16  available in the United States?

17  A.    Correct.

18  Q.    And counsel objects to me asking

19  anything further on that page, so I'll move

20  on.

21           Page 13 refers to:  "In the course of

22  researching the possibility of

23  importation" -- redacted -- "became aware of

24  a Federal case in Texas wherein the FDA had

25  ceased a shipment of drugs, chemicals being

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 198 of 358 PageID #: 936

**Attachment 22**

1  imported by the Texas Department of

2  Corrections.  Texas DOC filed suit in Federal

3  District Court for the release of the

4  shipment."

5          "There has been -- "To this date,

6  there has not been any resolution to this

7  case."

8          Have you been following the case in

9  Texas regarding the importation of

10  pentobarbital?

11  A.     I have not personally.  My staff has.

12  Q.     And that is because if that drug

13  becomes available, you would like to obtain

14  pentobarbital through a similar source?

15  A.     Again, the -- the search for

16  pentobarbital is ongoing.  If we had a

17  credible source, we would follow up on it,

18  yes.  So I guess to answer your question,

19  yes.

20  Q.     The next paragraph states that, again,

21  redacted name "is now researching FDA

22  regulations as a result of this case to

23  determine what, if any, process can be

24  undertaken to obtain FDA approval for the

25  importation of pentobarbital.  Thus far the

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 199 of 358 PageID #: 937

**Attachment 22**

1    approval process appears to be very

2    cumbersome unless an exception can be claimed

3    to lessen the burden."

4            So it appears that someone in the

5    Department is researching ways to get the FDA

6    to permit the importation of pentobarbital;

7    is that correct?

8    A.    Again, I think the Department is

9    looking at all available options to find

10   pentobarbital.

11   Q.    So the answer to my question is yes?

12   A.    When you say actively pursuing it, I

13   don't know if it's something they're looking

14   at every day, but it's something that's

15   certainly on our radar that we would

16   entertain if the possibility becomes a viable

17   option.

18   Q.    Would you agree with me that

19   "cumbersome" does not mean impossible?

20   A.    True.

21   Q.    Just difficult?

22   A.    True.

23   Q.    Are you aware, sir, that yesterday the

24   Texas Department of Correction was ordered to

25   disclose their source of pentobarbital

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 200 of 358 PageID #: 938

**Attachment 22**

 1  publicly?

 2  A.     No, I'm not.

 3  Q.     Assuming that Texas complies with the

 4  Court order from the highest Court in Texas

 5  and they identify their source of

 6  pentobarbital, will the Tennessee Department

 7  of Correction contact that source in an

 8  effort to obtain pentobarbital?

 9  A.     That would be a discussion I would

10  have with my staff and -- absolutely, again,

11  we will search out all options to find

12  pentobarbital, so I don't know why we

13  wouldn't.  Yes.

14  Q.     Okay.  The next page discusses

15  Arkansas's attempt to perform seven

16  executions in the span of seven days because

17  of their difficulty in obtaining a source for

18  their LIC.

19         But in Arkansas, are you aware that

20  those seven executions involve the use of

21  midazolam?

22  A.     Am I aware?

23  Q.     Yes.

24  A.     Yes, I am.

25  Q.     So the difficulty in obtaining a

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 201 of 358 PageID #: 939

**Attachment 22**

1  source for LIC is not limited to

2  pentobarbital; isn't that true?

3  A.    That's correct.

4  Q.    And that is because midazolam has

5  to --

6           MR. SUTHERLAND:  Ms. Henry, you

7  know, I don't want to be here all night, but

8  you're just -- you've led all morning and all

9  afternoon.  It's -- I mean, he can --

10           MS. HENRY:  Leading isn't a valid

11  objection in a deposition or with an adverse

12  witness.  But your objection is noted.

13           MR. SUTHERLAND:  You seem to think

14  he's an adverse witness?

15           MS. HENRY:  Yes, I do.

16           MR. SUTHERLAND:  All right.

17           MS. HENRY:  He's the Defendant.

18  He's a party.  He's an adversary.

19           MR. KISSINGER:  He's a party

20  opponent.

21           MR. MITCHELL:  Absolutely.

22           MR. KISSINGER:  That's the

23  definition of adverse.

24           MS. HENRY:  We've got six hours,

25  and I'm moving it along.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 202 of 358 PageID #: 940

**Attachment 22**

1    BY MS. HENRY:

2    Q.      With respect to midazolam -- well, let

3    me go back to pentobarbital.

4           Are you aware that the difficulty in

5    obtaining pentobarbital is because the

6    manufacturers of pentobarbital had in place

7    distribution controls on their contracts

8    whenever they sell pentobarbital to their

9    suppliers?

10   A.      I am, yes.

11   Q.      And are you aware that those same

12   distribution controls are in place for

13   midazolam?

14   A.      I am.

15   Q.      And yet some Departments of Correction

16   are able to get around those distribution

17   controls for pentobarbital?

18              MR. SUTHERLAND:  Objection,

19   relevancy.

20              THE WITNESS:  Yes, I do.

21   BY MS. HENRY:

22   Q.      And some Departments of Correction are

23   able to get around those distribution

24   controls for midazolam?

25   A.      True.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 203 of 358 PageID #: 941

**Attachment 22**

1    Q.     In fact, the Tennessee Department of

2    Correction got around those distribution

3    controls for midazolam?

4    A.     True.

5    Q.     How was it that the Department of

6    Correction was able to get around the

7    distribution controls for midazolam but not

8    for pentobarbital?

9    A.     Simply because we couldn't find a

10   source that was willing to sell us the

11   pentobarbital.

12   Q.     So your source is willing to violate

13   the distribution controls for midazolam but

14   not pentobarbital?

15            MR. SUTHERLAND:  We're not going

16   to talk about the sources, if they're the

17   same or different.

18            THE WITNESS:  That would be a

19   question, I guess, for them.

20   BY MS. HENRY:

21   Q.     Okay.  Well, we'll get back to the

22   e-mails with the source who talks about

23   pentobarbital as well as midazolam.

24   A.     Okay.

25   Q.     Page 15 states that:  "Other states"

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 204 of 358 PageID #: 942

**Attachment 22**

1    -- again, it's a continuation of the

2    difficulty.  It mentions the Texas case.  The

3    next bullet point states:  "Some states are

4    using LIC chemicals that have come under,"

5    quote, "harsh" -- I'm using quotes -- "harsh

6    scrutiny such as Alabama.  Alabama's used" --

7    that's a typo.  "Alabama used midazolam in

8    the recent execution of Robert Melson."

9         Did you take any action to investigate

10   the harsh scrutiny that Alabama faced after

11   using midazolam in the execution of Robert

12   Melson?

13   A.    Not particularly, this particular

14   inmate.  I think the -- so to answer your

15   question regarding this particular inmate,

16   no, I did not.

17   Q.    What is meant by "harsh scrutiny"?

18   A.    I take that to be the individuals

19   questioning the methods of execution and the

20   drugs used for execution protocols.  That

21   could be generated either by articles in the

22   paper or individual witness statements or

23   things like that --

24   Q.    Is the harsh --

25   A.    -- so the media, primarily, I'm sorry.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 205 of 358 PageID #: 943

Attachment 22

1  Q.    Sure.

2        Is the harsh scrutiny that's

3  referenced there on Page 15 with respect to

4  Alabama's use of midazolam in the execution

5  of Robert Melson an important consideration

6  for the Department of Correction in

7  determining which LIC to use in execution of

8  Plaintiffs?

9  A.    I wouldn't say -- well, I would say

10 that -- I would say that any references or

11 accounts would be important information

12 personally to me.

13 Q.    Page 16 of the production, again, from

14 your lawyers, the last paragraph states:

15 "There are circumstances where the Federal

16 Government can step in and orchestrate the

17 supply of chemicals in situations where

18 supply is so low and the cost for the

19 chemical is so high as to make it virtually

20 unavailable where there is a significant

21 need."

22       Was that information that was provided

23 to you by the author or authors of this

24 PowerPoint?

25 A.    Yes.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 206 of 358 PageID #: 944

**Attachment 22**

1    Q.      The last -- next page is a graphic of

2    a question mark and a cartoon figure who

3    appears to be in a thinking pose; is that

4    correct?

5    A.      Correct.

6    Q.      And it appears that at that point,

7    there was a discussion; is that correct?

8    A.      Correct.

9    Q.      What was that discussion?

10   A.      A general discussion of the PowerPoint

11   as presented.

12   Q.      What -- were there any conclusions

13   about the Tennessee lethal injection method

14   made as a result of the PowerPoint that you

15   received?

16   A.      Not any final determinations made that

17   I remember and -- no.

18   Q.      Were there any directives made by you

19   at this meeting as a result of the PowerPoint

20   and the discussion that ensued with respect

21   to the procurement of lethal injection

22   chemicals?

23   A.      No.

24   Q.      Were there any directives made by any

25   other members of the Department -- Tennessee

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 207 of 358 PageID #: 945

**Attachment 22**

1    Department of Correction with respect to

2    procuring lethal injection chemicals as a

3    result of the PowerPoint?

4    A.     No.

5    Q.     At the conclusion of the PowerPoint,

6    was there a decision made to pursue midazolam

7    to the exclusion of pentobarbital?

8    A.     No, not at -- not at the end of this

9    PowerPoint.

10           MR. SUTHERLAND:  That's been asked

11   and answered.

12   BY MS. HENRY:

13   Q.     Go -- I'm sorry, your answer was, "No,

14   not at the end of that PowerPoint"?

15   A.     Right.

16   Q.     And so that actually begs a question:

17   Has there been a decision to stop looking for

18   pentobarbital --

19           MR. SUTHERLAND:  Asked and

20   answered.

21   BY MS. HENRY:

22   Q.     -- and only to seek --

23           MS. HENRY:  Actually, no, it

24   hasn't, but your objection is noted.

25   BY MS. HENRY:

Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 208 of 358 PageID #: 946

**Attachment 22**

1   Q.    Has there been a decision to stop

2   looking for pentobarbital and only look for

3   midazolam?

4   A.    No.  Like I've said multiple times,

5   there's an ongoing effort to find

6   pentobarbital.

7   Q.    And let's go now to Page 19 of that

8   exhibit --

9   A.    Okay.

10  Q.    -- which appears to be screenshots of

11  text messages.  Would you agree with me

12  there?

13  A.    Yes, that's what it appears to be,

14  yes.

15  Q.    And those next messages appear from

16  Bates No. 19 through Bates No. 23, correct?

17  A.    Page numbers, you --

18  Q.    Yeah.

19  A.    -- is that what you're asking?  Yes.

20  Q.    Yes, those page numbers at the bottom,

21  we call those Bates numbers.  I don't know

22  why.  I don't know what "Bates" means.

23  A.    Okay.

24  Q.    But we call them Bates numbers.  19

25  through 23, do you agree with me on that?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 209 of 358 PageID #: 947

**Attachment 22**

1   A.      Yes.

2   Q.      All right.  And on Page 19 at the top,

3   there appears to be a date, Tuesday,

4   April 4th, 2017, correct?

5   A.      Yes.

6   Q.      Midway down the page under Wednesday,

7   April 5th, 2017, there is a text message that

8   reads:  "I'm running around today so not sure

9   when I'll be open for a call.  But in the

10  meantime, can you send me a list of all

11  companies, et cetera, you reached out to

12  about sourcing so I can have it for when we

13  have to show it's unavailable?  Thanks."

14          Do you see that there?

15  A.      I do.

16  Q.      Was that list ever created?

17  A.      I'm not sure.  I don't -- I'm not sure

18  who -- who wrote this.

19  Q.      Okay.  Then at the bottom of the page,

20  it starts with the heading Thursday,

21  April 6th, 2017, nine-seven-16 a.m. [sic],

22  there's a response that states:  "I'm not

23  ignoring you.  I have a cold," et cetera.

24          And then we go to Page 20, and it

25  starts the text message response to the

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 210 of 358 PageID #: 948

Attachment 22

1  person with the cold:  "10-4.  Sorry you're

2  sick.  In my voicemail I had a question about

3  what type of pento y'all need because I'm

4  looking into a company and they needed to

5  know which kind we wanted."

6          Do you see that there?

7  A.    I do.

8  Q.    And then on down the page, it says in

9  response to the person who's looking into a

10  company:  "We would need U.S.P. grade."

11          Do you see that?

12  A.    I do.

13  Q.    Page 21 has a large redaction but is

14  apparently a picture, based on the text

15  message under it, which says:  "Can you tell

16  from that pic which of those would work?"

17          Page 22, there's a text message that

18  starts:  "Also those are such small

19  quantities."

20          Response:  "Well, they do bulk options

21  on things.  So once" -- again redacted --

22  "says which one or what specific type we

23  need, I'll shoot that to them to see if it's

24  possible."

25          Do you see that?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 211 of 358 PageID #: 949

**Attachment 22**

1    A.      Oh, show me where you -- in.

2    Q.      Page 22 (indicating).

3    A.      Okay.  Okay.  Yes, I see it.

4    Q.      And then at the bottom there's a

5    question:  "What are your thoughts on

6    acquiring it through a veterinarian?"

7            Do you see that?

8    A.      Yes.

9    Q.      Did TDOC consider acquiring

10   pentobarbital from a veterinarian?

11   A.      It's my understanding that TDOC --

12   again, I instructed them to find -- to use

13   all available means --

14   Q.      Uh-huh.

15   A.      -- to find pentobarbital and obtain it

16   legally in -- inside the United States or

17   outside the United States.  So very well it

18   could have, yes.

19   Q.      They very well could have considered

20   getting it from a vet?

21   A.      Could have.

22   Q.      Yes?

23   A.      Again, I'm not sure who wrote these,

24   but....

25   Q.      Well, they were provided to us from

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 212 of 358 PageID #: 950

**Attachment 22**

1   your lawyers in response --

2   A.      Okay.

3   Q.      -- to an order to produce documents

4   that were in the Department of Correction's

5   custody --

6   A.      Okay.

7   Q.      -- regarding the acquisition of

8   pentobarbital.

9   A.      Okay.

10  Q.      So I'm assuming that this is a

11  response of text messages from someone within

12  TDOC, but it's not you, correct?

13  A.      Correct.

14  Q.      If we look at Page 23, it states,

15  after substantial redactions:  "Let me do

16  some looking into that possibility and talk

17  with the bosses," correct?

18  A.      Correct.

19  Q.      And that ends the text message

20  exchange.

21          And then we move to Page 24,

22  February 15th, 2017 the Subject is "Pharmacy

23  Contact" and basically everything else is

24  redacted on that page except for the word:

25  "Hi," "it's" and "THX," correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 213 of 358 PageID #: 951

Attachment 22

1    A.    Right.

2    Q.    So we really have no idea what that

3    page means, correct?

4    A.    Correct.

5    Q.    The next page starts a series of

6    e-mails dated April the 4th, 2017.  And,

7    actually, those e-mails appear to be out of

8    chronological sequence.  The first one at the

9    top of Page 25, April 4th, 2017, 10:41 a.m.,

10   regarding your inquiry states:  "We had an

11   internal discussion and we have respectfully

12   declined to quote," correct?

13   A.    Correct.

14   Q.    And then a response that simply says:

15   "Thank you," correct?

16   A.    Correct.

17   Q.    The next page, Page 26 states:  "We

18   have not made this compound in the past.  I

19   will have our technical team evaluate and let

20   you know if we can develop the synthetic

21   route and GMP the manufacture process."

22         What is the synthetic route?

23   A.    I do not know.

24   Q.    What is the GMP manufacture process?

25   A.    I am not aware.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 214 of 358 PageID #: 952

**Attachment 22**

1    Q.      Does this appear to be an individual

2    who says that they are willing to attempt to

3    make pentobarbital?

4    A.      I guess that could be an -- that could

5    be a reasonable assumption.  It doesn't say

6    pentobarbital, but that's -- that was the --

7    what we were looking for, so I guess that's

8    an assumption that could be made, yes.

9    Q.      And, again, this was provided pursuant

10   to a Court order to provide documents

11   relating to the Department's search for

12   pentobarbital?

13   A.      Right.

14   Q.      But you don't know who put this

15   paperwork together?  We're presuming they

16   were complying with the Court order, though,

17   right?

18   A.      Correct.

19   Q.      At the bottom of the page at 9:41 a.m.

20   on April the 4th, 2017, it states:  "Here is

21   the requested info, pentobarbital CAS

22   No. 76-74-4.  Need at least 100 grams.  Would

23   be interested in pricing for bulk orders."

24           Do you see that there?

25   A.      I do.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 215 of 358 PageID #: 953

**Attachment 22**

1   Q.      And is 100 grams an amount necessary

2   for ten executions?

3   A.      Yes.

4   Q.      And then when we go to Page 27, the

5   e-mail continues:  "We have a compounding

6   pharmacy able to compound the solution.  They

7   just need the pentobarbital.  However would

8   be" interesting -- "interested in pricing the

9   compound as well through your operation.  Let

10  me know if there's any other information you

11  need."

12          So on Page 27, it appears that someone

13  with TDOC is stating that TDOC, as of

14  April 4th, 2017, has a compounding pharmacy

15  willing to compound the LIC --

16  A.      That's --

17  Q.      -- correct?

18  A.      That's correct.

19  Q.      And then if you'll turn to Page 29 of

20  your lawyer's production, an e-mail dated

21  Thursday, April 6th, 2017 at 11:00 a.m. where

22  it states:  "The products we sell are

23  isotopically" -- i-s-o-t-o-p-i-c-a-l-l-y --

24  "labeled and used as an internal standard for

25  analytical purposes.  The concentrations

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 216 of 358 PageID #: 954

**Attachment 22**

1    noted below are micrograms per milliliters.

2    We are unable to provide the quantity you

3    need.  Thank you for your inquiry."

4          Do you see that?

5    A.    I do.

6    Q.    So the quantity that was being

7    requested was for ten executions, correct?

8    A.    If this e-mail is relating back to the

9    previous one, yes.  I -- I'm not -- one's

10   dated April 6th, one's dated April 4, and I'm

11   not sure -- is it from the same person and to

12   the same people?  I don't know.  So, I

13   mean....

14   Q.    Is there a way that we can find out?

15   A.    Not that I'm aware of.

16   Q.    Would you agree with me that the

17   previous e-mail on the page before, which

18   requested 100 or enough for ten executions,

19   did not request a smaller amount?  It only

20   requested a singular amount?

21   A.    Correct.

22   Q.    And in April of 2017, was the

23   Department anticipating the need to set ten

24   execution dates?

25   A.    No.

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 217 of 358 PageID #: 955
**Attachment 22**

1    Q.    Why was the Department looking for

2    enough pentobarbital for ten execution dates?

3    A.    I would have to ask the person who was

4    in contact with these pharmacies.  To my

5    knowledge, the Department of Corrections

6    would be looking for pentobarbital in any

7    amount that would carry out at least one

8    execution.  I mean, it doesn't -- I -- I

9    don't have any knowledge of a set limit that

10   we would only want enough pentobarbital or --

11   or an amount to do at least ten.

12        It's my understanding that our search

13   for pentobarbital -- with the exception of

14   the one case that we talked about where it

15   appeared we had someone to provide the drugs,

16   but at the last minute they backed out of

17   providing the compounded pentobarbital --

18   there has not been any cases from anyone who

19   could provide any amount of pentobarbital.

20   Q.    And the source of your knowledge on

21   this, sir, is from talking to the individuals

22   who worked for you who have been engaged in a

23   search; is that correct?

24   A.    From my conversations with people both

25   inside the Tennessee Department of

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 218 of 358 PageID #: 956

**Attachment 22**

1    Corrections, as well as other officials from

2    multiple other states and entities, yes.

3    Q.      You have not personally had a

4    conversation with any pharmacist or supplier

5    of LIC requesting whether they could provide

6    LIC; is that correct?

7    A.      Well, my staff has done that.

8    Q.      And so when the Court ordered your

9    lawyers to provide us with all of the

10   paperwork about all of the searches that had

11   been conducted by your staff, we're to rely

12   on those documents; is that fair to say?

13   A.      That's fair to say.

14   Q.      And so if the documents show the only

15   amount requested was enough for ten

16   executions and the response is:  "We don't

17   have it in that amount," that's what we're

18   left with, correct?

19   A.      Correct.

20   Q.      And you might have told people you're

21   looking for any amount, but as far as what

22   they've actually searched for, we have to go

23   with the documents, right?

24   A.      Okay.  Yes.

25   Q.      It is now 2:59.  I think it's time for

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 219 of 358 PageID #: 957

**Attachment 22**

1   us to take our afternoon break.  We've been

2   at this for four hours and five minutes.

3              MS. HENRY:  And we'll go off the

4   record.

5              (Brief recess observed.)

6   BY MS. HENRY:

7   Q.    Okay.  It's 3:15 and we're back on

8   record.

9              Commissioner, I want to continue to go

10  through the production from your lawyers.

11  The good news is I don't think we're going to

12  go six hours.

13  A.    Okay.

14  Q.    Skip through some of this.  Beginning

15  on Page 35 of the production, there appears

16  to be handwritten notes on the person who is

17  looking for drugs.  Appears -- it appears to

18  be their handwritten notes; is that correct?

19             Well, do you recognize that?

20  A.    I -- it appears to be, yes, someone.

21  I -- I don't recognize this.  I -- I haven't

22  seen it, but it appears to be, yes.

23  Q.    It's not your handwriting?

24  A.    No, it's not.

25  Q.    On Page 36, again, some handwritten

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 220 of 358 PageID #: 958

**Attachment 22**

1  notes.  At the top of the page it says:  10

2  grams per individual -- or I-N-D period?

3  A.     Uh-huh.

4  Q.     And there's an arrow and the number

5  "24K," which I interpret as 24,000.  Would

6  you as well?

7  A.     Yes.

8  Q.     So that appears to be the price being

9  quoted for pentobarbital, correct?

10  A.     Yeah, it appears to be the price of

11  10 grams -- 10 grams per individual or I-N-D

12  for, I'm assuming, pentobarbital.

13  Q.     And then it says:  "Comp fee?  35K per

14  10G."  Do you know what that means?

15  A.     I do not.

16  Q.     Then it says:  "Source?"  And then

17  there's a redaction; is that correct?

18  A.     Correct.

19  Q.     So we don't know if the redaction is

20  the identity of a source willing to provide

21  pentobarbital at a comp fee of 35,000 for, I

22  guess, getting it and 24,000 for the dose?

23  A.     I -- I don't know.

24  Q.     And then there is written "A-M-T"

25  which is a common abbreviation for "amount"?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 221 of 358 PageID #: 959

**Attachment 22**

1   A.      Uh-huh.

2   Q.      By, at sign, at a time.

3           Then there's a large redaction.  The

4   words "time," "till" and the letters

5   "A-V-A-I-L" which is a common abbreviation

6   for "available," correct?

7   A.      Correct.

8   Q.      And then, again, more redactions and

9   the words "Once A-C-C-T" -- which I interpret

10  as "account" -- "approved bulk money option,"

11  correct?

12  A.      Correct.

13  Q.      And then there's a substantial portion

14  of the page that's redacted, correct?

15  A.      Yes.

16  Q.      Page 37 is all redactions, correct?

17  A.      Correct.

18  Q.      Page 38 is heavily redacted, correct?

19  A.      Correct.

20  Q.      It has at the top the letters "D-E-A"

21  and then the letter "code."  Those are

22  commonly associated with individuals who have

23  a license to sell Schedule II drugs such as

24  pentobarbital, correct?

25  A.      Correct.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 222 of 358 PageID #: 960

Attachment 22

1    Q.    You have to have a DEA code?

2    A.    (Witness moves head up and down.)

3    Q.    Correct?

4    A.    Correct.

5    Q.    And then under the heavy redactions

6    are the words "they sell us the compound,"

7    correct?

8    A.    Correct.

9    Q.    Then there's the word "no" after a lot

10   of redactions.  Then there are more

11   redactions.  The word "pentobarbital" appears

12   twice on the page.  The -- at the very bottom

13   of the page, there is a blank -- a redacted

14   space, an arrow and the word "supplier."

15         Do you see that there?

16   A.    I do.

17   Q.    And above it is the number "100" with

18   an "S" and the letters "CO."  Do you know

19   what that refers to?

20   A.    I do not.

21   Q.    Below that is an arrow that says

22   "pentobarbitone."

23         Do you see that?

24   A.    I do.

25   Q.    Is pentobarbitone the same as

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 223 of 358 PageID #: 961

**Attachment 22**

1   pentobarbital?

2   A.      I'm not sure.

3   Q.      On Page 39, again a heavily redacted

4   page.  You would agree?

5   A.      Yes.

6   Q.      There appears to be handwritten "pharm

7   call" and, then there's redactions, and then

8   "3/1 ship" and then under -- on the next line

9   it says "Source it in"?

10  A.      Correct.

11  Q.      And then there are heavy redactions

12  and then it says "Not licensed to," a

13  redaction, and then "I-N-S-T," which I'm

14  assuming is "institutional" -- "agreement,"

15  correct?

16  A.      Correct.

17  Q.      Then there's more redactions and then

18  it says:  "Compound, two weeks to and

19  confirm," correct?

20  A.      Correct.

21  Q.      The bottom of the page, it says:

22  "Three wholesalers," correct?

23  A.      Correct.

24  Q.      Page 40 is completely redacted,

25  correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 224 of 358 PageID #: 962

**Attachment 22**

1   A.      Correct.

2   Q.      Page 41 appears to be a printout of

3   the chemical properties of pentobarbitone,

4   correct?

5   A.      Correct.

6   Q.      And Page 42 appears to be the second

7   page of that printout, correct?

8   A.      Correct.

9   Q.      Do you recognize that printout?

10  A.      I do not.

11  Q.      On Page 43 is a document that is again

12  heavily redacted, but at the top has the word

13  -- I don't know what that word is --

14  pentasol.  P-e-n-t-a-s-o-l, do you see that

15  there?

16  A.      I see that.  I'm not sure.

17  Q.      Underneath it, it says:  Sodium pento

18  powder.

19          Do you see that?

20  A.      Yes.

21  Q.      Do you know what that references?

22  A.      I do not.

23  Q.      The next word across the top of the

24  page says:  "Parallel protocol," correct?

25  A.      Yes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 225 of 358 PageID #: 963

**Attachment 22**

1   Q.    Do you know what that means?

2   A.    I do not.

3   Q.    And then it says -- there's a star and

4   it says:  "Need barbiturate."

5         Do you know what that --

6   A.    I see that.

7   Q.    Is pentobarbital a barbiturate?

8   A.    I'm not sure.

9   Q.    Do you know what the star "need

10  barbiturate" means?

11  A.    No, I don't.

12  Q.    Page 44 is completely blacked out,

13  correct?

14  A.    Correct.

15  Q.    Page 45 has a redaction and the words

16  "no per pharm," correct?

17  A.    Correct.

18  Q.    And then a redaction.

19        Do you know what the "no per pharm"

20  means?

21  A.    I do not.

22  Q.    Underneath that, "Missouri lit on

23  disclose-" -- I'm assume disclosure -- "of

24  source.  Court upheld confidentiality of

25  source."

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 226 of 358 PageID #: 964

**Attachment 22**

1          Do you see that?

2     A.     I do.

3     Q.     Does that appear to be just legal

4     research?

5     A.     It appears to be, yes.

6     Q.     Page 46, does this appear to be more

7     legal research?

8     A.     It does.

9     Q.     Page 47, do you see where at the top

10    of Page 47, it says:  "Plenty in Europe and

11    availability according" -- and then there's a

12    redaction and the words "has it"?

13    A.     I see that.

14    Q.     And then it says "no lawyers."

15    A.     I see that.

16    Q.     So there appears to be a notation that

17    there's plenty of pentobarbital available in

18    Europe.  Is that what that notation means?

19    A.     Well, based on what we've been talking

20    about, it -- it could mean that.  I'm --

21    again, I would have to ask the person who

22    wrote it.

23    Q.     And then there's more handwriting

24    which appears to be questions the writer is

25    either asking of somebody or asking of

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 227 of 358 PageID #: 965

Attachment 22

1   himself or herself?

