# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **DAVID EARL MILLER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:18-cv-01234** |
| | ) | **JUDGE CAMPBELL** |
| **TONY PARKER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND/OR PRELIMINARY INJUNCTION
_____

Plaintiffs are four Tennessee death row inmates seeking to challenge the method by which the State of Tennessee intends to carry out their death sentences. One of the Plaintiffs, David Earl Miller, is scheduled for execution on December 6, 2018, pursuant to an order of the Tennessee Supreme Court. *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Tenn., Mar. 15, 2018). Attachment 1. The Tennessee Supreme Court has not set execution dates for any of the other three Plaintiffs. The Defendants are the Commissioner of the Tennessee Department of Correction and the Warden of the Riverbend Maximum Security Institution, where the Plaintiffs are housed.

Plaintiffs ask this Court to enjoin the Defendants from (1) executing Plaintiff Miller pending a final order in this case, (2) presenting Plaintiff Miller with the "Affidavit Concerning Method of Execution" contained in Tennessee's Lethal Injection Protocol, (3) setting execution dates for Plaintiffs Sutton, West, and King, and (4) denying Plaintiffs' attorney-witness access to a telephone during the execution. Motion, Doc. No. 7, at 1, 42.

Two of the Plaintiffs' requests for injunctive relief are patently without any basis in fact or law and should be denied out of hand. *First*, the Defendants have no authority to set execution dates for any of the Plaintiffs in this case. The authority to do so rests exclusively with the Tennessee Supreme Court, *see* Tenn. Sup. Ct. R. 12.4, and that Court is not a party to this action. Thus, it would be an exercise in futility to enjoin the Defendants from doing what they cannot and may not do under the law. *Second*, the Tennessee Department of Correction has already complied with Plaintiff Miller's request that it not present the Affidavit Concerning Method of Execution directly to him. The Department has instead provided the Affidavit to Miller's counsel on his behalf. *See* Attachment 2, Letter from Warden Mays to Stephen M. Kissinger, dated November 6, 2018.

That leaves only two arguably colorable questions before this Court—whether David Earl Miller is entitled to a stay of execution and/or telephone access during his December 6 execution. And those requests should be denied because Plaintiffs' suit affords no basis for a stay of execution. There is no likelihood that Plaintiffs will prevail on any of the claims in this action, let alone the significant possibility of success required by *Hill v. McDonough*, 547 U.S. 573 (2006). The motion for injunctive relief should be denied on that basis alone.

Beyond that, equity considerations also require that the motion be denied. As pointed out by the Honorable Aleta A. Trauger in an order denying Miller's attempt to intervene in another lawsuit, equity does not favor Miller's eleventh-hour legal maneuvers and "blatant judge-shopping"—maneuvers that are now being repeated here in yet another effort to obtain a last-minute stay of execution. *See Edmund Zagorski v. Bill Haslam, et al.*, No. 3:18-cv-01035 (M.D. Tenn., Order, Oct. 23, 2018). In determining whether to grant a TRO, this Court should "take into consideration the State's strong interest in proceeding with its judgment and [Plaintiffs'] obvious

attempt at manipulation." *Gomez*, 503 U.S. at 654. *See also Evans,* 440 U.S. at 1484-85 ("To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession.") (Rehnquist, Circuit Justice).

## PROCEDURAL HISTORY

Because the only questions facing the Court at this juncture are whether to grant Plaintiff Miller's motion for a stay of execution and his access-to-the-courts claim, this memorandum focuses on the procedural history related only to Miller. Like the other three Plaintiffs, Miller was sentenced to death for crimes committed before January 1, 1999. Unlike the other three Plaintiffs, for whom no execution date has been set, Miller is currently facing execution on December 6, 2018, and he alone asks this Court for a stay of execution pending disposition of claims related to the State's method of execution and other procedures surrounding the execution of his death sentence.

Miller's sentence arises from the May 1981 murder of twenty-three-year-old Lee Standifer in Knoxville, Tennessee. Miller was tried by a Knox County jury, which convicted him in 1982 of first-degree murder. The jury sentenced Miller to death based upon the aggravating circumstance that the murder was especially heinous, atrocious, or cruel because it involved torture or depravity of mind. On direct appeal, the Tennessee Supreme Court affirmed the conviction but reversed the death sentence and remanded the case for a new sentencing hearing. *State v. Miller*, 674 S.W.2d 279 (Tenn. 1984).[1]

---

[1]The Tennessee Supreme Court determined that re-sentencing was required because the jury had considered inadmissible evidence during the sentencing hearing. *Miller*, 674 S.W.2d at 284.

3

In February 1987, a re-sentencing hearing was conducted. The jury again sentenced Miller to death based upon a finding that the murder was especially heinous, atrocious, or cruel. On direct appeal of the re-sentencing proceeding, the Tennessee Supreme Court affirmed. *State v. Miller*, 771 S.W.2d 401 (Tenn. 1989), *cert. denied*, 497 U.S. 1031 (1990). Miller later unsuccessfully sought state post-conviction and federal habeas relief. *Miller v. State*, 54 S.W.3d 743 (Tenn. 2001), *cert. denied*, 536 U.S. 927 (2002); *Miller v. Colson*, 694 F.3d 691 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 2739 (2013).

