# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DAVID EARL MILLER, et al., ) | |
| ) | **CAPITAL CASE** |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 3:18-cv-01234 |
| ) | |
| TONY PARKER, et al., ) | JUDGE CAMPBELL |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs David Earl Miller, Nicholas Todd Sutton, Stephen Michael West, and Terry Lynn King, all inmates of Tennessee's death row at Riverbend Maximum Security Institution, have filed a Motion for Temporary Restraining Order And/Or Preliminary Injunction. (Doc. No. 7.) Plaintiffs ask the Court to enjoin Defendants and their agents from: (1) executing Plaintiff Miller as scheduled on December 6, 2018; (2) presenting Plaintiff Miller with the form to elect between lethal injection and electrocution; (3) setting execution dates for Plaintiffs Sutton, West, and King; and (4) denying telephone access to Plaintiffs' attorney-witnesses during executions. (*Id.* at 1, 42.) For the reasons that follow, Plaintiffs' motion is **GRANTED** in part, and Defendants and anyone acting on their behalf are **ENJOINED** from denying Plaintiffs' attorney-witnesses access to a telephone during their executions. In all other respects, Plaintiffs' motion is **DENIED**.

### I. STANDARD FOR PRELIMINARY INJUNCTION

The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions. *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The court must assess four factors to determine whether a plaintiff is entitled to a preliminary injunction: "(1) whether [a movant] has

demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay." *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

The potential harm arising from a court's ruling on a motion to enjoin an inmate's execution weighs heavily on both sides. The irreparable injury inflicted by an execution in violation of the Constitution is too obvious to require discussion. And "it is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001). But, on the other hand, courts must weigh the State's interest in carrying out a lawful death sentence and in the finality of criminal judgments, *Workman v. Bredesen*, 486 F.3d 896, 912–13 (6th Cir. 2007), and the fact that "the public interest is not served by ordering a stay of execution for claims that are unlikely to prevail." *Bedford v. Kasich*, No. 2:11-CV-351, 2011 WL 1691823, at *15 (S.D. Ohio May 4, 2011). That interest in finality grows weightier as an execution date approaches, and both the Supreme Court and the Sixth Circuit have counseled against last-minute stays that interfere with the state's ability to carry out its sentences. *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004); *Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011).

Because of the strong and universal competing interests surrounding an impending execution, these cases tend to turn on the inmate's ability to establish a likelihood of success on the merits of his challenge. *Glossip*, 135 S. Ct. at 2737 ("The parties agree that this case turns on whether petitioners are able to establish a likelihood of success on the merits."); *In re Ohio*

2

*Execution Protocol Litig. (Campbell v. Kasich)*, 881 F.3d 447, 449 (6th Cir. 2018) (observing that "the 'likelihood of success on the merits' factor is determinative here").

## II. PLAINTIFFS' LIKELIHOOD OF SUCCESS

To satisfy this prong, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). "More than a mere 'possibility' of relief is required." *Id.* The level of likelihood of success required depends on the injury at stake:

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Griepentrog*, 945 F.2d at 153–54 (citations omitted). The Court examines Plaintiffs' arguments regarding each Count of the Complaint in order to assess their likelihood of success on the merits.

### A. Count 1 — Ex Post Facto

Plaintiffs assert that because Tennessee's current lethal injection protocol will cause them to "experience severe pain and suffering . . . many times longer" than they would during the method of execution that existed at the time of their crimes—namely, electrocution—the lethal injection protocol violates the Ex Post Facto Clause of the United States Constitution. (Doc. No 1 at 21; Doc. No. 7 at 20.) The Constitution prohibits states from "pass[ing] any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. The Supreme Court has explained that the Ex Post Facto Clause prohibits "any statute which . . . makes more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio* 269 U.S.

3

167, 169–70 (1925)). "An ex post facto law possesses two elements: (1) 'it must apply to events occurring before its enactment,' and (2) 'it must disadvantage the offender affected by it.'" *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). A change in a state's method of execution is subject to that analysis. "In *Malloy v. South Carolina*, 237 U.S. 180 (1915), [the Supreme Court] concluded that a change in the method of execution was not ex post facto because evidence showed the new method to be more humane." *Weaver v. Graham*, 450 U.S. 24, 32 n. 17 (1981).[1]

