# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DAVID EARL MILLER** | ) | |
| **NICHOLAS TODD SUTTON** | ) | |
| **STEPHEN MICHAEL WEST** | ) | **No. 3:18-cv-1234** |
| **TERRY LYNN KING** | ) | |
| | ) | **Judge Campbell** |
| | ) | |
| | ) | **Death Penalty Case** |
| **Plaintiffs** | ) | *Execution date Dec. 6, 2018* |
| | ) | *for David Miller* |
| **v.** | ) | |
| | ) | |
| **TONY PARKER, Commissioner,** | ) | |
| **Tennessee Department of Correction,** | ) | |
| **in his official capacity,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **TONY MAYS, Warden,** | ) | |
| **Riverbend Maximum Security** | ) | |
| **Institution, in his official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (AFTER NOTICE) AND/OR PRELIMINARY INJUNCTION

Plaintiff David Earl Miller, by and through counsel in the above matter, submits this memorandum of law in support of his contemporaneously filed Motion for Reconsideration of Order on Motion for Temporary Restraining Order (After Notice) and/or Preliminary Injunction.

For the reasons discussed herein, this Court should reconsider its order (Doc. 20) dated November 15, 2018, that denies an injunction of Defendants, their agents, and assigns from presenting Plaintiff Miller with the "Affidavit Concerning Method

of Execution" (or "method of execution form") contained in Tennessee's July 5, 2018 Lethal Injection Protocol (and/or from requiring Miller to return an executed method of execution form on or before November 20, 2018, to avoid execution under Tennessee's July 5, 2018 Lethal Injection Protocol) and further from carrying out the execution of Plaintiff Miller presently set for the 6th day of December, 2018 by any means, until such time as a final order allowing the same has been entered herein.

## ARGUMENT

### I.     Count Four

Plaintiffs contend Tennessee's July 5th execution protocol deprives them of the opportunity to challenge the constitutionality of electrocution because they are coerced into "choosing" to be executed by electrocution to avoid experiencing the harsher punishment of lethal injection. Complaint, Doc. 1 PageID# 124-27. In particular, Plaintiffs allege: "The July 5th Protocol compels Plaintiffs to abandon the Eighth Amendment right not be tortured and mutilated in the electric chair, by threatening to subject them to the prolonged and excruciating pain of suffocation and internal chemical burns under the July 5th lethal injection protocol." Complaint, Doc. 1, PageID# 126, ¶655. An injunction to prohibit Defendants from presenting Plaintiff Miller with the Affidavit Concerning Method of Execution is requested to prevent that part of the July 5th Protocol from having an effect on Plaintiff Miller's constitutional rights. Injunctive relief based on this count was denied on the authority of *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999) and

2

*Zagorski v. Haslam*, No. 18-6145, 2018 WL 5734458 (6th Cir. Oct. 31, 2018), and the resulting determination that Plaintiffs do not have a substantial likelihood of success on Count Four. Order, Doc. 20, PageID# 1705.

> **A.** **The resolution of the *Zagorski* litigation does not undermine the substantial likelihood of success on Count Four. Zagorski was not similarly situated to the Plaintiffs here.**

Under Tennessee's current execution protocol, if an inmate wishes to avoid a substantial risk of unnecessary and severe pain during the 20-minute lethal injection procedure because it is a harsher punishment than the sentence imposed— which poses a substantial risk of unnecessary and severe pain during the 6-minute electrocution procedure—Tennessee requires the inmate to "choose" death by electrocution and thereby potentially waive the right to challenge electrocution as cruel and unusual punishment. In other words, the protocol coerces inmates to waive their constitutional rights against an unnecessarily painful and mutilating punishment and submit to an unconstitutional method of execution. The way Tennessee's protocol operates and the effect of the Affidavit of Execution Method is uncontested. The forced deprivation of constitutional rights constitutes irreparable harm and the complaint presents serious questions going to the merits of this claim.

The decision to deny the requested injunctive relief should be reconsidered because neither *LaGrand* nor *Zagorski* address the due process violation alleged by the complaint. Those cases address whether inmates may challenge the constitutionality of a method of execution under the Eighth Amendment after they choose and insist upon being executed by that method. In both cases the courts held

3

that the inmates waived any Eighth Amendment claim against the method of execution that they expressly requested. *LaGrand*, 526 U.S. at 119; *Zagorski*, 2018 WL 5734458 at *1. In other words, because the inmates affirmatively elected a method of execution they waived any right to challenge that method.

Neither *LaGrand* nor *Zagorski* apply in this case because Plaintiff Miller <u>has not elected a method of execution.</u>[1] Instead, he objects to the election provisions of Tennessee's protocol as a denial of due process (which compel him to simultaneously select an unconstitutional method of execution and waive all claims against it). The protocol threatens Plaintiff Miller with a constitutionally-impermissible (under the *ex post facto* clause) execution by lethal injection unless he completes the Affidavit Concerning Method of Execution demanding to be executed by constitutionally-impermissible (under the Eighth Amendment) electrocution. The election provisions utilize coercion to obtain a waiver of rights: they have a preclusive effect against the free exercise of the inmate's right to be heard on the constitutionality of Tennessee's electrocution protocol. Count Four alleges a Fourteenth Amendment claim, not an Eighth Amendment claim.

