# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DAVID EARL MILLER, et al., | ) |
|     Plaintiffs, | ) **CAPITAL CASE** |
| | ) |
| | ) No. 3:18-cv-01234 |
| v. | ) Judge Campbell |
| | ) |
| TONY PARKER, et al., | ) *Execution date Dec. 6, 2018* |
| | ) *for David Miller* |
|     Defendants. | ) |

**EMERGENCY MOTION FOR ORDER FOR IMMEDIATE DISCLOSURE OF INFORMATION ON THE METHOD OF EXECUTION THAT WILL BE USED FOR THE DECEMBER 6TH EXECUTION DATE AND MOTION FOR A THREE-DAY EXTENSION OF THE NOVEMBER 26TH 5:00 P.M. DEADLINE FOR THE AFFIDAVIT CONCERNING EXECUTION METHOD**

Plaintiffs, in particular David Earl Miller, by and through counsel, move for an order (1) requiring Defendants to immediately disclose information on the method of execution that will be used for his execution scheduled on December 6, 2018, and (2) granting a three-day extension of the November 26, 2018 effective date for the Affidavit Concerning Execution Method. Defendants have agreed to extend the effective date of that form to November 26, 2018, however, they have withheld information of the relevant circumstances critical to any informed decision-making process. This relief is requested so that Mr. Miller can make an informed—even if coerced—election of a method for his scheduled execution.[1]

---

[1] The principle that waivers of constitutional rights must be knowing and intelligent (as well as voluntary) is fundamental and beyond debate. *See, e.g.*, *United States v. Bousley*, 523 U.S. 614 (1998); *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Brookhart v. Janis*, 384

Defendants are required to notify Mr. Miller of the method that will be used to carry out his execution (Order, Doc. 24-7) and, today, Defendants represent they will utilize the July 5, 2018 Protocol and "a three-drug combination consisting of Midazolam, Vecuronium Bromide, and Potassium Chloride." Letter dated 11/21/18 from Mays to Kissinger, Attachment 1. Defendants fail to specify whether each drug is compounded or manufactured despite the fact that the July 5th Protocol contains a procedure for each type of drug. *See* Complaint, Doc.1 PageID# 16-17, ¶¶53-56; July 5th Protocol Doc.1-5 PageID# 409-420. Defendants have not provided other information requested about the protocol that will be applied to Mr. Miller. *See* Letters, Doc.24-5 PageID# 1752-1754 (9/14/18); PageID# 1751 (9/24/18); Doc.24-1 (11/8/18); Doc.24-2 (11/9/18).

1.  **Information related to the method of execution**

As this Court has recognized, "[t]here are serious questions ... concerning whether the lethal injection protocol with which the state intends to execute the plaintiff is more or less humane than electrocution." *Zagorski v. Haslam*, No. 3:18-cv-01035, 2018 WL 4931939, at *4 (M.D. Tenn. Oct. 11, 2018). The instant lawsuit contends that execution by the July 5, 2018 lethal injection protocol will violate the ex post facto clause of the Constitution and the Eighth and Fourteenth Amendments, and that execution by electrocution will violate the Eighth Amendment. It alleges these violations in conjunction with Defendants' deviations from the Protocols and as each applies to Mr. Miller.

---

U.S. 1, 7-8 (1966); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).

The July 5th Protocol provides that Mr. Miller will be executed under the midazolam-based three-drug protocol that constitutes an ex post facto punishment unless he completes the Affidavit Concerning Execution Method and elects death by electrocution. Both recent executions deviated from the execution protocols. There are indications that both executed inmates experienced unnecessary and severe pain. In order for Mr. Miller to knowingly and intelligently opt for the execution method that will inflict the least amount of pain and suffering, he must be fairly informed about how each method of execution will be applied to him. In other words, Mr. Miller requires information about the July 5th Protocol as implemented by Defendants for the first time during the execution of Mr. Irick on August 9, 2018, and how it will be applied to him, as well as, information about the electrocution of Mr. Zagorski on November 1, 2018. *See* Motion to reconsider, Doc.24 PageID# 1721-1722, 1726-1727.

