IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| DAVID EARL MILLER, et al., | ) | |
| | ) | CAPITAL CASE |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-01234 |
| | ) | JUDGE CAMPBELL |
| TONY PARKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

___

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' "EMERGENCY MOTION" FOR DISCLOSURE OF INFORMATION ON METHOD OF EXECUTION
___

David Miller has filed an "emergency" motion seeking "immediate disclosure" of information regarding the method the State of Tennessee will use to carry out his death sentence on December 6, 2018. Doc. No. 31. He claims that the requested information is necessary for him to make an "informed" decision about his method of execution. But his request is based on the erroneous assumptions that (1) he must make a choice regarding the method of his execution and (2) that the options available to him are unconstitutional. Both assumptions are demonstrably false. And Defendants have provided Miller with everything the law requires concerning the manner in which Defendants will carry out his death sentence. To the extent Miller challenges the adequacy of the Warden's November 21 notice, Doc. No. 31-1—which was provided to him solely pursuant to the July 10, 2018 order of the Tennessee Supreme Court, Doc. No. 24-7—his complaints are properly addressed to the State Supreme Court, not this Court. Moreover, Miller's purported as-applied claim related to Tennessee's lethal injection protocol has no basis in law or fact and is, in any event, barred by res judicata.

*First.* Miller is not being forced to make any choice—or take any action whatsoever—related to the method of his execution. Under Tennessee law, "[f]or any person who commits an offense for which the person is sentenced to the punishment of death, the method for carrying out this sentence *shall be by lethal injection*." Tenn. Code Ann. § 40-23-114(a) (emphasis added). Persons like Miller, who were sentenced to death for offenses committed before January 1, 1999, *may elect* to be executed by electrocution by signing a written waiver of the right to be executed by lethal injection. Tenn. Code Ann. § 40-23-114(b). But the statute is absolutely clear that Miller will be executed by lethal injection *unless* he chooses electrocution as the method of his execution.

*Second.* Both methods of execution available to Miller are constitutional. Because Miller was sentenced to death for first-degree murder committed before January 1, 1999, Tenn. Code Ann. § 40-23-114(b) permits him to choose between lethal injection or electrocution. The Tennessee Supreme Court specifically upheld the State's midazolam-based lethal injection protocol in *Abu-Ali Abdur'Rahman et al. v. Parker et al.*, No. M2018-01385-SC-RDO-CV, 2018 WL 4858002 (Tenn. Oct. 8, 2018), *cert. denied sub nom.*, *Zagorski v. Parker*, *et al.,* No. 18-6238 (18A376), 2018 WL 4900813 (U.S., Oct. 11, 2018). The United States Supreme Court denied a petition for writ of certiorari challenging that decision, and it has twice denied stays of execution for inmates facing execution under that protocol. *Id.*, *Irick v. Tennessee*, No. 18A142, 2018 WL 3767151 (U.S., Aug. 9, 2018). In summarily dismissing a similar "coercion" claim in *Zagorski v. Haslam, et al.*, No. 3:18-cv-01205 (M.D.Tenn.) (Order, Doc. No. 15), the district court observed that, to prevail on that claim would require the plaintiff to prove "the very opposite of what the Tennessee Supreme Court has already ruled," i.e., that Tennessee's lethal injection protocol is unconstitutional. *Id.*, Doc. No. 15, at 2-3.

2

Challenges to the same protocol have been rejected by *every court* that has considered it, including the United States Supreme Court and the Sixth Circuit. *See Glossip*, 135 S.Ct. 2726, 2739-40 (2015) (listing case citations). *See also In re: Ohio Execution Protocol*, 860 F.3d 881 (6th Cir.), *cert. denied*, 137 S.Ct. 2238 (2017) (reversing order enjoining three-drug protocol using midazolam: "[Ohio's] chosen procedure here is the same procedure (so far as the combination of drugs is concerned) that the Supreme Court upheld in *Glossip*.").

The United States Supreme Court has also upheld the use of electrocution as a means of capital punishment. *In re Kemmler*, 136 U.S. 436 (1890) (affirming New York's imposition of electrocution as a means of capital punishment); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947). Indeed, the Supreme Court has "never invalidated a State's (or the Federal Government's) chosen method of execution." *Workman v. Bredesen*, 486 F.3d 896, 906 (6th Cir. 2007).

*Third*. Miller has been provided with all of the information concerning his method of execution that the law requires. In accordance with the July 10, 2018, order of the Tennessee Supreme Court, the Warden provided timely notice to Miller of the method that the Tennessee Department of Correction will use to carry out his death sentence on December 6, 2018, and specifically made clear that the Department will not be relying on the Capital Punishment Enforcement Act, Tenn. Code Ann. § 40-23-114(e).[1] Doc. No. 31-1. The Warden's notice specified that Miller's execution will be performed in accordance with the Department's Lethal

---

[1] The Capital Punishment Enforcement Act requires the use of electrocution as the method of execution if the Commissioner of Correction certifies to the Governor that he is unable to carry out the sentence because "one or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable." Tenn. Code Ann. § 40-23-114(e). The Commissioner has not made will not be making that certification with respect to carrying out Miller's death sentence on December 6, 2018.