2   A.      Uh-huh.

3   Q.      Is that correct?

4   A.      Correct.

5   Q.      Commissioner Parker, we've been

6   through every single page of Deposition

7   Exhibit U, which are the only documents that

8   have been provided to us in response to the

9   Court order regarding the production of

10  documents.  Are you aware of any other

11  documentation in the Department of

12  Correction's possession, custody or control

13  that would be responsive to the Court's

14  order, that are not included in this packet?

15  A.      No.  I would not.

16  Q.      You've mentioned several times today

17  that there was a pharmacist who was willing

18  to provide pentobarbital but then backed out

19  at the last -- at the 11th hour, I believe

20  was your words; is that correct?

21  A.      Correct.

22  Q.      Where is the documentation of the

23  pharmacist who was willing to provide

24  pentobarbital?

25  A.      It's my underst- -- what I was -- my

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 228 of 358 PageID #: 966

**Attachment 22**

1   information, I was briefed on that by the

2   official who has been searching for the drug

3   for the Department.  And he reported to me

4   verbally that -- kept me up-to-date that we

5   thought we had a source.  There appeared to

6   be a source.  The pharmacist was willing to

7   work and find, as I remember -- recall, the

8   raw ingredients to compound pentobarbital,

9   found the raw ingredients, but I was -- it

10   was my understanding they had -- the

11   pharmacist did not have them.  He had to

12   purchase them from someone else.  And we felt

13   like at the time that that was not going to

14   be an issue.  It seemed like that that was

15   going to work out, that we would have

16   pentobarbital as a source.

17        And if I recall correctly, the day,

18   basically, that the supplier was supposed to

19   send the ingredients to the pharmacist to be

20   -- the compounding pharmacy, they sent a

21   notification to the pharmacist that these

22   chemicals or these ingredients could not be

23   used to, in my own words, compound

24   pentobarbital that would be used in a

25   correctional setting or -- or something in

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 229 of 358 PageID #: 967

**Attachment 22**

1  that manner.

2  Q.      And where is that notification?

3  A.      He told me that verbally.

4  Q.      But if there was a notification sent,

5  where is it?

6  A.      I'm assuming he talked to the

7  pharmacist.  I don't know.  I'm assuming that

8  that would be with the people that this

9  individual talked to.

10  Q.      Well, we've been through Deposition

11  Exhibit U, and there's nothing in Deposition

12  Exhibit U about a pharmacist pulling out at

13  the 11th hour.  And we've agreed that this is

14  pretty important to the Department of

15  Correction and to the citizens of the state

16  of Tennessee and to the Plaintiffs?

17  A.      Uh-huh.

18  Q.      And so one would expect there to be

19  documentation.  So I'm asking where is the

20  documentation of the pharmacist who pulled

21  out at the 11th hour or the supplier who

22  pulled out at the 11th hour?

23  A.      I don't know.  Again, I -- I don't

24  know that some of that information may have

25  been in the redacted information that you

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 230 of 358 PageID #: 968

**Attachment 22**

1  have.  I don't know.  Again, I have never

2  seen a piece of paper or a documentation with

3  that language on it that "We decline" or that

4  -- or the actual notice they sent to the

5  pharmacist.  I haven't seen that.  I don't

6  know that it exists.

7        What I was told by my staff, that that

8  was the -- the case and what happened in that

9  situation.

10  Q.    So the basis of your knowledge is a

11  verbal conversation with a member of your

12  staff about what someone else told him or

13  her?

14  A.    His report back to me in regards to

15  his search for pentobarbital was a verbal

16  conversation between me and him that that is

17  the case of -- of what happened in his

18  discussion with the pharmacist.

19  Q.    So it was his verbal report.  Is there

20  a written report --

21  A.    No.

22  Q.    -- from him to you?

23  A.    No.

24  Q.    Why not?

25  A.    Didn't need one.  He --

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 231 of 358 PageID #: 969

**Attachment 22**

1    Q.      Why?

2    A.      -- come and talked to me about it.  I

3    mean, we talk daily about the search for

4    pentobarbital and the issue of finding

5    chemicals for lethal injection.

6    Q.      You testified earlier today that you

7    have a poor memory.  And would you agree with

8    me that one way to remember important

9    details, if you have a poor memory, is to

10   write them down?

11   A.      Yeah, I guess you could say that.

12   That's true.

13   Q.      But you chose not to write down the

14   content of those conversations?

15   A.      Correct.

16   Q.      And why is that?

17   A.      Didn't see a need to.

18   Q.      Have you been told not to write things

19   down about the attempts to acquire

20   pentobarbital?

21   A.      No.

22   Q.      Is there a person within TDOC who has

23   actual personal knowledge of the search for

24   pentobarbital?

25   A.      There's individuals in TDOC who I have

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 232 of 358 PageID #: 970

**Attachment 22**

1   assigned the responsibility to actively

2   search for not only pentobarbital but any of

3   the drugs necessary for the execution

4   protocol --

5   Q.      Would it --

6   A.      -- lethal injection protocol.

7   Q.      Given that you don't have personal

8   knowledge or cannot authenticate any of the

9   documents that your counsel produced in

10  response to the Court's order, is TDOC

11  willing to make that person available for an

12  anonymous deposition?

13          MR. SUTHERLAND:  Objection, Your

14  Honor [sic].  Objection.  Kelley, the Court's

15  order says we're not getting into identities.

16          MS. HENRY:  I didn't ask for the

17  identity.  I asked him for his identity.  I

18  asked if he would be willing to make him

19  available for an anonymous deposition.

20          MR. SUTHERLAND:  But the West

21  decision says that we don't do that.

22          MS. HENRY:  I understand.  I asked

23  is the Department willing.  He can say "yes"

24  or "no," and then we'll take it up with the

25  Court.

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 233 of 358 PageID #: 971

**Attachment 22**

1           MR. SUTHERLAND:  Sure.

2           THE WITNESS:  I -- with an order

3    of the Court, I would do that.

4    BY MS. HENRY:

5    Q.    Okay.  Thank you.

6           I'm going to move now to a different

7    area, but before I do, I've been trying to

8    stay within the bounds of the Court's order.

9    And in so doing I may have not worded my

10   questions correctly in order to gather

11   information that you may or may not have.

12   And so forgive my catchall question, but I

13   can't form a question about information I

14   don't have.  We've covered everything that's

15   been produced so far by the Department of

16   Correction, both through Public Records

17   Request and Court-ordered productions.  Are

18   you aware of any other information about the

19   Department's attempts to gather

20   pentobarbital, other than what we have

21   discussed here today?

22   A.    No, I'm not.

23   Q.    And I do need to back up, I'm sorry.

24   I didn't -- I neglected to ask you:  This

25   conversation that you had with a member of

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 234 of 358 PageID #: 972

**Attachment 22**

1   TDOC staff regarding the supplier backing out

2   at the 11th hour, when did that occur?

3           MR. SUTHERLAND:  Are you asking

4   when the conversation happened?

5   BY MS. HENRY:

6   Q.    When did the conversation occur?

7   A.    Oh, it occurred months and months ago.

8   Probably -- I don't know a long -- a pretty

9   good while ago.  I would say probably a year,

10  maybe, or several months ago.  And it

11  occurred -- I was made aware of it very soon

12  after he was made aware that they would not

13  be able to obtain the -- the ingredients to

14  compound the source.

15  Q.    All right.  And so would you agree

16  with me that if it was several months ago,

17  maybe even a year ago, fair to say that that

18  conversation between you and your TDOC staff

19  member occurred prior to the Department

20  making a determination to add the three-drug

21  protocol using midazolam?

22  A.    Yes, I would think that would be a

23  safe assumption or a safe thing to say, that

24  it -- it occurred prior to the decision to go

25  to a three-drug protocol.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 235 of 358 PageID #: 973

**Attachment 22**

1   Q.    When was the decision to add the

2   three-drug protocol to the Lethal Injection

3   Manual made?

4   A.    I don't remember the exact -- the

5   exact date.  I had discussions with TDOC

6   staff, and the -- regarding the availability

7   of pentobarbital, midazolam and -- and the

8   vecuronium and the potassium chloride for a

9   three-drug protocol, and the decision was

10  made to go -- to add the three-drug protocol

11  as Option B.  But I don't remember the exact

12  date of when that decision was made.  But it

13  was made, and the protocol was drafted and

14  signed by me.

15  Q.    Was the -- well, the protocol was

16  adopted on January 8th, 2018.

17  A.    Right.

18  Q.    Can you estimate how close to

19  January 8th, 2018 the decision was made?

20  A.    I would say several weeks.  Maybe a

21  month or two before.  I -- again, that's just

22  speculation on my part.

23  Q.    So somewhere at the outset, about two

24  months?

25  A.    I'd say two -- yeah, possibly.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 236 of 358 PageID #: 974

Attachment 22

1    Q.      Okay.

2    A.      It wasn't a year before.

3    Q.      Okay.

4    A.      But it was within that time frame.

5    Q.      Okay.  The protocol that has been

6    provided to us contains Protocol A and

7    Protocol B.  Where within -- let me ask it

8    this way:  Is there a provision in the

9    written protocol that guides the discretion

10   of the Warden as to whether to choose

11   Protocol A or Protocol B?

12   A.      No, there is not.

13   Q.      Who makes the decision about whether

14   to utilize Protocol A or Protocol B?

15   A.      I do, the Commissioner.

16   Q.      And where is that written down?

17   A.      I'd have to look in -- in the

18   protocol.

19   Q.      Sure.  Go ahead.

20   A.      (Witness reviews document.)

21   Q.      And I see that your counsel has

22   helpfully guided you to a page of the

23   protocol.  What page is that?

24   A.      Page 34.

25   Q.      All right.  And what does Page 34 tell

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 237 of 358 PageID #: 975

**Attachment 22**

1  us?

2  A.    It's entitled "Chemicals Used in

3  Lethal Injection."

4       "The Department will use one of the

5  following protocols as determined by the

6  Commissioner.  Protocol A and Protocol B."

7  Q.    All right.  What will guide your

8  determination?

9  A.    Determination as to which protocol is

10  used?

11  Q.    Correct.

12  A.    Again, the availability of the drugs

13  currently.  We're talking about Protocol B

14  because we have basically exhausted efforts

15  with trying to find pentobarbital.  We

16  continue to search for pentobarbital, but I

17  have no reasonable expectation that we'll

18  find it, and the current process is set for

19  Protocol B to be the -- the method that's

20  used.

21  Q.    So I'm going to go back to that, but

22  let me ask you this question.

23  A.    Okay.

24  Q.    You said that we've exhausted but we

25  continue to look.  That seems contradictory

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 238 of 358 PageID #: 976

Attachment 22

1    to me.

2    A.      Well, it is contradictory, and it's

3    probably a bad choice of words.  Once you get

4    to a point where you have contacted hundreds

5    of suppliers, then you get to the point of

6    repeating yourself and calling people you've

7    already contacted and looking for new sources

8    or potential new sources.  But we're at that

9    point to where we're running out of options

10   as far as finding legal sources for

11   pentobarbital.

12           But I'm not as Commissioner saying we

13   stop the search for pentobarbital.  It's

14   still part of the protocol.  It's still an

15   option and we certainly would not want to

16   just wash our hands of that option.

17   Q.      If you had in your possession lethal

18   injection chemicals for Protocol A and

19   Protocol B at the same time, how would you

20   choose between whether to use Protocol A or

21   Protocol B?

22   A.      I would choose Protocol A.

23   Q.      Why?

24   A.      Well, it's -- one, it's a -- it's a

25   one-drug protocol.  And, also, you know,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 239 of 358 PageID #: 977

Attachment 22

1  there's been litigation on it.  I think it's

2  been -- the Courts have said that it's

3  Constitutional or whatever.  But my primary

4  would be pentobarbital if it's available.

5  But it's not available.

6  Q.    And you said your preference would

7  include because it's a one-drug protocol.

8  What about a one-drug protocol makes it

9  preferable?

10  A.    Well, for me personally as

11  Commissioner in my official capacity, to me a

12  one-drug protocol is probably simpler.

13  You're only pushing one drug.  You're not

14  pushing three.  It only requires one saline

15  flush.  And from my conversations, you know,

16  with individuals, I have -- just rather have

17  a -- I'd rather have the pentobarbital versus

18  the three-drug protocol.

19  Q.    And what does that mean by

20  conversations with individuals "I'd rather

21  have the pentobarbital"?

22  A.    Well, I've talked to -- I've talked to

23  people who have information regarding the

24  process with pentobarbital as a one-drug

25  protocol versus a three-drug protocol, and

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 240 of 358 PageID #: 978

**Attachment 22**

1   it's just my personal opinion and

2   professional opinion that I'd rather have a

3   one-drug protocol.

4   Q.      And not to belabor the point, sir, but

5   is that because the risk of pain and

6   suffering is less with the one-drug protocol

7   than a three-drug protocol?

8   A.      Well, I don't know that I -- I don't

9   know that I'm qualified to say.  I would say

10  that it makes the process less complicated as

11  far as the number of drugs, the number of

12  syringes that have to be prepared, and the

13  fact that it seems like that pentobarbital

14  would be an easier and certainly as effective

15  method as the three-drug protocol.

16  Q.      Under the protocol, 30 days prior to

17  an execution date, an inmate is provided with

18  a choice.  An inmate sentenced to death prior

19  to lethal injection being the default method

20  of execution in Tennessee, would be the

21  majority of our Plaintiffs.  They are

22  provided with a choice between lethal

23  injection or electrocution.  Does the

24  protocol provide for advising those inmates

25  which protocol will be utilized if they

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 241 of 358 PageID #: 979

**Attachment 22**

1   choose lethal injection?

2   A.      No, the protocol -- the protocol gives

3   an option of lethal injection or

4   electrocution.  And I -- for -- those inmates

5   sentenced before January 1st of '99 have the

6   option.  Those after -- of course, I mean,

7   you know that.  It's -- after that, it's

8   lethal injection is the primary method.

9   Q.      So is it fair to say, then, sir, that

10  it will be up to the Commissioner?  You, up

11  until the time of execution, you could change

12  whether it's Protocol A or Protocol B under

13  the Lethal Injection Manual?

14  A.      Well, I guess you could -- it's fair

15  to say that the option might be available,

16  but I would -- just let me clarify to say

17  that it's going to be based on the

18  availability of the drug.  And, again, I have

19  no reason to believe at this point that

20  there's a source of pentobarbital that I can

21  acquire for an execution that's coming forth

22  in Tennessee.  And the three-drug protocol,

23  we do have a source, and I do feel confident

24  that we'll have the drug and that that will

25  be the method that will be used going forth

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 242 of 358 PageID #: 980

**Attachment 22**

1   as far as lethal injection.

2   Q.     Has the Department of Correction been

3   served with a letter from the manufacturer of

4   midazolam asking that the midazolam be

5   returned?

6   A.     Yes.

7   Q.     And what was -- who received that

8   letter?

9   A.     I'm assuming my Legal team received

10  the letter, although it could have been

11  addressed to me as Commissioner.  I'm going

12  to make the assumption that that was routed

13  to the Legal team of the Department.

14  Q.     What action was taken upon the receipt

15  of that letter?

16  A.     We did not return the chemicals.

17  Q.     And why not?

18  A.     Because in my opinion we purchased

19  them legally, and we did not want to return

20  them.

21  Q.     When did you receive that letter?

22  A.     Months ago.  I don't remember the

23  exact month, but it was months ago.

24  Q.     What was the contents of the letter?

25  A.     I didn't read the entire letter.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 243 of 358 PageID #: 981

**Attachment 22**

1    Again, my Legal team briefed me on what the

2    request was, and asked for a decision

3    regarding are we going to return the

4    chemicals or not.

5    Q.    Having received a letter from the

6    manufacturer of the midazolam asking for the

7    return of their manufactured product, the

8    Department has made the decision to go

9    forward and purchase midazolam, knowing that

10   the manufacturer doesn't want it used?

11            MR. SUTHERLAND:  Asked and

12   answered.

13            MS. HENRY:  No, this is actually

14   moving forward to buy it again.

15   BY MS. HENRY:

16   Q.    It's not your -- you have some -- you

17   don't have any in your possession right now

18   that's not expired, right?

19   A.    Right.

20   Q.    And so you've received a letter from

21   the manufacturer telling you they don't want

22   it used in the execution, and now the

23   Department is going to willfully ignore that

24   letter?

25   A.    My intent is to purchase midazolam for

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 244 of 358 PageID #: 982

**Attachment 22**

1   future executions in Tennessee.

2   Q.      And do you believe that purchasing

3   midazolam in violation of distribution

4   agreements is legal?

5   A.      That would be a question I would have

6   to ask attorneys.  I'm assuming it's not

7   illegal, because it's -- I felt like if it

8   was illegal, I would not do it.

9   Q.      I'm going to move now to that portion

10  of the Court's order respecting our

11  deposition regarding the --

12              MR. KISSINGER:  Go ahead.

13  BY MS. HENRY:

14  Q.      -- on Page 20, the Deponent's

15  knowledge, if any, of the logistics of

16  administering and implementing how Protocol B

17  is followed, administered and implemented as

18  written, okay?

19  A.      Okay.

20  Q.      When Protocol B is administered, it is

21  administered using a number of syringes, as

22  you've stated, correct?

23  A.      Correct.

24  Q.      And there are a total of nine

25  syringes; is that correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 245 of 358 PageID #: 983

**Attachment 22**

1    A.     That's correct.

2    Q.     How much time elapses between the

3    injection of the first syringe and the second

4    syringe?

5    A.     I'm not sure there's a specific time,

6    so I wouldn't know.

7    Q.     What is the training for how quickly

8    the syringe is supposed to be injected?

9    A.     It's -- it's my understanding that

10   it's -- and I have never heard of a specific

11   time as far as minutes or seconds in regards

12   to the administering of the chemicals.  It's

13   my understanding that it's a slow, steady

14   push of the -- of the chemical, observing the

15   IV site and the flow of the chemical in

16   through the catheter.

17   Q.     And the observing of the IV site is

18   performed by the Executioner using the pan

19   tilt to zoom the camera in?

20   A.     Yes.

21   Q.     And so there's a camera that is

22   positioned over the injection site that will

23   project video into the execution -- the

24   Executioner's room?

25   A.     Correct.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 246 of 358 PageID #: 984

**Attachment 22**

1    Q.      And I'm going to get back to that in a

2    minute.  But as the Executioner injects the

3    first syringe, which is midazolam, how much

4    time does he wait between the first push of

5    midazolam and the second push of midazolam?

6    A.      As the protocol is written, there's

7    not a specific time.  When he finishes one

8    syringe, he gets the other syringe, prepares

9    it to be pushed and then pushes the second

10   syringe of midazolam.

11   Q.      So is it done basically one right

12   after the other?

13   A.      Correct, as I understand it, yes.

14   Q.      Have you personally observed the

15   Warden practice the consciousness check

16   that's in the lethal injection protocol?

17   A.      I have personally witnessed him

18   perform the conscious check during a

19   training.

20   Q.      Okay.  One of the band practices?

21   A.      Yes.

22   Q.      He testified yesterday that the

23   consciousness check takes him about 10 to 12

24   seconds.  Would you agree with that estimate?

25   A.      I'm not sure.  It would probably take

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 247 of 358 PageID #: 985

**Attachment 22**

1  -- I -- I'm assuming a matter of seconds.  I

2  don't think it would take three or four

3  minutes, but, yeah.

4  Q.    And the consciousness check does not

5  involve pinching or twisting of the skin; is

6  that correct?

7  A.    No.

8  Q.    Is the -- during these training

9  sessions, these band practices, is there a

10 person fill- -- fulfilling the role of Lethal

11 Injection Recorder?

12 A.    I'm not sure that in all practice

13 sessions that there are -- that there is a

14 person in place to record.  I'm not sure

15 about that.

16 Q.    If there are recording sheets

17 produced, would it be fair to assume that the

18 person who wrote the times in is the person

19 who is assigned to --

20 A.    Yes.

21 Q.    -- be the Lethal Injection Recorder?

22 A.    It would be, yes.

23 Q.    Okay.  During the practice sessions,

24 does the Execution Team practice the lethal

25 injection Protocol B exactly as it is written

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 248 of 358 PageID #: 986

**Attachment 22**

1  in the protocol?

2  A.      Yes, to the best of my knowledge, yes.

3  Q.      And so they actually inject -- there

4  are actually nine injections?

5  A.      Correct.

6  Q.      Would it be fair for us to assume,

7  then, that the times that are listed by the

8  Lethal Injection Recorder are an accurate

9  reflection of how long it takes the

10 Executioner to insert -- to push nine

11 syringes?

12 A.      Yes.  Again, assuming they pushed all

13 nine syringes, yes, it would be.

14 Q.      And that would include the time needed

15 for the consciousness check?

16 A.      Yes.

17 Q.      And would that be the best evidence of

18 -- well, talking to the Executioner would be

19 the best evidence.  But absent talking to the

20 Executioner, would those recordings made by

21 the Lethal Injection Recorder, of the times

22 in which the syringes are pushed, would that

23 be the best evidence of the time that elapses

24 between the pushing of the chemical?

25 A.      So, yeah, absent talking to somebody

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 249 of 358 PageID #: 987

**Attachment 22**

1   that's directly involved, just for an

2   example, the -- during the last full-scale

3   process that we had, knowing -- I don't know

4   that they pushed all of the -- the syringes

5   in that case because obviously you've got an

6   individual there that's a member of the team

7   that has the IVs hooked up and you're pushing

8   that much saline, so....

9        But absent anybody's personal

10  knowledge of being there and witnessing it,

11  yes, that would be the -- the most accurate

12  reflection that's available.

13  Q.    And if there is a time listed next to

14  each individual syringe as though it had been

15  pushed at that particular time, can we

16  presume that there was actually a push of the

17  syringe?

18  A.    I think that's a safe assumption, yes.

19  Q.    The Lethal Injection Recorder wouldn't

20  just be making up times?

21  A.    No, I would hope not.

22  Q.    And just to close down the record on

23  this -- and I only have one full copy, but

24  Mr. Sutherland saw this yesterday.

25             MS. HENRY:  I'm going to ask the

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 250 of 358 PageID #: 988

**Attachment 22**

1  court reporter to mark this Deposition

2  Exhibit V.

3  BY MS. HENRY:

4  Q.     And after she marks it, I'm going to

5  hand it to you to look at.

6  A.     Okay.

7          (Exhibit V was marked.)

8  BY MS. HENRY:

9  Q.     And is there a cover letter on

10  Deposition Exhibit V?

11  A.     It is.

12  Q.     And is that cover letter signed by

13  Debra Inglis?

14  A.     It is.

15  Q.     And who is it addressed to?

16  A.     Kelley Henry.

17  Q.     Okay.  And --

18  A.     And Janet Santana.

19  Q.     And does that appear to be a cover

20  letter regarding attached -- the attachment

21  of documents pursuant to a Tennessee Public

22  Records Request?

23  A.     It does.

24  Q.     And what is the date of that letter?

25  A.     April the 2nd, 2018.

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 251 of 358 PageID #: 989

Attachment 22

1   Q.     All right.  If you could turn to what

2   is marked Page 33 of that production.

3          MS. HENRY:  And, Scott, I do have

4   the relevant portions (tendering).

5          MR. SUTHERLAND:  Thank you.

6          THE WITNESS:  Okay.

7   BY MS. HENRY:

8   Q.     And do you see there where it says at

9   the top "Protocol B Lethal Injection Chemical

10  Administration Record"?

11  A.     Uh-huh, I do.

12  Q.     And it has inmate name John Doe, Date,

13  2/20/18, correct?

14  A.     I do, correct.

15  Q.     Does that appear to be the Lethal

16  Injection Chemical Administration Record that

17  would be used in the case of a three-drug

18  execution protocol?

19  A.     Yes, it does.

20  Q.     And does that document have times

21  entered next to each syringe?

22  A.     It does.

23  Q.     And does it appear that all nine

24  syringes were pushed?

25  A.     It appears so, yes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 252 of 358 PageID #: 990

**Attachment 22**

1    Q.     And does it appear that the pushing of

2    the syringes began at 1920 hours?

3    A.     Correct.

4    Q.     And ended at 1929?

5    A.     Correct.

6    Q.     And so does it also appear that three

7    minutes elapsed between the pushing of

8    Syringe 1 and Syringe 4?

9    A.     Correct.

10   Q.     Thank you.

11          That's all we need with that one.

12          Now, with respect to Protocol B and

13   the pushing of the lethal injection drugs, do

14   you have any knowledge of how long it takes

15   midazolam to reach its peak effect?

16   A.     No, I don't.

17   Q.     Do you know whether the Department of

18   Corrections has access to an EEG machine?

19   A.     I do not.

20   Q.     Is it likely that DeBerry Special

21   Needs facility has an EEG machine?

22          MR. SUTHERLAND:  Asked and

23   answered.

24          THE WITNESS:  I don't know.

25   BY MS. HENRY:

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 253 of 358 PageID #: 991

**Attachment 22**

1    Q.      And do you know what equipment is

2    available in the Riverbend Maximum Security

3    Institution infirmary?

4    A.      I don't know what all equipment is

5    there.  I know some equipment, but I do not

6    know all the equipment that's available.

7    Q.      There is an infirmary at Riverbend,

8    correct?

9    A.      Yes.

10   Q.      And individuals can go there if

11   there's an acute health crisis?

12   A.      Yes.

13   Q.      And then if the crisis is something

14   that the infirmary can't take care of,

15   they'll go over to Special Needs or an

16   outside hospital, depending on the need,

17   correct?

18   A.      Depending on the order of the

19   physician, yes, or the midlevel.

20   Q.      If Special Needs can take care of it,

21   you prefer the inmate to go to Special

22   Needs --

23   A.      Yes.

24   Q.      -- for security purposes?

25   A.      Yes.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 254 of 358 PageID #: 992

Attachment 22

1  Q.      And Special Needs is a full-scale

2  hospital?

3  A.      Yes.

4  Q.      And does treat individuals who have

5  heart problems?

6  A.      Correct.

7  Q.      Why does the protocol not have an EEG

8  machine available in the execution chamber?

9  A.      I don't know.

10  Q.      Are you familiar with the phrase

11  "BIS"?

12  A.      No, I'm not.

13  Q.      Was there -- is there any provision in

14  the Tennessee lethal injection protocol that

15  permits the monitoring of an individual's --

16  of the inmate's brain activity?

17  A.      No, there's not.

18  Q.      Why not?

19  A.      I don't know.

20  Q.      If the Court ordered the Department of

21  Correction to establish a machine for

22  monitoring the brainwaves of an executed

23  inmate, would you be willing to do so?

24  A.      With a -- with a final Court order

25  from an Appellate Court that ordered that,

www.huseby.com         Huseby, Inc.  Regional Centers         800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 255 of 358 PageID #: 993

**Attachment 22**

1   yes, absolutely.

2   Q.    And I guess what I'm getting at is

3   would that violate the safety or the security

4   of the institution, to have a machine there

5   monitoring brainwaves?

6   A.    Not that I'm aware of.

7   Q.    And is that something that would be

8   beyond the financial cost abilities of the

9   Department of Correction --

10  A.    I'm not familiar with what the cost is

11  for one of those, but I would assume probably

12  not.

13  Q.    Okay.  I'm going to ask the same

14  question with respect to an EKG, something

15  that monitors the heart.

16  A.    Same -- same answers.  I -- again, if

17  it was ordered, Court-ordered, yes.  And the

18  cost, I wouldn't think would be prohibited --

19  it wouldn't be cost-prohibited.

20  Q.    Okay.  And is the reason that it -- we

21  don't have an EEG or an EKG because it just

22  wasn't considered?

23  A.    I don't know that it was considered,

24  but there never has been one.  That doesn't

25  necessarily mean one thing or the other,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 256 of 358 PageID #: 994

**Attachment 22**

1  other than we have a physician there to

2  determine death, to pronounce death.  But as

3  far as why there's not one or hasn't been

4  one, again, I don't know.

5  Q.    According to the protocol, once IV

6  access has been obtained, isn't it true that

7  the physician waits outside the execution

8  chamber?

9  A.    Correct.

10  Q.    And he's not called back into the

11  execution chamber, according to the protocol,

12  until after all nine syringes have been

13  administered; is that correct?