On December 17, 2013, the Tennessee Supreme Court directed the Warden of Riverbend Maximum Security Institution to carry out Miller's death sentence on August 18, 2015. *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Tenn., Dec. 17, 2013). That Court later vacated the order due to state-court litigation challenging the constitutionality of an earlier lethal injection protocol, which called for the use of the single drug pentobarbital. *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Tenn., Mar. 31, 2015). In 2017, the Tennessee Supreme Court concluded that the State's method of execution did not violate the Eighth Amendment. *West v. Schofield*, 519 S.W.3d 550 (Tenn.), *cert. denied, West v. Parker*, 138 S.Ct. 476 (2017), *cert. denied, Abdur'Rahman v. Parker*, 2018 WL 311479 (2018). The United States Supreme Court denied certiorari on January 8, 2018. *Id.*

In the meantime, however, because of drug-supply issues, the Tennessee Department of Correction eventually was unable to implement the method it had successfully defended in that lengthy litigation. The drug supply issues forced it to identify an alternative drug combination to ensure it could carry out judicially-imposed death sentences when ordered to do so by the Tennessee Supreme Court. *State v. Irick,* 556 S.W.3d 686, 688 n.2 (Tenn. 2018) (observing that "TDOC's revisions of its lethal injection protocol, as well as the litigation and delay resulting

4

therefrom, are attributable to the success of anti-death-penalty advocates in convincing pharmaceutical companies not to provide drugs for executions").

On January 8, 2018, the Department revised its protocol to include an alternative three-drug protocol using midazolam (a sedative in the benzodiazepine family of drugs) followed by vecuronium bromide (a paralytic agent) and potassium chloride (a heart-stopping agent).[2] *Abdur'Rahman*, 2018 WL 4858002, at *2. Ten days later, on January 18, 2018, Miller represented to the Tennessee Supreme Court that "[p]ublic records and the adoption of this new protocol suggest that Tennessee does not have access to pentobarbital." *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Response, filed Jan. 18, 2018). Attachment 3. Citing accounts describing midazolam-based lethal injections in other States, Miller asked the Tennessee Supreme Court to refrain from scheduling a new execution date because he "intends to challenge" the State's new protocol. *Id.* at 5-10. Miller also urged the Tennessee Supreme Court to "establish an expedited schedule for the litigation." *Id.* at 10.

On February 20, 2018, Miller joined thirty-two other death-sentenced inmates in an action filed in the Davidson County Chancery Court challenging the constitutionality of the midazolam-based protocol. In pertinent part, Miller alleged that the action arises under "the First, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and state and federal law as set forth in Counts 1-16 below." Attachment 4, Complaint, at 3. He claimed that the three-drug midazolam protocol violates the Eighth and Fourteenth Amendments because it is "sure or very likely that a person executed in accordance with this protocol will experience terror, pain, and suffocation during execution." Attachment 4, at 23.

---

[2] The January 2018 revision retained the one-drug pentobarbital protocol (identified as Protocol A) in addition to the new midazolam-based protocol (identified as Protocol B).

5

On March 15, 2018, the Tennessee Supreme Court directed that the Warden carry out Miller's death sentence on December 6, 2018. *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Tenn., Mar. 15, 2018). Attachment 1.

On July 5, 2018, the Department revised the protocol to eliminate the one-drug pentobarbital protocol, leaving only the three-drug protocol at issue in the state-court lawsuit as the exclusive method of lethal injection in Tennessee. *Abdur'Rahman*, 2018 WL 4858002, at *2. A ten-day trial commenced on July 9, 2018, during which Miller and the other plaintiffs presented four expert witnesses and twelve lay witnesses. *Id.* On July 26, 2018, the trial court dismissed the complaint because the plaintiffs failed to plead and prove an essential element of their method-of-execution cause of action under *Glossip v. Gross*, 135 S.Ct. 2726 (2015), *i.e.,* that an available method of execution exists. *Id.*

Miller and the other plaintiffs appealed, and the Tennessee Supreme Court affirmed the judgment of the trial court on October 8, 2018. *Id.* at *2, 15. The state supreme court also specifically rejected Miller's claim that he had been denied an opportunity to be heard on the availability of an alternative method of execution.

> [T]he trial court found that eliminating the alternative one-drug protocol [on July 5, 2018] was not a substantial change to the lethal injection protocol for purposes of this facial challenge. We agree. From the time of the filing of the original complaint on February 20, 2018, the method-of-execution claim: (1) challenged the three-drug protocol and (2) alleged a one-drug protocol using pentobarbital as an alternative method of execution. Availability in theory of pentobarbital, based solely on its status as an option in the lethal injection protocol prior to the revision on July 5, 2018, would not have satisfied the Plaintiffs' burden of proof [under *Glossip*]. Furthermore, the State's February 15, 2018 motion, asking this Court to set execution dates in eight capital cases before June 1, 2018, because of ongoing difficulty in obtaining the necessary lethal injection drugs, put the Plaintiffs on notice that the three-drug protocol likely would be used.

*Id*. at *7.

6

While his state-court appeal was pending, on August 21, 2018, Miller and three other inmates[3] filed a separate action under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee, which again challenged Tennessee's lethal injection protocol. *Miller, et al. v. Parker, et al.*, No. 3:18-cv-00781 (M.D. Tenn.). But because the subject of that lawsuit was also the subject of parallel litigation in state court and the subject of a petition for writ of certiorari by one of the state plaintiffs, this Court stayed federal proceedings on October 12, 2018, pursuant to *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976). *Miller, et al. v. Parker, et al.*, No. 3:18-cv-00781 (M.D. Tenn.) (Doc. No. 23).

Ten days later, on October 22, 2018, Miller filed a Notice of Voluntary Dismissal of his Complaint for Injunctive Relief. *Miller, et al. v. Parker, et al.*, No. 3:18-cv-00781 (M.D. Tenn.) (Doc. No. 24). On that same day, Miller filed a Motion to Intervene in another Section 1983 action challenging Tennessee's execution protocol and related statutes. *Miller, et al. v. Parker, et al.*, No. 3:18-cv-01035 (M.D. Tenn.) (Doc. No. 11). But the United States District Judge before whom that case was pending denied the motion in an order filed the next day and issued a stern rebuke of Miller's manipulative legal maneuvers.