This Court recently found in granting a preliminary injunction to another death row inmate on the day of his scheduled execution that there were "serious questions . . . concerning whether the lethal injection protocol with which the state intends to execute the plaintiff is more or less humane than electrocution, which is his preferred method and which was the statutory method of execution at the time he was sentenced and still seems to be available to him as a matter of state law." Memorandum and Order at 8, *Zagorski v. Haslam*, No. 3:18-1035 (M.D. Tenn. Oct. 11, 2018) (Trauger, J.). It was critical to the *Zagorski* decision, however, that state officials had refused to comply with Mr. Zagorski's request, pursuant to Tennessee Code Annotated § 40-23-114(b), and were insisting on proceeding with his execution under the relatively new lethal

---

[1] Defendants argue that the Ex Post Facto Clause does not apply to any changes in the Tennessee Department of Correction's execution protocol because they are not enacted by the state legislature in the form of a statute. (Doc. No. 19 at 9–12.) They acknowledge, however, that the Supreme Court has applied the Ex Post Facto prohibition to state and federal regulations that increase the severity of a criminal sentence. (*Id.* at 10 (citing *Peugh v. United States*, 569 U.S. 530 (2013), and *Garner v. Jones*, 529 U.S. 244 (2000).) Moreover, other federal courts have considered Ex Post Facto claims in connection with execution protocols promulgated as corrections department policies. *See, e.g., In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2018 WL 1033486, at *27 (S.D. Ohio Feb. 22, 2018), *adhered to on reconsideration*, No. 2:11-CV-1016, 2018 WL 2118817 (S.D. Ohio May 8, 2018). Accordingly, while Defendants may yet prevail on this argument upon further development, the Court has not applied any weight to it for the purpose of ruling on the present motion.

4

injection protocol. *Id.* at 2–4.  Accordingly, Zagorski was arguably being compelled to suffer an execution that amounted to a more burdensome punishment than that imposed at the time of his crimes.

Plaintiffs in this case do not allege similar facts.  They do not allege that they have elected electrocution under the statute permitting them to do so, or that Defendants have refused to honor that election.  In fact, the pending motion seeks to prevent Defendants from even presenting Plaintiff Miller with the opportunity to make that election. (Doc. No. 7 at 1.)  When Tennessee law retains Plaintiffs' right to demand the same method of execution that existed at the time of their crimes, their chance of prevailing on an Ex Post Facto claim seems negligible, at best.

### B.  Count 2 — Electrocution is Unconstitutional

Plaintiffs claim that electrocution is cruel and unusual punishment in violation of the Constitution. (Doc. No. 1 at 20; Doc. No. 7 at 35.)  Defendants assert that this claim is not ripe for adjudication because state law provides that Plaintiffs will be executed by the default method of lethal injection unless they choose electrocution, which none of them have done. (Doc. No. 19 at 12–14, citing Tenn. Code Ann. § 40-23-114(a).)

Plaintiffs acknowledge that their "claim against execution by electrocution not only was not, but could not have been, raised" during their litigation in state court earlier this year of the state's method of execution. (Doc. No. 7 at 35.)  They quote the Tennessee Supreme Court's previous ruling that "[t]he Electrocution Causes of Action depend entirely on future and contingent events that have not occurred and may never occur, and as a result, are unripe and nonjusticiable." (*Id.* at 35–36 (quoting *West v. Schofield*, 468 S.W.3d 482, 494 (Tenn. 2015).)  According to Plaintiffs, it therefore follows that their "likelihood of success must be determined solely based upon the merits of their claim," but they do not offer any reason for this Court to find that it is any

5

more able to reach the merits of this unripe claim than the state court was. (Doc. No. 7 at 36.)

This Court rejected a challenge to the constitutionality of electrocution under similar circumstances several years ago:

> Petitioner does not have a current claim with regard to electrocution, because current Tennessee law provides for execution of the death sentence by lethal injection. Tenn. Code Ann. § 40–23–114(a) (2000). Because he committed his offense prior to January 1, 1999, Petitioner may elect by written waiver to be executed by electrocution instead of lethal injection. Tenn. Code Ann. § 40–23–114(b). Should he choose to make such a waiver, Petitioner would waive any claim that electrocution is unconstitutional. *See Stewart v. LaGrand*, 526 U.S. 115, 119 (1999). A recent amendment to the controlling statute provides that execution by electrocution is otherwise authorized only in the event that lethal injection is held to be unconstitutional by a court of competent jurisdiction or the Commissioner of the Tennessee Department of Correction certifies to the governor that an essential lethal injection ingredient is unavailable. Tenn. Code Ann. § 40–23–114(d). In the absence of any allegation that either of those triggering events has happened, any challenge to the constitutionality of electrocution is not ripe for review.
>
> Moreover, the Supreme Court found execution of the death penalty by electrocution to be constitutional in 1890, *see In re Kemmler*, 136 U.S. 436, 449 (1890), and no federal court since that time has held it to be unconstitutional. *But see State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (Neb. 2008) (finding electrocution unconstitutional under Nebraska constitution). The Sixth Circuit has reiterated its rejection of such a claim as recently as 2004, *see Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004), and at least one district court in Tennessee has rejected such a challenge within the last three years, *see Morris v. Bell*, No. 07–1084–JDB, 2011 WL 7758570, at *68 (W.D. Tenn. Sept. 29, 2011).