An injunction should be granted.

**B.    The request for an injunction should be reconsidered based on changing circumstances.**

In Tennessee, lethal injection is the general method of carrying out the punishment of death. Tenn. Code Ann. § 40-23-114(a). Three circumstances direct

---

[1] This fact is recognized in the Order denying injunctive relief on Count One. Order, Doc. 20, PageID# 700.

4

that electrocution, instead of lethal injection, will be the method of execution: (1) an inmate signs a waiver of "the right to be executed by lethal injection," Tenn. Code Ann. § 40-23-114(b); (2) lethal injection is held to be unconstitutional, Tenn. Code Ann. § 40-23-114(e)(1); and (3) the commissioner of correction certifies to the governor that an ingredient to the lethal injection protocol is unavailable, Tenn. Code Ann. § 40-23-114(e)(2).

Circumstances indicate that Defendant Parker will certify he does not have one or more drugs for Miller's execution. An injunction is required to preserve the status quo and provide an opportunity for Plaintiff Miller to exercise a voluntary, knowing, and intelligent decision regarding the Affidavit Concerning Method of Execution.

### 1. Defendants are withholding critical information from Plaintiff Miller.

Plaintiff Miller has requested information from the Warden that will inform any selection of a method of execution so that Miller may make a knowing, voluntary and intelligent selection and waiver of either his rights under the *ex post facto* clause or his rights under Eighth Amendment. Letter from Attorney Kissinger to Warden Mays. (Attachment A). Miller asked for receipt of the information seven days before the Warden's effective date for the Affidavit Concerning Execution Method. *Id.* Defendants have failed to respond.

For Miller to waive his *ex post facto* rights and submit to lethal injection he requires information about the drugs intended for his execution. Allegations in the complaint establish that aspects of, and deviations from, Tennessee's July 5th

5

Protocol—as applied—increase the risk of harm. *See e.g.* Complaint, Doc. 1, PageID# 47, ¶230; PageID# 50, ¶¶237-239; PageID# 93, ¶¶453-458; PageID# 110-16. Miller's request for information about the lethal injection drugs relates directly to concerns raised in the complaint. The information must be provided for any waiver of rights to be valid.

For Miller to waive his Eighth Amendment rights and submit to electrocution he requires information about Edmond Zagorski's execution in the electric chair. Allegations in the complaint establish that aspects of Tennessee's Electrocution Protocol—as applied—increase the risk of harm. *See e.g.* Complaint, Doc.1, PageID# 50-56, ¶¶242-266; PageID# 59, ¶¶280-281; PageID# 61-63, ¶¶285-288. Miller's request for information about the electrocution of Mr. Zagorski relates directly to concerns raised in the complaint.[2] The information must be provided for any waiver of rights to be valid.

## 2. The protocol provisions and the Warden's deadline regarding the Affidavit Concerning Execution Method are arbitrary.

Warden Mays has informed Plaintiff Miller that his method of execution form must be received by 5 p.m. on November 20, 2018. Warden Mays' letter to Attorney

---

[2] In addition, information is required to account for the time discrepancy between Mr. Zagorski's execution and the Electrocution Protocol. The actual execution took longer than indicated by the protocol. The duration of each method of execution is a significant factor when selecting a method. Defendants have not responded to a public records request seeking records related to Mr. Zagorski's execution. TPRA request, Attachment B. The office of the medical examiner has yet to disclose records pursuant to a public records request. Tennessee Public Records Act ("TPRA") request to Medical Examiner, Attachment C.

6

Kissinger, Doc.19-2, PageID# 1435. <u>An injunction against the protocol provisions</u> <u>regarding the Affidavit of Execution Method becoming effective on November 20,</u> <u>2018</u> will not prejudice Defendants because that date is arbitrary in relation to Defendant's ability to carry-out an execution. For example, although the form is to be presented to an inmate 30 days before the execution, Defendants presented Billy Ray Irick with the form five days earlier, on day 35.[3] *Abdur'Rahman, et al. v. Parker, et al.*, M2018-01385-SC-RDO-CV, Tr. Vol. VI, pp. 1655, 1659-60. [4]

In addition, Edmund Zagorski refused to sign the method of execution form when it was presented to him in accordance with Tennessee's lethal injection protocol. Order, *Zagorski v. Haslam*, No. 3:18-cv-01035 (M.D. Tenn. Oct. 10, 2018), Doc. 8, PageID# 380. According to the form, refusal to sign results in the method of execution defaulting to lethal injection. Tennessee Department of Corrections ("TDOC") provided notice to Mr. Zagorski 15 days before the scheduled execution date that the lethal injection protocol would be utilized. Three days before his

---

[3] Plaintiffs recognize the provision states the form will be presented "at least 30 days before the execution," however, the legal significance of the method of execution form requires regularity and foreseeability so that the inmate's attorney may be present when the form is presented. It is Defendants' practice to allow the presence of the inmate's attorney at the time the form is presented.