### A. Lethal injection as applied by Defendants and as intended to be applied to Mr. Miller.

Mr. Miller believes it to be true, and Defendants have not disputed, that execution under the midazolam-based three-drug lethal injection protocol inflicts serious and unnecessary pain and suffering for at least 10 minutes and as long as 20 minutes, as occurred during the August 9, 2018 execution of Mr. Irick. Factors involved in the application of the July 5th Protocol to Mr. Irick increased the substantial risk of constitutionally intolerable pain and/or will increase the risk during Mr. Miller's execution. *See, e.g.*, Complaint, Doc.1 PageID# 50, ¶¶237-239 (risks posed by the compounding pharmacy); PageID# 99, ¶¶488-489, 491 (risks

3

posed by executioners untrained in compounded injectibles); PageID# 100, ¶¶493-498, PageID# 105-106, ¶¶525-530, PageID# 111-114, ¶¶562-574 (risks posed by compounded midazolam). Whether those factors will exist under the protocol as applied to Mr. Miller is a significant factor for Mr. Miller's selection of a method of execution. Accordingly, Mr. Miller requests the Court order Defendants to immediately produce the following information (with proper names redacted):

- (a) Identify the drugs that will be used for Mr. Miller's execution that are manufactured and the drugs that are compounded.

- (b) Photographs of the drugs to be used for Mr. Miller's execution that depict each drugs' identity, concentration, expiration date and/or beyond use date.

- (c) Copies of the permanently bound ledger containing an inventory or record of the lethal injection drugs from January 1, 2018, to the present.[2]

- (d) Results of independent testing for potency, sterility, and endotoxins of execution drugs that (1) will be used for Mr. Miller's execution, and (2) were used for the execution of Billy Ray Irick on August 9, 2018.[3]

- (e) Licensing and credentials of any pharmacy, pharmacist and drug supplier that provide drugs for use in Mr. Miller's execution. This request includes documentation that the drugs are compounded in a clean sterile environment in compliance with pharmaceutical

---

[2] *See* July 5th Protocol, Doc.1-5 PageID# 411.
[3] *See* July 5th Protocol, Doc.1-5 PageID# 410.

4

standards for identity, strength, quality, and purity of the compounded drug that are consistent with the USP guidelines and accreditation Departments and licensing regulations applicable to pharmacies compounding sterile preparations.[4]

(f) Any disciplinary actions and disciplinary records of any pharmacy, pharmacist and drug supplier that provides drugs for use in Mr. Miller's execution.

(g) Documents or records pertaining to the preparation and training of personnel to carry out Mr. Miller's execution, including the personnel and/or criminal history records of all such persons.

**B. Electrocution as applied by Defendants and as intended to be applied to Mr. Miller**

Mr. Miller believes it to be true, and courts have found, that execution by electrocution constitutes cruel and unusual punishment because it creates a constitutionally-unacceptable risk of unnecessary and serious pain and suffering and mutilation and violates evolving standards of decency. *See* Complaint, Doc.1 PageID# 26-67. The duration of electrocution versus lethal injection (the default method), however, is a significant factor for Mr. Miller's selection of a method of execution. The two protocols—on their face—call for significantly different lengths of time before death is pronounced.[5] There is, however, a time discrepancy between

---

[4] *See* July 5th Protocol, Doc.1-5 PageID# 410, 469-474.
[5] For example, Edmond Zagorski selected the electric chair.
> He did so not because he thought that it was a humane way to die, but because he thought that the three-drug cocktail that Tennessee had planned to use was even worse. Given what most people think of the

5

the lengths of time of Mr. Zagorski's electric chair execution that occurred 20 days ago and the time set forth in Tennessee's protocol for an execution by electrocution. Miller's selection is substantially impacted if the duration of each execution procedure that would be applied to him is comparable. Defendants have withheld information regarding Mr. Zagorski's execution (Doc.24-1; Doc.24-2) and the medical examiner has yet to disclose information pursuant to a public records act request (Doc.24-3). Accordingly, Mr. Miller requests the Court order Defendants to immediately produce the following information:

(a) Chronological Execution Report completed for the execution of Edmund Zagorski on November 1, 2018.[6]

(b) Day of Execution - Electrocution Execution Recorder Checklist completed for the execution of Edmund Zagorski on November 1, 2018.[7]

(c) Photographs of the body of Edmund Zagorski and Execution Chamber prior to removal of the body and photographs taken by the medical examiner.[8]

---

electric chair, it is hard to imagine a more striking testament—from a person with more at stake—to the legitimate fears raised by the lethal-injection drugs that Tennessee uses. See *id.*, at ——, —— S.Ct., at ——, 2018 WL 4900813 (slip op., at 1) (noting "mounting evidence that the sedative to be used, midazolam, will not prevent the prisoner from feeling as if he is 'drowning, suffocating, and being burned alive from the inside out' during a process that could last as long as 18 minutes").

*Zagorski v. Haslam*, No. 18-6530, 2018 WL 5723917, at *1 (Nov. 1, 2018) (Sotomayor, J., dissenting from denial of stay application).

[6] *See* Electrocution Protocol, Doc.1-2 PageID# 212
[7] *See* Electrocution Protocol, Doc.1-2 PageID# 213-215
[8] *See* Electrocution Protocol, Doc.1-2 PageID# 214

6

(d) All documents or records pertaining to the preparation and training of personnel to carry out any electrocution in Tennessee, including the personnel and/or criminal history records of all such persons involved in any electrocution.