3

Case 3:18-cv-01234 Document 33 Filed 11/23/18 Page 3 of 10 PageID #: 1912

Injection Manual, as amended on July 5, 2018. *Id*. The Department's Lethal Injection Manual provides that the lethal injection chemicals will be procured pursuant to physician's order, which will be submitted to a licensed pharmacy or pharmacist to be filled. Attachment 1, Lethal Injection Manual, at p. 35. The Manual provides safeguards for storage of the chemicals and monitoring of expiration dates. *Id*. The Pharmacy Services Agreement, which is incorporated in the Manual, requires that the Pharmacy shall dispense all drugs in accordance with applicable state and federal regulations and that any compounding of chemicals shall be consistent with United States Pharmacopoeia guidelines. *Id*., at 107-08. Miller also has access to the Department's Execution Procedures for Electrocution, which is available to him as a public record. *See, e.g.,* Complaint, Doc. No. 1-2.

But above and beyond these required notifications, the Defendants have attested to this Court that "the ingredients [for lethal injection] are available," and that Commissioner will *not* certify to the Governor that "one or more of the ingredients for carrying out a sentence of death by lethal injection is unavailable" so that the Department would be required to use electrocution as the method of execution. Doc. No, 27, at 2. The Defendants have further attested that they are "prepared and able to carry out Miller's death sentence by lethal injection" on December 6, 2018, unless he elects to be executed by electrocution. Doc. No. 27, at 3.

In light of these attestations, Miller's protest that there is "no proof" that the Defendants can carry out a lethal injection as required under the protocol is baseless. Emergency Motion, at 7. Miller's claim that both "recent executions deviated from the execution protocols," *id.,* at 3, PageID # 1891, is merely speculative. The best he can point to are unspecified and unsubstantiated "indications" that Irick and Zagorski suffered unnecessary and severe pain. *Id.* Not only are Miller's speculations baseless, they cannot overcome the legal presumption that public officials

4

will "discharge their duties in good faith and in accordance with the law." *West v. Schofield*, 460 S.W.3d 113, 131 (Tenn. 2015).

*Fourth*. The "emergency" disclosures that Miller seeks are unnecessary to support his "coercion" claim because that claim is meritless. This Court has already recognized that the Sixth Circuit rejected a nearly identical claim in *Zagorski v. Haslam, et al.*, 2018 WL 5734458 (6th Cir. Oct. 31, 2018), *cert. denied, Zagorski v. Haslam, et al.*, No. 18-6350 (U.S. Nov. 1, 2018). *See* Memorandum and Order, Doc. No. 20, at 9, Page ID# 1704. (Like Miller, Zagorski was one of the plaintiffs in the Davidson County Chancery Court litigation in which the court upheld the constitutionality of Tennessee's midazolam-based protocol.) Indeed, in a concurring opinion, Circuit Judge Cook described the inmate's claim that he had been "coerced and compelled" to choose between two unconstitutional methods of execution as "clearly baseless"— "Tennessee's lethal injection protocol comports with what the Supreme Court blessed as constitutional in *Glossip v. Gross*, 135 S. Ct. 2726, 2739-40 (2015). *See also In re Ohio Execution Protocol Litig.*, 881 F.3d 447, 449 (6th Cir. 2018). Thus, Zagorski could not have been forced to choose 'between two unconstitutional choices.'" *Zagorski*, 2018 WL 5734458, at *2. Nor can Miller be forced to do so, and his "coercion" claim is just as clearly baseless as was Zagorski's.

*Fifth*. To the extent that Miller's Emergency Motion is based on or made in furtherance of his purported as-applied challenge, it should be denied, since the as-applied challenge has no basis in law or fact and is, in any event, barred by res judicata. The plaintiffs in this action want to challenge the lethal injection protocol "as-applied" to them, based on "individual characteristics" that are alleged only "upon information and belief" and with very little specificity. Complaint, Doc. No. 1, Page ID# 93-96.

5

But as Defendants previously explained, res judicata bars the plaintiffs, including Miller, from challenging the constitutionality of Tennessee's midazolam-based three-drug protocol with respect to any issues which were or could have been raised in their earlier suit in the Tennessee courts. Response, Doc. No. 19, PageID# 1419-23. This principle applies to civil rights actions under section 1983 with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion). *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987). *See also Allen v. McCurry*, 449 U.S. 90, 98 (1980) (traditional preclusion doctrines apply to section 1983 actions). As this Court previously recognized, Miller does not allege in his Complaint that any of his medical conditions "were recently diagnosed," nor does he otherwise "explain why these claims could not have been brought" earlier, including during state court proceedings. Memorandum and Order, Doc. No. 20, at 8, Page ID #1703.