14  A.    Correct.

15  Q.    The physician does not stay in the

16  room to monitor whether or not the inmate has

17  reached a plane of general anesthesia,

18  correct?

19  A.    Correct.

20  Q.    And he's not in the room, nor does he

21  have visual observation of the inmate to

22  determine whether the inmate has awakened,

23  correct?

24  A.    Correct.

25  Q.    I'm going to ask a question directly

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 257 of 358 PageID #: 995

Attachment 22

1  from the Court's order so that I'm super

2  specific, okay?

3  A.     Okay.

4            MR. SUTHERLAND:  Where are we?

5            MS. HENRY:  Page 20.

6  BY MS. HENRY:

7  Q.     Is there a person -- and do not reveal

8  the identity -- who is designated to

9  determine whether Plaintiffs are aware and

10  experiencing unnecessary severe pain and

11  suffering from the vecuronium bromide and

12  potassium chloride during their execution?

13  A.     The Warden that does the conscious

14  check prior to the vecuronium and the

15  potassium being administered.

16  Q.     So is the Warden the only person who's

17  designated to fulfill this role?

18  A.     Yes.

19  Q.     And does he fulfill this role by

20  performing the consciousness check?

21  A.     Yes.

22  Q.     Does he fulfill this role in any other

23  way other than the consciousness check?

24  A.     Well, he performs the consciousness

25  check, but obviously if there was -- I don't

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 258 of 358 PageID #: 996

**Attachment 22**

1  want to make assumptions, but if -- if the

2  consciousness check were to pass and the

3  inmate/offender was determined to be

4  unconscious and then something happened that

5  would cause him to think that that's -- has

6  changed, something has changed, he would

7  certainly still have the option of going to

8  the other set of chemicals.  But that's, you

9  know -- I hope I answered your question.

10  Q.    Sure.  I think you did.

11        What training does the Warden receive

12  for determining whether something has gone

13  wrong that would cause him to switch to the

14  other set of chemicals?

15  A.    Just the training that he receives

16  there as his -- in his role as Warden to

17  check for a response from the offender during

18  the consciousness check, the three checks

19  that he does.

20  Q.    So it's really just the consciousness

21  check?

22  A.    Correct.

23  Q.    And if the consciousness check doesn't

24  actually confirm that the inmate is insensate

25  to pain, then the Warden doesn't have any

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 259 of 358 PageID #: 997

Attachment 22

1  other check to fall back on; is that correct?

2  A.     Let me make sure I understand your

3  question.  If the Warden determines that the

4  inmate is not -- is still conscious or not

5  insensate -- what was -- how did you

6  pronounce that?

7  Q.     Insensate.

8  A.     Insensate to pain, the option he has

9  is to move to the secondary set of chemicals

10  and start the process over.

11  Q.     Is it your understanding that once an

12  inmate passes the consciousness check with

13  the Warden, that the inmate cannot reawaken?

14  A.     It's my understanding that once he

15  passes the consciousness check, that we

16  proceed with the second chemicals, and that

17  the process continues on.  I -- I don't know

18  if I've answered your question.

19  Q.     And the second set of chemicals is the

20  vecuronium, the paralytic, correct?

21  A.     Correct.

22  Q.     Which paralyzes the inmate?

23  A.     Correct.

24  Q.     And so if the vecuronium causes the

25  inmate to wake up from the sedation, there

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 260 of 358 PageID #: 998
**Attachment 22**

1   would be no way for the Warden to observe

2   that fact, correct?

3   A.      I --

4   Q.      According to the protocol?

5   A.      That's probably -- well, you know,

6   again, if the inmate's laying there and he --

7   his eyes pops [sic] open and it's obvious

8   that he's -- he's become conscious, that

9   would be a clear sign.

10          I -- but, again, I feel kind of --

11  it's a medical question that probably a

12  medical professional probably should answer.

13  But from my laymen's terms, I mean,

14  there's -- there's indications that if the

15  offender was to become conscious again after

16  passing a consciousness check, that the

17  Warden would know that and could move onto

18  the secondary set of chemicals.

19  Q.      There's a lot in there.  And I agree

20  with you that a medical professional is

21  required, but there's no medical professional

22  in that room.

23  A.      That's correct.

24  Q.      So the person who is responsible is

25  the Warden, correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 261 of 358 PageID #: 999

**Attachment 22**

1  A.     Correct.

2  Q.     And he has no medical training,

3  correct?

4  A.     Correct.

5  Q.     And the vecuronium paralyzes the

6  muscles, correct?

7  A.     Correct.

8  Q.     So the Warden, without medical

9  training and without a monitor, would be

10 unable to recognize that the inmate has

11 reawakened, correct?

12 A.     Correct.

13 Q.     Are there any contingency plans other

14 than pushing the second set of chemicals in

15 the event the Plaintiffs are aware and

16 experiencing unnecessary and severe pain from

17 the vecuronium bromide and the potassium

18 chloride during their executions?

19 A.     No, not in the protocol.

20 Q.     Are there any other contingency plans

21 that aren't in the protocol?

22 A.     Other than -- not that I'm aware of,

23 no.

24 Q.     And I believe you've testified that if

25 the inmate was not unconscious, "unconscious"

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 262 of 358 PageID #: 1000

Attachment 22

1  being your word, not the Plaintiffs' word.

2  You understand we --

3  A.    I understand.

4  Q.    -- think there's a difference between

5  unconsciousness and insensate?

6  A.    Okay.

7  Q.    But using the protocol's terms of

8  "unconscious" and if it's determined that

9  they are not unconscious after the second

10  administration of midazolam, then you've

11  testified you would call off the execution at

12  that point?

13  A.    Yeah.  The Warden -- yes, the Warden

14  would contact me, and I would delay the

15  execution, call off the execution.

16  Q.    What if you had additional drugs

17  available to you in the armory, would you

18  continue the execution later that night?

19  A.    No.

20  Q.    Are there drugs available to the

21  physician who's waiting in the sally port

22  area to ameliorate the effects of the drugs

23  that have been given to the inmate from the

24  -- in the administration of the first and

25  second drugs of midazolam, should the

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 263 of 358 PageID #: 1001

**Attachment 22**

1  midazolam not work?

2  A.    No.

3  Q.    Are you aware of the harmful and toxic

4  effects of midazolam itself when given in a

5  bolus dosage -- can cause to an inmate?

6  A.    No.

7  Q.    Have you asked anyone about the impact

8  on the human body of giving a bolus dose of

9  midazolam?

10  A.    No.

11        And what do you mean by "bolus dose,"

12  I'm sorry.

13  Q.    The massive quantity of midazolam

14  that's being injected.

15  A.    I see.

16  Q.    That's -- they refer to that as a

17  bolus dose.

18  A.    Okay.

19  Q.    That's a large amount.

20  A.    Okay.

21  Q.    Have you asked anybody about what

22  effect that's going to have on the human

23  body, separate and apart from the other two

24  drugs?

25  A.    Other than the effect of it renders

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 264 of 358 PageID #: 1002

**Attachment 22**

1   the individual unconscious.  That's basically

2   it.

3   Q.     So you haven't discussed with anyone

4   the toxicity of midazolam itself and the pain

5   that it can cause to an inmate?

6   A.     No.

7   Q.     Has the Execution Team been trained to

8   recognize the signs of a paradoxical effect?

9   A.     What's a paradoxical effect?

10  Q.     So a paradoxical effect with midazolam

11  is a known phenomenon where instead of

12  rendering an inmate sedated, which is what

13  midazolam is used for, sedation, instead, it

14  renders them agitated and hyperalert and

15  aware.

16        That you didn't know what a

17  paradoxical effect is suggests to me that

18  you've never heard that phrase before today?

19  A.     I may have heard it, but I don't know

20  that I remembered the exact definition of it

21  or your definition of it.

22        To answer your question, again, the

23  Warden for the -- to do the conscious check,

24  I would assume and think that it's a

25  reasonable -- or assumption that if he does a

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 265 of 358 PageID #: 1003

**Attachment 22**

1  conscious check and the inmate is

2  hyper-exaggerated or agitated that he would

3  know that and say that the inmate is not

4  conscious.

5  Q.     Or that he --

6  A.     Or that he is conscious.

7  Q.     Right.

8  A.     I'm sorry, yes.

9  Q.     What safeguards, if any, are in place

10 to deal with a paradoxical effect?

11 A.     Nothing other than the fact that the

12 -- the offender is secured.  He is secured to

13 the gurney and -- but there's none that I'm

14 aware of.

15 Q.     I want to turn now to asking you some

16 questions about Counts 4 and 5 of our

17 Complaint that have survived the Motion to

18 Dismiss, okay?

19 A.     Okay.

20 Q.     We have made allegations respecting

21 access of attorneys to the Courts during an

22 execution, should an emergency arise.  And so

23 as the Commissioner of Correction, I just

24 want to ask you some questions related

25 basically to activities that attorneys are or

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 266 of 358 PageID #: 1004

**Attachment 22**

1   are not allowed to engage in.

2          It is my understanding that the

3   protocol allows for one Defense Counsel

4   witness; is that correct?

5   A.     I believe that's correct.

6   Q.     Why is the inmate limited to one

7   Defense Counsel witness?

8   A.     Well, the number of people that's in

9   the area, I -- there's -- it's -- it's

10  crowded.  And -- and I know that we have to

11  limit the number of individuals in that area.

12  That's basically it.

13  Q.     And the Defense Counsel witness is

14  required to observe in the official witness

15  room; is that correct?

16  A.     Yeah, the -- the counsel -- legal

17  counsel for the offender and I believe the

18  Attorney General is in the execution chamber

19  for a period of time until right before -- if

20  I'm remembering correctly -- after the IVs

21  have been inserted, they are -- they leave

22  the execution chamber and go to the witness

23  area to observe the execution.

24  Q.     So the Defense Counsel witness is

25  permitted to be present during the insertion

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 267 of 358 PageID #: 1005

1  of the IVs; is that correct?

2  A.      I believe that's correct.

3  Q.      And when they are present during the

4  insertion of the IVs, they are able to

5  observe those members of the Execution Team

6  who are inserting the IV, correct?

7  A.      Yes.

8  Q.      And you feel enough confidence in

9  Defense Counsel witnesses that you can trust

10 them to not identify those members of the

11 Execution Team who have inserted the IVs,

12 correct?

13 A.      I would hope so.

14 Q.      There have been six executions in

15 Tennessee, correct?

16 A.      I believe that's correct.  I --

17 Q.      Are you --

18 A.      -- I don't know exactly how many.

19 Q.      Do you know of any Defense Counsel

20 witness who has observed an execution who has

21 later revealed the identities of the

22 Execution Team members that he or she has

23 observed?

24 A.      Not that I'm aware of.

25 Q.      I actually should say "he."  There's

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 268 of 358 PageID #: 1006

**Attachment 22**

1  never been a she.

2        After the Defense Counsel witness and

3  the Attorney General witness exit the room,

4  they go to the official witness room,

5  correct?

6  A.      Correct.

7  Q.      Along with the media, correct?

8  A.      Correct.

9  Q.      And I'm going to show you, just for

10  convenience purposes, out of my notebook

11  Page 10 of the January 8, 2018 lethal

12  injection protocol.  Does that appear to be a

13  diagram of the -- well, what's that a diagram

14  of?

15  A.      Yeah, it appears to be the death watch

16  area and the death chamber, along with the

17  garage and other areas in that building.

18  Q.      So surrounding the execution chamber,

19  there appear to be a number of rooms where

20  there are windows into the execution chamber;

21  is that correct?

22        And could you identify what those

23  rooms are?

24  A.      Yes.  Here (indicating).

25  Q.      And what is that, when you say "here,"

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 269 of 358 PageID #: 1007

Attachment 22

1  what is that?

2  A.      That's the official witness room as

3  identified in this diagram.  And then the

4  victim's family room here (indicating) in

5  this location with a window directly in front

6  of the gurney.

7  Q.      Adjacent to the official witness room,

8  there appears to be an unidentified room; is

9  that correct?

10  A.      That's correct.

11  Q.      What is that room?

12  A.      That's an electrical room.

13  Q.      Okay.  So there's electrical equipment

14  in there?

15  A.      There is.

16  Q.      Is there a window from that room into

17  the execution chamber?

18  A.      No, there's not.

19  Q.      Okay.  Within the official witness

20  room, is there a telephone?

21  A.      I don't think so.  And, again, it

22  could be, but I don't think so.

23  Q.      Okay.

24  A.      Sorry.  That's your pen.

25  Q.      No, no worries.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 270 of 358 PageID #: 1008

Attachment 22

1          If a problem were to develop -- if a

2   Defense Counsel witness were to observe what

3   he or she believed to be a violation of his

4   or her client's Constitutional rights, once

5   they are in the official witness room, what

6   recourse do they have to contact the Court to

7   advise the Court of what they believe to be a

8   Constitutional violation?

9   A.     I don't know of any immediate method

10  that they would have, other than the

11  individuals in that room, the Attorney

12  General -- or the people from their office.

13  I don't know of any direct line that would be

14  available for a call --

15  Q.     Would --

16  A.     -- unless there was -- again, unless

17  there was a phone in there with a line.  And

18  I don't know.  I'd have to check on that.

19  Q.     Would it violate the safety and

20  security of the institution to place a

21  landline in the official witness room that

22  would allow Defense Counsel to contact the

23  Court?

24  A.     I wouldn't think so.  I think the

25  Department would be willing to work with, you

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 271 of 358 PageID #: 1009
**Attachment 22**

1  know, anyone to try to make sure people have

2  access to their -- or you would have -- or

3  the attorneys would have access or whoever.

4  But I don't know that there's not a phone

5  there.  I would need to check that.

6  Q.    So I will tell you that the Warden

7  testified yesterday that there's a phone

8  there, but he doesn't know if there's an

9  outside line.

10  A.    Okay.

11  Q.    But the Warden's testimony was that he

12  wouldn't permit Defense Counsel to call

13  outside the institution.  But as

14  Commissioner, you could override that

15  decision, correct?

16  A.    Yes.

17  Q.    If Defense Counsel needed to leave the

18  execution chamber in order to contact the

19  Court, would they be permitted to leave the

20  -- the official witness room?

21  A.    Yes.

22  Q.    How far -- how long would it take the

23  lawyer to exit the official witness room and

24  reach the administration building at

25  Riverbend Maximum Security Institution?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 272 of 358 PageID #: 1010

Attachment 22

1    A.      Approximately, I would say, maybe two

2    minutes, a minute, two minutes.

3    Q.      Would they need to have an escort?

4    A.      Yes.

5    Q.      And would they need to wait for that

6    escort to arrive to take them?

7    A.      Yes.

8    Q.      So though it's --

9    A.      Well, assuming there was -- there

10   would not be an escort there available

11   somewhere onsite.

12   Q.      And there's no provision in the

13   protocol for that to happen?

14   A.      There is not provision, no.

15           I would say that I'm assuming that

16   you're saying you would have to go up front

17   to use the phone.  If there's a phone there

18   that has access to a switchboard at the

19   facility, a call could be placed.  Just

20   because it's not a dedicated outside line --

21   they're available.

22   Q.      Right.

23   A.      And, again, I -- personally I wouldn't

24   be opposed to working to try to make sure

25   that the attorneys had access to make a call

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 273 of 358 PageID #: 1011
Attachment 22

1   if they needed to make a call.

2   Q.      And would that include installing a

3   telephone with those capabilities if one is

4   not there currently?

5   A.      Uh-huh, it -- it could include that or

6   other options.

7   Q.      Would another option include allowing

8   the attorneys to bring a cell phone with them

9   to the official witness room?

10  A.      I don't know that I would want someone

11  bringing a cell phone in.  It's possible that

12  -- it's possible that the Department could

13  provide a phone that would be available to be

14  used.

15  Q.      So the Department -- if I'm hearing

16  you right, maybe the Department could provide

17  an approved cell phone as opposed to a

18  personal cell phone?

19  A.      Yeah, I -- I would certainly not be

20  opposed in any way to providing the attorneys

21  access to communications that they would need

22  to do their job.

23  Q.      Thank you.

24          It is 4:20, and we've been going five

25  hours and 11 minutes.  We're going to go off

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 274 of 358 PageID #: 1012

**Attachment 22**

1   the record and I'm going to consult with my

2   cocounsel and then we're going to wrap up,

3   okay?

4   A.     Okay.

5          (Brief recess observed.)

6   BY MS. HENRY:

7   Q.     Okay.  It's 4:34, and we're back on

8   the record.  Let me start my timer again.

9          Really, just a few follow-up,

10  clarifying questions.

11         Commissioner, would it be possible for

12  the Department to make provisions for two

13  Defense Counsel witnesses to be present

14  during an execution so that if something goes

15  wrong, one person could contact the Court

16  while the other person could remain

17  observing?

18  A.     I think that's something we could

19  consider.

20  Q.     Okay.  Thank you.

21         Earlier I asked -- you mentioned the

22  Executioner watching the injection site, the

23  IV injection site, through the pan, zoom,

24  tilt camera.  Do you know whether or not it

25  would be possible to run a separate video

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 275 of 358 PageID #: 1013

**Attachment 22**

```
 1   line into the official witness room so that
 2   the attorneys could observe the IV injection
 3   site during an execution?
 4   A.     That's, as you've said -- is currently
 5   not available.  And at this point, I'm not
 6   sure I could do that or that I would do that.
 7   Q.     Okay.  And is -- for what reason?
 8   A.     Well, I would just say there's more
 9   people in that area than just the counsel for
10   the -- for the offender and the Attorney
11   General.  And it's something that I would
12   have to consider and talk to my Legal team
13   about.  And I would question whether or not
14   it's -- it's really necessary.  But, again,
15   it's something that I -- I don't think I
16   would be prepared right now to give you a
17   final answer on that.
18   Q.     I just want to make sure I'm
19   understanding the answer is that your
20   concerns aren't so much about safety and
21   security of the institution, but more about
22   emotional harm that could --
23   A.     Well, I would have --
24   Q.     -- come from observing that?
25   A.     -- different concerns.  I see that --
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 276 of 358 PageID #: 1014

**Attachment 22**

1  there's a multitude of issues that I would

2  have to consider as the Commissioner in

3  conjunction with consultation with my

4  attorneys, and -- and with the people of the

5  Department as well as the people at the

6  facility --

7  Q.      Okay.

8  A.      -- before I could give you a definite

9  answer on that.

10  Q.      Okay.  Would it be possible to -- not

11  whether it would be advisable or not.  Is it

12  physically possible within the institution to

13  connect such wiring and install a monitor?

14  A.      I'm assuming that it is physically

15  possible, although I would have to confirm

16  that with our maintenance and technical folks

17  at the facility.  But I'm -- I'm sure

18  almost -- in today's age, almost anything is

19  possible.

20  Q.      Would it be possible to mount a camera

21  in the Executioner's room in such a way that

22  -- and not whether you would approve it, but

23  if it's possible -- to mount a camera in such

24  a way that Defense Counsel would be able to

25  observe the Executioner push the syringes

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 277 of 358 PageID #: 1015

Attachment 22

1   without showing the face of the Executioner?

2   A.      I'm not sure that that's possible.

3   Q.      And why not?

4   A.      I mean, there's movement in that room.

5   Depending on the position of the Executioner,

6   depending on what happened in the room that

7   would cause him to move or to bend down or to

8   shift, I -- again, I -- it's something that,

9   you know, if you're asking me is it possible,

10  it's -- I'm sure that it's possible.  I don't

11  know that it's something that I would want to

12  do without being forced to do.

13  Q.      Okay.  We have been at this since 9:30

14  this morning.  It is 4:40, and five hours and

15  15 minutes into questioning, so I know it's

16  kind of hard to say think back over the whole

17  day and if there is something you'd like to

18  change, but since we aren't -- we may not

19  have another opportunity to get together and

20  discuss these issues, is there an answer that

21  you gave today that you would like to go back

22  and modify, add to, or change?

23  A.      Not that I'm aware, no.  Not that I

24  recall.

25  Q.      I know from our deposition of Mr. Mays

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 278 of 358 PageID #: 1016

**Attachment 22**

1  yesterday that the Attorney General's Office

2  does not wish to waive signature, so we will

3  provide you with a copy and ask you to review

4  your deposition and make any -- you can't

5  change what you said, but if there are

6  typographical errors, you can definitely

7  change them.

8  A.     Sure.

9  Q.     And in that deposition, there'll be a

10  list of the things that you agreed to go back

11  and talk to General Counsel -- and we'll just

12  ask -- I'm not going to try and repeat those

13  right now, because I might get it wrong.

14  A.     Okay.

15  Q.     So we'll just ask you to review those

16  materials that you would be on the record to

17  look for and to provide those through

18  Mr. Sutherland.

19          At this point, Plaintiffs don't have

20  any further questions.  We might have some

21  follow-ups to anything Mr. Sutherland or Mr.

22  -- Ms. Davis wish to ask.

23              MS. HENRY:  Any questions?

24              MR. SUTHERLAND:  I don't have any

25  questions.

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 279 of 358 PageID #: 1017

Attachment 22

```
 1   BY MS. HENRY:

 2   Q.      Thank you very much for your time.   It

 3   was a pleasure meeting you.   We will take our

 4   one certified question to the Court, and if

 5   there is a need to have further discussions,

 6   Mr. Sutherland will be in contact with you to

 7   schedule that.

 8           Thank you.

 9   A.      Thank you.

10               MS. HENRY:   We're off the record

11   at 4:41.

12               FURTHER DEPONENT SAITH NOT.

13               (Proceedings concluded at

14   4:41 p.m.)

15

16

17

18

19

20

21

22

23

24

25
```

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 280 of 358 PageID #: 1018

**Attachment 22**

1               REPORTER'S CERTIFICATE

2               I certify that the witness in the

3    foregoing deposition, TONY PARKER, was by me

4    duly sworn to testify in the within entitled

5    cause; that the said deposition was taken at

6    the time and place therein named; that the

7    testimony of said witness was reported by me,

8    a Shorthand Reporter and Notary Public of the

9    State of Tennessee authorized to administer

10   oaths and affirmations, and said testimony,

11   Pages 8 through 280 was thereafter

12   transcribed into typewriting.

13              I further certify that I am not of

14   counsel or attorney for either or any of the

15   parties to said deposition, nor in any way

16   interested in the outcome of the cause named

17   in said deposition.

18              IN WITNESS WHEREOF, I have hereunto

19   set my hand this 8th day of June 2018.

20

21

22

23              *Carissa L. Boone*

24   _____

25              Carissa L. Boone, LCR No. 382
                My License Expires:  6/30/2018

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 281 of 358 PageID #: 1019
**Attachment 22**

```
 1                    E R R A T A

 2
          I, TONY PARKER, having read the
 3    foregoing deposition, Pages 8 through 280,
      taken June 5, 2018 do hereby certify said
 4    testimony is a true and accurate transcript,
      with the following changes (if any):
 5