> [Miller's] near-simultaneous abandonment of an execution-related Section 1983 action before one judge and attempt to join an execution-related Section 1983 action pending before another judge strongly suggests the sort of blatant judge-shopping my the Miller group that the court cannot condone by granting the pending motion. *See Tennessee v. Gibbons*, No. 3:16-cv-00718, 2017 WL 4535947, at *4 (M.D. Tenn. Oct. 10, 2017) ("'[t]he practice of judge-shopping raises serious questions of professional ethics and undermines trust in the court's impartiality,' and . . . 'some consequences should follow' for those who engage in the practice") [citation omitted]

*Miller, et al. v. Parker, et al.*, No. 3:18-cv-01035 (M.D. Tenn.) (Doc. No. 13).

---

[3] The other inmates in that case were Nicholas Todd Sutton, Stephen Michael West, and Larry McKay.

Ten days after that, on November 3, 2018, Miller and three other inmates for the third time invoked federal court jurisdiction in a method-of-execution claim under Section 1983,[4] by filing the present Complaint, Doc. No. 1, and motion for injunctive relief, Doc. No. 7.

## REASONS FOR DENYING INJUNCTIVE RELIEF

### A. Legal Standard for Granting a TRO or Preliminary Injunction

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury. A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo. The considerations for granting a temporary restraining order or a preliminary injunction are similar.

In considering whether injunctive relief staying Miller's execution is warranted, this Court must consider (1) whether Miller has demonstrated a strong likelihood of success on the merits; (2) whether Miller will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay. *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir.2009) (citing *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir.2007); *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.2006)). An inmate "seeking time to challenge the manner in which the State plans to execute [him] must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

---

[4] The other inmate plaintiffs in this case are now Nicholas Todd Sutton, Stephen Michael West, and Terry Lynn King. Notably, Miller contends (erroneously) that the presence King in this case defeats application of claim or issue preclusion doctrines because King was not a party to the state-court litigation. *See Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016) (holding that traditional mutuality requirement is abandoned in Tennessee for both offensive and defensive collateral estoppel).

8

### B.  Miller[5]  Can Show No Significant Possibility of Success on His Claims.

1. *Miller's Ex Post Facto claim (Count I) is meritless and provides no basis for injunctive relief.*

Count I is a claim that the Defendants' use of a midazolam-based three-drug lethal injection protocol violates the Ex Post Facto Clause of the United States Constitution because the duration of an execution by that method exceeds the duration of an electrocution.   But, since the Department's lethal injection protocol does not have the force and effect of "law" within the meaning of the Ex Post Facto Clause, the Ex Post Facto Clause does not extend to the protocol. And, in any event, courts have consistently rejected method-of-execution challenges premised on the Ex Post Facto Clause.

The Ex Post Facto Clause provides that "[n]o state shall . . . pass any . . . ex post facto law . . . ."  Art. I, § 10[1], U.S. Const.  It applies by its terms to the legislative branch of government. *Rogers v. Tennessee*, 532 U.S. 451 (2001).  As its text makes clear, the Clause "is a limitation upon the powers of the Legislature."  *Id.*, 532 U.S. at 456.  This limitation was intended by the Framers "to assure that *legislative Acts* give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed."  *Weaver v. Graham*, 450 U.S. 24, 29 (1981) ) (emphasis added).  Accordingly, the Ex Post Facto Clause has been construed to prohibit "'any *statute* which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed . . .

---

[5] Because the only questions facing the Court at this juncture are whether to grant Plaintiff Miller's motion for a stay of execution and his access-to-the-courts claim, the discussion is couched in terms of the law as applied to Miller.  Of course, if the other Plaintiffs were called upon to show a likelihood of success on the merits of their claims, they would, like Miller, be unable to make the requisite showing.

.'" *Collins v. Youngblood*, 497 U.S. 37 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167 (1925)) (emphasis added).

The Supreme Court has extended the Clause beyond legislative acts only in limited circumstances. It has held, for example, that state parole board rules and federal Sentencing Guidelines have the force of "law" for ex post facto purposes because those provisions impact the rate and length of incarceration. *Peugh v. United States*, 569 U.S. 530, 545 (2013) ("When Peugh committed his crime, the recommended sentence was 30 to 37 months. When he was sentenced, it was 70 to 87 months."); *Garner v. Jones*, 529 U.S. 244 (2000) (recognizing that a change in a parole board's rules could, given an adequate showing, run afoul of the Ex Post Facto Clause).

The Department of Correction's Lethal Injection Protocol does not alter the length of a sentence or otherwise undermine Miller's expectations of an established liberty interest. Indeed, the harm Miller identifies—prolonged pain and suffering—implicates not ex post facto considerations, but, if anything, Eighth Amendment considerations. And, Miller has already failed in his Eighth Amendment challenge to Tennessee's lethal injection protocol. The Tennessee Supreme Court has upheld the constitutionality of that protocol, *Abdur'Rahman, et al. v. Parker, et al.*, 2018 WL 4858002 (Tenn.), *cert. denied sub nom., Zagorski, et al. v. Parker, et al.*, 2018 WL 4900813 (Oct. 11, 2018), and the United States Supreme Court has twice declined to review that decision and twice denied stays of execution requested by inmates facing execution by that means. *See Zagorski v. Parker*, 2018 WL 4900813 (U.S. No. 18-6238, Oct. 11, 2018); *Irick v. Tennessee*, 2018 WL 3767151 (U.S. No. 18A142, Aug. 9, 2019). Moreover, constitutional challenges to the midazolam-based three-drug lethal injection protocol have been rejected by *every court* that has considered it, including the United States Supreme Court and the Sixth Circuit. *See Glossip v. Gross*, 135 S.Ct. 2726, 2739-40 (2015) (listing case citations). *See also In re: Ohio*