*Duncan v. Carpenter*, No. 3:88-00992, 2014 WL 3905440, at *42–43 (M.D. Tenn. Aug. 11, 2014) (Nixon, S.J.); *see also Stanford v. Parker*, 266 F.3d 442, 462 (6th Cir. 2001) (rejecting Eighth Amendment challenge to electrocution by inmate who had not elected it because the plaintiff's "argument ignores the fact that he need not be electrocuted" and because by choosing electrocution he would "waive any objection" to it). For those same reasons, Plaintiffs do not have a substantial likelihood of prevailing on this claim.

6

## C. Count 3 — Tennessee's Lethal Injection Protocol is Unconstitutional

Plaintiffs claim that the Tennessee Department of Correction's July 5, 2018 lethal injection protocol constitutes cruel and unusual punishment in violation of the Constitution. (Doc. No. 1 at 61.) Defendants correctly point out that any facial challenge to the protocol is barred by res judicata in light of the Tennessee Supreme Court's recent ruling that the July 5 protocol is constitutional. *Abdur'Rahman v. Parker*, No. M201801385SCRDOCV, 2018 WL 4858002, at \*7, 13 (Tenn. Oct. 8, 2018), *cert. denied sub nom. Zagorski v. Parker*, No. 18-6238, 2018 WL 4900813 (U.S. Oct. 11, 2018) (holding that the trial court properly focused litigation on the July 5 protocol because it did not present "a substantial change to the lethal injection protocol for purposes of this facial challenge" and that "Plaintiffs failed to carry their burden to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution"). However, they do not address the fact that Plaintiffs in this case raise as-applied challenges to the protocol based on their "individual characteristics," the merits of which were not decided in *Abdur'Rahman*. *Id.* at \*10 (affirming denial of a motion to amend to add such claims because "Mr. Miller had notice and opportunity to assert [his] proposed as-applied claims long before the June 28, 2018 motion to amend the complaint.") Accordingly, neither party has briefed the issue of whether Plaintiffs' as-applied claims in particular are barred by res judicata.

Assuming for the purpose of the pending motion that the Court is able to reach the merits of Plaintiffs' as-applied claims, Plaintiffs have not offered any evidence or case-law to support them. They allege that they "present[] with individual characteristics" ranging from obesity and diabetes to enlarged prostate, but they do not allege or provide evidence of actual diagnoses of their conditions or their severity, nor have they provided any evidence supporting their allegations

7

about how those conditions would detrimentally affect them during lethal injection. For example, Plaintiff Miller alleges that he has a history of tuberculosis infection and that deep vein thrombosis, which he alleges would make it "significantly more difficult to achieve and/or maintain peripheral IV access on Plaintiff," is "associated with" tuberculosis. (Doc. No. 1 at 96.) But he does not demonstrate that he has ever actually experienced or even been diagnosed as being at high risk for deep vein thrombosis. And Plaintiffs do not cite any court opinions that have upheld as-applied challenges based on their conditions. The United States Court of Appeals for the Eighth Circuit last year observed a "'paucity of reliable scientific evidence' on the impact of the lethal-injection protocol" on an inmate suffering from conditions including morbid obesity, diabetes, neuropathy, hypertension, and sleep apnea. *Williams v. Kelley*, 854 F.3d 998, 1000–01 (8th Cir. 2017) (denying motion for stay of execution). Plaintiffs' unsupported allegations may give them a "mere possibility" of relief on this count, but that alone is not enough to warrant the extreme action of staying an execution.