[4] The *Abdur'Rahman* Davidson County Chancery Court technical record and transcripts of proceedings are filed with the Tennessee Supreme Court in *Abdur'Rahman, et al. v. Parker, et al.*, M2018-01385-SC-RDO-CV ("*Abdur'Rahman* Appeal"). Cites to the Technical Record are "Vol." followed by the corresponding Roman Numeral for the volume number, and "p. or pp." for the consecutively numbered pages of the Technical Record that are cited. Cites to the transcript of proceedings are "Tr. Vol." followed by the corresponding Roman Numeral for the volume number, and "p. or pp." for the consecutively numbered pages of the transcript volume that are cited.

7

execution date, Mr. Zagorski submitted a notarized letter (in lieu of the method of execution form) expressly requesting electrocution. Order, *Zagorski v. Haslam*, No. 3:18-cv-01035, (M.D. Tenn. Oct. 10, 2018) Doc.8, PageID# 379. Mr. Zagorski filed suit and obtained an injunction that provided Defendants must carry-out the execution using the electric chair. *Id.* Defendants did not appeal this order and on November 1, 2018, they electrocuted Mr. Zagorski. The fact that Mr. Zagorski selected an execution method only three days before the scheduled execution date did not impede Defendants' ability to conduct the execution.[5]

The terms of the July 5th Protocol regarding the execution method form have little impact on Defendants' ability to execute inmates. In contrast, the terms greatly impact an inmate's constitutional rights and dictate the amount of unnecessary pain that is suffered under the July 5th Protocol. Tennessee's lethal injection protocol states that the Warden will present the inmate with the Affidavit Concerning Method of Execution Form ("method of execution form") in order "to select electrocution or lethal injection as a legal means of execution at least 30 days before the execution." Lethal Injection Protocol 7/5/2018, Doc. 1-5, PageID# 388. An inmate's execution will be carried out by lethal injection if he does not complete the form. *Id.,* PageID# 462

---

[5] Although the Governor issued a ten-day reprieve to allow time for Defendants to prepare for the execution by electrocution, recently obtained records indicate Defendants were able to carry-out an electrocution on the original execution date. Attach F, Electric Chair Training.

Thirty-eight (38) days before Plaintiff David Miller's scheduled execution date (on October 29, 2018), he sent the Warden a written objection to being presented with the method of execution form. Letter from Attorney Kissinger to Warden Mays, Attachment D.

On November 2, 2018, Plaintiff David Miller filed this lawsuit and a motion for a preliminary injunction prohibiting TDOC from presenting Miller with the method of execution form.

The Warden responded on November 6, 2018, saying that Miller's method of execution form must be received by 5 p.m. on November 20, 2018. Warden Mays' letter to Attorney Kissinger, Doc. 19-2, PageID# 1435. This deadline is one day before TDOC is required to provide Miller with notice of the method of execution that it will use to carry out his death sentence. Order, Attachment G. The July 5th Protocol, however, allows an inmate to change the execution method 14 days before the execution. Order, *Zagorski v. Haslam*, No. 3:18-cv-01035 (M.D. Tenn. Oct. 10, 2018), Doc. 8, PageID# 380. In this case, the last day according to the protocol that Miller could provide an effective Affidavit of Execution Method is November 22nd; two days after the date designated by Defendant Mays and one day after Defendants must disclose the method of execution they intend to utilize.

Information recently learned by Plaintiffs indicates Defendants likely will use the electric chair, not a lethal injection, to execute Miller. Defendants do not

9

have an inventory of lethal injection drugs.[6] In addition, after the time that Defendants could have received compounded drugs for the execution of Edmund Zagorski, a news report was published about a compounding pharmacy

The news reporter contacted the pharmacy and its majority owner repeatedly for comment. Now that the pharmacy and its majority owner knows it has been connected to executions in Tennessee it is unlikely they will continue to supply Defendants with drugs for executions. Thus, Plaintiffs reasonably believe that Defendants currently do not have a supplier of midazolam, vecuronium bromide, and/or potassium chloride. Without a supply of drugs necessary to carry out the midazolam-based three-drug protocol, Defendants will utilize the electrocution protocol for Miller's executions.