(e) All documents or records pertaining to any correspondence, telephone call, e-mail, discussion, analysis, or meeting between any employee of the Department of Correction and any other person concerning the electrocution protocol and the testing and/or modification of equipment.

**2. Information related to the coerced waiver of constitutional rights**

In addition to the information requested above, it is important for Mr. Miller to know whether Defendants actually have the drugs required under the July 5th Protocol for his execution before he elects between the two unconstitutional methods. Although Defendants stated in a separate filing that the lethal injection "ingredients are available," (Response, Doc.27 PageID# 1774) they have provided no support for that statement and no proof that they possess drugs for Mr. Miller's scheduled execution. To the contrary, all known information indicates Defendants do not have one or more drugs required to carry-out the July 5th Protocol and/or may use at least one drug with an expired beyond-use date.

**A. There is no proof that Defendants can carry-out the July 5th Protocol as written**

Both the July 5th Protocol and the Pharmacy Services Agreement require Defendants to maintain an inventory of compounded and manufactured lethal

7

injection drugs, including beyond-use dates and lot number or other identifying marking. (Doc.1-5 PageID# 410-413, 470). The protocol requires monitoring of the drugs for expiration dates and disposal "[a]s the LIC reaches its expiration date," (Doc.1-5 PageID# 410), nevertheless, Defendant Mays testified that expired drugs have remained in the storage facility. Doc.1-42; *see also* Complaint, Doc.1 PageID# 112, ¶563. Despite specific provisions in the Protocol to document the possession, retrieval, return, use, and disposal of lethal injection drugs, General Counsel for TDOC states there are no such records. (Letters, Doc.24-5, PageID# 1751-1754). General Counsel has repeatedly indicated that Defendants do not have an inventory of lethal injection drugs and/or the drugs that will be used for Mr. Miller's execution. (Letters, Doc.24-1; Doc.24-2). Without such proof, Defendants' representation that they intend to execute Mr. Miller using the July 5th Protocol while at the same time failing to indicate that they have the required drugs rings hollow. Defendants' "notice" fails to adequately inform Mr. Miller for purposes of an intelligent election on the Affidavit Concerning Execution Method.[9]

In addition, after the time that Defendants could have received compounded drugs for the execution of Edmund Zagorski, a news report was published about a compounding pharmacy that appears to be Defendants' drug source. Article, Attachment 2. The news reporter repeatedly contacted the pharmacy and its majority owner for comment. Now that the pharmacy and its majority owner know they have been connected to executions in Tennessee, it is unlikely they will

---

[9] In this context, any waiver obtained through deceit or obfuscation is invalid.

continue to supply Defendants with drugs for executions.

This is the information about lethal injection drugs currently known to Mr. Miller. If Defendants do not have drugs then they will have to use electrocution for Mr. Miller's execution and, in that event, there is no question Mr. Miller can challenge the constitutionality of electrocution. This information is therefore critical to an informed and intelligent decision by Mr. Miller. Defendants should be ordered to immediately disclose proof establishing they have and/or will have midazolam, vecuronium bromide, and/or potassium chloride for his scheduled execution and whether each drug will be compounded or manufactured.

### B. Defendants may use expired and degraded drugs to carry-out Mr. Miller's execution by lethal injection

The July 5th Protocol is cabined by USP <797>[10] which establishes that the use of a high-risk compounded drug (such as midazolam) is limited to (i.e., "cannot exceed") the following time periods: 45 days when the drug is maintained at a frozen temperature, 3 days when the drug is maintained at a cold temperature, and 24 hours when the drug is maintained at controlled room temperature. Compounded drugs stored for longer periods of time will become compromised vis-à-vis potency, quality and purity.

The July 5th Protocol directs Defendants to store compounded lethal injection drugs "in an unmovable heavy gauge steel container." (July 5th Protocol, Doc.1-5 PageID# 410). Drugs stored in that manner must be used no later than 24 hours

---

[10] *See* July 5th Protocol, Doc.1-5 PageID# 412, 419-420, 469-474 (requiring compliance with USP <797>).

after they are prepared.