Furthermore, this Court has noted that the plaintiffs "have not offered any evidence or case-law to support" any as-applied claims. Memorandum and Order, Doc. No. 20, at 7, PageID # 1702. They generally allege individual medical conditions "ranging from obesity and diabetes to enlarged prostate, but they do not allege or provide evidence of actual diagnoses of their conditions or their severity, nor have they provided any evidence supporting their allegations about how those conditions would detrimentally affect them during lethal injection." *Id.*, at 7-8, PageID # 1702-03. The Court also noted that the plaintiffs offered no explanation of why their as-applied claims were not timely raised. *Id.*, at 8, PageID # 1703.

Apparently, Miller is now trying to cure this pleading-and-proof defect by attaching to his Emergency Motion the Declaration of Joel Zivot, MD, so as to then be positioned to use his as-applied claim as a ground to compel disclosure of detailed information to which he is otherwise

6

not entitled. The Court should countenance neither the attempt to re-plead the as-applied claim nor the attempt to compel disclosure based on a meritless claim.

To begin with, the Zivot Declaration is not notarized or otherwise properly attested to. But even if it were admissible or reliable evidence, it would not support Miller's as-applied challenge. Dr. Zivot's examination showed only that Miller is depressed, obese, and at high risk for sleep apnea—not that he currently suffers from sleep apnea. This risk of sleep apnea, according to Dr. Zivot, puts Miller "at high risk for partial airway obstruction during his lethal injection execution." In other words, there is no diagnosis of a condition that will detrimentally affect Miller during execution. There is only the risk of a condition—sleep apnea—that might lead to the risk of a detrimental effect—partial airway obstruction.

Thus, Dr. Zivot's opinion is not only unattested to, it is based on speculation and is not offered with any degree of medical certainty.[2] That is hardly surprising, since, as the Eighth Circuit Court of Appeals has pointed out, there is a paucity of reliable scientific evidence on the impact of the lethal-injection protocol on inmates presenting with morbid obesity, hypertension, or sleep apnea. *Williams v. Kelley*, 854 F.3d 998, 1000–01 (8th Cir. 2017).

But the mere possibility of some "isolated mishap" does not state a cognizable method-of-execution claim. *See Baze v. Rees*, 553 U.S. 35, 50 (2008) ("an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious

---

[2] Tennessee law, for example, requires that each element of a medical malpractice action be established by expert medical testimony, and that causation testimony from an expert be to "reasonable degree of medical certainty." *White v. Vanderbilt University*, 21 S.W.3d 215, 232 (Tenn. Ct. App. 1999). "Thus, if the doctor cannot testify as to cause in fact to a reasonable degree of medical certainty, his testimony is not admissible . . . ." *Bara v. Clarksville Mem. Health Sys.*, 104 S.W.3d 1, 10 (Tenn. Ct. App. 2002).

7

harm'"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 SCt. 1172 (2018) ("the possibility of 'botched executions' . . . is just the kind of 'isolated mishap' that is not cognizable via a method-of-execution claim").

In short, nothing in the Emergency Motion provides the otherwise non-existent support for Miller's allegation that his "individual characteristics" entitle him to maintain an as-applied challenge to the lethal injection protocol. Accordingly, to the extent that the Emergency Motion is premised on the as-applied challenge, it should be denied.

*Sixth.* Miller's demands for information should be denied because they are premised on unreasonable speculation and unfounded innuendo. Miller's litany of "indications" that the drugs are not available is total speculation, as is his conjecture that Defendants will use expired drugs. He imagines that the pharmacy he supposes to be the supplier of the drugs has been so intimidated by press inquiries that it is unlikely to be a continuing source of the drugs. Emergency Motion, at 8-9, PageID # 1896-97. This is, of course, sheer wishful thinking and totally ignores Defendants' attestations to this Court and to Miller that the Department has the drugs necessary to carry out Miller's death sentence in accordance with the protocol. The same holds true for Miller's unsupported supposition that Defendants "may use" expired or degraded drugs. And other than citations to bald allegations in the Complaint, Miller offers no substantiation for his assumption that the drugs will be incorrectly compounded or incorrectly administered.

None of these false and misleading claims justifies the disclosures Miller is asking for.

8

## CONCLUSION

WHEREFORE, this Court should deny Plaintiffs' Motion for Immediate Disclosure of Information.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


*/s/ Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
scott.sutherland@ag.tn.gov


*/s/ Rob Mitchell*
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-3926
robert.mitchell@ag.tn.gov

## CERTIFICATE OF SERVICE

I certify that, on the 23rd day of November 2018, a copy of the foregoing Response was filed and served by operation of the Court's ECF/PACER system on the following counsel for the Plaintiffs: Stephen M. Kissinger, Asst. Federal Community Defender, 800 S. Gay Street, Suite 2400, Knoxville, TN 37929.

*/s/ Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General