 6    PAGE  LINE     SHOULD HAVE BEEN        REASON

 7    ____  ____   _____  _____

 8    ____  ____   _____  _____

 9    ____  ____   _____  _____

10    ____  ____   _____  _____

11    ____  ____   _____  _____

12    ____  ____   _____  _____

13    ____  ____   _____  _____

14    ____  ____   _____  _____

15    ____  ____   _____  _____

16    ____  ____   _____  _____

17    ____  ____   _____  _____

18    ____  ____   _____  _____

19    ____  ____   _____  _____

20           _____
             Tony Parker
21

22

23
      _____
24    Notary Public

25    My Commission Expires: _____
```

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 282 of 358 PageID #: 1020

**Attachment 22**

---

**1**

**1**  64:16
81:5 87:2
91:16
130:24
132:5
136:8
143:8,21
182:22
183:3,22
191:1
253:8

**10**  169:5
195:17
221:1,11
247:23
269:11

**10-4**  211:1

**10-7-503**
47:21

**100**  195:18
215:22
216:1
217:18
223:17

**10:12**  174:20

**10:39**  74:17

**10:41**  214:9

**10G**  221:14

**11**  195:23
274:25

**112**  62:3

**11:00**  80:7
216:21

**11:01**  80:16

**11th**  117:18
228:19
230:13,21,
22 235:2

**12**  141:5
197:6
247:23

**12:00**  139:4

**12:15**  16:15

**12:30**  16:15

**12:58**  142:11
174:16

**12th**  76:4

**13**  112:18
198:21

**14**  34:22
113:3

**15**  112:23
127:17
204:25
206:3
278:15

**15th**
127:11,19,
20 128:18
133:21
213:22

**16**  206:13

**16th**  130:13

**17**  191:1

**18**  117:24
150:11

**18th**  116:25
117:14
134:19

**19**  191:12
209:7,16,
24 210:2

**19-year-old**
16:4

**1920**  253:2

**1929**  253:4

**1:02**  176:18

**1:15**  139:6

**1:16**  139:12

**1:17**  139:12

**1:39**  173:18

**1st**  132:9
133:11,23
135:8
136:17
157:14
242:5

---

**2**

**2**  47:24
130:24
143:14
183:5,11,
21 184:3

**2/20/18**

**252:13**

**20**  74:18
107:18
114:22
150:23
154:15
169:5
181:22
210:24
245:14
258:5

**2007**  42:6

**2009**  131:24

**2013**  22:10,
14 188:21

**2014**
182:13,20
185:2

**2017**  19:5
49:16
134:19
140:3
141:15
142:11,21
143:25
145:9
146:12,20
149:3
151:6
157:14
164:2
168:11
173:13,18
174:8
177:10,12
185:12

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 283 of 358 PageID #: 1021

**Attachment 22**

186:14
187:7,14
188:2,4,25
189:2,4,10
191:9
192:4
193:18
194:19
210:4,7,21
213:22
214:6,9
215:20
216:14,21
217:22

**2018** 19:2
46:25 47:5
49:7,10,14
56:7,10
59:19
62:1,21
63:5,11,13
64:1 74:16
92:3 97:14
100:3,12,
20 102:19
116:25
117:6,14,
18,24
118:4
127:12,17,
19,20
128:18
132:9
133:21,23
135:8,11
136:9
137:19
140:22

141:18
143:11,20
146:10,21
193:19
194:3
236:16,19
251:25
269:11

**20th** 56:6,9
59:14
97:14
100:3,11

**21** 107:10
211:13

**21st** 182:19

**22** 211:17
212:2

**22,000** 34:5

**22-** 34:5

**23** 209:16,
25 213:14

**23,000** 34:6

**24** 213:21

**24,000**
221:5,22

**24K** 221:5

**24th** 74:13,
16 150:12

**25** 107:24
108:1
214:9

**25th** 182:13

**26** 214:17

**27** 216:4,12

**29** 216:19

**2:13** 181:21

**2:59** 219:25

**2nd** 251:25

─────────────

**3**

**3** 47:5
62:24
84:12
176:18
183:13
193:15

**3/1** 224:8

**30** 126:2
184:5
241:16

**31st** 191:9
192:4
194:19

**33** 85:23
252:2

**34** 237:24,
25

**35** 24:22
114:23
220:15

**35,000**
221:21

**35K** 221:13

**36** 114:23

220:25

**37** 222:16

**38** 222:18

**39** 224:3

**3:15** 220:7

**3rd** 46:25
48:15
185:12
186:14
187:7,14
188:2,4
189:10
194:3

─────────────

**4**

**4** 176:11
188:17
193:17
217:10
253:8
266:16

**40** 111:17
224:24

**41** 225:2

**42** 225:6

**43** 225:11

**44** 226:12

**45** 226:15

**46** 227:6

**47** 227:9,10

**4:20** 274:24

www.huseby.com                Huseby, Inc. Regional Centers                800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 284 of 358 PageID #: 1022

**Attachment 22**

**4:34** 275:7

**4:40** 278:14

**4:41**
280:11,14

**4th** 49:7,
10,15
210:4
214:6,9
215:20
216:14

---

**5**

**5** 49:14
174:17,18
186:25
194:5
266:16

**500** 83:23
84:15

**5th** 210:7

---

**6**

**6** 84:13
88:10 92:2
194:9

**6,400-plus**
34:1

**6th** 62:21
63:5,11
118:4
210:21
216:21
217:10

---

**7**

**7** 194:18

**70** 84:10
113:2

**73** 84:25
85:3

**76-74-4**
215:22

**78,000** 34:8

**7:10** 84:11

**7th** 19:5
140:3,22
141:15,18,
19 142:11,
20 143:10,
20,25
145:9
146:19
149:3,6,16
151:6
164:2
168:11
173:3,17
174:7,20
177:10,12

---

**8**

**8** 91:18,21,
25 188:21
194:23
269:11

**810** 8:18

**8th** 19:1
59:19 62:1
63:13 64:1
92:3
100:20
146:10,21
236:16,19

---

**9**

**9** 195:8

**90** 18:25

**95** 96:1

**99** 242:5

**9:30** 9:10
278:13

**9:41** 215:19

**9th** 95:11,
25 102:19
117:6
194:3

---

**A**

**A-c-c-t**
222:9

**A-m-t** 221:24

**A-v-a-i-l**
222:5

**a.m.** 74:17
174:20
210:21
214:9
215:19
216:21

**abbreviation**
221:25
222:5

**Abdur'rahman**
8:14 9:17

**abilities**
256:8

**ability**
14:14
75:17
106:4
111:3
114:15
132:9,23
133:22
136:16
147:23
155:16
189:14

**absent**
249:19,25
250:9

**absolutely**
15:10,24
17:10,20
102:17
125:17
154:7
164:18
201:10
202:21
256:1

**Abu-ali** 8:14
9:17

**acceptable**
82:17

www.huseby.com          **Huseby, Inc. Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 285 of 358 PageID #: 1023

**Attachment 22**

acceptance
  183:23

access
  42:16,21
  43:17,21
  52:1
  104:20
  109:18
  124:4,6
  127:23
  128:1
  138:6
  253:18
  257:6
  266:21
  272:2,3
  273:18,25
  274:21

accompanies
  156:20

account
  222:10

Accountability
  115:2

accounts
  206:11

accurate
  19:7 181:2
  249:8
  250:11

acquire
  232:19
  242:21

acquiring
  212:6,9

acquisition
  213:7

Act  44:18
  47:4,12,22
  48:16
  51:12
  52:5,9
  97:11
  100:4
  131:11
  134:19
  135:25
  145:13
  156:17
  173:14

acting
  113:22
  114:10,15

action  18:20
  151:25
  152:2
  164:21
  205:9
  243:14

actions
  141:15
  144:1
  150:22
  151:6

active  77:4
  85:17

actively
  200:12
  233:1

activities

26:21
  27:12
  266:25

activity
  27:3
  255:16

Acts  45:22

actual  32:12
  99:19
  145:24
  168:21
  231:4
  232:23

acute  254:11

Adams  35:13,
  14

add  235:20
  236:1,10
  278:22

addition
  70:13

additional
  68:6 137:5
  152:21
  191:11
  193:20
  263:16

address  58:5

addressed
  46:24 49:7
  114:16
  243:11
  251:15

adequate

32:11
  168:17

Adjacent
  270:7

administer
  81:18,19
  186:21

administered
  84:16
  163:16
  245:17,20,
  21 257:13
  258:15

administering
  245:16
  246:12

administration
  21:11
  67:22 69:3
  87:3 90:14
  108:9
  110:23
  148:2
  185:18
  252:10,16
  263:10,24
  272:24

administrative
  106:22

Administrator
  22:19,22

Admit  53:10

admitted
  53:13

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 286 of 358 PageID #: 1024

**Attachment 22**

adopted
  92:15
  126:4
  188:20
  236:16

adoption
  146:9

advance
  184:6

adversary
  202:18

adverse
  202:11,14,
  23

advisable
  277:11

advise   271:7

advising
  150:5
  241:24

affirm   49:13

affirmative
  155:2

afternoon
  16:17
  122:19
  139:16,23
  202:9
  220:1

AG'S   10:14

age   277:18

agency   75:1
  128:15

agent   148:18
  149:9

agents
  145:1,5
  197:4,10,
  16 198:3,
  14

agitated
  265:14
  266:2

agree   48:11
  50:13,21
  53:5
  63:20,25
  84:3 86:20
  88:14,24
  94:6,20
  110:15
  118:24
  145:20
  157:4
  164:16
  185:1
  198:10
  200:18
  209:11,25
  217:16
  224:4
  232:7
  235:15
  247:24
  261:19

agreed   9:10
  195:14
  230:13
  279:10

agreement
  128:12
  182:1,2
  183:22
  184:3
  224:14

agreements
  245:4

ahead   9:7
  13:18 14:7
  52:12 80:2
  104:23
  138:22
  149:22
  153:19
  237:19
  245:12

aid   195:14

Alabama
  205:6,7,10

Alabama's
  205:6
  206:4

all-inclusive
  65:11

allegations
  55:16
  266:20

allowed
  13:17
  107:11
  267:1

allowing
  80:20
  274:7

alphabet
  190:10

alter   109:24

alternative
  104:17
  107:14
  148:16
  194:10

alternatives
  86:18

ambiguity
  88:25

ambiguous
  81:22 89:3

ameliorate
  263:22

Amended   53:5
  56:5 62:9,
  10

amendments
  59:20

America
  73:13

amount   170:2
  216:1
  217:19,20
  218:7,11,
  19 219:15,
  17,21
  221:25
  264:19

Amy   10:1

analgesic
  147:13,16,

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 287 of 358 PageID #: 1025

Attachment 22

18 176:8

**analytical**
216:25

**and/or** 59:18
194:12

**anesthesia**
257:17

**anesthesiologi
st** 165:12
166:1

**anesthetist**
165:14

**Ann** 10:17

**Annotated**
47:21

**annual**
38:10,23
39:16,21,
22 41:4,9
51:10

**annually**
37:17,18

**anonymous**
233:12,19

**answering**
53:16 57:5
58:15

**answers**
15:16
16:1,6
42:4 53:9
54:13,17
58:10
162:6

169:21
256:16

**anticipate**
74:1

**anticipates**
185:22

**anticipating**
217:23

**anybody's**
250:9

**API** 77:4

**apparently**
211:14

**appeared**
218:15
229:5

**appears**
62:11
87:23
145:16,18
149:19
174:19
176:4
177:11
182:18
191:8
200:1,4
207:3,6
209:10,13
210:3
216:12
220:15,17,
20,22
221:8,10
223:11

224:6
225:2,6
227:5,16,
24 252:25
269:15
270:8

**Appellate**
255:25

**applicable**
86:21

**applies** 85:6
88:2

**apply** 87:17
88:3,7

**appoint**
113:22
114:5,9,15

**appointed**
44:6

**approach**
120:25

**approval**
199:24
200:1

**approve**
277:22

**approved**
222:10
274:17

**approximate**
21:21

**approximately**
20:12
21:20

23:4,16
24:22 34:5
97:4
181:21
273:1

**April** 46:25
47:5 48:15
62:21,22
63:5,11
74:13
210:4,7,21
214:6,9
215:20
216:14,21
217:10,22
251:25

**Arabia**
25:18,19

**arbitrarily**
82:15

**area** 87:14
153:2
234:7
263:22
267:9,11,
23 269:16
276:9

**areas** 52:1
68:2 69:15
106:23
111:14
269:17

**arise** 16:24
68:8 89:11
266:22

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 288 of 358 PageID #: 1026

Attachment 22

Arkansas
  201:19

Arkansas's
  201:15

armory
  263:17

Arrange
  183:13

arranged
  17:1

arrive  273:6

arrow  221:4
  223:14,21

art  186:15

article
  168:21
  185:11,14
  186:17,18
  187:19

articles
  41:8
  205:21

ascertain
  158:14

asks  45:2

assembles
  37:19

assigned
  233:1
  248:19

assist  68:15
  104:12,25
  123:10

138:5

assistance
  33:19
  104:16
  105:7
  110:14

assistant
  9:20,22,24
  10:1
  20:15,17,
  22 22:1,
  11,13,16
  24:8,9
  26:8,18
  28:13,21
  29:10
  30:3,19
  31:16,19,
  25 32:21
  36:10,15
  43:8
  103:22
  113:20
  124:20
  126:24

assisting
  9:21,23
  57:7 58:8
  121:11
  129:9

assists  36:3
  122:14
  193:6

Associate
  23:21 24:6
  25:4 93:7,

25 113:3,
14 114:3

assume  23:25
  72:7 74:9
  96:8
  121:19
  160:7
  175:22
  177:2
  226:23
  248:17
  249:6
  256:11
  265:24

assumed
  162:12

assuming
  18:18 24:6
  33:7 41:21
  42:22 45:1
  48:23
  50:10
  51:13
  72:21 91:6
  93:16
  99:21
  124:21
  127:14
  147:19
  184:16
  201:3
  213:10
  221:12
  224:14
  230:6,7
  243:9
  245:6

248:1
249:12
273:9,15
277:14

assumption
  147:3,4
  158:21
  160:10
  176:22
  180:15
  189:9
  215:5,8
  235:23
  243:12
  250:18
  265:25

assumptions
  259:1

assurance
  138:4,13

assurances
  138:10

assure  67:5

atmosphere
  166:20,22

attached
  62:15
  141:24
  157:12
  251:20

attachment
  61:18,20
  62:8,15
  251:20

attempt

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 289 of 358 PageID #: 1027

Attachment 22

65:12
167:3
201:15
215:2

**attempted**
75:4

**attempting**
175:11

**attempts**
28:19
29:23
232:19
234:19

**attend**  26:19
36:19,20
70:20,23
73:3 96:23
115:25
130:8

**attended**
31:15,16,
25 71:2,7,
15 72:3,4
97:2
103:21,22
114:8

**attention**
47:23
67:11
84:10
130:23

**Attorney**
10:10 54:4
127:21
128:19

130:14
131:3
132:13,18
134:3
136:15
267:18
269:3
271:11
276:10
279:1

**attorney/
client**
57:14,16,
20,22

**attorneys**
245:6
266:21,25
272:3
273:25
274:8,20
276:2
277:4

**audience**
192:15,17

**August**
95:11,25
102:19
117:6
191:9
192:4
194:19

**authenticate**
233:8

**author**
155:22,25
156:2,4

168:10
172:21
177:9,12
180:17
192:10
195:1
206:23

**author's**
156:9

**authority**
113:21
145:2
196:22

**authorized**
184:9

**authors**
206:23

**availability**
29:22
86:11,14
96:14
118:20
121:1
125:15,18
128:3
138:17
140:6
148:18
149:9
186:13
197:20
227:11
236:6
238:12
242:18

**awakened**

257:22

**aware**  29:5
31:3,4
32:19 37:9
42:3 43:2
77:22 90:1
91:10
97:15
101:19,21
126:7
129:11
131:8
141:17
142:21
149:23
154:22
157:10
198:23
200:23
201:19,22
203:4,11
214:25
217:15
228:10
234:18
235:11,12
256:6
258:9
262:15,22
264:3
265:15
266:14
268:24
278:23

_____

**B**
_____

**Bachelor**

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 290 of 358 PageID #: 1028

Attachment 22

25:2

**back** 16:16
  19:16
  22:15 26:7
  50:5 56:1
  58:21 76:8
  80:16 84:6
  86:12
  88:10
  89:17
  91:16
  92:25
  100:24
  107:2,9,21
  111:23
  125:25
  139:6,10,
  16 140:5
  141:23
  142:16
  144:9,11
  181:10,12
  188:19
  203:3
  204:21
  217:8
  220:7
  231:14
  234:23
  238:21
  247:1
  257:10
  260:1
  275:7
  278:16,21
  279:10
**backed**

218:16
228:18

**background**
  20:8 24:24
  43:25
  158:16

**backing**
  235:1

**bad** 57:3
  239:3

**band** 98:21,
  23,25 99:6
  100:2
  247:20
  248:9

**barbiturate**
  226:4,7,10

**based** 25:15
  46:3
  74:12,17
  75:7
  86:10,13
  105:13
  120:25
  133:15
  171:10
  177:14
  184:16
  211:14
  227:19
  242:17

**basic** 55:15

**basically**
  13:9 21:14
  25:13

26:17,20
27:2,7
32:11
33:17 55:4
65:2 69:1
78:4,16,24
102:14
123:7
148:5
151:12
156:18
162:25
163:15,18
165:20
171:15,19
196:8
213:23
229:18
238:14
247:11
265:1
266:25
267:12

**basis** 68:14
  106:13
  132:15
  133:8
  231:10

**Bates** 191:12
  209:16,21,
  22,24

**bear** 92:5

**bears** 182:9

**beating**
  171:21

**began** 100:22

253:2

**begin** 88:17
  189:1

**beginning**
  191:12
  220:14

**begins** 87:2
  89:21
  132:6
  142:11
  146:23

**begs** 73:3
  208:16

**behalf** 8:13
  97:12

**belabor**
  160:11
  167:13
  241:4

**believed**
  271:3

**believes**
  13:21

**believing**
  138:24

**bend** 278:7

**benzodiazapine**
  147:12,17

**big** 18:6

**Billy** 95:11
  116:25
  127:11

**BIS** 255:11

www.huseby.com          **Huseby, Inc. Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 291 of 358 PageID #: 1029
**Attachment 22**

bit   35:22
  152:18

blacked
  226:12

blank   223:13

blanked
  175:6

blocks   17:24

blood   17:16

blue   83:25
  87:2

Board   34:15

body   185:13
  264:8,23

bold   194:11

bolus   264:5,
  8,11,17

bono   10:7,8

boss   10:21

bosses
  213:17

bottom
  107:17
  117:7
  174:6
  175:5
  209:20
  210:19
  212:4
  215:19
  223:12
  224:21

bounds   234:8

Bradley   9:16

brain   255:16

brainwaves
  255:22
  256:5

branch   35:5

break   16:13,
  14,17
  17:18,21
  80:8,12,
  20,23
  220:1

breaking
  16:15

breaks   11:9
  17:18

breathing
  171:20

briefed
  229:1
  244:1

briefer
  76:11

briefly   9:2

bring   274:8

bringing
  274:11

broad   57:25
  108:14

broadly
  54:16

Broadway
  8:18

broke   81:4

bromide
  77:11
  136:3
  137:18
  258:11
  262:17

brought
  32:21

brush   57:25

buck   92:18

building
  269:17
  272:24

built   86:7

bulk   211:20
  215:23
  222:10

bullet
  195:11
  196:20
  205:3

burden   200:3

business
  48:7

busy   111:17

buy   244:14

————————————
————————————
            C
————————————

cabinet
  35:19
  130:6,8,10

cabinet-level
  35:7

California
  26:4

call   105:5
  123:13
  126:17
  141:12
  143:22
  153:4
  165:5
  193:22
  209:21,24
  210:9
  224:7
  263:11,15
  271:14
  272:12
  273:19,25
  274:1

called   113:9
  167:24
  175:25
  176:1
  193:11
  257:10

calling
  239:6

calls   96:6

camera
  246:19,21
  275:24
  277:20,23

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 292 of 358 PageID #: 1030

Attachment 22

capabilities
  274:3

capacity
  131:6
  166:15
  168:15,17
  240:11

Capital  8:15

care  17:9
  110:12
  254:14,20

career  24:14

careful
  167:14
  170:17

cares  78:23

caring  78:13

carry  27:9
  89:5
  103:14
  111:8
  113:11
  114:11
  132:7,24
  133:3,10,
  22 136:17,
  23 171:16
  183:1,6
  185:23
  218:7

carrying
  31:11
  64:23 65:6
  67:14
  68:21 69:9

89:24
94:16
114:20
126:3
160:16
194:14

cartoon
  207:2

CAS  215:21

case  8:13
  15:17
  70:21 76:5
  140:25
  172:23
  198:24
  199:7,8,22
  205:2
  218:14
  231:8,17
  250:5
  252:17

cases  57:8
  58:10
  107:1
  111:21
  138:7
  153:12
  154:3
  159:21,22,
  24 163:18
  167:6
  193:20
  218:18

casual
  166:20

catchall

234:12

categories
  165:16

categorize
  54:16

category
  160:14
  164:22
  165:3,9

catheter
  246:16

caused
  107:13

ceased
  198:25

cell  109:6
  274:8,11,
  17,18

central  36:6
  79:8,10
  123:8,9

Certificate
  63:2

certified
  13:24
  280:4

certify  76:1

cetera  48:10
  141:13
  143:23
  156:17
  210:11,23

CFR  196:21

chain  157:11
  174:19
  177:11

challenge
  29:2 96:8
  119:22
  150:15

chamber
  89:18,20
  109:13
  255:8
  257:8,11
  267:18,22
  269:16,18,
  20 270:17
  272:18

Chancellor
  140:23
  190:14

change  39:13
  40:8,13
  242:11
  278:18,22
  279:5,7

changed  22:2
  259:6

changing
  100:23

Chaplain
  94:12

charge  35:19
  67:16
  89:22,24

charged
  30:12 34:3

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 293 of 358 PageID #: 1031

Attachment 22

**Charlotte**
  10:13

**check** 10:21
  81:20
  83:4,18,21
  84:1,4,14
  88:16,23
  89:10
  90:23
  95:12
  100:24
  104:13
  105:13,19
  106:13,15
  109:20
  247:15,18,
  23 248:4
  249:15
  258:14,20,
  23,25
  259:2,17,
  18,21,23
  260:1,12,
  15 261:16
  265:23
  266:1
  271:18
  272:5

**checked**
  82:12

**checking**
  60:11,13,
  15,16
  148:25

**checks**
  259:18

**chemical**
  82:13
  115:3,14
  121:3
  123:12
  164:14
  165:4
  185:3
  195:24
  196:16
  206:19
  225:3
  246:14,15
  249:24
  252:9,16

**chemicals**
  29:3,24
  30:15
  32:4,7,17
  73:16
  76:24,25
  79:17
  82:10
  83:22
  86:11 88:8
  94:22 99:9
  111:11
  121:20
  122:1,6,17
  123:15
  124:3
  132:12,20
  133:7
  149:15
  153:3,6,7
  193:2
  194:12
  198:25

  205:4
  206:17
  207:22
  208:2
  229:22
  232:5
  238:2
  239:18
  243:16
  244:4
  246:12
  259:8,14
  260:9,16,
  19 261:18
  262:14

**chemicals,'**
  187:2

**Chief** 35:12
  43:7

**child** 166:9

**chloride**
  77:14
  135:4,11
  136:2
  146:25
  147:11
  148:3
  236:8
  258:12
  262:18

**choice** 86:7,
  10,13
  139:17
  239:3
  241:18,22

**choose**

  237:10
  239:20,22
  242:1

**chose** 232:13

**chosen**
  180:13

**chronological**
  214:8

**circumstances**
  109:24
  113:17
  206:15

**citing**
  156:18

**citizen**
  50:19 52:9

**citizens**
  50:23 51:1
  230:15

**claimed**
  200:2

**clarification**
  37:12 68:2
  98:20

**clarified**
  73:1

**clarify**
  30:17 32:6
  37:4 43:15
  45:19
  121:17
  242:16

**clarifying**
  275:10

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 294 of 358 PageID #: 1032

**Attachment 22**

classify
  38:21

clean  183:7

cleaner
  174:11

clear  14:1,2
  39:19 56:2
  159:14
  169:21
  261:9

clearer
  173:2

clearheaded
  14:17

clever  14:23

client's
  271:4

clients
  50:22

clock  139:11

close  139:13
  154:14
  159:15
  236:18
  250:22

closer
  185:25

cocounsel
  275:2

code  47:20
  222:21
  223:1

coffee  17:14

cold  210:23
  211:1

College  25:6

combination
  122:7

comfortable
  155:6,21
  180:23

Commissioner
  8:6,9,11
  16:23
  20:9,15,
  17,23
  21:10
  22:1,12,
  13,16 24:7
  26:8,9,18
  27:11,24
  28:9,13,21
  29:10,18,
  20 30:3,19
  31:9,16,
  19,25
  32:22
  33:12,14
  36:10,16
  38:3 40:15
  42:8,17
  43:9 46:23
  47:9,10
  57:7,21
  58:9 59:2,
  12 61:7
  67:20
  69:2,11,17
  72:19,22
  74:6 80:6,

19 83:1
  90:1,19
  92:12,16
  93:9 97:2,
  10 98:10
  99:24
  103:21,23
  108:1,20
  122:3
  124:9,12,
  20 125:23
  126:24
  127:2
  131:6
  134:12
  139:15
  140:21
  142:9
  143:4
  151:10
  155:9,12
  170:6
  173:10
  180:21
  185:18
  188:19
  190:12
  220:9
  228:5
  237:15
  238:6
  239:12
  240:11
  242:10
  243:11
  266:23
  272:14
  275:11

277:2

Commissioner's
  109:19
  124:22

commissioners
  40:19
  73:12

committee
  42:6,8,10,
  25 43:1
  51:6

common  73:19
  129:1,6,19
  221:25
  222:5

commonly
  222:22

communicate
  109:23
  110:5
  122:5

communicated
  76:21

communicating
  123:8

communication
  109:3
  127:25

communications
  69:12
  110:2
  274:21

community
  25:5 34:9,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 295 of 358 PageID #: 1033

Attachment 22

17

comp
221:13,21

companies
210:11

company
211:4,10

Compel  12:10
190:4

compelling
140:23

compensation
184:8

compilation
173:15

Complaint
18:17,21
19:25 20:6
53:5 56:5,
6,15,20
57:1,5
58:9,15
62:9,10,16
141:25
266:17

complete
16:17
98:2,6

completed
184:9

completely
90:10
224:24
226:12

completeness
15:16

Complex
22:25
23:12,22,
24 24:1

complicated
241:10

complies
63:3 64:18
201:3

complying
215:16

compound
29:7 77:5
183:6
195:14
214:18
216:6,9,15
223:6
224:18
229:8,23
235:14

compounded
115:19
124:25
125:3,6,7
126:4,9
127:4
131:25
132:1
183:14
185:3
189:12,17,
24 194:20
218:17

compounding
125:3
128:8
195:13
216:5,14
229:20

concentrations
216:25

concern  58:5
147:11
148:9

concerned
39:17
194:1

concerns
276:20,25

concluded
280:13

conclusion
208:5

conclusions
207:12

condemned
84:22

conduct
70:1,2
81:20
83:4,18
84:14
98:11

conducted
83:21
101:20
111:7

219:11

conducting
39:16
89:10

confer
184:20

conference
8:17 17:2

conferences
70:8,9,12,
13

confidence
133:8
163:19
179:23
180:20
181:5
268:8

confident
103:11,17
124:7
133:2,18
136:22
137:9,24
170:10
171:8
181:1
242:23

confident-
175:6,15

confidential
44:14 46:1
52:6 91:19
95:6
96:19,21

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 296 of 358 PageID #: 1034

**Attachment 22**

confidentialit
y  156:14,
  19,20
  157:5
  160:9
  175:4,7,8,
  15 226:24

confirm
  224:19
  259:24
  277:15

confuse  15:3

confused
  15:4

confusing
  54:3

conjunction
  38:12
  82:23
  106:20
  148:17
  277:3

connect
  277:13

conscious
  90:24
  105:14
  247:18
  258:13
  260:4
  261:8,15
  265:23
  266:1,4,6

consciousness
  81:20

83:4,18,
21,25