10

*Execution Protocol*, 860 F.3d 881 (6th Cir.), *cert. denied*, 137 S.Ct. 2238 (2017) (reversing order enjoining three-drug protocol using midazolam: "[Ohio's] chosen procedure here is the same procedure (so far as the combination of drugs is concerned) that the Supreme Court upheld in *Glossip*."); *McGehee v. Hutchison*, 854 F.3d 488, 492 (8th Cir.), *cert. denied*, 137 S.Ct. 1275 (2017) (evidence falls short of showing a significant possibility that Arkansas' protocol is "sure or very likely" to cause severe pain and needless suffering); *Arthur v. Commissioner, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied*, 137 S.Ct. 725 (2017) (inmate "has not carried his heavy burden to show that Alabama's current three-drug protocol—which is the same as the protocol in *Glossip*—is 'sure or very likely to cause' [inmate] serious illness, needless suffering, or a substantial risk of serious harm").

Thus, it is not surprising that Miller cites no authority whatsoever to support his contention that a change in the chemicals used to carry out lethal injection—a constitutional method of execution—would violate the Ex Post Facto Clause. For a law to be ex post facto, it must be "more onerous than the prior law." *Dobbert v. Florida,* 432 U.S. 283, 294 (1977). In *Malloy v. South Carolina*, 237 U.S. 180 (1915), the United States Supreme Court held that a South Carolina statute, which changed the State's method of execution from hanging to electrocution did not violate the Ex Post Facto Clause. "The statute under consideration did not change the penalty—death—for murder, but only the mode of producing this, together with certain nonessential details in respect of surroundings." *Id.*, 237 U.S. at 185. *See also Poland v. Stewart*, 117 F.3d 1094, 1104-05 (9th Cir. 1997) (a change in the method of execution does not make the sentence more burdensome and so does not violate the Ex Post Facto Clause); *In re Lomdardi,* 741 F.3d 888, 897 (8th Cir. 2014) (Missouri's change in its lethal injection protocol does not violate Ex Post Facto: "That a former method of execution is no longer available does not mean that

11

adoption of the next best method is an unconstitutional increase in punishment."); *Johnson v. Bell*, 457 F.Supp. 2d 839, 841 (M.D. Tenn. 2006) (change in the method of execution does not violate the Ex Post Facto Clause).[6]

Plaintiffs were each sentenced to death for first-degree murder, and those sentences remain in place. Because differences between two modes of producing the same result—death—do not change the quantum of punishment attached to first-degree murder, Tennessee's use of a midazolam-based lethal injection protocol does not violate the Ex Post Facto Clause.

In short, there is no likelihood that Miller—or any of the other Plaintiffs—can prevail on the Count I claim that imposition of a constitutional method of execution—lethal injection—which does not increase the punishment for murder, violates the Ex Post Facto Clause because of a change in the drugs used to implement that method.

> 2. *Miller's constitutional challenge to electrocution (Count II) is not ripe because he, like the other Plaintiffs, is not subject to that method of execution.*

Count II is a claim that execution by electrocution violates the Eighth and Fourteenth Amendments. But that claim is not justiciable because neither Miller nor any of the other three Plaintiffs is subject to execution by electrocution under Tennessee law. That is, the purported constitutional challenge to electrocution is not ripe.

---

[6] Tennessee's General Assembly made lethal injection the presumptive method of execution in 2000. Tenn. Code Ann. § 40-23-114(a). In *Baze v. Rees*, 553 U.S. 35, 53 (2008), the United States Supreme Court recognized that thirty-six States that sanction capital punishment had adopted lethal injection as the preferred method of execution at that time, a trend that mirrored the change upheld against ex post facto challenge in *Malloy*. 237 U.S. at 185 (discussing the trend toward electrocution in the early twentieth century, the Court observed that this legislative change did not alter the penalty for murder, only the mode of producing it). Plaintiffs have never challenged that legislative action, and any attempt to do so now would be barred by the one-year statute of limitations for actions brought under federal civil rights statutes. Tenn. Code Ann. § 28-3-104.

The purpose of the ripeness doctrine of Article III of the U.S. Constitution "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Clinton v. Acequia, Inc*., 94 F.3d 568, 572 (9th Cir.1996) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Accordingly, an issue is not ripe for review "where the existence of the dispute itself hangs on future contingencies that may or may not occur." *Id*. When there is no danger of imminent and certain injury to a party, an issue has not "matured sufficiently to warrant judicial intervention." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975)). *See also Texas v. United States*, 523 U.S. 296, 300 (1998) (A claim is not ripe for adjudication if it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all.").

The Supreme Court has established a two-part test for determining the ripeness of a claim: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515. Miller fails both parts of this ripeness test.

Under Tennessee law, "[f]or any person who commits an offense for which the person is sentenced to the punishment of death, the method for carrying out this sentence *shall be by lethal injection*." Tenn. Code Ann. § 40-23-114(a) (emphasis added). But persons sentenced to death for offenses committed before January 1, 1999, may elect to be executed by electrocution by signing a written waiver of the right to be executed by lethal injection. Tenn. Code Ann. § 40-23-114(b). State law would also require the use of electrocution (1) if lethal injection is held unconstitutional by the Tennessee Supreme Court under the Tennessee Constitution or by the United States Supreme Court under the United States Constitution or (2) if the Commissioner of Correction certifies to the Governor that he is unable to carry out the sentence because "one or more of the

13

ingredients essential to carrying out a sentence of death by lethal injection is unavailable." Tenn. Code Ann. § 40-23-114(e).