Moreover, Plaintiffs do not allege that the conditions in question were recently diagnosed or otherwise explain why these claims could not have been brought before less than five weeks remained before Plaintiff Miller's scheduled execution. Plaintiff Miller's failure to raise his as-applied claims before the point at which the state court found them untimely weighs against enjoining his execution to allow their litigation now. As the Eighth Circuit has explained, when a claim brought in federal court could have been raised at the same time as the plaintiff's previous claim in state court, "[w]hether or not the claim technically is barred by doctrine of res judicata or collateral estoppel, the prisoners' use of 'piecemeal litigation' and dilatory tactics is sufficient reason by itself to deny a stay." *McGehee v. Hutchinson*, 854 F.3d 488, 491–92 (8th Cir. 2017) (citing *Hill v. McDonough*, 547 U.S. 573, 584–85 (2006)).

8

**D. Count 4 — Coerced Waiver**

Plaintiffs allege that the pain and suffering caused by Tennessee's current lethal injection protocol unconstitutionally coerces them to elect the less onerous method of electrocution, thereby waiving their right to challenge the constitutionality of electrocution. (Doc. No. 1 at 124.) Stated differently, Plaintiffs essentially claim that Defendants violate their constitutional rights by allowing them the opportunity to choose a method of execution they find preferable to lethal injection.

In 1999, an Arizona inmate had a similar choice and elected to be executed with lethal gas—a method that had already actually been found to be unconstitutional by the Ninth Circuit. When he later filed suit to challenge the constitutionality of his execution with lethal gas, the Supreme Court held that "[b]y declaring his method of execution, picking lethal gas over the State's default form of execution—lethal injection—Walter LaGrand has waived any objection he might have to it." *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999). Plaintiffs do not allege anything that differentiates their circumstances from LaGrand's. They allege that Tennessee's current lethal injection protocol is worse than electrocution, but surely LaGrand and any other inmate who elects a secondary method of execution does so because he believes the other option worse. They lament the consequent loss of the right to challenge the constitutionality of electrocution, but that loss is not as great as LaGrand's lost opportunity to challenge a method of execution that had already been found unconstitutional. In materially indistinguishable circumstances, this Court is not in a position to hold that a waiver imposed by Supreme Court precedent is unconstitutional.

This Court recently rejected a similar argument by an inmate who had already elected electrocution, and the Sixth Circuit affirmed: "To prevail on his coercion claim (count I), Zagorski would have to show that he was coerced to waive *his constitutional right against electrocution—*

9

and a challenge to the constitutionality of electrocution is precisely the one we are bound to conclude Zagorski waived." *Zagorski v. Haslam*, No. 18-6145, 2018 WL 5734458, at *1 (6th Cir. Oct. 31, 2018) (citing *Stanford v. Parker*, 266 F.3d 442, 462 (6th Cir. 2001)). Accordingly, Plaintiffs do not have a substantial likelihood of success on this claim.

### E. Count 5 — Telephone Access

Plaintiffs allege that a state statute that limits them to one attorney-witness to an execution, combined with Defendants' refusal to allow that attorney-witness access to a telephone during an execution, violates their right to access the courts. (Doc. No. 1 at 127–28; Doc. No. 7 at 40.) Plaintiffs seek injunctive relief that bars Defendants from denying Plaintiffs' attorney-witness access to a telephone. (Doc. No. 7). They assert that they have a sufficient likelihood of success on this claim to warrant injunctive relief in light of this Court's recent grant of preliminary relief on the same claim by Mr. Zagorski. (Doc. No. 7 at 40.)

Defendants' primary argument is that Plaintiffs' access-to-courts claim is filed too late because the relevant statutes have been on the books since 2000 and 2012. (Doc. No. 19 at 20–22.) Specifically, they assert that Tennessee Code Annotated § 40-23-116 has limited condemned inmates to one attorney-witness since May 2000 and that § 39-16-201 has prohibited cellular telephones in prisons since at least 2012. The Court is unpersuaded by this argument for the same reasons explained by Judge Trauger in *Zagorski*. *See* Memorandum and Order at 8–9, *Zagorski v. Haslam*, No. 3:18-1205 (M.D. Tenn. Oct. 29, 2018) (Trauger, J.). Neither of the statutes in question prevents an attorney-witness's access to a prison's telephone during an execution, and even the statutory prohibition on cellular telephones only prevents bringing such devices into a prison "with unlawful intent." Tenn. Code Ann. § 39-16-201(b)(3). Defendants' reliance on their own October 2001 policy prohibiting cell phones in prison is equally misplaced, because it governs

10

"the visiting of inmates" according to "a routine schedule" in established "visitation areas" designated by the warden that "allow reasonable ease of communication between inmates and their visitors." (Doc. No. 19-5 at 1, 2, 5, 6, 9.) It also provides that "[a]ttorneys and inmate clients shall, upon request, be afforded privacy for their visits." (*Id.* at 10.) Defendants' suggestion that this policy in any way governs conduct during an execution is absurd; but even if the policy applied to an execution, it does not say anything about access to the prison's own telephone system.