Defendants must reveal to Miller on November 21st how they intend to execute him. If defendants reveal they will use the electric chair, Miller has a constitutional right to be heard on his Eighth Amendment claim against electrocution (Count Two). Defendants, however, have set November 20th as the deadline for Miller's Affidavit Concerning Execution Method. This deadline forces Miller to select electrocution if he wishes to avoid a 20-minute lethal injection

---

[6] Tennessee's lethal injection protocol requires an inventory or record of drugs in a permanently bound ledger. Lethal Injection Protocol 7/5/2018, Doc. 1-5, PageID# 411. In response to a public records request that included copies of the drug inventory, General Counsel for TDOC states: "There are no responsive records/documents in TDOC's possession[.]" Letter from Ms. Inglis, Attachment E. There has been no response to an additional public records request seeking records related to the drugs intended for use in the execution of Plaintiff Miller. TPRA request, Attachment C.

procedure that is substantially more painful and unconstitutional under the *ex post facto* clause. Stated differently, the designation of November 20th as the effective date for the Affidavit Concerning Execution Method will coerce Miller to select electrocution to avoid worse suffering under the midazolam-based three-drug protocol. If Miller makes such a selection, Defendants will announce on November 21st that they will electrocute Miller. Defendants will also assert waiver against any attempt by Miller to vindicate his Eighth Amendment rights against electrocution. Given these circumstances, the November 20th deadline orchestrates an involuntary, unknowing waiver of constitutional rights.

Defendants' designation of November 20, 2018 as the effective date for Plaintiff Miller's Affidavit Concerning Execution Method is arbitrary in relation to their ability to execute Miller on December 6th. Defendants have conducted executions after obtaining an inmate's selection of execution method on a date other than that contemplated by the July 5th Protocol. Whether they obtain Miller's selection on November 7th (the date dictated by the protocol), November 20th (the date assigned by Defendant Mays) or November 30th, Defendants have the ability to electrocute Miller on December 6th. On the other hand, if Defendants are not enjoined from designating November 20th as the effective date for election of an execution method, Miller will suffer irreparable harm. He will be unable to make an informed decision because Defendants have not provided him important information regarding the drugs to be used for the midazolam-based three-drug protocol or information on the electrocution of Edmund Zagorski. In addition, Miller

11

will have been coerced to waive his Eighth Amendment rights and denied an opportunity to demonstrate that electrocution is unconstitutional <u>before</u> Defendants reveal that they will use the electrocution protocol to execute him.

## II.    Count Three

### A.    Facial Challenge

*Res judicata* does not bar review of Count Three to the extent it raises a facial challenge arising out of the July 5, 2018 Protocol because the claims asserted by Miller, Sutton, and West in Count Three arose from a different transaction or event than the claims asserted in *Abdur'Rahman*.

In its Memorandum and Order denying, in part, Plaintiffs' request for temporary and/or preliminary injunctive relief (Doc. 20) the Court found that *Abdur'Rahman, et al. v. Parker, et al.*, No. M2018-01385-SC-RDO-CV, 2018 WL 4858002 (Tenn. October 8, 2018), held that "that the trial court properly focused litigation on the July 5 Protocol because it did not present 'a substantial change to the lethal injection protocol for purposes of this facial challenge' and that "Plaintiffs failed to carry their burden to establish that Tennessee's current three-drug lethal injection protocol [*i.e.*, the July 5, 2018 Protocol] constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution." Mem. and Order, Doc. 20, p.7, PageID# 1702. Accordingly, the Court found "Defendants correctly point out that any[7] facial challenge to the protocol is barred

---

[7] Plaintiffs presume that both this Court's order and Defendants' argument extend to only those Plaintiffs here who were also party to *Abdur'Rahman. See, State ex rel.*

12

by res judicata in light of the Tennessee Supreme Court's recent ruling that the July 5 protocol is constitutional." Mem. and Order, Doc. 20, p.7, PageID# 1702. Plaintiffs, respectfully suggest the court's order overlooks that the Tennessee law of res judicata requires that the party asserting the defense demonstrate, *inter alia*, that the claims asserted by the party in the current action arise from the same transaction or event as the claims asserted by the same party in a prior action <u>and</u> that the prior court decided those claims on the merits.

Tennessee law[8] dictates that claims are the "same" for the purpose of res judicata when they arise from the same transaction or event. *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009). Here, there is no doubt but that the event which gave rise to the causes of action these Plaintiffs pursued in *Abdur'Rahman* by Miller, Sutton, and West was Tennessee's adoption of the January 8, 2018 Protocol. There is similarly no doubt that, regardless of whether the Tennessee Supreme Court properly found the differences between the January 8, 2018 Protocol were not substantial,[9] the decision in *Abdur'Rahman* resolved no claim raised in that action <u>by these Plaintiffs</u> on the merits. Instead, it resolved only claims raised by the remaining plaintiffs in *Abdur'Rahman* (including Messrs. Irick and Zagorski), hereinafter the "Irick/Zagorski Group."

---

*Cihlar v. Crawford*, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000). *See also, Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971).

[8] Defendants' assertion of res judicata must be resolved under Tennessee law. S*ee Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987).

[9] Though that determination is incorrect, it is not challenged in this motion.

13

The original facial challenge filed in *Abdur'Rahman* on February 20, 2018, and signed by Miller, Sutton and West, alleged Protocol B of the January 8, 2018 Protocol created a constitutionally-unacceptable risk of pain and suffering <u>and</u> explicitly offered Protocol A of the January 8, 2018 Protocol as the feasible and readily available alternative that substantially reduces the risk of pain. Compl., *Abdur'Rahman, et al. v. Parker, et al.*, No. 18-183-III, Davidson County Chancery Court (Feb. 20, 2018), Doc. 19-4. The same is true for the first amended complaint filed on April 13, 2018, and also signed by Miller, Sutton and West. It also alleged Protocol B of the January 8, 2018 protocol created a constitutionally-unacceptable risk of pain and suffering <u>and</u> explicitly offered Protocol A of the January 8, 2018 Protocol as the feasible and readily available alternative. *Abdur'Rahman*, *supra*, Vol. III, pp. 293-389. Finally, the second, and last, amended complaint signed by Miller, Sutton, and West which was filed on June 28, 2018, alleged Protocol B of the January 8, 2018 Protocol created a constitutionally-unacceptable risk of pain and suffering <u>and</u> explicitly offered Protocol A of the January 8, 2018 Protocol as the feasible and readily available alternative. *Abdur'Rahman*, *supra*, Vol. XI, pp. 1416-1563. On July 5, 2018, Defendants adopted the protocol being challenged here.

On July 9, 2018, Plaintiffs Miller, Sutton, and West and the Irick/Zagorski Group parted ways. On that date, the Irick/Zagorski Group, by their conduct, began to pursue causes of action arising from the adoption of the July 5, 2018 Protocol by consent. (In fact, the Chancery Court would later so find and the Irick/Zagorski Group would not object to its finding.) Miller, Sutton, and West, on the other hand,

expressly demanded the right to assert new causes of action arising from the July 5, 2018 Protocol and submitted the constitutionality of the July 5, 2018 Protocol was not properly before the court. They stated, however, the court could and should go forward with the hearing scheduled to begin that day because their claims against the January 8, 2018 Protocol remained justiciable under the "capable of repetition but of avoiding review" exception to the mootness doctrine. *Abdur'Rahman*, Vol. XXIV, pp. 32-39.  Miller, Sutton and West were not joined by the Irick/Zagorski Group. Indeed, as discussed below, the Irick/Zagorski Group repeatedly repudiated Miller, Sutton and West's objections and arguments throughout the remainder of the proceedings in *Abdur'Rahman*.

The Chancery Court neither ruled on these Defendant's request to file an amended complaint arising out of the July 5, 2018 protocol, nor did it decide whether trial was proceeding under the mootness exception these Defendants had urged before trial and trial began later that day.

On July 20, 2018, after the close of all plaintiffs' case, the Chancery Court entered an order stating:

> Denial of the Plaintiffs' Rule 15.02[10] motion to amend on the *Glossip* alternative, however, is separate from and does not affect that by express consent of the parties, *see Defendants' Notice Of Filing-Lethal*

---

[10] Tenn. R. Civ. P. Rule 15.02 provides, in the pertinent part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to conform to the evidence and to raise these issues *may be made upon motion of any party* . . ." (emphasis added.) *See also*, *In re Tawanna H.*, 223 Wis. 2d 572, 581, 590 N.W.2d 276, 280 (Ct. App. 1998) (Juvenile defendant denied due process by trial court's *sua sponte* post-trial amendment of allegations of delinquency to conform to the evidence).

> *Injection Execution Manual Revised July 5, 2018*, the pleadings have
> been amended to conform to the filing on July 5, 2018 and the proof at
> trial that the protocol in issue and on which declaratory judgment is
> sought is the Lethal Injection Execution Manual, Execution Procedures
> For Lethal Injection, Revised July 5, 2018.

Doc. 1-7, PageID# 480-81.

The next day, Miller, Sutton, and West sought reconsideration of the court's order. *Abdur'Rahman,* Vol. XV, p. 2141. Once again, they argued that the July 5, 2018 Protocol was not before the court and once again, they sought leave to raise claims arising out of the July 5, 2018 protocol. *Abdur'Rahman,* Vol. XV, pp. 2145, 2148-49 n.7. As they had before, and as they would again, the Irick/Zagorski Group refused to join Miller, Sutton, and West.

The Chancery Court's July 26, 2018 order denying these Plaintiffs' motion did not find (and, given the record just discussed, could not have plausibly found) that these Plaintiffs had "consented" to the amendment of their existing challenges arising out of the January 8, 2018 Protocol. The court did find, however, the Plaintiffs would not be permitted file causes of action arising out of the July 5, 2018 Protocol, because they could have raised the same causes of action against January 8, 2018 protocol because the two protocols were substantially similar.[11]

*Abdur'Rahman,* Vol. XVI, p. 2216.

_____

[11] Again, *see infra* at fn 10, though they are not, Plaintiffs do not, for the purposes of this motion, challenge whether the Chancery Court was correct in determining Plaintiffs could have raised the same claims against the January 8, 2018 protocol they wished to raise against the July 5, 2018 Protocol and/or whether the difference between the two protocols are "substantial." Furthermore, they acknowledge that, had the court in *Abdur Rahman* actually resolved the constitutionality of the January 8, 2018 Protocol, a trial court order denying them leave to leave to amend

16

Later that day, the Chancery Court dismissed the pending complaint. Doc. 1-8. On the core Eighth Amendment cause of action (Count I), the court held: "The Inmates who filed this lawsuit have failed to prove the essential element required that there exists an available alternative. On this basis alone, by United States law, this lawsuit must be dismissed." *Abdur'Rahman,* Vol. XVI, p. 2232; *see also, id*. at Vol. XVI, pp. 2239, 2250, 2264.

Four days later, on July 29, 2018, the Irick/Zagorski Group filed their notice of appeal. Miller, Sutton, and West did not join them. On August 13, 2018, the Tennessee Supreme Court set a briefing schedule for the Irick/Zagorski Group. Two weeks later, on August 27, 2018, the Tennessee Supreme Court added Miller, Sutton, and West to the same briefing schedule. On appeal, as they had below, the Irick/Zagorski Group, at Page 33 of their initial brief, stated they did not object to the Chancery Court's order amending their pleading to include causes of action arising from July 5, 2018 Protocol and added they did not join in Miller, Sutton and West's motion to reconsider that order. Pl.-Appellants Br. [Irick/Zagorski Group], p. 33, *Abdur'Rahman* appeal, *supra*, (Tenn. Sept. 6, 2018).

---

to add additional claims against the January 8, 2018 Protocol would have been a decision on the merits for res judicata purposes, had Plaintiffs attempted to raise claims arising out of the January 8, 2018 protocol in this action. *See, e.g.¸Prof'l Mgmt. Assocs., Inc. v. KPMG LLP,* 345 F.3d 1030, 1032 (8th Cir. 2003). Plaintiffs do, however, submit the Chancery Court's order did not explicitly or implicitly convert, or even purport to convert, these Plaintiffs' claims arising out of the January 8, 2018 Protocol they raised in *Abdur'Rahman* into claims arising out of the July 5, 2018 Protocol such as they raise here.

17

In contrast, Miller, Sutton, and West's brief set out in its jurisdictional statement that they were challenging the January 8, 2018 Protocol. Pl.-Appellants Br. [Miller/Sutton/West], p. 1, *Abdur'Rahman* appeal, *supra*, (Tenn. Sept. 6, 2018), filed as an attachment in *Miller, et al. v. Parker, et al.*, No. 3:18-cv-781 (M.D. Tenn. Oct. 4, 2018), Doc. 18-4, PageID# 1093. They also stated, at Page 31 of their Brief, that the grounds for their action arose on January 8, 2018. *Id.*, PageID# 1123. Moreover, their brief cited to the January 8, 2018 protocol 74 times (referencing Protocol A of the January 8, 2018 Protocol 45 times and Protocol B 29 times). *Id. in passim*. Moreover, in their answer brief, Defendants never once claimed these Plaintiffs' had challenged the July 5, 2018 protocol. Indeed, when responding to these Plaintiffs' brief on appeal, Defendants defended not the July 5, 2018 protocol but Protocol B of the January 8, 2018 protocol. Appellees Br., pp. 58-59, *Abdur'Rahman* appeal*, supra,* (Tenn. Sept. 21, 2018).

The fact that Miller, Sutton, and West rose only claims arising from the January 8, 2018 protocol dictates that res judicata does not bar consideration of Count Three. The transactional standard bars only claims arising from the same transaction or event. *Creech,* 281 S.W.3d at 379-80. Further, it should be noted here that adherence to that rule here to "balance the doctrine's benefits of efficient proceedings and finality and consistency of judgments with the dangers of unduly limiting the rights of litigants to have all of their claims heard on merits." *Id.*at 381. Little doubt remains but that Tennessee's three-drug, Midazolam-based protocol creates a constitutionally-intolerable risk of severe and unnecessary pain, *see*

18

Motion for Temporary Restraining Order (After Notice) and/or Preliminary Injunction, Doc. 7, PageID# 1346-47, 1363-76 (summarizing the expert testimony credited by the trial court in *Abdur'Rahman*). Because the doctrine bars only prior parties and their privies, *see Creech*, 281 S.W.3d at 376, every Tennessee death row inmate who was not a party to *Abdur'Rahman* would be free to assert alternative methods of execution (including those asserted by these Plaintiffs) not considered by the court in *Abdur'Rahman*. Each of the alternatives are either patently less painful or have been so found by other courts. Accordingly, should the Court not follow the rule from *Creech*, Defendants will carry out Plaintiff Miller's sentence of death in clear violation of the Eighth Amendment <u>and</u> they will do so not because the truth is otherwise, and not because there is any substantial likelihood the next Tennessee inmate with the opportunity to challenge the July 5, 2018 Protocol will not prevail, but because Miller was denied the opportunity here.

### B. As-Applied Challenge

Count Three raises an Eighth Amendment claim to the July 5th Protocol as actually applied and as applied to Plaintiffs. Allegations in the complaint establish that aspects of, and deviations from, Tennessee's July 5th Protocol—as applied— increase the risk of harm.[12] *See e.g.* Complaint, Doc. 1, PageID# 47, ¶230; PageID# 50, ¶¶237-239; PageID# 93, ¶¶453-458; PageID# 110-116. The complaint further alleges that Plaintiff Miller's individual physical and medical characteristics

---

[12] Requests for information directly related to concerns raised in the complaint remain outstanding.

19

increase the already substantial risk of unnecessary and serious pain caused the midazolam-based three-drug protocol. *See e.g.* Complaint, Doc. 1 PageID# 93-110, ¶¶459-550. Injunctive relief based on this count was denied because evidence of individual characteristics had not been provided to the Court nor did the complaint or motion for injunctive relief cite authority for as-applied method of execution challenges.

### 1.     Plaintiff Miller's Individual Characteristics

An expert is currently preparing a report on about Miller's medical and mental health conditions and how they increase the risk of serious pain and suffering under the midazolam-based three-drug lethal injection protocol.[13] The expert report will be filed with the Court as soon as it is received.

### 2.     As-Applied Method of Execution Challenges

An inmate's as-applied challenge to a method of execution contends that even if a protocol does not violate his fellow inmates' Eighth Amendment rights, it violates his Eighth Amendment rights because his specific medical conditions create a risk that the execution protocol will affect him differently than an average healthy inmate and will cause him severe pain. *Jones v. Kelley*, 854 F.3d 1009, 1012 (8th Cir. 2017). The two-part standard of *Glossip v. Gross,* 135 S. Ct. 2726, 2737 (2015) (*citing Baze v. Rees*, 553 U.S. 35, 52 (2008)), that governs facial challenges to a

---

[13] Attached is a medication administration record maintained by the prison that sets forth Miller's prescriptions and conditions. Attachment H.

method of execution also governs as-applied challenges. *Bucklew v. Precythe*, 883
F.3d 1087, 1091 (8th Cir.), *cert. granted*, 138 S. Ct. 1706 (2018).[14]

Courts have granted stays of execution pending the determination of an as-
applied claim. In *Bucklew v. Precythe*, No. 17-8151, the United States Supreme
Court entered a stay of execution and will determine the merits of an inmate's
*challenge* to Missouri's one-drug lethal injection protocol as-applied to him. *See also
Johnson v. Precythe*, 901 F.3d 973, 981 (8th Cir. 2018) (reversing dismissal of an as-
applied claim); *Siebert v. Allen*, 506 F.3d 1047, 1048 (11th Cir. 2007) (the district
court erred in refusing to stay an execution pending the court's final disposition of
an as-applied claim).

## III.  Count Two

Plaintiffs allege that Tennessee's Electrocution Protocol violates the Eighth
Amendment prohibition against cruel and unusual punishment. An injunction was
denied on the basis of ripeness. Order, Doc. 20 PageID# 1700-01. The order denying
an injunction should be reconsidered based new circumstances.

Defendants must reveal to Miller on November 21st how they intend to
execute him. If defendants reveal they will use the electric chair, Miller has a

---

[14] In *Bucklew*, the Eighth Circuit declined to address the complicated issues of claim
preclusion and the statute of limitations. *Bucklew v. Precythe*, 883 F.3d 1087, 1099
n.2 (8th Cir.), *cert. granted*, 138 S. Ct. 1706 (2018); *Bucklew v. Lombardi*, 783 F.3d
1120, 1122 n.1 (8th Cir. 2015) (en banc) (noting the inmate filed an as-applied
challenge after a facial challenge).

constitutional right to be heard on his Eighth Amendment claim against electrocution.

Information recently learned by Plaintiffs indicates Defendants likely will use the electric chair, not a lethal injection, to execute Miller. Defendants do not have an inventory of lethal injection drugs.[15] In addition, after the time that Defendants could have received compounded drugs for the execution of Edmund Zagorski, a news report was published about a compounding pharmacy that appears to be Defendants' drug source. The news reporter contacted the pharmacy and its majority owner repeatedly for comment. Now that the pharmacy and its majority owner knows it has been connected to executions in Tennessee, it is unlikely they will continue to supply Defendants with drugs for executions. Thus, Plaintiffs reasonably believe that Defendants currently do not have a supplier of midazolam, vecuronium bromide, and/or potassium chloride. Without a supply of drugs necessary to carry out the midazolam-based three-drug protocol, Defendants will utilize the electrocution protocol for Miller's executions.

The order denying preliminary injunctive relief also cites a nineteenth century decision from the Supreme Court that held New York State's death penalty

---

[15] Tennessee's lethal injection protocol requires an inventory or record of drugs in a permanently bound ledger. Lethal Injection Protocol 7/5/2018, Doc.1-5, PageID# 411. In response to a public records request that included copies of the drug inventory, General Counsel for TDOC states: "There are no responsive records/documents in TDOC's possession[.]" Letter from Ms. Inglis, Attachment E_. There has been no response to an additional public records request seeking records related to the drugs intended for use in the execution of Plaintiff Miller. TPRA request, Attachment C.

22

law providing for electrocution did not violate the Eighth Amendment. *In re Kemmler*, 136 U.S. 436, 449 (1890). *Kemmler* was decided 11 years after Thomas Edison invented a lightbulb that would burn for 40 hours, and a time when the Eighth Amendment was not incorporated to the States and there had not been one execution using an electric chair.[16] As of 1977, there have been 12 executions by electrocution and Death by electrocution has been declared a cruel and unusual punishment in Nebraska and Georgia. *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008); *Dawson v. State*, 554 S.E.2d 137 (Ga. 2001). The issue has evaded Supreme Court review due to states changing their execution protocols from electrocution to lethal injection. *See e.g.*, *Bryan v. Moore*, 528 U.S. 960 (1999), *cert. dismissed as improvidently granted*, 528 U.S. 1133 (2000).

In addition, the order denying an injunction should be reconsidered because each case turns on its own facts and Plaintiffs will present evidence on this claim that is substantially different than the facts considered almost 130 years ago in *In re Kemmler. See Ohio Bell Tel. Co. v. Pub. Utils. Com.*, 301 U.S. 292, 300 (1937).

## IV. Count One

Plaintiffs allege execution by lethal injection as required under the July 5th Protocol constitutes more prolonged and/or severe pain and suffering than execution by electrocution, the maximum punishment at the time of the crimes to be inflicted upon Plaintiffs. Complaint, Doc. 1, PageID# 21-26. Injunctive relief based on this

---

[16] *See also* Deborah W. Denno, *Adieu to Electrocution*, 26 Ohio N.U. L. Rev. 649, 668-72 (2000) (discussing the inappropriate precedential impact of *In re Kemmler*).

Count was denied for the reason that, unlike Edmund Zagorski who was executed on November 1, 2018, Plaintiff Miller has not selected a method of execution nor have Defendants refused to honor Miller's selection. Order, Doc. 20 PageID# 1700. The order denying relief should be reconsidered because the complaint presents serious questions going to the merit of his *ex post facto* claim. The complaint alleges facts demonstrating that both methods of execution in Tennessee are unconstitutional. It presents uncontested facts establishing the elements of this Count: that Miller is disadvantage by the current and presumptive execution method—lethal injection under the July 5th Protocol—because it will inflict greater punishment than electrocution, which is the maximum, allowable sentence at the time of the crime. Miller need not select an execution method and the Defendants need not refuse to honor Miller's selection in order to demonstrate a likelihood of success on the merit of the *ex post facto* claim. As recognized by the Court in *Zagorski v. Haslam*, No. 3:18-CV-01035, 2018 WL 4931939, at *4 (M.D. Tenn. Oct. 11, 2018), "There are serious questions . . . concerning whether the lethal injection protocol with which the state intends to execute the plaintiff is more or less humane than electrocution." For these reasons, the Order should be reconsidered and an injunction should be granted.

## CONCLUSION

WHEREFORE Plaintiff Miller prays this Court set this matter for hearing and thereafter enter a preliminary injunction enjoining Defendants, their agents, and assigns from presenting Plaintiff Miller with the "Affidavit Concerning Method

24

of Execution" contained in Tennessee's July 5, 2018 Lethal Injection Protocol and

from carrying out the execution of Plaintiff David Earl Miller presently set for the

6th day of December, 2018, until such time as a final order has been entered herein.

                Respectfully submitted,

                FEDERAL DEFENDER SERVICES
                OF EASTERN TENNESSEE, INC.

BY:    s/Stephen M. Kissinger
        Stephen M. Kissinger, BPR#037082
        Asst. Federal Community Defender
        800 S. Gay Street, Suite 2400
        Knoxville, TN 37929
        Phone: (865) 637-7979
        Facsimile: (865) 637-7999
        Stephen_Kissinger@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2018, this Memorandum in Support of Motion to Reconsider Order on Motion for Temporary Restraining Order and/or Preliminary Injunction was filed electronically via the Court's electronic filing system upon the following person. Parties may access this filing through the Court's electronic filing system.

Scott C. Sutherland
Assistant Attorney General
Law Enforcement Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-2164
Scott.Sutherland@ag.tn.gov

Jennifer L. Smith
Tennessee Attorney General's Office
P. O. Box 20207
Nashville, TN 37202
(615) 741-3491
Email: jennifer.smith@ag.tn.gov

Robert W. Mitchell
Tennessee Attorney General's Office
P. O. Box 20207
Nashville, TN 37202-0207
(615) 741-3491
Fax: (615) 532-6023
Email: robert.mitchell@ag.tn.gov

s/Stephen M. Kissinger
Stephen M. Kissinger