Before August 9, 2018, the date Mr. Irick was executed by lethal injection, Defendants received enough compounded midazolam for two executions. Defendants obtained for the execution of Mr. Irick eight vials of compounded midazolam "50 mg/ml x 5 mL," or 2,000 mg.[11] Prescription 7/18/18, Attachment 3. The protocol requires 1,000 mg of midazolam; 500 mg is prepared for administration as the first drug in the protocol and 500 mg is prepared for the contingency set of drug syringes. Doc.1-5 PageID# 414-415. Because the protocol requires 1,000 mg of midazolam, only that amount would have been removed from storage for Mr. Irick's execution. The contingency dose of midazolam was not prepared for Mr. Irick's execution, (Doc.1-11, PageID# 550; PageID# 548) therefore, 500 mg of compounded midazolam would have been returned to storage and 1,500 mg of expired compounded midazolam is likely in Defendants' possession.[12] Under the most conservative calculation (based on Defendants' receipt of the drug the day before Irick's execution) the midazolam would be 119 days past its beyond-use date.

There is an increased risk of harm under the July 5th Protocol if drugs are used that are past their beyond-use date or expired because they will have

---

[11] This is a deviation from the protocol and a violation of the Pharmacy Services Agreement which states: "Quantities of the compounded preparation shall be limited to an amount that does not exceed the amount the Department anticipates may be used ... before the expiration date of the compounded preparation[.]" July 5th Protocol, Doc.1-5 PageID# 469; PageID# 411 ("The LIC is used only for the execution of the inmate for whom it was ordered.").

[12] The July 5th Protocol requires the return of unused drugs to storage and they are re-entered on the perpetual inventory ledger. (Doc.1-5 PageID# 413).

diminished potency.[13] Due to his individual characteristics, Mr. Miller is at increased risk for experiencing extreme panic and paradoxical effect. *See* Complaint, Doc.1 PageID# 108-110, ¶¶539-550; PageID# 115-116, ¶¶578-583; Dr. Zivot declaration, Attachment 4. Compounded midazolam that is four months old and stored at uncontrolled room temperature will have a decreased sedative effect and, if it is used for Mr. Miller's execution, will result in greater harm and suffering. Whether Defendants will use compounded midazolam that is past its beyond-use date is important to any informed election by Mr. Miller of an execution method.

Defendants have not revealed information regarding vecuronium bromide and potassium chloride that was ordered for Mr. Irick's execution, or that was ordered for Mr. Miller's scheduled execution. Accordingly, Mr. Miller requests that the Court order Defendants to immediately produce proof that they possess the drugs—drugs that are not expired or past the beyond-use date—required to carry-out his scheduled execution.

**3. Mr. Miller requires a short extension of the November 26th 5:00 p.m. deadline for the Affidavit Concerning Execution Method to review the facts before he completes the Affidavit.**

Providing that Defendants are ordered to immediately disclose the information required by Mr. Miller, undersigned counsel reasonably believes that a short three-day extension of the November 26th deadline will provide the time required to present and discuss the information with Mr. Miller.

---

[13] Relatedly, the complaint alleges increased risks of harm due to improper transportation or storage conditions of compounded drugs and drug monitoring. *See, e.g.*, Doc.1 PageID# 111-114, ¶¶562-574.

11

WHEREFORE, Plaintiff Miller respectfully requests an order (1) requiring Defendants to immediately disclose information on the method of execution that will be used for his execution scheduled on December 6, 2018, and (2) granting a three-day extension, up to November 29, 2018 at 5:00 p.m., the effective date for the Affidavit Concerning Execution Method.

                                          Respectfully submitted,

                                          FEDERAL DEFENDER SERVICES
                                          OF EASTERN TENNESSEE, INC.

BY:    s/Stephen M. Kissinger
           Stephen M. Kissinger, BPR # 037082
           Asst. Federal Community Defender
           800 S. Gay Street, Suite 2400
           Knoxville, TN 37929
           Phone: (865) 637-7979
           Facsimile: (865) 637-7999
           Stephen_Kissinger@fd.org

           *Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

      I hereby certify that on November 21, 2018, this Emergency Motion for Order for Immediate Disclosure of Information on the Method of Execution that will be used for the December 6th Execution Date and Motion for a Three-Day Extension of the November 26th 5:00 p.m. Deadline for the Affidavit Concerning Execution Method was filed electronically via the Court's electronic filing system upon the following person. Parties may access this filing through the Court's electronic filing system.

      Scott C. Sutherland
      Deputy Attorney General
      Law Enforcement Division
      P.O. Box 20207
      Nashville, TN 37202
      (615) 741-2164
      Scott.Sutherland@ag.tn.gov

      Jennifer L. Smith
      Associate Solicitor General
      P.O. Box 20207
      Nashville, TN 37202
      (615) 741-3491
      Jennifer.Smith@ag.tn.gov

      Robert W. Mitchell
      Assistant Attorney General
      P.O. Box 20207
      Nashville, TN 37202
      (615) 532-7688
      Fax: (615) 532-3926
      Robert.Mitchell@ag.tn.gov

      s/Stephen M. Kissinger
      Stephen M. Kissinger