84:4,14
88:16,22
89:10
105:19
106:13,14
147:21
247:15,23
248:4
249:15
258:20,23,
24 259:2,
18,20,23
260:12,15
261:16

consideration
  41:9 206:5

considered
  51:5 52:7
  107:12
  172:24
  180:3
  212:19
  256:22,23

constitutional
  125:13
  178:24
  240:3
  271:4,8

Constitutional
ity  125:19

consult
  40:17
  164:21
  165:2

179:10
275:1

consultation
  68:12
  106:20
  277:3

consulted
  45:15 74:7
  75:20
  144:8
  153:25
  154:6
  180:18

contact
  108:20
  109:15
  115:9
  121:5
  122:24
  157:16
  158:4
  159:4,5
  165:15
  195:6
  201:7
  213:23
  218:4
  263:14
  271:6,22
  272:18
  275:15
  280:6

contacted
  239:4,7

contacting
  121:21

166:14

contacts
  112:21

contained
  164:2

content
  92:22
  145:25
  146:1,3
  232:14

contents
  12:20
  149:24
  152:19
  164:20
  192:21
  243:24

context
  26:23
  166:4

contingencies
  17:9

contingency
  84:24 85:4
  86:16
  87:7,23
  107:20
  262:13,20

continuation
  205:1

continue
  220:9
  238:16,25
  263:18

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 297 of 358 PageID #: 1035

Attachment 22

continues
101:16
119:21
216:5
260:17

continuing
188:24

contract
95:9,16,24
182:9,19,
23,24
183:18,19
184:13,18,
24

contracted
34:25 35:2

contracts
95:18
184:21
203:7

contradictory
238:25
239:2

control
17:17
228:12

controlled
79:13,14

controls
203:7,12,
17,24
204:3,7,13

convenience
269:10

conversation
76:15
89:14
128:25
130:3
166:12,18
167:22
169:12
219:4
231:11,16
234:25
235:4,6,18

conversations
29:13
58:14
129:21
132:16
150:3
154:17,20
169:5,7,
18,24
170:8,16,
24 218:24
232:14
240:15,20

copy  47:2,
20 56:7,9
61:3 62:14
63:15
116:17
135:17
141:20,22
145:16
173:2
174:7,11
250:23
279:3

Corecivic
35:1,2

corner
117:2,14

correct
8:18,19,
21,22
15:21,22
16:3 32:8,
9 34:12
39:1
42:11,21
43:4 44:4,
5,7,8,10,
11,15,16,
19,20,24
49:16,17
51:3,4
52:17
53:10
55:24
59:25 60:1
62:16,17,
21 63:17,
18 64:2,3
72:23
83:19
85:1,2,4,
5,11,15,
16,18,21,
24 86:5,9,
20 87:18
88:1
89:18,19,
22 93:4,
10,11,14,
15,20,22,

24 94:7,
10,11,13
95:2,3,6,7
96:21,24
106:10
108:24
112:16,19
113:1,4,5,
7,8,11
115:14,17,
18,21,22
116:7
118:4,5,
10,11
119:1,2,7,
8 120:3,4
127:17,18
131:21
137:20
139:2
149:5,12,
18 153:1
156:21
161:9
164:25
165:1,7
184:15
186:11,14
187:18
188:21,22
189:7,8,21
191:10
193:23,24
194:3,4,7,
16,17,21,
22,24,25
195:6,7,9,
10,15,16,

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 298 of 358 PageID #: 1036

Attachment 22

21,22,25
196:1
197:1,2
198:17
200:7
202:3
207:4,5,7,
8 209:16
210:4
213:12,13,
17,18,25
214:3,4,
12,13,15,
16 215:18
216:17,18
217:7,21
218:23
219:6,18,
19 220:18
221:9,17,
18 222:6,
7,11,12,
14,16,17,
18,19,24,
25 223:3,
4,7,8
224:10,15,
16,19,20,
22,23,25
225:1,4,5,
7,8,24
226:13,14,
16,17
228:3,4,
20,21
232:15
238:11
245:22,23,

25 246:1,
25 247:13
248:6
249:5
252:13,14
253:3,5,9
254:8,17
255:6
257:9,13,
14,18,19,
23,24
259:22
260:1,20,
21,23
261:2,23,
25 262:1,
3,4,6,7,
11,12
267:4,5,15
268:1,2,6,
12,15,16
269:5,6,7,
8,21
270:9,10
272:15

correction
20:10,16
24:14,17
33:13,14
36:16
40:15
42:17
43:24
44:12,17
72:13,22
74:7 76:17
85:18
92:16

127:22
132:7
145:18
170:6
182:4
186:23
196:3
198:5
200:24
201:7
203:15,22
204:2,6
206:6
208:1
230:15
234:16
243:2
255:21
256:9
266:23

Correction's
136:13
213:4
228:12

correctional
22:19,21,
25 23:11,
22,24 24:1
128:15
161:1
229:25

corrections
8:10 20:21
24:20
33:18 39:3
40:19
69:22,23

71:21 72:2
73:6,13
75:3 92:12
98:2
121:10
134:2
137:8
150:4
152:24
199:2
218:5
219:1
253:18

correctly
13:15
65:16
95:21
120:6
163:16
229:17
234:10
267:20

cost   206:18
256:8,10,
18

cost-
prohibited
256:19

coughing
91:14

counsel   8:12
9:11,13,17
10:5 13:1
43:7,10
50:9 53:22
54:9 57:23

www.huseby.com            Huseby, Inc.  Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 299 of 358 PageID #: 1037

Attachment 22

63:15
91:23
94:17
95:13,17,
22 96:4
100:2
101:11
108:21
109:5
110:3
129:17
134:7
144:21
145:5,15
186:10,23
190:3,13,
16 191:21
198:18
233:9
237:21
267:3,7,
13,16,17,
24 268:9,
19 269:2
271:2,22
272:12,17
275:13
276:9
277:24
279:11

Counsel's
54:1 57:4
95:15

counseled
89:9

counter
25:24

countries
25:17

country
25:16

Counts
266:16

County 35:2,
3 50:19

couple 12:16
43:25 46:9
97:6 193:4

court 11:5,
10,17
12:4,23
13:1,5
15:17 18:7
46:11,14
47:15 49:2
52:14,17
57:20
60:24
64:24
76:1,4
107:16
110:9
111:9
116:13,23
117:4,11,
19,22
118:2,7
119:4
120:1
125:11
130:16,19
134:13
135:14

136:16
140:15
141:5,17
142:21,24
150:18
157:23
171:16
173:5
181:15
185:6
190:6
197:25
199:3
201:4
215:10,16
219:8
226:24
228:9
233:25
234:3
251:1
255:20,24,
25 271:6,
7,23
272:19
275:15
280:4

Court's 12:9
13:22
74:12
75:12,22
140:11
142:18
143:10,19
150:12
228:13
233:10,14
234:8

245:10
258:1

Court-ordered
140:4
234:17
256:17

Courts 240:2
266:21

cover 139:24
251:9,12,
19

covered 68:9
150:23
156:16
234:14

covers
108:13

crafting
44:23

created
210:16

credibility
153:17,20

credible
128:3
199:17

Criminal
25:2,4

crisis
254:11,13

crowded
267:10

cumbersome

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 300 of 358 PageID #: 1038

Attachment 22

200:2,19

**current**  40:3
  82:14
  101:19
  133:16
  238:18

**custodian**
  47:25 48:6

**custodian's**
  48:1

**custody**
  213:5
  228:12

**cut**  78:7

**cutdown**
  104:19

_____

**D**

_____

**D-e-a**  222:20

**daily**  26:21
  232:3

**data**  60:16

**date**  20:2
  56:16,23
  74:16
  100:18
  115:8
  117:5,18,
  19,24
  118:3
  119:5
  120:1,24,
  25 122:22
  126:1

127:10,15
136:6,8
137:16,18
141:11
142:18
143:22
146:7,8
182:12
184:10
189:25
191:8
194:2
199:5
210:3
236:5,12
241:17
251:24
252:12

**dated**  19:4
  46:25 49:6
  62:20,22
  63:5
  116:25
  134:19
  142:10
  143:10,19
  182:19
  185:11
  214:6
  216:20
  217:10

**dates**  22:8
  53:2 82:12
  97:8 118:8
  193:18,19,
  23 217:24
  218:2

**David**  36:13
  117:23

**Davidson**
  50:19

**Davis**  10:13
  53:20
  74:14
  143:6
  279:22

**day**  16:11
  56:18
  84:12
  200:14
  229:17
  278:17

**days**  48:7,
  13 49:15
  126:3
  184:6
  201:16
  241:16

**DEA**  79:11
  197:15,16
  198:2
  223:1

**DEA'S**  196:22

**dead**  171:21

**deal**  178:17
  266:10

**dealing**
  56:25
  86:18

**deals**  86:17
  121:14

**death**  15:21
  64:25 94:9
  104:14
  132:8
  193:16
  194:15
  241:18
  257:2
  269:15,16

**Debbie**
  186:23

**Deberry**
  78:12,17,
  19 79:6,9,
  18 253:20

**Debra**  43:1,6
  134:7
  173:13
  251:13

**deceased**
  87:11
  104:15

**December**
  118:3
  137:18
  140:3

**decide**
  106:14
  107:9

**decided**
  82:11

**decision**
  46:3
  105:15
  167:12

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 301 of 358 PageID #: 1039

**Attachment 22**

170:9
171:2,6,
22,23,24
172:1,4
208:6,17
209:1
233:21
235:24
236:1,9,
12,19
237:13
244:2,8
272:15

**decisions**
69:18,20
180:21

**declare**
104:15

**decline**
231:3

**declined**
195:12
214:12

**dedicated**
273:20

**default**
241:19

**Defendant**
141:6
143:7
202:17

**Defendant's**
53:4 54:13
61:8
130:25

**Defendants**
140:24
141:9
143:15,16
144:6

**Defender**
9:20,22,25
10:2

**Defenders**
8:16 9:15

**Defense**
267:3,7,
13,24
268:9,19
269:2
271:2,22
272:12,17
275:13
277:24

**define** 97:18
108:4
164:7

**defined**
81:20 83:5
105:20
108:11

**definite**
277:8

**definition**
202:23
265:20,21

**degree** 24:25
25:5,8

**Del** 9:21

**delay** 48:19,
22 90:24
109:25
110:4
263:14

**delegate**
35:22
111:18,23
112:4

**delegated**
45:6
111:21
112:2
145:1
193:1

**deliberate**
166:21

**deliver**
32:17

**delivered**
56:8 59:13
79:18

**delivering**
94:22
102:6

**delivery**
37:8 86:24
87:25

**delve** 58:2

**demographics**
193:16

**denied** 53:14

**dentist**
167:17

**deny** 48:10
53:10

**department**
8:10 20:9,
16,20
21:10
24:17,20
27:23
28:2,4,8
29:6,13
33:18 34:1
35:25
36:2,8
38:13 39:3
43:8,24
44:3,12,
17,21,23
45:5,7,8,
13 47:11
50:5 53:22
54:9
59:15,16
60:9,22
65:23
66:22
67:20 69:2
71:1,2,6,
20 72:2,13
73:1,5
76:17
77:25
78:9,23
79:16
82:10
85:18,22
92:11,16
95:8 97:12
98:2 99:6

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 302 of 358 PageID #: 1040

**Attachment 22**

101:16
106:6,12,
14,19
111:7
121:10,11
122:15
123:16
124:23
126:2,4
127:3,22
128:6
131:13,16
132:2,6,23
133:9
134:2
136:13,20,
25 137:5,7
145:17
149:13
150:4
152:8,9,
10,22
182:3
185:19,22
186:2,22
187:2,12,
15 188:3,
8,24
189:1,10,
17 192:7
193:25
196:2
198:4
199:1
200:5,8,24
201:6
204:1,5
206:6

207:25
208:1
213:4
217:23
218:1,5,25
228:11
229:3
230:14
233:23
234:15
235:19
238:4
243:2,13
244:8,23
253:17
255:20
256:9
271:25
274:12,15,
16 275:12
277:5

department's
28:19
34:18 39:5
53:23
55:24
131:14
133:22
136:16
215:11
234:19

departmental
40:2 64:21
66:14

departments
74:6 75:2
76:14

203:15,22

depending
254:16,18
278:5,6

depends
138:24

DEPONENT
280:12

Deponent's
245:14

Deponents
74:18
151:4

deposition
8:23 10:21
11:23
12:1,5,9,
12,24,25
13:6,12,23
14:21 18:8
46:15,23
47:16 49:3
52:21 56:4
58:20
62:10
110:16
116:13,22
130:19
140:16,21
142:9,17,
25 143:4
145:9
150:25
151:3
181:16,23
182:1

185:7
190:7
202:11
228:6
230:10,11
233:12,19
245:11
251:1,10
278:25
279:4,9

depositions
9:3

Deputy
23:23,25
43:8 93:8,
25 113:14
114:3
185:17

deradicalizati
on  25:14

Derrick
182:10

describe
74:19

describes
65:13
194:18
195:2
197:4

describing
148:6

description
145:21

designated
67:7 87:14

www.huseby.com      Huseby, Inc.  Regional Centers      800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 303 of 358 PageID #: 1041

Attachment 22

93:13
113:6
138:5
258:8,17

designates
93:1

designee
48:1 82:9,
21 115:9
121:2,8,15
122:14,24

detail
118:23
128:17

detailed
66:12

details
232:9

determination
105:13
106:18
168:23
235:20
238:8,9

determinations
207:16

determine
39:12 40:7
81:21 84:1
105:3,21
106:16
131:20
199:23
257:2,22
258:9

determined
238:5
259:3
263:8

determines
83:6 260:3

determining
71:14
206:7
259:12

develop
214:20
271:1

deviate
81:9,12,14

diagram
269:13
270:3

diazapine
147:15

difference
32:16
103:3
180:16
263:4

difficult
111:12
132:19
200:21

difficulties
76:18,23
77:7,11,
13,16

difficulty

73:15
77:20
132:10
201:17,25
203:4
205:2

direct   21:5,
13 29:21
30:21 31:1
47:23
49:21
67:10
84:9,23
108:25
109:3
121:5
126:25
130:23
139:1
271:13

directed
82:5

directives
207:18,24

directly
21:1 29:14
31:6 34:25
35:9,11
39:9 96:13
164:5
250:1
257:25
270:5

directors
73:13

disagree

75:10
131:18
158:1

disagreement
169:22

disbelieve
158:25
159:2

discharge
68:16

disclaimer
176:13

disclose
200:25

disclose-
226:23

disclosed
45:17

disclosure
48:4
226:23

discounted
177:10

discovery
74:23
140:4,24
178:16
197:21

discretion
67:14
237:9

discuss
57:11
107:19

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 304 of 358 PageID #: 1042
**Attachment 22**

140:2
151:3
187:1
193:12
196:7
278:20

discussed
76:16
78:10
100:22
114:15
120:16
144:25
234:21
265:3

discusses
194:9
195:23
201:14

discussing
81:4
131:10
174:8
181:13

discussion
53:15
73:14,17
77:18
140:8,9
146:4,6
149:25
151:11,13
196:2
201:9
207:7,9,
10,20
214:11

231:18

discussions
69:13
70:10,14
75:16
144:21
152:7,11
162:5
171:3
180:4
196:7
236:5
280:5

dismiss
151:18,19
266:18

disposal
161:16

disregard
151:20,21

distribution
203:7,12,
16,23
204:2,7,13
245:3

distributors
74:25

District
199:3

division
20:20
45:4,7
46:2

divisions
33:19

Dix   9:19

DOC   175:25
193:5
199:2

doctor
165:13
166:10
167:22

document
11:15,20,
23 12:13,
20 18:5,14
19:8,19,
22,23
45:24 49:1
52:14
55:1,23
59:2,8
60:23
61:8,14,19
62:3,7,8
63:4 64:1
66:7 69:5
134:13
142:25
156:15,16
176:6
185:5
225:11
237:20
252:20

documentation
137:21
138:2
228:11,22
230:19,20
231:2

documenting
101:5

documents
45:16 46:9
59:5,25
60:3,11,12
61:10
62:5,13,
19,20
63:6,13,14
100:5
101:2,4,5
141:10
143:9,19,
21 144:7,
12,22
175:12
190:2,15
191:11,13,
15,20,22,
23 213:3
215:10
219:12,14,
23 228:7,
10 233:9
251:21

Doe   252:12

domestic
197:1

door   148:9

dosage   264:5

dose   83:11
88:1 90:4,
14,21
221:22
264:8,11,

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 305 of 358 PageID #: 1043
Attachment 22

17

**dot** 9:10

**double-sided**
19:15

**downtown**
123:13

**dozen** 31:22,
23 154:12

**drafted**
236:13

**Drake** 10:18

**draw** 69:7

**drug** 31:3
71:7,11
88:18
102:2,6
103:9
118:14,18,
20 119:10,
16 121:1,
22,25
122:4
124:14
126:19
128:3,14
129:11
133:18
137:15
148:14
155:17,20
158:23,24
159:8,9
160:4
165:6
180:7

181:2
185:25
188:8
199:12
229:2
240:13
242:18,24

**drugs** 28:15,
20 37:9
75:18
76:19
82:5,8,16,
20,24
85:22
86:1,4,24
90:22 91:1
102:1
121:12
122:11,15
123:21
124:8
133:3,9,19
135:3,23
136:12,23
137:1,5,9,
25 138:6,
7,18 140:6
145:19
148:2,7
150:5
155:7,10,
16 171:11,
17,18
172:11
175:11
177:13
178:21,22
179:4,6

181:11
183:1,6
186:3,19
193:6
194:2
196:13
198:25
205:20
218:15
220:17
222:23
233:3
238:12
241:11
253:13
263:16,20,
22,25
264:24

**dual** 21:9

**due** 132:10

**duly** 8:2

**duties** 26:13
45:7
66:13,17,
20,21
68:16 69:9
108:12
110:20
112:19,24
113:6,11

**duty** 20:18
108:17
109:22,23
110:11
193:1

**Dyersburg**

25:5

---

**E**

**e-mail** 19:4,
10 70:16
134:17
135:2
140:3,14
141:15,20
142:10,21
143:25
145:10,12,
16,23,25
146:23
149:2,24
150:8,22
151:6,11,
13,15,17,
18,22
152:1,19
155:23
156:1,3,
12,21
157:2,8,11
159:1
164:2,21
168:11
169:17
172:21
173:3
174:6,8,19
175:5,10,
17,24
176:6,11,
18 177:9,
11,12
180:11,17

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 306 of 358 PageID #: 1044

**Attachment 22**

185:13
216:5,20
217:8,17

e-mailed
187:4

e-mailing
181:9

e-mails
60:11,14
157:6
173:11,15
177:3
178:17
188:23
204:22
214:6,7

Earl  117:23

earlier
72:24
99:25
107:16
131:10
144:25
232:6
275:21

Early  197:14

easier
122:11
241:14

East  9:14

Edmund
117:12

educational
24:23

EEG  253:18,
21  255:7
256:21

effect  180:7
183:25
184:14
253:15
264:22,25
265:8,9,
10,17
266:10

effective
171:10,12,
14  183:23
241:14

effects
147:13,16,
18,20
153:5
163:1
167:9
168:7
176:8
263:22
264:4

efficacy
150:13,17

efficient
171:10,12,
14

effort
129:10
158:22
201:8
209:5

efforts  29:5
74:19
238:14

EKG  256:14,
21

elaborate
186:2

elapsed
181:23
253:7

elapses
246:2
249:23

electrical
270:12,13

electrocution
64:5
194:11
241:23
242:4

electronic
141:12
143:22

element
37:10

elements
25:22

elicit
147:12,15,
18

embarrass
16:9

embarrassing
10:22

emergency
16:24
266:22

emotional
276:22

emphasis
66:15
67:11

employed
20:14
22:18  23:9

employee
44:9  71:18
110:13
138:15
191:25

employees
33:24  34:2
35:20  71:6
96:21
106:25
110:12
111:1
138:11,12

encompass
165:11

encompassed
110:22

end  87:15
148:10
185:23
208:8,14

ended  253:4

endorse

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 307 of 358 PageID #: 1045

**Attachment 22**

25:19

endotoxins
183:16

ends 213:19

enforcement
98:4

engage
166:12
267:1

engaged 29:6
38:24
56:14
218:22

engaging
103:11

ensued
207:20

ensure 33:19
40:2 82:23
155:15

ensuring
111:4,6

entered
141:18
252:21

entertain
200:16

entire 24:14
91:22
111:5
243:25

entities
122:8

219:2

entitled
75:15,21
143:7
173:24
184:7
238:2

entity 35:1

environment
183:8

equipment
254:1,4,5,
6 270:13

equitable
184:8

Erin 10:18

errors 279:6

escort
273:3,6,10

establish
108:20
255:21

established
124:10
171:9

establishing
25:13

estimate
31:15
236:18
247:24

Etomidate
174:1

Europe
227:10,18

evaluate
214:19

evening
51:20
84:12

event 48:4
68:8 72:20
107:9
184:6
262:15

events 64:21
66:10

evidence
249:17,19,
23

ex-- 88:10

exact 20:2
22:7 31:21
33:5 97:3,
8 100:18
126:13
146:7,8
154:9,11
158:19
236:4,5,11
243:23
265:20

EXAMINATION
8:4

examined 8:2

examiner
165:23

exception
91:25
200:2
218:13

exchange
145:16
157:11
213:20

excited 20:6

exclusion
52:5 208:7

Excuse 91:11

executed
255:22

executing
67:22

execution
19:2,3
21:15
26:14,19,
24 28:19
32:13,24
38:15,17
39:9 51:21
55:15
57:10
61:21,22
63:20
65:24 66:8
67:9,15,16
68:10
70:1,3,21
71:15
72:3,4,14
73:3 75:18

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 308 of 358 PageID #: 1046

Attachment 22

82:1,5,6
85:23
89:15,17,
20,21
90:24,25
93:19
94:16
95:10,25
98:10
99:20
102:23
103:2,13
104:2
106:2
108:5,19
109:12,25
110:5,7,
13,24
111:2,8
112:24
114:11
115:8,25
117:5,18
118:3,7
119:5
120:1
122:22
126:1,3
127:5,10
131:24
132:24
136:17
138:1
161:7
163:3
164:13,25
171:17
183:2,7

185:23
186:1
189:25
193:18,19,
23 194:2,
10 205:8,
11,19,20
206:4,7
217:24
218:2,8
233:3
241:17,20
242:11,21
244:22
246:23
248:24
252:18
255:8
257:7,11
258:12
263:11,15,
18 265:7
266:22
267:18,22,
23 268:5,
11,20,22
269:18,20
270:17
272:18
275:14
276:3

**executioner**
30:15 31:3
32:3
81:19,25
83:2,10
84:23 87:1
99:9 103:5

246:18
247:2
249:10,18,
20 275:22
277:25
278:1,5

**Executioner's**
246:24
277:21

**executions**
20:25
21:8,12,18
23:6 24:2,
5 28:15
31:11 36:4
38:15 39:4
40:20 41:8
45:18,24
69:16,25
70:6,23
71:3,6
108:10
129:14
133:4
140:7
163:25
177:14
189:19
201:16,20
216:2
217:7,18
219:16
245:1
262:18
268:14

**executive**
35:5 36:7

39:23 40:7
44:3
106:23

**exempt**  48:3

**exercise**
68:7
105:10

**exhausted**
238:14,24

**exhibit**
11:17,18
12:5,6,9,
24 13:6,7,
23 18:9,10
19:1,4
46:15,16,
23 47:16,
17 49:3,4
52:13,18,
21 56:4
59:3,6
60:25
61:1,18,20
62:10,25
116:14,15,
22 117:10
130:21
132:5
134:14,15
135:14,15,
20,22
140:19,21
142:3,5,9,
17 143:2,4
145:9
173:6,8,
20,21

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 309 of 358 PageID #: 1047

**Attachment 22**

181:16,19
182:1
185:7,8
190:7,8
209:8
228:7
230:11,12
251:2,7,10

exhibits
  50:7
  134:10

exist  101:2

exists
  106:15
  231:6

exit  269:3
  272:23

expect  11:2
  35:18
  230:18

expectation
  102:13
  238:17

experience
  40:23
  154:1
  158:16
  160:5,18,
  22 161:1
  169:2

experienced
  161:6

experiences
  70:5
  152:13

162:19

experiencing
  258:10
  262:16

expert  55:12
  153:2

experts
  153:5

expiration
  82:12
  136:6,8
  137:16,18

expired
  130:25
  131:4
  136:25
  137:15
  157:14
  244:18

expires
  135:8,11

explain  15:9
  48:18
  49:25

explanation
  118:21
  193:9

explore
  172:20

expressed
  151:15

extend  74:23

extent
  112:14

Extraction
  96:20

eye  161:12

eyes  114:23
  261:7

_____

_____

            F

face  119:23
  122:20
  278:1

faced  69:24
  205:10

facial  96:7
  119:22
  150:14

facilities
  21:2 22:24
  23:10
  33:20
  34:20,22

facility
  24:18
  26:21 36:6
  37:20
  51:17 52:1
  78:13,18,
  20,21,22
  96:19
  97:24
  253:21
  273:19
  277:6,17

fact  29:1
  42:24,25
  93:18

96:12
102:7,9
103:1
119:13
120:8
123:11
125:5
133:15
177:14
204:1
241:13
261:2
266:11

factor  41:8

facts  55:15
  56:14

factual
  132:15

fair  35:23,
  24 66:18
  76:15,20
  108:23
  110:18
  112:3
  127:7,8
  132:3
  175:22
  176:21
  180:14
  189:9
  192:18
  219:12,13
  235:17
  242:9,14
  248:17
  249:6

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 310 of 358 PageID #: 1048

**Attachment 22**

**fall** 111:14
  260:1

**familiar**
  12:19 89:4
  98:12
  111:25
  114:12
  120:7
  124:15,19,
  24 125:5
  145:25
  146:1,2
  165:4
  255:10
  256:10

**family** 10:23
  270:4

**fault** 181:17

**FDA** 198:24
  199:21,24
  200:5

**February**
  56:6,9
  59:14
  97:14
  100:3,11
  130:13
  133:21
  213:22

**Federal** 8:16
  9:15,20,
  22,24 10:1
  198:24
  199:2
  206:15

**fee** 221:13,
  21

**feel** 106:4
  124:7
  133:2,17
  137:8
  147:23
  148:1,6
  155:18
  163:20
  242:23
  261:10
  268:8

**fell** 128:9
  129:2

**fellow** 15:20

**felt** 28:7
  158:12
  179:20
  180:23
  181:1
  229:12
  245:7

**field** 159:24

**figure** 57:15
  58:1 181:3
  197:14
  207:2

**file** 117:1,
  13,24
  127:15

**filed** 18:17
  56:6 57:6
  199:2

**fill** 113:9,

13 119:12,
  16

**fill-** 248:10

**filled**
  126:22

**final** 207:16
  255:24
  276:17

**Finally**
  195:13

**financial**
  256:8

**find** 28:3
  29:23
  35:21
  50:11
  102:12,13,
  21 104:19
  111:12
  122:3,4
  129:10,12
  156:4
  158:22
  174:22
  196:10
  200:9
  201:11
  204:9
  209:5
  212:12,15
  217:14
  229:7
  238:15,18

**finding**
  78:15
  104:16

122:15
  232:4
  239:10

**fine** 16:10
  80:10
  197:21

**finishes**
  247:7

**firsthand**
  153:8
  159:7,9
  164:4,7,9,
  11,14,23

**fit** 91:14

**flip** 19:12
  182:8,22
  183:21

**floor** 17:3

**flow** 246:15

**flush** 102:2
  240:15

**focus** 192:2

**folks** 277:16

**follow** 83:7
  88:19
  199:17

**follow-up**
  187:4
  275:9

**follow-ups**
  279:21

**footer**
  156:11,14

www.huseby.com    Huseby, Inc. Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 311 of 358 PageID #: 1049

**Attachment 22**

Footnote
  130:24

force  184:14

forced
  278:12

forget  46:8

forgive
  234:12

forgot  20:7

form  41:16
  54:20
  151:14
  234:13

formal
  166:24

forward
  67:17
  81:25
  123:15
  137:10
  244:9,14

Foso  74:4

found  60:18
  104:18
  162:11
  194:13
  229:9

fourth  174:5
  185:14
  188:16

frame  16:18
  22:11
  237:4

free  67:13
  81:9,13,
  16,24 82:4

front  13:10
  76:5
  107:18
  134:11
  142:8
  173:11
  270:5
  273:16

fulfill
  114:4,5
  258:17,19,
  22

fulfilling
  248:10

full  185:14
  250:23

full-scale
  98:3,15
  250:2
  255:1

fully  15:7

function
  45:11

functions
  67:6

future
  178:16
  245:1

─────────
        G
─────────

gained  72:25

game  140:1
  166:6,8

garage
  269:17

gather  76:8
  191:20,22
  234:10,19

gathered
  107:12
  191:23

gathering
  194:1

gathers  99:6

gave
  159:11,19
  168:9
  278:21

gender  71:25

general
  24:13 33:6
  50:9
  53:22,25
  54:9 55:4
  57:4,23
  75:16
  95:14,17
  100:1
  110:21
  111:5
  132:14,18
  134:7
  136:15
  145:5,15
  165:22
  186:9,23

193:9
  207:10
  257:17
  267:18
  269:3
  271:12
  276:11
  279:11

General's
  10:10 54:5
  127:21
  128:20
  130:14
  131:3
  134:4
  279:1

generally
  33:23
  74:19

generated
  205:21

give  34:9
  48:24
  52:15
  56:23
  57:25
  81:11,16
  82:25
  83:11
  90:12
  139:21
  165:9
  166:5
  192:7
  276:16
  277:8

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 312 of 358 PageID #: 1050

Attachment 22

giving  56:22
  116:1
  167:18
  184:4
  264:8

glasses
  156:13

GMP  214:21,
  24

good  8:6
  78:18 80:8
  81:14
  82:13
  139:4
  220:11
  235:9

governing
  196:21

government
  35:4
  159:25
  160:1
  206:16

Governor
  35:10,11
  44:6 109:2
  110:9
  129:16

Governor's
  108:21
  109:1,4
  110:3
  111:2

grade  211:10

grams  215:22

216:1
221:2,11

graphic
  207:1

Great  55:7

greater
  168:9

Greg  35:13,
  14

ground  9:2,4

guess  21:9
  27:10
  29:21 39:8
  41:1 69:12
  98:13 99:4
  122:10,19
  155:6
  180:12
  181:3,7
  199:18
  204:19
  215:4,7
  221:22
  232:11
  242:14
  256:2

guests  11:3

guidance
  13:3 69:8
  90:13
  104:2,16
  105:3,18
  106:1

guide  67:13
  68:1,3,11

238:7

guided  67:15
  237:22

guideline
  67:5,12,24
  81:7,8,10

guides  237:9

gurney
  266:13
  270:6

                H

Habeas  8:16

half  154:12

Hall  10:6

Halloween
  146:12

halt  110:4

hand  111:24
  116:11
  122:13
  173:1
  181:14
  185:5
  251:5

hand-delivered
  56:7

handed  46:22
  61:7
  181:25

handle  13:3
  95:18
  184:21

hands  239:16

handwriting
  220:23
  227:23

handwritten
  220:16,18,
  25 224:6

handy  52:13

happen  17:6,
  7 41:3
  90:20
  98:14
  99:11
  273:13

happened
  123:3
  146:17
  231:8,17
  235:4
  259:4
  278:6

hard  129:11
  278:16

Hardeman
  23:2

harm  107:13
  276:22

harmful
  264:3

harsh  205:5,
  10,17,24
  206:2

Harwell  10:1

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 313 of 358 PageID #: 1051

Attachment 22

hate  181:18

he'll  13:16
   14:5

head  35:15
   154:24
   190:11
   223:2

heading
   210:20

health
   254:11

hear  14:15
   21:24

heard  77:24
   78:2
   98:21,22
   161:22
   246:10
   265:18,19

hearing
   55:13,19
   65:15
   69:21
   160:13
   167:15
   274:15

hearsay  14:5

heart  171:20
   255:5
   256:15

heavily
   222:18
   224:3
   225:12

heavy  223:5
   224:11

held  20:10

helpfully
   237:22

helping
   58:10,13
   155:5
   168:22

helps  42:4
   58:17
   69:17,18

Henry  8:5,12
   10:25
   11:16,19
   12:7 13:8
   18:7,12
   41:23
   43:19,23
   46:10,12,
   19,21
   47:18 49:5
   50:17
   52:16,19
   55:6
   57:15,18
   59:7 61:2,
   6 64:12
   74:4,9
   75:8,13,25
   76:3 80:1,
   12,15,18
   91:13,15
   96:11,15
   107:15,23
   116:9,10,

16,21
125:16,22
130:18,22
133:14,20
134:16,22
135:1,16,
21 138:19,
21 139:9,
14,20
140:18,20
142:4,7,24
143:3
150:16,21
151:9
158:1,3
159:16,17
169:10,16,
19 170:18,
19 173:5,
9,21,23
177:5,7,22
178:1,4,9,
15,20
179:2,11,
15 181:20,
24 185:9
188:1,7,
17,18
190:5,9
197:13,19
198:2,9
202:6,10,
15,17,24
203:1,21
204:20
208:12,21,
23,25
220:3,6

233:16,22
234:4
235:5
244:13,15
245:13
250:25
251:3,8,16
252:3,7
253:25
258:5,6
275:6
279:23
280:1,10

Hey  167:18

high  206:19

highest
   201:4

HIPAA
   156:18,22

hit  176:14

hold  21:19,
   21 23:14
   44:2 124:1

honest  16:1
   156:7

Honor  233:14

hooked  250:7

hope  17:5,7
   58:17
   250:21
   259:9
   268:13

hospital
   79:4

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 314 of 358 PageID #: 1052

Attachment 22

254:16
255:2

**I**

hour  16:16
128:9
228:19
230:13,21,
22  235:2

hour-and-15
16:12

hour-and-a-
half  16:12

hours  11:6,8
111:17
181:22
202:24
220:2,12
253:2
274:25
278:14

houses  78:22

huge  148:9

huh-uh  16:2

human  264:8,
22

hundreds
239:4

hyper-
exaggerated
266:2

hyperalert
265:14

I-n-d  221:2,
11

I-n-s-t
224:13

i-s-o-t-o-p-i-
c-a-l-l-y
216:23

i.e.  196:23

idea  139:11
214:2

ideas  80:25

identical
49:9

identified
270:3

identifies
198:3

identify
71:22
95:15
198:1
201:5
268:10
269:22

identifying
104:1
197:10

identities
197:18
233:15
268:21

identity
51:15
74:23
159:15,18
195:5
221:20
233:17
258:8

ignore
244:23

ignoring
210:23

II  48:9
196:23
222:23

III  183:21

ill  113:18
114:2

illegal
245:7,8

imagine
56:17

immediately
183:23

imminent
127:5

impact  14:14
264:7

implementation
36:23
107:20
140:8,9

implemented
245:17

implementing
36:4
245:16

importance
172:23

important
15:23
16:25
151:22
206:5,11
230:14
232:8

importation
196:23
198:23
199:9,25
200:6

imported
199:1

importing
195:24
196:3

imposition
64:24

impossible
200:19

improper
178:12

in-person
73:5

inadequate
197:1

incarcerated
34:6

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 315 of 358 PageID #: 1053

Attachment 22

**incidents**
162:25

**include** 11:9
34:7 39:23
76:25
77:3,7,10,
13,16
88:7,22
129:16,18
196:10
240:7
249:14
274:2,5,7

**included**
175:23
228:14

**includes**
21:3

**including**
74:20 75:2
147:10

**independent**
183:14

**indicating**
63:8
191:18
212:2
269:24
270:4

**indications**
261:14

**individual**
29:7 30:11
31:2,4,6
32:2 57:2

68:25 99:7
116:1
151:15
158:5,13,
15 160:3
177:13
179:24
180:13
181:9
184:23
195:9
205:22
215:1
221:2,11
230:9
250:6,14
265:1

**individual's**
255:15

**individuals**
27:24 28:1
30:6 40:17
42:19
51:16
65:23
93:13 94:3
106:21,24
111:19
112:4
122:6
138:4
153:25
159:6,11
160:15
161:6
162:11
163:24

164:23
165:3
168:3,16
175:14
180:8
198:1,5
205:18
218:21
222:22
232:25
240:16,20
254:10
255:4
267:11
271:11

**infirmary**
254:3,7,14

**info** 215:21

**inform**
127:20

**information**
29:16,19
30:8 40:22
41:1,11,
14,19
43:2,3
48:8 55:22
58:14
59:18 60:8
69:7,19
72:25
107:12
131:3,14
132:14
134:3
138:25
141:13,16

142:19
143:23
144:2,9
145:3,19
149:13
150:7
151:1,4,7,
23 152:21
154:19
155:3,5
156:16
157:25
160:16
161:15,17,
19 162:17,
20,22
163:23,25
164:1
166:25
167:16
168:18,22
170:7,15,
23 171:1,7
172:24
176:25
178:14
179:6
181:2
187:9
191:17
195:6
206:11,22
216:10
229:1
230:24,25
234:11,13,
18 240:23

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 316 of 358 PageID #: 1054

**Attachment 22**

**informed**
 27:12
 111:3
 127:24
 128:19
 198:6

**Inglis**  43:1,
 6 45:20
 46:25
 48:17,22
 49:8,21,24
 50:6 53:21
 54:8
 134:7,18
 135:24
 145:6,15
 173:13
 176:5
 185:15,17
 186:2,6,7,
 9,23
 187:14
 189:13
 251:13

**ingredient**
 77:4

**ingredients**
 125:2
 128:7,14
 129:13
 229:8,9,
 19,22
 235:13

**initial**
 87:12

**initially**

 60:5 106:3

**inject**  83:3
 249:3

**injectable**
 194:21

**injected**
 83:22
 87:13
 246:8
 264:14

**injection**
 19:2,3
 20:25
 21:12 23:6
 28:14
 29:2,24
 30:1 36:23
 37:9 42:7
 44:24
 59:19
 61:21,23
 62:14
 63:16
 64:25
 65:6,25
 67:9 68:4,
 8,17,21
 69:10,24
 73:6,9,16
 76:18,23
 79:17 81:5
 84:5 86:8,
 24 87:9
 88:4,13
 91:17,22
 93:2 94:5,
 8 107:25

 114:17,20
 115:13
 122:17
 124:11
 129:15
 132:8,11,
 21 133:23
 137:25
 145:20
 148:7
 149:14
 150:6
 153:3,6,7
 160:6,17
 161:21
 164:13,24
 167:20
 183:2
 185:2,24
 186:22
 187:2
 192:3,8
 193:2,12
 194:2,6,13
 207:13,21
 208:2
 232:5
 233:6
 236:2
 238:3
 239:18
 241:19,23
 242:1,3,8,
 13 243:1
 246:3,22
 247:16
 248:11,21,
 25 249:8,

 21 250:19
 252:9,16
 253:13
 255:14
 269:12
 275:22,23
 276:2

**injections**
 249:4

**injects**
 247:2

**inmate**  81:21
 83:6 84:22
 87:11,24
 90:2,15
 94:17 99:8
 105:4,21
 106:3,16
 126:2
 171:25
 172:9
 205:14,15
 241:17,18
 252:12
 254:21
 255:23
 257:16,21,
 22 259:24
 260:4,12,
 13,22,25
 262:10,25
 263:23
 264:5
 265:5,12
 266:1,3
 267:6

www.huseby.com              Huseby, Inc. Regional Centers              800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 317 of 358 PageID #: 1055

**Attachment 22**

inmate's
  255:16
  261:6

inmate/
offender
  259:3

inmates   34:3
  35:21
  78:13 90:9
  241:24
  242:4

input   53:12,
  17

inquire   50:9
  75:15

inquiring
  73:9
  165:18

inquiry
  214:10
  217:3

insensate
  90:3
  106:17
  259:24
  260:5,7,8
  263:5

insert
  249:10

inserted
  267:21
  268:11

inserting
  268:6

insertion
  267:25
  268:4

inside   51:25
  145:17
  175:10
  198:4
  212:16
  218:25

inspection
  48:2,6

install
  277:13

installing
  274:2

instance
  82:13
  113:17
  123:17

instances
  90:2

institution
  75:2 76:14
  93:18
  109:18
  126:8
  182:3
  185:21
  254:3
  256:4
  271:20
  272:13,25
  276:21
  277:12

institutional

94:12
  224:14

instruct
  74:11 75:6

instructed
  75:23
  212:12

instruction
  68:11
  82:19

instructions
  68:1

instructs
  13:20
  84:13

intended
  163:12
  192:15,17

intent   89:6
  149:19
  244:25

interested
  99:5
  160:15,21
  215:23
  216:8

interesting
  216:8

interfere
  16:21

internal
  214:11
  216:24

interns
  10:16

interposed
  43:10

interpret
  221:5
  222:9

interpretation
  66:19
  75:11 88:6
  119:9,19
  120:13,17

interrogatorie
s   58:25

interrogatory
  143:8
  151:1

interrupt
  107:8

Interruption
  86:23

introduce
  9:8

investigate
  205:9

involve   98:4
  201:20
  248:5

involved
  29:15 37:6
  39:9 51:23
  65:23 71:7
  72:8 96:13
  111:23

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 318 of 358 PageID #: 1056

Attachment 22

125:2
164:5
195:12
250:1

**involvement**
68:12

**involving**
22:4  83:3
85:14

**iphones**
181:18

**Irick**  95:11
116:25
117:5
127:11

**irrelevant**
96:10
133:13

**isotopically**
216:23

**issue**  50:9
87:23
113:20
125:14
138:18
178:24
196:22
229:14
232:4

**issues**
78:12,14
84:24  85:4
134:25
151:16
277:1

278:20

**item**  141:11

**items**  140:23

**IV**  84:24
86:17,25
87:1  96:18
102:7
104:17
246:15,17
257:5
268:6
275:23
276:2

**IVS**  250:7
267:20
268:1,4,11

---

**J**

---

**jails**  34:8

**Janet**  47:3
251:18

**January**  19:1
59:19  62:1
63:13  64:1
92:3
100:20
116:25
127:11,17,
19,20
128:18
146:10,20,
21  169:9,
15  188:21
194:3
236:16,19

242:5
269:11

**Jerome**  9:21,
23

**job**  58:15
111:20
156:10
158:20
159:23
160:5
274:22

**John**  252:12

**journey**
173:4

**judge**  76:5

**judicial**
108:10
110:23

**judicially**
67:8

**July**  188:25

**June**  49:14
76:4  132:9
133:11,23
135:8
136:17
157:14

**Justice**
25:3,4

---

**K**

---

**Katherine**
9:19

**Kathleen**
10:5

**keeping**
11:11
99:18
111:2,24

**Kelley**  8:12
107:7
134:21
150:10
173:19
178:11
233:14
251:16

**ketamine**
148:16
174:1

**key**  66:14,
22

**kidding**
116:20

**kind**  13:2
18:6  21:9
40:10  56:2
71:15
112:9
128:8
167:21
211:5
261:10
278:16

**Kissinger**
9:13
91:11,14
139:19

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 319 of 358 PageID #: 1057

**Attachment 22**

148:23
173:19,22
181:17
202:19,22
245:12

knew  158:12
159:4,6
160:20,23
163:24
164:3
168:12,17
179:21,22
180:18,25

knowing  99:5
181:4
244:9
250:3

knowledge
15:12
28:18
36:21
40:9,10
52:11
54:12,17,
18,25
55:14
69:25
71:10
76:22 78:5
100:8,10
105:24
118:17
127:1
129:1,7,19
138:13
139:1
147:5

150:13,19,
21 153:9
158:23
159:7
160:3,6,25
164:5,8,9,
11,14,23
167:8
168:4
192:20
218:5,9,20
231:10
232:23
233:8
245:15
249:2
250:10
253:14

knowledgeable
28:5,8,9
29:1

Knoxville
9:15

——————

L

——————

label  136:7

labeled
216:24

laid  88:20
102:8

landline
17:3
109:6,11
271:21

language

123:25
157:5
231:3

large  47:24,
25 211:13
222:3
264:19

larger  98:7

law  33:21
40:14 46:3
98:4
108:16
132:7
194:6

lawyer  13:13
272:23

lawyer's
216:20

lawyers  10:8
15:20
80:24
143:5
206:14
213:1
219:9
220:10
227:14

laying  261:6

laymen's
261:13

lead  8:12
9:13

leading
38:15

50:16
202:10

learn  163:4

learned
29:17
141:14
142:20
143:24
151:5
154:20
163:6
169:17
170:15,24

learning
152:18
180:10

leave  267:21
272:17,19

led  127:3
202:8

left  219:18

legal  28:1,7
31:11 43:7
45:4,6
46:2
53:16,19,
24 54:8
56:21
60:21
95:18
108:21
109:4
110:3
129:17
144:21

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 320 of 358 PageID #: 1058

Attachment 22

184:20
193:21
196:11,16
227:3,7
239:10
243:9,13
244:1
245:4
267:16
276:12

**legally**
212:16
243:19

**legislature**
40:13

**legitimate**
196:25

**length**  62:4

**Leroy**  10:6

**lessen**  200:3

**lethal**  19:2,
3 20:24
21:12 23:6
28:14
29:2,23
30:1 36:23
37:8 42:7
44:23
59:19
61:21,22
62:14
63:15
64:25
65:6,25
67:9 68:4,

7,17,21
69:10,24
73:6,9,15
76:18,23
79:17 81:5
84:5 86:8,
24 87:9
88:4,13
91:16,22
93:2 94:5,
8 107:24
114:17,20
115:13
122:16
124:11
129:14
132:8,11,
20 133:23
137:25
145:20
149:14
150:6
153:3,5,6
160:6,16
161:20
164:12,24
167:19
183:2
185:2,24
186:21
187:2
192:3,8
193:2,12
194:1,6,13
207:13,21
208:2
232:5
233:6

236:2
238:3
239:17
241:19,22
242:1,3,8,
13 243:1
247:16
248:10,21,
24 249:8,
21 250:19
252:9,15
253:13
255:14
269:11

**letter**  46:24
47:6 49:6,
9,11,19,22
52:15,21
61:10
130:20
140:17,18,
22 142:17
143:1
222:21
243:3,8,
10,15,21,
24,25
244:5,20,
24 251:9,
12,20,24

**letters**
49:25 50:6
222:4,20
223:18

**level**  29:13
39:5,14,
15,23

40:7,18
44:3
124:22
163:19
180:20

**LIC**  115:10,
13 118:9
119:1
120:3,15,
23 123:1,
5,6 140:6
194:12
195:14
201:18
202:1
205:4
206:7
216:15
219:5,6

**license**
79:11
222:23

**licensed**
224:12

**life**  125:7,
25 127:6
132:1

**limit**  218:9
267:11

**limited**
148:25
178:18
202:1
267:6

**limits**  116:3

www.huseby.com         **Huseby, Inc.  Regional Centers**         800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 321 of 358 PageID #: 1059

**Attachment 22**

list 154:10
  210:10,16
  279:10

listed
  66:18,23
  67:1 87:8
  155:7
  249:7
  250:13

listing
  66:12
  135:2

lists 135:7

lit 226:22

literature
  41:7 169:1

litigation
  124:13,15
  240:1

Little's
  42:8

live 50:14,
  18 125:16

local 34:8

locate
  118:16

location
  270:5

logistics
  245:15

logs 131:16

long 20:10
  21:19

23:3,14
24:21
47:11
101:9
169:4
235:8
249:9
253:14
272:22

loose 123:25

lose 21:22

lot 26:15
  41:19
  56:18
  73:10,11
  80:24
  111:13,18,
  21 113:16
  122:18
  134:10
  144:17
  223:9
  261:19

low 17:16
  206:18

lunch 11:10
  16:16
  107:22
  118:23
  139:5,8

Luttrell
  23:2

Lyle 140:23
  190:14

                **M**

machine
  253:18,21
  255:8,21
  256:4

Maclean 9:16
  10:7

made 40:5,8
  84:1
  101:21
  106:18
  131:12
  153:11
  155:15
  159:1
  163:25
  172:1
  179:18
  186:12,16
  207:14,16,
  18,24
  208:6
  214:18
  215:8
  235:11,12
  236:3,10,
  12,13,19
  244:8
  249:20
  266:20

main 78:22

maintains
  44:13

maintenance
  96:19

277:16

majority
  241:21

make 10:22
  11:17
  13:17 16:5
  17:8 30:20
  37:3 39:18
  43:3 48:2,
  8 51:22
  54:7 58:3
  65:19
  69:18 76:5
  98:12
  105:13,16
  120:5
  121:24
  132:1
  134:21
  139:25
  141:25
  147:3
  158:21
  160:10
  162:8
  167:11
  168:23
  170:9
  171:6,22
  173:6
  180:22
  189:16
  206:19
  215:3
  233:11,18
  243:12
  259:1

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234  Document 1-23  Filed 11/02/18  Page 322 of 358 PageID #: 1060

Attachment 22

260:2
272:1
273:24,25
274:1
275:12
276:18
279:4

makes  44:9
46:2
157:12
237:13
240:8
241:10

making  69:19
171:2
235:20
250:20

man  16:25

management
31:10
113:24

manner  230:1

manual  19:2
61:22
62:14
63:16,19,
21,24
64:16,17,
20 65:13
66:18
68:5,9,17
81:5,7,21
83:5 84:5,
10 91:17,
22 107:25
114:17

236:3
242:13

manufacture
214:21,24

manufactured
115:20
244:7

manufacturer
243:3
244:6,10,
21

manufacturers
74:24
203:6

March
117:14,24
185:12
186:13
187:7,14
188:2,3
189:4,10

mark  12:5
13:5 18:8
23:1 46:15
47:15 49:2
60:24
116:13
130:19
134:14
135:15
142:25
181:16
185:7
190:6
207:2
251:1

marked  11:18
12:6 13:7
18:10
46:16
47:17 49:4
52:18
59:3,6
61:1
116:15
130:21
134:15
135:20
140:16,19
142:5
143:2
173:8
181:19
185:8
190:8
251:7
252:2

marks  251:4

Martin  10:25
25:4

massive
264:13

master's
24:25 25:8

materials
41:5 44:22
45:23
51:5,7,9,
11 52:4,7
54:12
190:13
279:16

matter
152:12
174:13
248:1

Maximum
93:17
126:8
182:2
185:20
254:2
272:25

Mays  46:24
48:17 49:8
59:16
141:10
143:7,16
144:7
278:25

means  26:16
66:16
67:13
97:20
103:4
110:1
115:13
147:17
167:2
185:25
194:10
196:11
209:22
212:13
214:3
221:14
226:1,10,
20 227:18

www.huseby.com    Huseby, Inc. Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 323 of 358 PageID #: 1061

Attachment 22

meant  27:19
  205:17

meantime
  210:10

mechanics
  89:25

media  205:25
  269:7

medical  55:3
  78:22
  165:13,18,
  19,22
  166:2,19
  167:6
  168:8,15,
  24 169:1
  261:11,12,
  20,21
  262:2,8

medications
  14:13

medium
  141:12
  142:19
  143:22

meeting
  141:12
  143:23
  193:11,14
  197:4,5,12
  207:19
  280:3

meetings
  73:5
  130:8,11

Melson
  205:8,12
  206:5

member  35:18
  72:2,13
  106:1
  130:6
  231:11
  234:25
  235:19
  250:6

members
  72:3,13
  96:18,20
  103:1
  106:19
  111:10
  146:5
  149:25
  150:2
  152:21
  207:25
  268:5,10,
  22

memory
  58:11,12
  232:7,9

men  15:20

mentioned
  78:17
  88:15
  162:10
  228:16
  275:21

mentioning
  99:25

mentions
  205:2

message
  210:7,25
  211:15,17
  213:19

messages
  209:11,15
  213:11

met  8:20

method  147:9
  194:14
  196:16
  207:13
  238:19
  241:15,19
  242:8,25
  271:9

methods
  107:14
  205:19

micrograms
  217:1

midazolam
  32:18 71:8
  77:8 81:19
  83:4,11,23
  84:15
  85:14
  88:1,19
  90:4,15,23
  135:4,8
  136:1,7
  138:9
  147:11

151:16
152:5,12,
14 153:9
154:1
157:13
158:17
160:4,18,
22 161:8
162:7,24
163:6
164:12,15,
24 165:6
166:3,13
167:8
168:1,5
171:24
172:2,18
174:22
176:7,9,
23,25
177:18,19
188:3,20
189:2,11
201:21
202:4
203:2,13,
24 204:3,
7,13,23
205:7,11
206:4
208:6
209:3
235:21
236:7
243:4
244:6,9,25
245:3
247:3,5,10

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 324 of 358 PageID #: 1062

Attachment 22

253:15
263:10,25
264:1,4,9,
13 265:4,
10,13

midlevel
254:19

midnight
128:9

midway  117:8
210:6

Miles  10:18

Miller
117:23
118:3

milligrams
83:23
84:15

milliliters
217:1

mind  101:3
152:15

minute  22:17
43:14 84:8
86:13
218:16
247:2
273:2

minutes
108:18
139:3
181:22
220:2
246:11

248:3
253:7
273:2
274:25
278:15

missed  62:23
80:25

Missouri
226:22

misspelled
173:25

misunderstand
65:17

misunderstandi
ng  162:9

Mitchell
10:9 53:20
143:6
202:21

model  25:15,
20,22

modifications
39:7

modify
122:23
278:22

moment  61:17

money  222:10

monitor
26:14,16
30:14,22
257:16
262:9
277:13

monitored
27:2

monitoring
21:14
30:1,12
255:15,22
256:5

monitors
256:15

Monterey
26:4

month  98:17
190:20
191:14
236:21
243:23

monthly
30:25
36:20
96:23
97:1,25
98:8 99:2,
13,15,16
100:9

months  97:6
169:25
235:7,10,
16 236:24
243:22,23

morning  8:6,
18,21
11:15
14:13,19
16:14
202:8

278:14

Morris  10:5,
7

motion  12:10
121:24
190:4
266:17

mount
277:20,23

move  58:20,
21,24
67:17
81:2,25
83:10
87:22
96:17
107:4,24
123:15
140:2,5,7,
14 181:13
198:19
213:21
234:6
245:9
260:9
261:17
278:7

movement
278:4

moves  14:9
35:15
154:24
223:2

moving
202:25
244:14

www.huseby.com        Huseby, Inc.  Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 325 of 358 PageID #: 1063

Attachment 22

multiple
    209:4
    219:2

multitude
    277:1

muscles
    262:6

——————————

N

——————————

N-e-y-s-a
    187:13

naked   161:11

names   70:25
    75:19
    150:1
    170:22
    192:5

naming   76:13

narcotics
    196:23

Nashville
    50:14,18
    78:21
    185:21

national
    77:23

natural
    16:13,15

nature   95:18
    131:20

Naval   25:1
    26:3

Navy   26:1,

5,6

necessarily
    121:6
    256:25

necessity
    89:9

needed   40:5
    185:24
    186:19
    211:4
    249:14
    272:17
    274:1

neglected
    234:24

neighborhood
    154:15

networked
    69:22

news   41:7
    90:8
    220:11

newspaper
    168:21
    185:11
    187:22

next-lettered
    173:6

Neysa   187:3,
    9,13

night   202:7
    263:18

nine-seven-16
    210:21

nodding
    154:25
    155:2

noon   16:15

Northwest
    22:25
    23:11,22,
    24 24:1

notation
    227:16,18

note   9:9
    96:5

notebook
    269:10

noted   133:14
    138:20
    158:2
    177:6,23
    178:2
    179:12
    202:12
    208:24
    217:1

notes   154:16
    193:20
    220:16,18
    221:1

notice   11:23
    12:1
    175:4,7,8
    184:5,23
    231:4

notification
    33:8
    229:21

230:2,4

notified
    123:20

notify   90:18
    123:11

November
    173:13

number   21:22
    31:21 34:7
    42:20
    44:13,18,
    21 97:3
    102:7
    103:8
    154:9,11
    169:5
    183:10
    221:4
    223:17
    241:11
    245:21
    267:8,11
    269:19

numbers
    53:6,8
    174:5
    209:17,20,
    21,24

Numeral
    47:24

nurse   78:1
    165:13,14

——————————

O

——————————

object   14:5

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 326 of 358 PageID #: 1064

**Attachment 22**

41:16 50:4
54:20 64:9
74:2,10
79:25
125:10
138:17
157:23
177:2

**objection**
43:11
50:15 75:9
96:6
133:12
158:2
177:5,22
178:1
179:11
202:11,12
203:18
208:24
233:13,14

**objections**
13:1,13,17

**objects**
198:18

**observation**
257:21

**observe**
26:19
261:1
267:14,23
268:5
271:2
276:2
277:25

**observed**

80:14
139:8
162:20
163:2
220:5
247:14
268:20,23
275:5

**observing**
164:12
246:14,17
275:17
276:24

**obtain**
28:18,19
29:2 41:7
74:19
75:4,17
79:13,16
85:25 86:3
106:12
111:11
115:10
119:6
120:2,22
121:3,20,
25 122:25
123:5,17,
18 127:4
128:2,21
133:6,18
175:11
176:9
185:25
187:16
199:13,24
201:8

212:15
235:13

**obtained**
69:25
74:21,22
118:8
136:21,23
137:5
149:7
155:3,5
170:7
171:2
257:6

**obtaining**
28:14 29:6
73:15
76:18,23
77:8,11,
14,17,21
118:14,25
119:1
121:12
122:16
132:11,20
138:6
181:11
193:2,6
196:16
201:17,25
203:5

**obtains**
85:22

**obvious**
65:10 82:9
261:7

**occasion**

104:7

**occasions**
98:1

**occur** 41:5
65:5 66:10
146:6
166:4,19,
20 169:24
235:2,6

**occurred**
22:10
72:21 80:4
97:14
100:7,8
124:16
126:21
146:16
235:7,11,
19,24

**occurs** 65:12

**October**
117:18
134:19

**offended**
14:25

**offender**
84:2 90:23
104:14,15
105:14
155:18
163:17,20
172:12
259:17
261:15
266:12

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 327 of 358 PageID #: 1065

Attachment 22

267:17
276:10

**offenders**
34:6,7,8
67:23
78:23,25

**office** 8:17
9:15,20,
23,25
10:2,10,14
36:7 54:1,
5 56:8
57:4 89:17
109:1,16,
19 111:3
123:8,9
127:21
128:20
130:14
131:4
134:4
191:19
271:12
279:1

**Officer**
35:12
187:10

**officers**
34:16

**official**
92:11
121:9
131:5
168:16
229:2
240:11

267:14
269:4
270:2,7,19
271:5,21
272:20,23
274:9
276:1

**officials**
60:9 69:14
70:7
76:17,21
77:20
152:7,8,
10,24
180:5
192:7
193:4
219:1

**older** 21:22

**on-site** 79:7

**one's** 217:9,
10

**one-drug**
72:8
239:25
240:7,8,
12,24
241:3,6

**one-on-one**
70:10,14

**ongoing**
102:10,16
131:13
132:10
199:16

209:5

**onsite**
273:11

**open** 148:9,
13 210:9
261:7

**operate**
33:20

**operated**
34:24

**operates**
35:3

**operation**
216:9

**operational**
67:6

**operations**
20:20
22:23
23:22
33:17
35:12
51:18
159:25
160:2

**opinion** 55:3
158:7
163:7
168:4,13,
14 241:1,2
243:18

**opinions**
55:13
168:10

**opioid**
148:17

**opponent**
202:20

**opportunity**
278:19

**opposed**
273:24
274:17,20

**option**
105:6,11
113:12
163:7
188:20
200:17
222:10
236:11
239:15,16
242:3,6,15
259:7
260:8
274:7

**options**
109:7
196:9
200:9
201:11
211:20
239:9
274:6

**oral** 161:25

**orchestrate**
206:16

**order** 12:10,
24 13:4,9,

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 328 of 358 PageID #: 1066

Attachment 22

22 69:8
74:13
75:12,22
81:16
82:4,10,
15,19
107:16
115:8,10
117:4,11,
21 118:9,
17,25
119:6,10,
12,15
120:2,12
121:22
122:25
123:6
126:9,16
127:14
140:11,15,
22,25
141:18
142:18,22
143:10,19
144:24
150:12
173:16
189:24
190:14
201:4
213:3
215:10,16
228:9,14
233:10,15
234:2,8,10
245:10
254:18
255:24

258:1
272:18

**ordered**  11:5
67:9 82:24
111:9
150:18,25
200:24
219:8
255:20,25
256:17

**ordering**
82:7,8

**orderly**
34:21

**orders**  64:23
76:7 83:9
116:12,23
120:9
141:6,9
171:16
215:23

**original**
56:6

**out,'**  185:23

**outline**
139:22

**outset**
236:23

**override**
272:14

**overseas**
195:25
196:4,14

**oversee**

20:19
33:17
93:19
108:9,11
110:23

**overseeing**
108:15

**oversees**
21:11

**oversight**
110:25
111:5,15

———————————

———————————
**P**
———————————

**P-e-n-t-a-s-o-
l**  225:14

**p.m**  84:11

**p.m.**  142:11
173:18
174:16
176:18
280:14

**packet**
116:12
173:1,11
174:6
190:6,12,
17 191:17
228:14

**pages**  18:25
62:4 191:1

**pain**  105:4
106:4,17
147:21,23

148:1,7
155:19
163:21
241:5
258:10
259:25
260:8
262:16
265:4

**pan**  246:18
275:23

**Pancuronium**
148:19
149:10

**paper**  205:22
231:2

**paperwork**
215:15
219:10

**paradoxical**
265:8,9,
10,17
266:10

**paragraph**
53:6,8
59:22 67:4
74:17
84:13
88:10,15
107:10
115:6
117:8
132:5
152:12
183:3,5,22
184:3

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 329 of 358 PageID #: 1067
Attachment 22

185:14,16
186:25
188:16,17
196:21
199:20
206:14

paragraphs
53:13

paralegal
47:3

Parallel
225:24

paralytic
147:10
148:18
149:4,9
260:20

paralyzes
260:22
262:5

parameters
12:11,23

paramount
172:23

parent  166:9

Parker  8:1,
6,9,11,14
11:14
12:4,8
14:12
16:23
46:13,22,
23 47:9,10
50:4 52:20
59:2,12

61:7 74:6
90:1 97:10
99:24
124:9
127:2
141:9
142:9
143:7,16
144:6
173:10
190:12
228:5

Parole
34:10,11,
14,15,16

part  26:1,
13 30:24
35:5 88:3
94:5,15,
19,21
99:14
157:25
163:10,13
192:16,17
236:22
239:14

participate
95:10
110:12
111:1

participated
30:7
114:12
163:24

particulars
125:4

parties
15:14
183:24

parts  51:13,
14,15,16

party  59:17
75:2 177:4
183:25
184:4,5
202:18,19

pass  259:2

passes
260:12,15

passing
261:16

past  20:2
133:23
191:13
214:18

peak  253:15

pen  270:24

pending
131:1

Penitentiary
23:1,13

pentaobarbital
32:18
75:5,17
77:1,5
85:10
102:11,19,
22

pentasol
225:14

pento  176:14
211:3
225:17

pentobarbital
22:5 29:8
101:23
102:15
115:17,20
123:18
124:14,25
125:6,12
126:4,10
127:4,23
128:1,21
129:24
130:25
131:4,15,
17,25
133:7
181:14
185:3
186:13
187:16,24
188:6,25
189:6,12,
14,18,24
194:20
196:3,10,
24 198:7,
15 199:10,
14,16,25
200:6,10,
25 201:6,
8,12 202:2
203:3,5,6,
8,17
204:8,11,
14,23

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 330 of 358 PageID #: 1068

Attachment 22

208:7,18
209:2,6
212:10,15
213:8
215:3,6,
12,21
216:7
218:2,6,
10,13,17,
19 221:9,
12,21
222:24
223:11
224:1
226:7
227:17
228:18,24
229:8,16,
24 231:15
232:4,20,
24 233:2
234:20
236:7
238:15,16
239:11,13
240:4,17,
21,24
241:13
242:20

**pentobarbitone**
223:22,25
225:3

**people**   27:23
39:8 73:11
77:25
78:6,9
82:6 89:5

98:12
106:21
111:10
112:4
129:9
144:18
150:3
152:13
153:7,8
154:8,11
158:11
159:4,5
160:14,19
162:5
163:11
164:3,4,22
165:2,8
167:5
168:13
169:6
171:4
179:21
180:5,17,
23,25
181:8
184:21
197:18
198:4
217:12
218:24
219:20
230:8
239:6
240:23
267:8
271:12
272:1
276:9

277:4,5

**percent**   96:1

**perform**
163:12
201:15
247:18

**performed**
159:10
163:11
246:18

**performing**
67:8
258:20

**performs**
258:24

**perimeter**
91:18 98:5

**period**   22:2
169:4,6,
11,23
170:4
221:2
267:19

**periodically**
36:19

**permit**   200:6
272:12

**permits**
196:22
255:15

**permitted**
107:19
267:25
272:19

**person**   30:14
48:21
94:15
95:4,15
134:6
138:25
145:2
149:2
154:5
157:13,16,
18 167:24
171:4,5,18
176:24
178:21,22
179:4
180:10
192:20,24,
25 193:5
211:1,9
217:11
218:3
220:16
227:21
232:22
233:11
248:10,14,
18 258:7,
16 261:24
275:15,16

**person's**
93:3
147:20
158:19
178:14

**personal**
54:18,25
55:14

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 331 of 358 PageID #: 1069

**Attachment 22**

70:10
139:1
147:5
180:19
192:20
232:23
233:7
241:1
250:9
274:18

personally
131:9
142:23
158:12
159:4,6
160:25
161:19
179:21,22,
25 180:24
181:4,6
199:11
206:12
219:3
240:10
247:14,17
273:23

personnel
66:14,22

persons
145:3

pharm 224:6
226:16,19

pharmaceutical
77:4

pharmacies
74:24

195:12
218:4

pharmacist
119:11
128:13
177:16,17
178:5,8,
11,12,14,
23 182:5,
15,18,23,
25 183:5
184:7,19
219:4
228:17,23
229:6,11,
19,21
230:7,12,
20 231:5,
18

pharmacokineti
cs 165:6

pharmacologist
165:12
166:1

pharmacy
79:7,8,10,
18 125:3
195:13
213:22
216:6,14
229:20

phenomenon
265:11

phone 70:14
109:6
271:17

272:4,7
273:17
274:8,11,
13,17,18

photographs
135:22,23

phrase
98:21,22
120:7
255:10
265:18

physical
137:6,12

physically
277:12,14

physician
87:13
95:9,24
96:7,9,13
104:1,10,
12,25
105:2,7,
18,23,25
115:9,23,
24 116:3
121:2,15,
21 122:25
165:23
167:25
254:19
257:1,7,15
263:21

physician's
95:1
115:10
118:9,17,

25 119:6
120:2,9,12
122:25
123:5
126:9

physicians
165:19,21
166:2

pic 211:16

picks 38:25
39:1

picture
211:14

picturing
167:16

piece 231:2

pinching
248:5

Pino 9:21

place 30:22
51:22
56:17 96:3
113:25
146:14
169:7
189:5
198:14
203:6,12
248:14
266:9
271:20

places 75:20
176:11

Plaintiff

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 332 of 358 PageID #: 1070

Attachment 22

9:14

**Plaintiffs**
8:13 85:23
206:8
230:16
241:21
258:9
262:15
279:19

**Plaintiffs'**
59:4 61:9
63:15
91:23
143:18
150:14
190:15
263:1

plan 16:11
140:1

plane 257:17

planned 67:6

plans 16:20
107:20
262:13,20

played 57:5

plays 122:15

pleading
143:5

pleasure
280:3

pled 56:14

plenty
227:10,17

point 71:12
73:22 74:5
76:12
78:19 80:8
83:19 84:1
104:20
119:14
167:13
168:2
195:11
196:20
205:3
207:6
239:4,5,9
241:4
242:19
263:12
276:5
279:19

point's
179:18

policies
111:4

policy 33:21

poor 232:7,
9

poorly
14:23,24,
25

pops 261:7

port 263:21

portion
222:13
245:9

portions

52:4 252:4

pose 207:3

posed 129:23

position 8:8
15:11
20:11
21:19
22:17
23:3,5,8
32:1 35:7
44:2 49:25
55:24 93:3
94:14 99:8
103:13
113:25
114:10
156:9
159:24
160:1
180:21,25
278:5

positioned
246:22

positions
23:15
93:12
153:17

possession
124:4
131:17
132:3
136:13
137:6,12
144:14
149:17
228:12

239:17
244:17

possibility
118:15
195:24
198:22
200:16
213:16

possibly
70:15
104:18
105:8
176:3
236:25

Postgraduate
25:1 26:3

potassium
77:14
135:4,11
136:2,8
146:24
147:10
148:3
172:15
236:8
258:12,15
262:17

potency
183:15

potential
128:5
129:2
195:18
196:9
239:8

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 333 of 358 PageID #: 1071

**Attachment 22**

powder
  225:18

Powerpoint
  191:2,3
  192:3,6,
  10,12,21,
  25 193:3,
  8,15 195:2
  206:24
  207:10,14,
  19 208:3,
  5,9,14

powers
  174:21
  175:19,23

practical
  48:5 103:3

practice
  9:18 10:6
  30:13
  98:3,13,
  22,23,25
  99:2,6
  100:2,6
  101:16
  103:3,12,
  15,20
  104:5,10,
  21 105:17
  111:6
  114:8
  154:1
  247:15
  248:12,23,
  24

practiced

100:11,15,
19

practices
  99:9
  101:6,20
  104:4
  247:20
  248:9

practicing
  101:22
  102:3
  103:2

practitioner
  78:1
  165:13,22

preclude
  128:13

preface   30:4

prefer
  254:21

preferable
  240:9

preference
  240:6

preferred
  159:3,5

preliminary
  11:8

preparation
  27:10

prepare
  15:16 27:8
  38:14 98:9

prepared
  111:8
  241:12
  276:16

prepares
  247:8

prescription
  118:18
  119:10
  120:7,8,
  12,14,22
  121:22
  126:17,22

present
  104:1
  267:25
  268:3
  275:13

presented
  191:6
  192:13,19
  193:10,13
  207:11

preserving
  13:19

presume
  250:16

presuming
  215:15

pretty   15:23
  36:17
  108:17,22
  110:21
  155:1
  230:14

235:8

prevented
  180:9

previous
  124:13
  191:3
  217:9,17

price   221:8,
  10

pricing
  215:23
  216:8

primarily
  22:25
  28:11
  45:10
  103:10
  205:25

primary
  68:10
  86:25
  108:4,7
  122:16
  176:19
  240:3
  242:8

principle
  102:5

printed
  186:17

printout
  185:10
  191:18
  225:2,7,9

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 334 of 358 PageID #: 1072

**Attachment 22**

prior    22:17
  23:8,17
  24:5  72:21
  85:22
  100:11,19
  102:19
  108:18
  124:12
  127:19
  128:17
  146:9,12
  176:23
  191:13
  235:19,24
  241:16,18
  258:14

prison    20:19
  22:23
  25:11,12
  79:3
  186:19

prisons
  20:16,18,
  23  22:1
  24:7
  25:11,12,
  14,25
  26:9,18
  28:13
  32:22
  36:10
  103:24,25

privacy    17:4
  156:17

private    9:18
  10:6  17:2
  35:1

pro    10:7

Probation
  34:10,11,
  13,15,16

problem
  111:25
  271:1

problems
  255:5

procedure
  31:4  33:21
  68:19
  88:5,14,20
  90:18  91:8
  104:19

procedures
  19:3  21:17
  51:21
  61:22
  64:22
  68:24
  160:6
  170:13

proceed
  123:22
  260:16

proceeding
  131:1

proceedings
  280:13

process
  30:24  31:5
  37:7,14,15
  38:23
  39:10,21

42:2
  51:10,23
  57:10
  64:22
  65:5,14
  69:17  80:5
  87:10
  88:18
  89:4,5,21,
  24  94:19
  95:19
  97:24
  98:13
  99:14
  100:22
  104:3,13
  105:1
  108:15
  111:2,6
  113:23
  114:14
  123:11
  124:8
  162:21
  163:3
  167:11
  180:8
  193:6,21
  199:23
  200:1
  214:21,24
  238:18
  240:24
  241:10
  250:3
  260:10,17

processes
  38:20

68:24  88:7

procure
  187:1

procured
  138:7

procurement
  115:2,7
  207:21

procuring
  208:2

produce
  59:24
  141:10
  213:3

produced
  60:4,5
  97:12
  134:18
  140:24
  176:6
  190:3
  233:9
  234:15
  248:17

product
  244:7

production
  59:5  61:9
  62:13,18,
  20  63:12
  143:9,18
  191:2,21
  206:13
  216:20
  220:10,15

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 335 of 358 PageID #: 1073

Attachment 22

228:9
252:2

productions
234:17

products
216:22

profession
153:12
159:22

professional
69:22
106:22
166:15,21
167:7
168:14,15
241:2
261:12,20,
21

professionally
154:2

professionals
69:14,24
152:9
165:18,19
166:19
168:9,25
169:2

program
25:14

prohibited
64:8
256:18

project
246:23

promise  16:8

promptly
48:2,5

pronounce
148:22,24
257:2
260:6

properly
67:6

properties
164:15
165:5
225:3

protocol
22:3,4
27:11,15,
16,19 33:7
37:6,13,
15,23,25
38:2,10,
13,16,17
39:2,13
40:3,4,8,
24 41:6
42:7 51:6,
10,18
55:16,17
59:1,20
63:14,21,
25 64:5
67:19
68:23
69:1,4,10
72:5,8,10
74:20 82:3
83:3,17

84:13
85:7,10,
11,13,14,
24 86:1,4,
8 88:20,25
89:25
90:12,17
91:7 92:2,
3,10,11,
15,22 93:1
96:6,9
97:13,17,
25 98:6
100:11,23
101:17,22
102:4,8,9,
24 103:2,
12,14
105:5,9,20
106:15
107:14,21
112:18
114:13,21,
22,24
115:1,16
118:6,13
119:3,6,
19,23,25
120:14,17,
21,23
122:10,20,
21 123:4,
15,21,22
124:11
126:5
133:3,6,
10,19
135:3

136:24
137:10
138:8,18
140:10
146:10
147:10
150:13
151:14
152:3,4
155:8,21
160:20,24
161:21
162:18
163:12
167:12
170:10
171:9,10,
15,25
172:2,6,9,
12 188:21
189:4,6,
13,23
190:25
194:19
196:17
225:24
233:4,6
235:21,25
236:2,9,
10,13,15
237:5,6,7,
9,11,14,
18,23
238:6,9,
13,19
239:14,18,
19,20,21,
22,25

www.huseby.com          **Huseby, Inc. Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 336 of 358 PageID #: 1074

**Attachment 22**

240:7,8,
12,18,25
241:3,6,7,
15,16,24,
25 242:2,
12,22
245:16,20
247:6,16
248:25
249:1
252:9,18
253:12
255:7,14
257:5,11
261:4
262:19,21
267:3
269:12
273:13

**protocol's**
263:7

**protocols**
21:11,17
36:23
37:18,20
39:22
44:24
51:17,25
68:10
73:7,9
85:17
111:4
147:8
192:9
205:20
238:5

**provide** 13:2

26:25 30:9
40:22,25
55:22
59:17 69:8
101:8,13
104:2,16
105:2,25
109:17
129:13
131:2
132:13
142:18
150:25
161:25
162:6
163:19
165:24
168:17,25
169:20
181:1
183:1
190:15
191:21
195:5
196:25
215:10
217:2
218:15,19
219:5,9
221:20
228:18,23
241:24
274:13,16
279:3,17

**provided**
47:19
54:13
62:13

63:14 68:5
91:22
100:1
105:18
134:2
135:24
141:14
142:19
143:24
145:3,12,
14 151:5
156:7
157:13
173:12,16
177:13,17
179:4
190:13
206:22
212:25
215:9
228:8
237:6
241:17,22

**providing**
65:13
101:3
110:13
137:9
144:9
145:19
150:1,7
176:24
178:21,22
181:11
192:5,24
194:1
218:17
274:20

**provision**
30:5
156:15,19,
20 237:8
255:13
273:12,14

**provisions**
156:18
275:12

**public** 8:16
41:13,17,
21 42:1
43:11,12,
17,21
44:15,18,
25 45:2,8,
12,18,22
46:5,7
47:4,12,22
48:1,3,16
51:2,7,12
52:5,8
91:19
97:11
100:4
131:11
134:18
135:25
145:13
173:14
186:12
187:9
234:16
251:21

**publicly**
42:23
93:21,23

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 337 of 358 PageID #: 1075

Attachment 22

94:1
187:15
201:1

pull  156:12

pulled
  230:20,22

pulling
  230:12

purchase
  79:14
  229:12
  244:9,25

purchased
  243:18

purchasing
  245:2

purpose
  72:12 73:8
  104:9
  129:14
  172:3,5,8,
  11,14,17
  192:6
  193:14

purposes
  96:8 174:2
  216:25
  254:24
  269:10

pursuant
  11:25
  134:18
  135:24
  140:10
  143:10,19

145:12
215:9
251:21

pursue  208:6

pursuing
  200:12

purview
  95:20

push  30:15
  246:14
  247:4,5
  249:10
  250:16
  277:25

pushed  247:9
  249:12,22
  250:4,15
  252:24

pushes  31:3
  247:9

pushing  32:3
  99:9 102:6
  103:4,5
  240:13,14
  249:24
  250:7
  253:1,7,13
  262:14

put  51:22
  55:5 66:3,
  15 67:11
  73:22
  192:24
  193:3,10
  215:14

putting  60:2

___

Q

qualified
  41:17
  241:9

quality
  163:22

quantities
  211:19

quantity
  148:25
  217:2,6
  264:13

quarter  80:6

question
  13:18,21
  14:7,23
  15:7 24:13
  30:5 36:1
  41:16 42:5
  43:16
  45:19 51:8
  54:20
  57:3,17
  62:23
  73:4,23,24
  75:24 76:2
  81:15
  86:13 93:5
  95:21
  96:14,17
  97:22
  99:10
  105:22

118:23
128:17
129:4,23
137:3
139:18
140:5,14
141:24
145:10
155:14
157:1,21
158:24
162:9
166:16
169:14
177:21
178:12
179:1,3,14
186:8
199:18
200:11
204:19
205:15
207:2
208:16
211:2
212:5
234:12,13
238:22
245:5
256:14
257:25
259:9
260:3,18
261:11
265:22
276:13
280:4

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 338 of 358 PageID #: 1076

**Attachment 22**

questioning
  96:10
  107:11
  148:13
  160:12
  180:6
  205:19
  278:15
questions
  13:14,24,
  25 14:15,
  18,22
  18:1,3
  27:5,6,18
  28:5
  29:21,25
  30:4
  32:20,25
  33:2,5,7,8
  44:1 54:24
  55:10
  80:25
  123:24
  125:20
  140:13
  145:11
  152:15
  155:8,11
  162:7
  187:4
  227:24
  234:10
  266:16,24
  275:10
  279:20,23,
  25
quick   81:1

  84:8
quicker
  14:10
quickly   11:7
  246:7
quote
  185:22,23
  205:5
  214:12
quoted   221:9
quotes   205:5

_____
      R
_____

Rachel   10:17
radar   200:15
radicalization
  25:11,12,
  24
raw   125:1
  128:7
  229:8,9
Ray   95:11
  116:25
  127:11
reach   253:15
  272:24
reached
  195:2
  210:11
  257:17
read   27:15
  42:13 88:9
  90:8

  122:23
  168:20
  184:17
  243:25
readily
  121:23
  122:12
  142:12
  146:24
  176:12
reading
  42:14
  164:20
reads   84:11
  147:25
  148:8,15
  185:16
  210:8
ready   186:21
Reagan
  112:10
real   81:1
  193:23
reality
  122:1
reason
  48:19,22
  49:18
  57:17
  97:21
  98:19
  102:14
  110:4
  131:18
  158:25

  159:2
  172:18
  242:19
  256:20
  276:7
reasonable
  102:12
  215:5
  238:17
  265:25
reasons
  74:21
  195:20,21
reawaken
  260:13
reawakened
  262:11
recall   28:24
  32:5 33:9
  46:4 47:8
  49:12
  60:13
  61:16
  77:19
  141:1,2,3
  144:23
  183:20
  184:25
  229:7,17
  278:24
receipt
  115:7
  122:21
  243:14
receive

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 339 of 358 PageID #: 1077
Attachment 22

36:25 56:9
82:18
184:7
243:21
259:11

**received**
36:22
100:3
149:14
162:12
163:23
184:22
207:15
243:7,9
244:5,20

**receives**
259:15

**receiving**
56:12
126:9
164:20

**recent** 205:8

**recess** 80:14
139:8
220:5
275:5

**recipient**
176:9

**recognize**
11:22
18:14,23
106:2
175:7
220:19,21
225:9

262:10
265:8

**record** 8:8
11:11
13:19 16:5
44:18
48:3,5
75:10
80:13,17
91:13
96:6,12
138:17
139:10
181:20
220:4,8
248:14
250:22
252:10,16
275:1,8
279:16
280:10

**Recorder**
94:9
248:11,21
249:8,21
250:19

**recording**
99:18
248:16

**recordings**
249:20

**records**
43:24
44:13,22,
25 45:3,9,
12,18,22

46:5,8
47:4,12,22
48:1,16
51:2,7,12
52:5,9
97:11
100:4
101:15
131:11
134:19
135:25
145:13
173:14
234:16
251:22

**recourse**
271:6

**red** 83:25

**redacted**
101:10
142:10
176:14
182:16
198:23
199:21
211:21
213:24
222:14,18
223:13
224:3,24
225:12
230:25

**redaction**
182:4
211:13
221:17,19
222:3

224:13
226:15,18
227:12

**redactions**
197:3
213:15
222:8,16
223:5,10,
11 224:7,
11,17

**refer** 13:11
63:19
140:15
142:16
145:8
264:16

**reference**
78:11
173:18
174:3

**referenced**
206:3

**references**
206:10
225:21

**referrals**
169:1

**referred**
115:23

**referring**
53:19,21,
23 54:8
98:16
126:17
143:14

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 340 of 358 PageID #: 1078

Attachment 22

149:8

**refers** 147:1
 198:21
 223:19

**reflect**
 91:13
 181:21

**reflecting**
 59:18

**reflection**
 249:9
 250:12

**reflects**
 16:5

**refresher**
 39:8

**regained**
 106:4

**regard** 67:19

**Region**
 22:20,22,
 24 23:11

**regular**
 165:25

**regulations**
 199:22

**rehearsal**
 26:24
 30:22
 31:1,14,24
 32:7,24
 36:20
 97:13,16,
 18,20

98:3,15

**rehearsals**
 30:2,7
 96:24 97:1

**relate** 54:24

**related**
 68:18,20
 141:10
 143:21
 162:7
 266:24

**relating**
 59:18
 215:11
 217:8

**relationship**
 180:19

**relative**
 152:11
 162:20

**release**
 91:20
 199:3

**relevance**
 14:5 79:25

**relevancy**
 203:19

**relevant**
 96:13
 150:14
 162:23
 163:5
 169:2
 180:3

252:4

**reliable**
 153:8,11
 155:19,20
 156:1
 157:19
 158:12,17
 160:3
 162:6,11
 164:1,6
 168:18
 172:25
 177:18
 178:5
 179:5,9,19
 180:2

**relied**
 153:7,10

**rely**
 197:20,22
 219:11

**relying**
 15:15
 197:22

**remain**
 183:24
 275:16

**remains**
 184:14

**remember**
 14:14 20:1
 22:7 28:16
 33:5 42:14
 53:2
 56:12,16,

20,21
 58:11,13
 59:11
 60:10,15,
 17 97:6,7
 126:13,14,
 20 128:24
 130:12
 146:7,8,18
 158:18,19
 165:17
 170:1
 207:17
 229:7
 232:8
 236:4,11
 243:22

**remembered**
 265:20

**remembering**
 267:20

**remembrance**
 130:3

**remind**
 119:21

**render**
 155:17
 171:18,21,
 25 172:9,
 12

**rendered**
 90:2
 162:25
 163:10,14,
 16

www.huseby.com          **Huseby, Inc.  Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 341 of 358 PageID #: 1079

**Attachment 22**

rendering
  265:12

renders
  264:25
  265:14

reobject
  14:9

repeat  14:8
  88:9,13
  279:12

repeating
  87:9 88:4
  239:6

repeats
  88:11

report  35:9,
  11 37:22
  38:1 42:1,
  10 112:8
  231:14,19,
  20

reported
  90:9 229:3

reporter
  11:17 12:5
  13:5 18:8
  46:11,14
  47:15 49:2
  52:15,17
  60:24 76:1
  116:13
  130:19
  134:13
  135:14
  142:25

173:5
181:15
185:6
190:6
251:1

reporter's
  11:11

reporters
  185:19

reports  90:8
  161:19,22,
  23 162:1,
  4,10,12,
  14,15

represent
  12:8 22:9
  47:2 59:13
  97:9
  173:12
  187:6

represented
  54:4
  130:15
  136:15
  187:15

representing
  15:20

request
  45:1,3,18,
  23 46:5,8
  47:5,12
  48:10,16
  51:12 52:9
  59:4 60:4,
  6,9 61:9

62:12,18,
19 63:12
100:5
131:11
134:19
135:25
143:9,18
145:13
166:24
173:14
217:19
234:17
244:2
251:22

requested
  215:21
  217:7,18,
  20 219:15

requesting
  219:5

requests
  44:19,22
  45:9 59:15
  97:11
  131:13
  182:25

require
  29:20 30:6
  55:3,12
  83:17

required
  132:7
  261:21
  267:14

requirements
  108:16

176:13

requires
  48:12
  240:14

research
  227:4,7

researching
  198:22
  199:21
  200:5

reserve  87:4

resolution
  199:6

respect
  20:24 21:7
  55:15 56:4
  142:17
  203:2
  206:3
  207:20
  208:1
  253:12
  256:14

respectfully
  214:11

respecting
  245:10
  266:20

respond
  47:12 50:6
  76:8

responded
  48:18
  50:10,11

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 342 of 358 PageID #: 1080

Attachment 22

81:22

**responder**
48:9

**responding**
45:8

**response**
45:13,17
48:12,24
57:8 60:4,
5 61:8
62:12,19
63:12
97:10
129:24
130:4
143:8,17
144:5,6,
10,11
145:4
173:13
176:8,17
187:3
190:3,14
210:22,25
211:9,20
213:1,11
214:14
219:16
228:8
233:10
259:17

**responses**
18:18
49:22
56:22
100:4

**responsibiliti
es** 20:24
33:15
35:23
36:17
66:13,21
67:8,19
68:20
93:2,7,9,
10 110:22

**responsibility**
30:21
33:16,23
34:19
45:11
69:16
111:19
233:1

**responsible**
31:10
33:25
34:21
40:20
67:21
68:25 69:3
82:22
92:21,23
99:17
121:11
129:9
261:24

**responsive**
83:6 84:22
87:25
90:15
228:13

**rest** 138:14

**Restate** 51:8

**result**
151:25
152:18
164:19
196:6
199:22
207:14,19
208:3

**results** 38:1

**retailers**
74:25

**return**
243:16,19
244:3,7

**returned**
87:13
243:5

**reveal** 51:15
258:7

**revealed**
268:21

**review**
27:11,14
37:7,14,
15,20,23
38:2,6,10,
17,19
39:15,21,
22 40:1,2
41:6,10
42:2 44:15
45:12
51:6,10

**rest** 138:14

**Restate** 51:8

**result**

58:9 61:18
279:3,15

**reviewed**
37:2,18,25
39:4 42:7
44:23 52:4
147:7

**reviewing**
21:16

**reviews** 19:8
38:13,22
39:16 41:4
61:19 62:5
63:6
175:12
191:15
237:20

**revise** 40:24

**revision**
39:13
61:25

**Richard** 9:24

**right-hand**
117:2,13

**rights** 271:4

**righty** 12:3

**risk** 241:5

**Riverbend**
21:3,6
26:20
79:20
93:17 99:3
126:8
182:2

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 343 of 358 PageID #: 1081

**Attachment 22**

185:20
254:2,7
272:25

**Robert**   10:9
205:8,11
206:5

**rocuronium**
148:19
149:10

**role**   21:6,9
22:16
23:6,20
24:6 26:8,
13 27:9
28:14,17
29:17,20
30:14,19
32:2 33:12
35:4 36:3,
14 57:4
60:2,7
68:7 69:1
72:21
93:17,23,
25 95:1,15
104:9,12
108:5,8
113:10,24
114:4,5,19
122:2,16
124:10,20
158:19
159:23
248:10
258:17,19,
22 259:16

**rolling**   14:4

**Roman**   48:8,9
183:2,11,
21

**Ronald**
112:10

**room**   8:17
17:2 32:1
80:24
246:24
257:16,20
261:22
267:15
269:3,4
270:2,4,7,
8,11,12,
16,20
271:5,11,
21 272:20,
23 274:9
276:1
277:21
278:4,6

**rooms**
269:19,23

**round**   90:22

**route**
214:21,22

**routed**
243:12

**row**   193:16

**rude**   16:9

**ruled**   57:21

**rules**   9:2,4

**run**   44:12
275:25

**running**
34:21
210:8
239:9

_____

S

_____

**S-u-c-c-i-n-y-
l-c-h-o-l-i-n-
e**   148:22

**safe**   51:23
112:1
235:23
250:18

**safeguards**
107:13
266:9

**safety**   34:4
256:3
271:19
276:20

**SAITH**   280:12

**saline**   32:8,
11,17
77:17,21,
23 78:10,
15 102:2
240:14
250:8

**sally**   263:21

**Santana**   47:3
49:10
145:14

251:18

**sat**   43:1

**satisfactory**
184:9

**Saudi**   25:18,
19,22

**scale**   98:7

**scenario**
83:1 87:17

**schedule**
84:12
196:23
222:23
280:7

**scheduled**
95:10
108:19
189:19
193:18

**Schofield**
182:10

**School**   25:1
26:4

**Science**   25:2

**scooch**   61:4

**scope**   74:22
125:11

**Scott**   10:14
252:3

**screenshots**
209:10

**scrutiny**
148:10

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 344 of 358 PageID #: 1082

**Attachment 22**

205:6,10,
17 206:2

**search**  29:23
60:16
102:11,15
188:25
194:24
195:15
199:15
201:11
215:11
218:12,23
231:15
232:3,23
233:2
238:16
239:13

**searched**
219:22

**searches**
219:10

**searching**
229:2

**season**
146:14,18

**seated**  9:12
10:15

**secondary**
84:24
87:1,22
260:9
261:18

**seconds**
246:11
247:24

248:1

**section**  20:6
34:18
47:21
91:18,21,
25

**secure**  95:16
102:18

**secured**
266:12

**security**
24:25 34:4
51:16,17,
19,21,25
52:6 91:18
93:8,18
113:4,15
126:8
182:3
185:20
254:2,24
256:3
271:20
272:25
276:21

**sedated**
81:23,24
106:3
265:12

**sedation**
260:25
265:13

**seek**  152:20
180:13
208:22

**seeking**
166:15

**seldom**  33:1

**sell**  203:8
204:10
216:22
222:23
223:6

**selling**
128:14

**send**  118:19
119:14
210:10
229:19

**sending**
72:12

**senior**
106:19,22
113:24
123:10
124:22

**sensate**
105:4,21

**sense**  58:3
132:2
139:25
159:19
189:16

**sentence**
15:21
64:19
66:11 67:3
84:21
87:16
115:11,24

132:15
147:7,14,
25 148:5,
8,11,15
149:8
150:15
186:24
194:15

**sentenced**
241:18
242:5

**sentences**
132:8
148:4

**separate**
142:1
164:17
264:23
275:25

**September**
19:5
141:15,19
142:11,20
143:25
145:9
146:19
149:3,6,16
151:6
164:2
168:11
169:9,15
173:3,17
174:7,20
177:10,12
182:13,19
185:2
189:2

www.huseby.com        **Huseby, Inc.  Regional Centers**        800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 345 of 358 PageID #: 1083

**Attachment 22**

sequence
  214:8

series   214:5

serve   36:14
  40:18

served   26:12
  30:14
  42:25
  104:10
  124:10
  243:3

serves   32:2
  36:3
  185:17

Service   63:2

serving   71:2
  168:16

session
  100:2
  103:4,15
  104:5,11

sessions
  30:13
  31:14,24
  32:7 36:20
  100:6
  103:12,20
  105:17
  111:6
  114:8
  248:9,13,
  23

set   12:23
  83:10,25
  86:19

87:3,12
88:5,8,17
108:12
117:4,18
118:2
120:25
121:24
127:11
136:21
189:25
217:23
218:9
238:18
259:8,14
260:9,19
261:18
262:14

sets   12:11
  91:3
  135:23
  194:5
  196:21

setting   98:4
  115:8
  118:7
  119:5
  120:1
  122:22
  161:2
  229:25

setup   103:7

severe
  258:10
  262:16

Sexton
  36:13,14

share   154:19
  155:4
  161:16,23
  170:14,20,
  23 195:4

shared
  162:16,17
  171:8

sheets   99:25
  248:16

shelf   125:7,
  16,24
  127:6
  131:25

shift   278:8

ship   224:8

shipment
  198:25
  199:4

shoot   211:23

short   16:16
  125:7,16,
  24 127:6
  131:25

shortage
  77:23
  78:10

shortly
  149:1

show   12:4
  18:5 46:9,
  13 47:14
  49:1 52:13
  59:2 60:23

125:15
131:16
134:12
135:13
188:24
210:13
212:1
219:14
269:9

showing
  11:15
  278:1

shown   50:7

sic   17:5
  24:7 30:3
  63:20
  87:13
  147:15
  162:9
  176:23
  210:21
  233:14
  261:7

sick   78:14
  211:2

sickest
  78:23,25

side   19:16

sign   222:2
  261:9

signal
  81:18,24

signals   83:2

signature

www.huseby.com          **Huseby, Inc. Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 346 of 358 PageID #: 1084

**Attachment 22**

47:1 92:5,
8,12,14
175:5
182:10,15
279:2

signed  143:5
184:19
236:14
251:12

significance
162:3

significant
64:21
66:10
206:20

signifies
92:10

signify  92:9

signing
183:24

signs  104:14
106:2
265:8

similar
199:14

simple  33:8

simpler
240:12

simply  103:4
121:20
204:9
214:14

sing  190:10

Singapore
25:18

single  31:1
65:11 66:7
228:6

single-drug
22:4
189:6,12

singular
217:20

sir  13:10
18:14
19:17
24:24 26:2
31:17
47:14,19
48:11,15,
25 49:6,13
50:13
61:17
66:12
67:10
92:2,6,24
112:17
114:21
116:11
130:13
131:10
157:10
176:22
181:14,25
185:5,10
187:21
200:23
218:21
241:4
242:9

sit  49:14

site  70:18,
19 73:1,2
104:17
246:15,17,
22 275:22,
23 276:3

situation
86:19 89:2
122:13
231:9

situations
206:17

six-hour
16:18

skin  248:5

Skip  220:14

skipped  20:5

slow  246:13

small  211:18

smaller
217:19

smoke  17:21

snacks  17:14

soccer
166:6,8

sodium  174:1
225:17

solution
101:25
183:15
194:21
216:6

son  16:4

song  190:10

sort  14:6
24:13
48:12
57:24
71:11
139:21
173:3

sorts  32:20,
25 39:11,
17 41:5

sought
106:6,8
153:24

sound  13:16

sounds
111:18
161:4
164:19

source  69:7
102:22
118:16
119:14,16
124:7
128:5,7
129:2,12,
25 137:8
158:17
164:6
177:18
178:6
179:5,20
194:24
195:3,5,15

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 347 of 358 PageID #: 1085

**Attachment 22**

196:10
199:14,17
200:25
201:5,7,17
202:1
204:10,12,
22 218:20
221:16,20
224:9
226:24,25
229:5,6,16
235:14
242:20,23

sources   75:1
122:4
128:3
149:1
179:20
195:18
204:16
239:7,8,10

sourcing
210:12

space   223:14

span   201:16

speak   155:22
167:5

speaking
11:6 56:21

special
78:12,17,
19 79:7,19
131:5
253:20
254:15,20,

21 255:1

specific
13:3 21:6
33:9 37:7,
10 53:2
54:11,24
56:16,23
73:8 75:19
128:25
130:2
166:21
168:2
211:22
246:5,10
247:7
258:2

specifically
9:4 29:9
47:7 48:3
56:11
59:10
60:13
61:15
68:18
71:12
89:8,13
90:17
99:22
107:16
125:1
138:3
145:5
150:23
160:17,21
162:13
166:15
170:1

191:16
193:11

specifics
58:1 60:18
144:23

speculation
236:22

speed   32:16

spelled
174:14

spent   28:12

spoke   165:17

spoken   69:23
70:6

spokeswoman
187:3

spotty
148:19
149:10

staff   27:23
28:1 33:20
36:6,7
38:13
53:16 67:7
71:21 72:2
82:23
106:19,20,
23 111:9
122:3
123:10
124:23
129:8
131:8,20
141:1

146:4,5
150:1,2
158:21
190:24
199:11
201:10
219:7,11
231:7,12
235:1,18
236:6

staff's   40:9

stamp   117:1,
13,24
127:15

standard
216:24

star   226:3,
9

start   8:7
11:14
140:13
260:10
275:8

started   9:10
17:25 18:2

starting
87:2

starts
185:15
186:20
210:20,25
211:18
214:5

state   8:7
22:20

Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 348 of 358 PageID #: 1086

**Attachment 22**

23:1,12
24:5 25:5
34:17,22,
24 35:12
44:9
50:20,23
51:1 52:9
54:4 72:14
75:9 78:19
96:11
106:24,25
116:24
117:12,22
131:3
132:6,13
134:3
136:14
152:25
185:25
186:21
230:15

**stated** 44:2
130:5
149:23
158:7
245:22

**statement**
76:16
132:22
137:22
155:15
158:9
186:16

**statements**
159:1
175:15
186:12

205:22

**states** 29:4
40:18
64:19
66:12 67:4
69:15
70:7,22
71:3 73:10
75:3,15
76:22
84:21
86:25
90:6,7
109:22
115:7
130:24
143:15
147:7,8
152:11
156:15
161:4
163:8
193:17
195:11,17
196:12,18,
19 198:8,
16 199:20
204:25
205:3
206:14
210:22
212:16,17
213:14
214:10,17
215:20
216:22
219:2

**stating**
216:13

**statute** 40:4
41:7 47:20
48:12
108:16

**statutory**
194:6

**stay** 110:7
160:8
234:8
257:15

**staying**
159:14

**steady**
246:13

**step** 206:16

**Stephen** 9:13

**Stephens**
10:17

**steps** 57:10
65:24 98:5
193:20
195:9

**sterile**
183:7

**sterility**
183:15

**stick** 86:14

**stop** 57:12
87:15
90:25
127:9

139:4
150:11
171:19
208:17
209:1
239:13

**stops** 92:18

**Storage**
115:2

**straightforwar
d** 108:18,22

**strap** 94:24

**strike** 36:1
57:2 137:3
170:20
186:7

**strong**
147:13,15,
18,20
176:7

**studied**
25:17

**Studies** 25:1

**stuff** 11:8
142:12
146:23
147:1
167:19

**subject**
44:15
51:11
52:5,8
91:19
110:16
140:4

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 349 of 358 PageID #: 1087

**Attachment 22**

152:11
174:13
180:6
213:22

**subjects**
73:19
148:1

**submit**
143:16

**Subparagraph**
47:23

**subsequent**
13:4  29:17

**substance**
57:1

**substances**
79:14

**substantial**
213:15
222:13

**substantive**
32:15

**substitute**
32:11

**suffering**
241:6
258:11

**sufficient**
105:20
106:16
158:15

**sugar**  17:16

**suggests**

265:17

**suit**  199:2

**summary**
64:20
65:1,4,9,
18,19  66:8
162:1
195:8

**summation**
65:3,4,9

**Summer**  10:17

**summons**  56:8
59:14

**super**  167:14
258:1

**supervise**
20:19
26:20,22
30:13
33:24
34:14

**supervised**
21:1  22:23

**supervising**
30:12  31:6
124:11

**supervision**
31:2
34:13,18

**supervisor**
8:15  21:5,
13  94:9

**supplemental**
143:8,17

**supplier**
121:3,5,14
128:12
133:17
137:23
219:4
223:14
229:18
230:21
235:1

**suppliers**
74:24  75:1
138:12,14
203:9
239:5

**supply**  122:6
124:8
130:25
131:14
133:16
137:24
197:1
198:7,15
206:17,18

**support**
137:22
145:4

**supports**
132:14

**supposed**
87:18,19
100:9
119:4,23
229:18
246:8

**Supreme**

64:24
116:23
117:11,22
118:7
130:16
136:16

**surrounding**
269:18

**survived**
266:17

**Sutherland**
10:14  14:4
41:15
43:14,22
46:17,20
50:15
53:20
54:19
57:12
61:3,4
64:8,10
73:23
74:4,8,11,
15  75:23
79:24  96:5
107:7
116:17,19
119:21
125:9,21
133:12
134:20,24
135:17,18
138:16
139:13
143:6
150:10,19
157:22

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 350 of 358 PageID #: 1088

**Attachment 22**

159:13
169:8,13,
22 170:17,
21 177:1,
20,24
178:3,7,
10,19,25
179:8
187:23
188:5,9,13
197:11,17,
24 202:6,
13,16
203:18
204:15
208:10,19
233:13,20
234:1
235:3
244:11
250:24
252:5
253:22
258:4
279:18,21,
24 280:6

**Sutherland's**
75:9,11

**switch** 84:23
259:13

**switchboard**
273:18

**switches**
87:1

**sworn** 8:2

**synonymous**

**synthetic**
214:20,22

**syringe** 87:2
246:3,4,8
247:3,8,10
250:14,17
252:21
253:8

**syringes**
87:4,12
88:5,17
102:1,8
103:5,8
241:12
245:21,25
249:11,13,
22 250:4
252:24
253:2
257:12
277:25

**system**
186:19

————————————
            T
————————————

**takes** 247:23
249:9
253:14

**taking**
110:12

**talk** 9:3
33:11
64:15
73:10

77:25 88:4
95:21 96:4
100:17
101:12
107:5
131:19
144:18
158:11
160:19
161:5
197:18
204:16
213:16
232:3
276:12
279:11

**talked**
218:14
230:6,9
232:2
240:22

**talking**
19:23
51:20 57:8
63:25 90:5
158:22
160:15
164:8
165:22
167:21,22,
24 168:3
177:15
188:14
189:13
218:21
227:19
238:13

249:18,19,
25

**talks** 197:15
204:22

**Taylor**
187:3,9

**TDOC** 23:18
123:9
138:10,12,
15 154:21
156:21
157:3,5,9
170:25
175:9,11
181:10
182:23,24
184:18
191:25
212:9,11
213:12
216:13
232:22,25
233:10
235:1,18
236:5

**TDOC'S** 59:19

**team** 10:4,
11 28:7
37:19
38:11,17,
25 39:1
53:17,19,
24 54:8
56:21
60:21 94:5
96:18,20

63:22

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 351 of 358 PageID #: 1089

**Attachment 22**

103:2,13
106:2
112:3
184:21
214:19
243:9,13
244:1
248:24
250:6
265:7
268:5,11,
22 276:12

technical
214:19
277:16

telephone
108:20
141:12
143:22
270:20
274:3

telling
40:16
70:25
123:2
137:4
161:3,5
244:21

ten   34:24
108:18
139:3
154:14
216:2
217:7,18,
23 218:2,
11 219:15

tendency
111:22

tendering
46:20
134:23
188:12
252:4

Tenia   10:18

Tennent   9:24

Tennessean
185:11
187:20

Tennessee
8:10 9:14
21:13,18
22:2 23:1,
12 24:5,
16,19
25:3,23
29:3 31:12
33:18
34:17,25
44:18
45:22,24
47:4,20,22
48:16
50:14,18,
20,23
51:1,11
52:8,10
64:23
69:15 86:7
97:11
108:10
116:23,24
117:11,12,

22,23
118:6
127:21
128:19
130:14,15
131:11,24
133:4
135:25
136:14,15,
24 145:13
152:25
173:14
177:14
182:3
186:18,22
189:5
192:9
193:12
194:19
201:6
204:1
207:13,25
218:25
230:16
241:20
242:22
245:1
251:21
255:14
268:15

Tennessee's
193:16

tens   35:21

term   99:2

terminated
183:25
184:4,15,

18,23

termination
184:10

terms   29:6
32:16 45:8
184:13
261:13
263:7

terrible
58:11,12

testified
8:3 42:24
232:6
247:22
262:24
263:11
272:7

testimony
12:10
178:8
272:11

testing
183:14

Texas   198:24
199:1,2,9
200:24
201:3,4
205:2

text   209:11
210:7,25
211:14,17
213:11,19

there'll
279:9

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 352 of 358 PageID #: 1090
Attachment 22

**there's--**
  38:8

**thereto**
  59:20

**thesis** 25:7

**thing** 12:3
  14:6 30:17
  65:11 66:7
  119:3
  133:5
  235:23
  256:25

**things** 14:9
  21:15
  26:15
  27:12
  33:22
  39:11,17
  40:12,14
  51:18 52:1
  53:2,9
  54:25
  55:12
  56:18
  57:9,11,
  22,24
  58:13
  60:12
  65:5,21
  70:5 120:9
  121:24
  130:15
  146:16,17
  164:17
  205:23
  211:21
  232:18

  279:10

**thinking**
  207:3

**thiopental**
  174:2

**thought**
  229:5

**thoughts**
  212:5

**thousands**
  35:20,21

**three-drug**
  22:3 72:4
  85:13
  97:13,16
  100:10
  133:3,10
  135:3
  136:24
  137:10
  138:8
  147:9
  151:14
  152:4
  160:20,24
  162:18
  163:12
  167:12
  170:10
  172:2
  235:20,25
  236:2,9,10
  240:18,25
  241:7,15
  242:22
  252:17

**three-syringe**
  101:25

**Thursday**
  185:19
  187:4,7
  210:20
  216:21

**THX** 213:25

**till** 80:6
  222:4

**tilt** 246:19
  275:24

**time** 13:12
  16:15,18
  21:16,22,
  25 22:2,11
  28:12
  29:9,15
  30:2 37:21
  38:15
  56:17,23,
  24 58:21
  64:4 72:18
  76:11
  78:15
  90:10
  108:19
  118:15
  124:20
  126:24
  127:5
  128:4
  132:19
  136:14
  139:4
  140:10

  146:8,16
  169:4,6,
  11,23
  170:2,4
  186:1
  189:18,19
  191:5
  219:25
  222:2,4
  229:13
  237:4
  239:19
  242:11
  246:2,5,11
  247:4,7
  249:14,23
  250:13,15
  267:19
  280:2

**timed** 58:19

**timer** 11:10
  107:3
  275:8

**times** 12:18
  52:25 53:1
  209:4
  228:16
  248:18
  249:7,21
  250:20
  252:20

**timestamp**
  174:16

**tiny** 174:5

**title** 143:12
  156:10

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 353 of 358 PageID #: 1091

**Attachment 22**

**titled**  61:8
 182:2
 192:3
 194:23

**titles**  94:4

**today**  9:4
 11:3,6,25
 15:25
 16:20
 49:14 50:5
 64:4 85:10
 131:10
 132:22
 137:4
 144:25
 156:8
 210:8
 228:16
 232:6
 234:21
 265:18
 278:21

**today's**
 63:20
 277:18

**told**  20:8
 125:8
 128:6
 129:5
 138:14,25
 151:8,10
 162:14
 171:4,5
 185:19
 219:20
 230:3
 231:7,12

 232:18

**tolerance**
 147:21

**Tony**  8:1,9

**top**  84:11
 108:1
 141:5
 143:15
 176:10
 210:2
 214:9
 221:1
 222:20
 225:12,23
 227:9
 252:9

**topic**  25:10
 46:7
 130:10
 166:7

**total**  31:18
 245:24

**totally**
 181:18
 192:11

**tour**  185:20

**toxic**  264:3

**toxicity**
 265:4

**trace**  173:3

**track**  21:22

**trained**
 265:7

**training**
 26:14 27:1
 36:22
 37:1,3,8,
 10 68:6,15
 99:15,16
 105:2,18,
 25 106:7,8
 153:16
 158:16
 167:6
 246:7
 247:19
 248:8
 259:11,15
 262:2,9

**trainings**
 21:15
 26:19

**Transfer**
 115:3

**transferred**
 79:19

**traveled**
 70:22 73:4

**tray**  87:4

**treat**  255:4

**treating**
 16:3

**trial**  197:23

**trick**  14:22

**trigger**
 40:12
 119:5

**trouble**
 111:24
 112:20

**true**  66:2
 132:22
 133:21
 138:15
 154:4,7
 187:16
 189:22
 200:20,22
 202:2
 203:25
 204:4
 232:12
 257:6

**trust**  111:19
 112:5,10,
 13 159:12,
 20 168:9
 179:23
 268:9

**trusted**
 159:7
 162:6
 164:6
 168:13
 179:22

**truthfulness**
 15:15

**Tuesday**
 210:3

**turn**  45:25
 46:6 62:24
 65:7 85:3
 92:1,25

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 354 of 358 PageID #: 1092

**Attachment 22**

112:17
114:21
141:4
174:4,17
190:2
216:19
252:1
266:15

**turned** 60:21

**turning** 60:7
91:16

**twisting**
248:5

**two-drug**
72:10

**type** 128:11
211:3,22

**typo** 174:24
205:7

**typographical**
279:6

---

**U**

---

**U-p-d-t-a-e-**
174:14

**U.S.** 25:11,
12,14
196:11,25

**U.S.P.**
211:10

**uh-huh**
10:12,24
16:2 27:4,
25 33:3

41:2 54:6
62:11,17
63:1,10
83:12,14
84:18
115:5
123:19
135:6
142:8,15
152:6
158:8
166:11,17
167:1,4,10
168:6,19
170:12
175:1
197:2
212:14
221:3
222:1
228:2
230:17
252:11
274:5

**ultimately**
60:3
67:15,21
69:3
171:19

**umbrella**
34:12

**un-** 132:10

**unable**
102:12
113:10
114:4
118:15

128:20
163:20
217:2
262:10

**unanswered**
50:1

**unavailable**
148:20
149:4,6,
11,15
194:12
206:20
210:13

**uncertain**
132:10,25
133:2,24
136:18

**unconscious**
84:2 90:10
155:18
163:1,11,
14,17,20
171:19,25
172:10,13
259:4
262:25
263:8,9
265:1

**unconsciousnes**
**s** 263:5

**unconstitution**
**al** 194:14

**Underneath**
225:17
226:22

**underst-**
228:25

**understand**
14:18
15:11,14,
19 30:20
55:23
65:18 68:6
93:5
119:18,24
122:11
156:24
177:9
233:22
247:13
260:2
263:2,3

**understanding**
32:10
68:16,22,
23 80:3
83:20
89:16
91:24
99:1,12
101:18
119:13
125:24
128:11
157:7
212:11
218:12
229:10
246:9,13
260:11,14
267:2
276:19

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 355 of 358 PageID #: 1093

Attachment 22

understood
  120:6
  195:3

undertaken
  199:24

unidentified
  270:8

unique   94:4

Unit   8:16

United   90:6,
  7 196:12,
  18,19
  198:8,16
  212:16,17

University
  25:3

unnamed
  59:17

unnecessary
  258:10
  262:16

unpack
  122:18

unresponded
  49:19

unresponsive
  90:3

unwilling
  114:3
  195:4

up-to-date
  229:4

upcoming

95:25
98:10

update
  173:24
  174:14
  190:21,23
  192:4

updates
  192:8

upheld
  125:12
  226:24

upper   117:2,
  13

useless
  119:17

utilize
  237:14

utilized
  241:25

——————————
        V
——————————

vaguely
  56:21

valid   202:10

vecuronium
  77:11
  135:4
  136:3
  137:17
  148:20
  149:11
  172:15
  236:8

258:11,14
260:20,24
262:5,17

vendor
  176:19,24
  178:20

vendors
  177:15

verbal
  231:11,15,
  19

verbally
  38:1 229:4
  230:3

verifies
  92:13

verify
  112:11

Versed
  167:18

version
  159:9

versus   8:14
  116:24
  117:12,23
  240:17,25

vet   212:20

veterinarian
  212:6,10

viable   163:7
  200:16

victim's
  270:4

video   246:23
  275:25

view   72:14

violate
  204:12
  256:3
  271:19

violation
  13:22
  245:3
  271:3,8

virtually
  206:19

virtue   93:16

vision
  134:24

visit   73:1,
  2,10

visits
  70:18,20

visual
  257:21

vociferously
  64:9,11

voicemail
  211:2

volunteering
  10:16

——————————
        W
——————————

wait   43:14
  247:4
  273:5

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
        Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 356 of 358 PageID #: 1094

Attachment 22

waiting
  87:14
  263:21

waits  257:7

waive  279:2

wake  260:25

wanted  17:8
  56:2
  152:16
  155:13,14
  158:11
  160:19
  161:5
  167:25
  211:5

Warden  21:5,
  7,14
  23:10,21,
  23,25
  26:20,23
  30:3 36:5
  37:19
  38:12,16,
  24 39:24
  67:5,13,18
  68:5,13,15
  69:9 81:8,
  9,13,24
  82:4,9,11,
  18,21,22
  83:2,18
  84:14,22
  86:15
  87:20,21
  88:10
  89:1,9,13,

22,23
90:13 91:5
93:6,8,16,
17 98:11
100:17
105:3,7,
10,12,15
106:1
109:12,17,
24 110:6
112:19,23
113:3,10,
13,14,17,
20,22
114:2,3,4,
16 115:8
118:8,13
119:4
120:2,11,
18,20
121:1,4,8,
13,14,23
122:5,13,
22,23,24
123:4,11,
14,20
126:7
237:10
247:15
258:13,16
259:11,16,
25 260:3,
13 261:1,
17,25
262:8
263:13
265:23
272:6

Warden's
  39:5,15
  89:17
  93:25
  109:1
  114:19
  118:12
  121:15
  272:11

wardens  21:2

wash  239:16

watch  27:1
  80:7,16
  94:9
  269:15

watching
  275:22

water  17:13

ways  70:11
  164:10
  200:5

Wednesday
  210:6

week  111:17
  170:3

weeks  12:16
  20:1 53:1
  224:18
  236:20

West  22:20,
  22,24
  23:1,11,12
  131:1
  233:20

whispering
  148:23

Whiteville
  23:2

wholesalers
  74:25
  224:22

wife  78:1

willfully
  244:23

window
  270:5,16

windows
  269:20

wiring
  277:13

wisdom  69:8

withhold
  49:21

witnessed
  161:7,11,
  14,19
  163:2
  247:17

witnesses
  153:2
  268:9
  275:13

witnessing
  250:10

wondering
  100:6
  177:17

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 357 of 358 PageID #: 1095

**Attachment 22**

**word**  63:21
  66:15,16,
  25  67:11
  81:6  88:9
  112:7
  148:21
  174:21
  182:5
  213:24
  223:9,11,
  14  225:12,
  13,23
  263:1

**worded**  14:24
  15:1  234:9

**wording**
  71:22

**words**  157:2
  160:19
  175:9
  222:4,9
  223:6
  226:15
  227:12
  228:20
  229:23
  239:3

**work**  82:23
  121:2
  138:4
  167:17,20
  184:9
  197:10
  211:16
  229:7,15
  264:1
  271:25

**worked**  42:20
  122:3
  163:7,9
  195:19
  218:22

**working**
  111:9
  122:8
  166:6
  273:24

**worries**
  270:25

**worse**  176:1

**wrap**  275:2

**write**  25:7
  66:1  177:3
  232:10,13,
  18

**writer**
  149:20
  227:24

**writing**
  121:21

**written**
  37:22  66:6
  88:25  91:9
  119:25
  120:22
  184:5
  221:24
  231:20
  237:9,16
  245:18
  247:6
  248:25

**wrong**  74:16
  160:10
  259:13
  275:15
  279:13

**wrote**  149:2
  180:11
  210:18
  212:23
  227:22
  248:18

---

**Y**

---

**y'all**  211:3

**year**  21:23
  111:17
  126:13,15,
  20  146:14,
  18  235:9,
  17  237:2

**years**  20:12
  21:20
  23:4,16
  24:22
  42:20
  126:14
  131:15

**yesterday**
  200:23
  247:22
  250:24
  272:7
  279:1

**you-all**  32:8

---

**Z**

---

**Zagorski**
  117:12,17

**zoom**  246:19
  275:23

www.huseby.com          **Huseby, Inc. Regional Centers**          800-333-2082
**Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco**
Case 3:18-cv-01234   Document 1-23   Filed 11/02/18   Page 358 of 358 PageID #: 1096
**Attachment 22**