This statutory scheme makes it absolutely clear that the issue Miller seeks to litigate is not fit for judicial consideration. Lethal injection is the only method of execution that will be applied to Miller unless he chooses electrocution under subsection 114(b) or unless the future contingencies in subsection 114(e) were to occur. But Miller has not chosen electrocution, and the future contingencies that might otherwise trigger electrocution are just that: contingencies which may never happen. Thus, unless Miller specifically chooses otherwise, he does not face electrocution; he will be executed by Tennessee's default method of execution, lethal injection.

Nor does Miller face any hardship from the Court's withholding of consideration. The prototypical case of "hardship" for ripeness purposes arises when a claimant "faces a choice between immediately complying with a burdensome law or 'risk[ing] serious criminal and civil penalties.'" *Warshak v. United States*, 532 F.3d 521, 531 (6th Cir. 2008) (alternation in original). Miller need take no action at all to avoid the harm from electrocution about which he complains because Tenn. Code Ann. § 40-23-114(a) requires the Defendants to carry out his death sentence by lethal injection, a method that has been adjudged constitutional.

In sum, Count II is not ripe for adjudication since Miller faces no risk of execution by electrocution and will face no hardship or immediate or certain danger if this Court does not review his Eighth Amendment electrocution claim at this time. Clearly, there is no likelihood of success on a claim that cannot be adjudicated.

### 3. Miller's constitutional challenge to lethal injection (Count III) is barred by res judicata and is meritless.

Count III is a claim that execution by means of Tennessee's midazolam-based three-drug protocol violates the Eighth and Fourteenth Amendments. But, in a case in which Miller was a

14

party-plaintiff, the Tennessee Supreme Court ruled less than one month ago that Tennessee's lethal injection protocol is constitutional, and the United States Supreme Court denied certiorari. *Abdur'Rahman, et al. v. Parker, et al.*, 2018 WL 4858002 (Tenn.), *cert. denied sub nom., Zagorski, et al. v. Parker, et al.*, 2018 WL 4900813 (Oct. 11, 2018) (upholding as constitutional Tennessee's three-drug lethal injection protocol).

Because Plaintiff Miller was a party to that litigation, he is now barred by res judicata from pursuing the same cause of action with respect to all issues which were or could have been raised in the earlier suit. *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358, 361 (6th Cir. 1967) (citing *Lawlor v. National Screen Service*, 349 U.S. 322, 326 (1955)); *Jackson v. Smith*, 387 S.W.3d 486, 491 (2012). "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 98 (1980).

A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state. *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987). This principle applies to civil rights actions under section 1983 with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion). *Id. See also Allen*, 449 U.S. at 98 (traditional preclusion doctrines apply to section 1983 actions).

The party asserting a defense predicated on res judicata or claim preclusion must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits. *Jackson*, 387 S.W.3d at 491. Each of these criteria is satisfied here.

The underlying judgment upholding the constitutionality of Tennessee's midazolam-based, three-drug protocol in the prior suit was rendered by the Davidson County Chancery Court, a court of competent jurisdiction in Tennessee. Tenn. Code Ann. § 16-11-101 et seq.

The same parties that were involved in the prior suit are involved in this action. Plaintiff Miller—the only party for whom an execution date has been set and who now seeks injunctive relief—was also a plaintiff in the Chancery Court action. The Defendants in this action were also defendants in the Chancery Court action.

Miller asserted the same claim/cause of action in the prior suit as he alleges here. Just as he alleges now, Miller alleged in the prior suit that Tennessee's midazolam-based three-drug lethal injection protocol violates the Eighth and Fourteenth Amendments to the United States Constitution. Attachment 4, at 23.

The underlying judgment in the prior suit is now final. The Tennessee Supreme Court affirmed the decision of the Chancery Court on October 8, 2018. *Abdur'Rahman, et al. v. Parker, et al.*, 2018 WL 4858002 (Tenn.). The time to seek rehearing of that decision expired ten days later on October 18, 2018. Tenn. R. App. P. 39(b). The mandate of the Tennessee Supreme Court issued the following day, on October 19, 2018. *See Abdur'Rahman, et al. v. Parker,* No. M2018-01835-COA-R3-CV (Tenn.) (online docket available at https://www.tncourts.gov). Plaintiff

initiated this action—again challenging the constitutionality of Tennessee's lethal injection protocol—two weeks later, on November 2, 2018. Doc. No. 1.

Res judicata ensures an end to litigation once a cause of action has been litigated. Plaintiff Miller's cause of action has plainly been litigated to conclusion on the merits and all claims related to Tennessee's midazolam-based lethal injection protocol were known to him, or could have been known to him, when he filed suit in the Tennessee state courts just eight months ago. This attempted do-over is thus barred by res judicata.

Moreover, as shown above, constitutional challenges to the midazolam-based three-drug lethal injection protocol have been rejected by *every court* that has considered it, including the United States Supreme Court and the Sixth Circuit. *See also Zagorski v. Haslam*, 2018 WL 5734458 (6th Cir., Oct. 31, 2018) ("Tennessee's lethal injection protocol comports with what the Supreme Court blessed as constitutional in *Glossip v. Gross*, ––– U.S. ––––, 135 S.Ct. 2726, 2739-40, 192 L.Ed.2d 761 (2015). *See also In re Ohio Execution Protocol Litig.*, 881 F.3d 447, 449 (6th Cir. 2018).") (Cook, Circuit Judge, concurring).

Miller's contention that he did not have a full and fair opportunity to litigate his claims during the state-court proceedings is baseless. In assessing the fairness to a plaintiff in an earlier proceeding, courts may consider (1) the procedural and substantive limitations placed on the plaintiff in the first proceeding, (2) the plaintiff's incentive to litigate the claim fully in the first proceeding, and (3) the parties' expectation of further litigation following the conclusion of the first proceeding. *See Mullins v. State*, 294 S.W.3d 529, 538-39 (Tenn. 2009).

The Tennessee Supreme Court specifically addressed and rejected Miller's claim that he had been denied an opportunity to be heard on the availability of an alternative method of execution. *Abdur'Rahman*, 2018 WL 4858002, at *7. *See supra* p. 6. In state court proceedings,

Miller filed two separate amendments to his Complaint, the latter coming just one week before trial, pleading pentobarbital as an alternative method of execution under *Glossip*. *Abdur'Rahman*, 2018 WL 4858002, at *2-3. He did not plead any of the alternative he now suggests, Doc. No. 1, 68-78, although all were known to him or could have been known to him then.

Moreover, Miller's claim that he was deprived of an opportunity to challenge the "July 5, 2018 protocol" is deliberately misleading. As the Tennessee Supreme Court explained, the July 5 protocol amendment only eliminated the one-drug pentobarbital protocol as a chemical alternative. *Abdur'Rahman*, 2018 WL 4858002, at *7. It left intact the three-drug midazolam protocol that had been the subject of the litigation from the outset. And Miller had known since at least February 2018 that the State of Tennessee would use the three-drug midazolam protocol. *Id.* Indeed, he had reached that conclusion himself a month earlier when he argued to the Tennessee Supreme Court that "[p]ublic records and the adoption of this new protocol suggest that Tennessee does not have access to pentobarbital." *State v. David Earl Miller*, No. E1982-00075-SC-DDT-DD (Response, filed Jan. 18, 2018). Attachment 3.

Miller received extensive process in the state trial court and an opportunity to make a complete record on his claims. Miller's proof during the ten-day state-court trial included four expert witnesses and twelve lay witnesses. *Abdur'Rahman*, 2018 WL 4858002, at *2. During the expedited appeal proceedings, Miller was heard through counsel and in writing by an impartial tribunal. The Tennessee Supreme Court considered separate briefs filed by two sets of plaintiffs and expanded the time for oral argument. Id. at *8. Miller most certainly received a full and fair opportunity to litigate his cause of action challenging Tennessee's execution protocol in the State courts, and res judicata should bar further litigation of that cause of action.

4. *Miller's challenge to Tennessee's statutory provision permitting inmates sentenced before January 1, 1999, to elect electrocution as the method of their execution (Count IV) is barred by collateral estoppel and meritless.*

Count IV is a claim that Miller and his co-Plaintiffs have been deprived of an opportunity to challenge electrocution "because they must elect electrocution to avoid the harsher punishment of lethal injection." Complaint, Doc. No. 1, at 124. They argue that the alleged election requirement amounts to a "coerced waiver of Eighth and Fourteenth Amendment Rights." Motion, Doc. No. 7, at 38.

But the Sixth Circuit found an identical "coercion" claim meritless in *Zagorski v. Haslam, et al.*, 2018 WL 5734458 (6th Cir. Oct. 31, 2018), *cert. denied, Zagorski v. Haslam, et al.*, No. 18-6350 (U.S. Nov. 1, 2018). (Like Miller, Zagorski was one of the plaintiffs in the Davidson County Chancery Court litigation in which the court upheld the constitutionality of Tennessee's midazolam-based protocol.) Indeed, in a concurring opinion, Circuit Judge Cook described the inmate's claim that he had been "coerced and compelled" to choose between two unconstitutional methods of execution as "clearly baseless"— "Tennessee's lethal injection protocol comports with what the Supreme Court blessed as constitutional in *Glossip v. Gross*, 135 S. Ct. 2726, 2739-40 (2015). *See also In re Ohio Execution Protocol Litig.*, 881 F.3d 447, 449 (6th Cir. 2018). Thus, Zagorski could not have been forced to choose 'between two unconstitutional choices.'" *Zagorski*, 2018 WL 5734458, at *2. Nor can Miller be forced to do so. Count IV is just as clearly baseless as was Zagorski's identical coercion claim.

Further, Miller's coercion claim has no likelihood of success because it is entirely premised on the false notion that lethal injection is unconstitutional: "Execution of the lethal injection protocol, which presents a substantial risk of unnecessary, severe pain will last twenty minutes, whereas, execution in the electric chair which also presents a substantial risk of unnecessary,

19

severe pain will last approximately six minutes." Complaint, Doc. No. 1, at 125. Plaintiffs' allegations thus require Miller to prove the opposite of what the Tennessee Supreme Court has already ruled, *i.e.*, that Tennessee's lethal injection protocol is unconstitutional. As shown above, res judicata bars Miller from relitigating of any cause of action challenging the constitutionality of Tennessee's lethal injection protocol. And even if that were not the case, the claim would fail as a matter of law because courts have consistently upheld as constitutional a midazolam-based three-drug lethal injection protocol. *See* supra, at 6. The protocol has <u>never</u> been found unconstitutional.

### 5. *Miller's access-to-the-courts claim (Count V) is time barred and meritless.*

Count V is a claim that the Tennessee law prohibiting more than one defense-attorney witness during an execution and denying the attorney telephone access during the execution violates his constitutional right to access the courts. Complaint, Doc. No. 1, at 127. But Miller cannot prevail on this claim for at least two reasons.

*First*, the claim is time-barred. Section 1983 claims are best characterized as tort actions for personal injury, and federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)). Tennessee has a one-year statute of limitations for civil actions brought under federal civil rights statutes. Tenn. Code Ann. § 28-3-104.

A federal civil rights claim accrues when a plaintiff knows or has reason to know of the injury that is the basis of the plaintiff's action. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984); *see also Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (*per curiam*) (concluding that the statute of limitations for an access-to-courts claim begins to run "only when the plaintiffs knew or should have known that they have suffered injury to their right of access and who caused it").

Plaintiffs filed this action on October 26, 2018. Doc. No. 1. Thus, if the claim accrued before November 2, 2017, which it did, it is barred by the statute of limitations.

Plaintiffs argue that Tennessee law, specifically Tenn. Code Ann. § 40-23-116, unconstitutionally limits access to the courts by permitting a single attorney witness and by failing to permit that attorney to have access to a telephone during an execution. Doc. No. 1, 127. That statute regulates the persons who may attend an execution in Tennessee and specifically designates "[t]he only witnesses entitled to be present at the carrying out of [a] death sentence." Tennessee law makes it a crime to allow or permit any person other than those specifically authorized by statute "to be present at the carrying out of the death sentence." Tenn. Code Ann. § 40-23-116(b). The statute makes no provision for any witness to communicate with individuals outside the prison by telephone during the carrying out of a death sentence.

But Miller's lack-of-access claim is time-barred because he knew or should have known more than eighteen years ago that he was limited to a single attorney witness with no direct telephone access outside the prison. His conviction and death sentence became final in 1990 when the United States Supreme Court denied certiorari in the direct appeal affirming his criminal judgment. *State v. Miller,* 771 S.W.2d 401 (Tenn. 1989), *cert. denied,* 497 U.S. 1031 (1990). Any access-to-the-courts cause of action he may have had accrued on May 10, 2000, when the Tennessee General Assembly amended the statute to include "[o]ne (1) counsel witness chosen by the condemned person" among those persons authorized to be present during an execution. Tenn. Code Ann. § 40-23-116(a)(8). 2000 Tenn. Pub. Acts 744.

Even if one assumes that Miller's cause of action did not accrue until the Tennessee Supreme Court set a date for his execution, that claim is still time-barred. Miller completed the standard three-tier appeals process in 2013, when the United States Supreme Court denied

21

certiorari from the denial of federal habeas corpus relief. *Miller v. Colson,* 694 F.3d 691 (6th Cir. 2012), *cert. denied,* 133 S.Ct. 2739 (2013). By order filed December 17, 2013, the Tennessee Supreme Court set an execution date of August 18, 2015. *State v. Miller,* No. M1982-00075-SC-DDT-DD (Tenn. Dec. 17, 2013). Plaintiff knew then that he was limited to a single attorney witness with no direct outside telephone access.

Tennessee Code Ann. § 39-16-201 makes it unlawful to take into any penal institution where prisoners are quartered or under custodial supervision "any telecommunication device," including cellular or digital phones. The Tennessee General Assembly amended that statute most recently in 2012. Since at least October 2001, Tennessee Department of Correction Policy and Procedure # 507.01 has defined "contraband" as "[a]ny item that is not permitted by law." Attachment 5.

In sum, Miller's § 1983 cause of action regarding the constitutionality of the prohibition on the number of attorney witnesses and telephone access during his execution accrued well before November 2, 2017. It accrued at the earliest in May 2000 and at the latest in 2013. *See also Arthur v. Commissioner, Ala. Dept of Corr.*, 680 Fed. Appx. 894 (11th Cir. 2017) (concluding that inmate's cell-phone-viewing-room claim was time-barred).

*Second,* Miller's access-to-the-courts claim is meritless. The right of access to the courts is a component of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). To make out a viable claim for denial of access to the courts, Miller must show an actual injury or imminent injury that he is seeking to redress. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (explaining, by way of comparison, that a healthy inmate cannot claim a constitutional violation because of the inadequacy of the prison infirmary). And the injury, whether actual

22

or imminent, must be concrete and particularized to Miller, not just hypothetical or speculative. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (one of the "irreducible constitutional" requirements for standing is that "the plaintiff must have suffered an 'injury in fact'" that is "concrete and particularized" and that is "actual or imminent," not "conjectural or hypothetical").

Thus, to succeed on Count V, Miller must show that he has been prevented from bringing a viable Eighth Amendment claim—a viable claim of an underlying violation of a fundamental right separate from any right of access to the courts. *See Lewis*, 518 U.S. at 351. But the lack of a phone is not itself such an injury. Just as an inmate "cannot establish relevant actual injury simply by establishing that his prison's law library . . . is subpar in some theoretical sense" without also "demonstrating that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim," *id.*, so too must Miller demonstrate that there is a concrete, non-speculative, actual or imminent injury that lack of a phone will prevent him from pursuing.

Miller has neither pled, nor can he prove that type of actual injury. To the contrary, the allegations about potential mishaps during an execution are purely speculative and hypothetical. *See* Doc. No. 1, Complaint, p. 127 (emphasis added) ("663. There is a need to access the court *should* an execution not proceed according to [the protocol] or *should* [the protocol] inflict unnecessary and serious pain and suffering on an inmate."); p. 129 (emphasis added) ("674. *Should* events transpire during the execution that cause and/or prolong unnecessary and severe harm to Plaintiffs, one defense attorney will be unable to meaningfully seek judicial intervention.").

In *Whitaker v. Collier*, the Fifth Circuit held that "the possibility of 'botched executions' that access to counsel could address . . . is just the kind of 'isolated mishap' that is not cognizable via a method-of-execution claim." 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied,* 138 S.Ct. 1172 (2018) (citing *Baze v. Rees*, 553 U.S. 35, 50 (2008)). Moreover, the Sixth Amendment right to counsel only extends to the first appeal of right and not further. *Id.* (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Thus, without succeeding on an underlying claim, there could be no denial of the right to counsel on a speculative method-of-execution claim. *Id. See also Whitaker*, 862 F.3d at 501 ("[B]ecause the plaintiffs have not succeeded in pleading an underlying claim, their access-to-the-courts assertion fails as well"); *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir), *cert. denied sub nom. Yowell v. Livingston*, 571 U.S. 948 (2013) ("One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation."); *Arthur v. Dunn*, 2017 WL 2017 1362861, at *7 (M.D. Ala. Apr. 12, 2017), *aff'd sub nom. Arthur v. Comm'r, Alabama Dept of Corr.*, 680 Fed. Appx 894 (11th Cir. 2017), *cert. denied sub nom., Arthur v. Dunn*, 137 S.Ct. 1521 (2017) ("Arthur's request for his counsel to take a cellular device into a prison while an execution is taking place is based on speculation that something might go wrong during the procedure. This theoretical basis for relief falls outside of the injury requirement in *Lewis* [*v. Casey,* 518 U.S. 343, 351 (1996)]."); *Grayson v. Warden*, 672 Fed. Appx. 956, 966-67 (11th Cir. 2016) (inmate's request for access to a cell phone or landline is based on the possibility that something might go wrong during his execution, which does not qualify as an "actual injury").[7]

---

[7] Miller's access-to-the-courts claim is also likely barred by res judicata because he litigated that claim in State court along with his method-of-execution challenge. *Abdur'Rahman,* 2018 WL 4858002, *14.

## C. Miller's Eleventh-Hour Judge-Shopping Should Not Be Condoned Through Equitable Relief.

Miller is asking for injunctive relief, i.e., a stay of execution. But a stay of execution is an equitable remedy, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts. *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (collecting cases in which federal courts have invoked their equitable powers to dismiss suits viewed as speculative or filed too late). Repetitive or piecemeal litigation harms the State's strong interests in enforcing its criminal judgments, and the United States Supreme Court has made clear that federal courts can and should protect State from such suits. *Hill*, 547 U.S. at 584; *Nelson v. Campbell*, 541 U.S. 637 (2004) (equity must take into consideration attempts at manipulation). Miller's federal court gamesmanship has already been denounced by the Honorable Aleta A. Trauger in an order denying his attempt to intervene in another lawsuit. *Miller, et al. v. Parker, et al*., No. 3:18-cv-01035 (M.D. Tenn.) (Doc. No. 13). *See* supra at 7. Miller's eleventh-hour legal maneuvers weigh heavily against equitable relief.

## D. The State's Interest in Enforcing Its Criminal Judgments Weighs Heavily Against a Stay of Miller's Execution.

A stay of execution is an equitable remedy that is not available as of right. *Hill,* 547 U.S. at 584. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Gomez v. U.S. Dist. Court of Northern Dist. of California*, 503 U.S. 653, 654 (1992). "[T]here is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

Litigation challenging Miller's conviction and the State's method of execution have spanned nearly three decades. In addition to his trial by jury, the petitioner obtained direct review by the Tennessee Supreme Court. *State v. Miller*, 674 S.W.2d 279 (Tenn. 1984); *State v. Miller*,

25

771 S.W.2d 401 (Tenn. 1989). The Knox County Criminal Court, the Tennessee Court of Criminal Appeals, and the Tennessee Supreme Court reviewed his various post-conviction claims. *Miller v. State*, No. 03C01-9805-CR-00188, 1999 WL 1046515 (Tenn. Crim. App. Nov. 19, 1999); *Miller v. State*, 54 S.W.3d 743 (Tenn. 2001), *cert. denied*, 536 U.S. 927 (2002). The district court analyzed petitioner's federal habeas claims in great detail. *David E. Miller v. Ricky Bell, Warden*, 2005 WL 8155162, No. 3:01-cv-487 (E.D. Tenn., Mem. & Order, Mar. 25, 2005). The Sixth Circuit reviewed petitioner's case twice. *Miller v. Mays*, 879 F.3d 691 (6th Cir. 2018); *Miller v. Colson*, 694 F.3d 691 (6th Cir. 2012). The United States Supreme Court has on three occasions examined certiorari petitions and declined to grant review. *Miller v. Tennessee,* 497 U.S. 1031 (1990); *Miller v. Tennessee*, 536 U.S. 9273 (2002); *Miller v. Colson*, 133 S.Ct. 2739 (2013).

The Tennessee Supreme Court has delayed Miller's execution twice to allow him to challenge the State lethal injection protocol, and he has thoroughly litigated the constitutionality of two different lethal injection protocols in state court. The State's significant interest in enforcing its criminal judgments and the victims' compelling interest in finality weigh heavily against granting a stay of execution. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

## CONCLUSION

WHEREFORE, this Court should deny Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


*/s/ Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
scott.sutherland@ag.tn.gov


*/s/ Rob Mitchell*
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-3926
robert.mitchell@ag.tn.gov

27

## CERTIFICATE OF SERVICE

I certify that, on the 9th day of November 2018, a copy of the foregoing Response was filed and served by operation of the Court's ECF/PACER system on the following counsel for the Plaintiffs:  Stephen M. Kissinger, Asst. Federal Community Defender, 800 S. Gay Street, Suite 2400, Knoxville, TN 37929.

*/s/ Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General