Defendants also argue Plaintiffs' claim lacks merit because any injury that might arise is currently hypothetical or speculative. (Doc. No. 19 at 22–24.) But they have not asserted any burden to them at all in connection with providing access to a telephone during an execution. To the contrary, Defendant Parker testified during the state court litigation that he has no opposition to providing an attorney-witness with access to a telephone during an execution and that an attorney-witness's access to a "landline" would not pose any safety or security concerns to the institution. (Doc. No. 1-22 at 2–3; Doc. No. 1-23 at 271–74.) Moreover, the Court takes judicial notice that Defendants and their predecessors have permitted attorney-witnesses to executions to have access to a telephone during several previous executions, and that a functioning telephone was in the execution witness room as recently as November 1, when Mr. Zagorski was executed.[2] *See* Notice, *Zagorski v. Haslam*, No. 3:18-1205 (M.D. Tenn. Nov. 1, 2018) (describing Defendants' provision of a telephone for that execution); *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn.), *vacated on other grounds*, 230 F.3d 1357 (6th Cir. 2000) (ordering telephone access for attorney-witness during the execution of Robert Coe); *see also* Raybin, David, "Lawyer for the Condemned: I Witnessed What Should be the Last Electric Chair Execution," Raybin &

---

[2] Given Defendants' providing of telephone access to an attorney-witness during Mr. Zagorski's recent execution, Defendant's argument against continuing that access during future executions is specious at best and vexatious at worst.

11

Weissman, P.C., June 23, 2014, https://www.nashvilletnlaw.com/blog/the-last-electric-chair-execution/ (describing attorney-witness's "verif[ying] that I would have access to a telephone with a clear line when I was in the witness room with a view of my client in the electric chair" and later seeing "that promised phone with an outside line . . . there on the wall" during 2007 execution of Daryl Holton).

Weighed against the apparent ease with which Defendants can provide telephone access, even a slim chance of success on the merits warrants the preliminary injunction requested, especially when that slim chance is combined with the irreparable nature of any harm that might befall Plaintiff. Plaintiffs' chance of success on this claim is the same as when Robert Coe raised it in 2000, when this Court explained:

> A Plaintiff's right to access the courts to raise an Eighth Amendment claim of cruel and unusual punishment is decidedly not frivolous, and his interest in being free from cruel and unusual punishment is paramount. Plaintiff will be irreparably harmed if he is denied relief. The state certainly has no legitimate interest in depriving the Plaintiff of access to the courts to assert a claim of cruel and unusual treatment. Finally, the public interest is best served by insuring that executions are carried out in a constitutional manner.
>
> This court is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself. However, given society's (and the state's) interest in assuring that capital punishment is carried out in a humane manner and the minimal inconvenience to the state, this court finds the plaintiff's position well taken.

*Coe*, 89 F. Supp. 2d at 966; *see also* Memorandum and Order at 9, *Zagorski v. Haslam*, No. 3:18-1205 (M.D. Tenn. Oct. 29, 2018) (Trauger, J.) ("[T]he court finds that [the access-to-telephone claim] presents at least the minimum chance of success on the merits to warrant injunctive relief in light of the plaintiff's interest, the public interest, and the fact that the relief requested will not prevent the state from carrying out the plaintiff's sentence as scheduled.").

## III. CONCLUSION

For the reasons explained above, Plaintiffs' motion for preliminary injunction is **GRANTED in part**, and Defendants and anyone acting on their behalf are hereby **ENJOINED**, pending a final judgment in this case, from proceeding with any Plaintiff's execution without providing his attorney-witness with access to a telephone. In all other respects, Plaintiffs' motion (Doc. No. 7) is **DENIED**. Because the Court finds further briefing and argument on the motion for injunctive relief is unnecessary, Plaintiffs' motion to set dates for a reply brief and oral argument (Doc. No. 18) is **DENIED**.

No bond will be required upon the issuance of this injunction.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE