IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID EARL MILLER, ) <br> NICHOLAS TODD SUTTON, ) <br> STEPHEN MICHAEL WEST, ) <br> TERRY LYNN KING, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TONY PARKER, Commissioner, ) <br> Tennessee Department of Correction, ) <br> in his official capacity, ) <br> ) <br> and ) <br> ) <br> TONY MAYS, Warden, ) <br> Riverbend Maximum Security ) <br> Institution, in his official capacity, ) <br> ) <br> Defendants. ) | No. 3:18-cv-01234 <br> Judge Campbell <br> <br> Death Penalty Case <br> *Execution date Dec. 6, 2018* <br> *for David Miller* |

**REPLY TO RESPONSE TO EMERGENCY MOTION FOR ORDER
FOR IMMEDIATE DISCLOSURE OF INFORMATION ON THE METHOD
OF EXECUTION THAT WILL BE USED FOR DECEMBER 6TH
EXECUTION DATE AND MOTION FOR EXTENSION OF THE
NOVEMBER 26TH DEADLINE**

Defendants are scheduled to execute Plaintiff David Miller on December 6, 2018, yet they will not disclose how Tennessee's execution procedures will be applied to him. Miller has set forth the specific facts that indicate Defendants do not have drugs, or do not have unexpired drugs, to carry out his execution by lethal injection in accordance with the July 5th Protocol. Motion, Doc.31 PageID# 1895-1899. Under these circumstances, Miller will either be executed under a lethal injection procedure

{1}

that lacks not only an analgesic but also an effective sedative or he will be electrocuted. Miller has explained how Tennessee's protocol threatens him with severe and constitutionally-impermissible pain and suffering caused by the midazolam lethal injection protocol and thereby seeks to coerce him to waive his right to challenge electrocution. But for the threat of torture, Miller would not otherwise waive his Eighth Amendment rights, especially if Defendants will resort to electrocution because they lack the drugs for lethal injection.

Defendants attempt to downplay Miller's present situation by stating that the July 5th Protocol does not require Miller to take any action regarding the method used for his execution. Response, Doc.33 PageID# 1911. Miller's failure to act, however, has consequences under the protocol because it will default to the midazolam-based lethal injection protocol. Miller must decide whether to act or not and this "choice," or lack thereof, will have significant, real-life consequences for him. And yet, Defendants denigrate as "speculation" and "innuendo" Miller's allegations based on known facts in the record while simultaneously playing cat-and-mouse with the facts that only they can know.[1] *See e.g.*, Response, Doc.33 PageID# 1910, 1913, 1917.

---

[1] Defendants resort to hyperbole as a means of avoiding the issues before the Court. They argue Miller's as-applied claims are without a "basis in law or fact." To the contrary, Miller has set forth a factual record demonstrating that he is compelled to elect a method of execution but Defendants will not disclose information required for him to make a knowing decision. Doc.24-5 PageID# 1751 (statement of TDOC General Counsel: "There are no responsive records/documents"). Miller has explained how Defendants have deviated from their execution procedures during the two recent executions. Miller has demonstrated harm by pointing to facts signifying both Billy Irick and Edmund Zagorski experienced unnecessary and severe pain. He has


*Defendants will not deny* that they obtained a greater amount of compounded midazolam than was used for Mr. Irick's August 9th execution. *They will not deny* that they keep expired lethal injection drugs. *They will not deny* they will use expired or degraded drugs for Miller's execution. *They will not produce* a physician's prescription for the drugs intended for Miller's execution, records of any drug inventory, or any photographs of drugs intended for Miller's execution. Such documentation of the drugs intended for Miller—which is required by the protocol—is a matter of public record. Defendants' repeated and unjustified refusal to disclose this information raises serious questions and requires intervention by this Court.[2]

Defendant's response is notable for the two issues it ignores. First, the response fails to address Miller's claims arising from Defendants' recent applications of capital punishment to Irick and Zagorski and how that punishment will be applied to him. These claims were not asserted in the *Abdur'Rahman* case because the factual bases

---

asserted that Tennessee's execution protocol, as applied to him, will constitute cruel and unusual punishment. Finally, Miller provided authority for his claims. *See* Memorandum, Doc.24 PageID# 1735-1736.

[2] Defendants recite the general presumption that public officials act in good faith. Response, Doc.33 PageID# 1913-1914. This concept, however, does not counter Miller's prima facie showing of an ex post facto violation and coerced waiver claim. Moreover, courts have found Tennessee officials have acted with deliberate indifference with respect to execution methods. *Harbison v. Little*, 511 F.Supp.2d 872, 898 (M.D. Tenn. 2007), *vacating and remanding on other grounds* 571 F.3d 531 (6th Cir. 2009); Order, Doc.1-3 PageID# 226, 239 (holding Tennessee's sodium thiopental-based three-drug protocol constitutes cruel and unusual punishment because it causes death by suffocation while the prisoner is conscious). *See also* Complaint, Doc.1 PageID# 20 n.3 (listing Defendants' surprise changes to the execution protocol during litigation proceedings).

stem from subsequent events; the two recent executions.[3] These are as-applied claims and Miller must have knowledge of real-world facts to knowingly waive his constitutional rights. Accordingly, Defendants' references to written provisions in the lethal injection protocol cannot be determinative of Miller's as-applied claims. *See* Response, Doc. 33 PageID# 1913. Nor are the claims resolved by Defendants' general assertions that drugs "are available" or that they can carry out Miller's execution by lethal injection and electrocution. Doc. 27 PageID# 1774; Doc.33 PageID# 1913.

Second, Defendants fail to address Miller's ex post facto claim. The July 5th Protocol mandates that Miller will receive the harsher of the two punishments (lethal injection) unless Miller affirmatively acts on the Affidavit Concerning Execution Method. The ex post facto issue is the reason Miller requires the information he requests. Miller has repeatedly stated he will be compelled to act—i.e., forced to do something he ordinarily would not do—in order to avoid up to 20 minutes of severe pain and suffering under the midazolam-based lethal injection protocol. Defendants'

---

[3] Defendants inaccurately assert that courts have held Tennessee's lethal injection protocol is constitutional. *See e.g.*, Doc.33 PageID# 1910, 1911, 1914. The two courts that considered the factual record developed on Tennessee's midazolam-based lethal injection protocol (the Chancery Court and the Tennessee Supreme Court) both denied relief on *Glossip's* second prong regarding proof of an alternative execution method. *Abdur'Rahman v. Parker*, No. M201801385SCRDOCV, 2018 WL 4858002, at *1 (Tenn. Oct. 8, 2018) ("we conclude that the inmates failed to carry their burden of showing availability of their proposed alternative method of execution—a one-drug protocol using pentobarbital—as required under current federal and Tennessee law. For this reason, we hold that the inmates failed to establish that the three-drug protocol constitutes cruel and unusual punishment."). With respect to the pain and suffering prong, the Chancery Court found Tennessee inmates may feel the constitutionally-intolerable pain of the paralytic drug and potassium chloride and the Tennessee Supreme Court did not disturb that finding. Doc.1-8 PageID# 505, 511-512.

focus on "choice" and "constitutionality," therefore, misses the mark. *See* Response Doc.33 PageID# 1911-1915. The ex post facto violation arises because lethal injection constitutes a harsher punishment than electrocution, not because either or both are unconstitutional.[4]

At bottom, Miller's request for information imposes a minimal burden on Defendants, whereas, there is a great risk of harm from Miller being compelled to unnecessarily relinquish his constitutional rights. If Defendants simply disclose material facts that are uniquely within their knowledge, Miller can then make an informed decision.

WHEREFORE, Miller respectfully requests an order (1) requiring Defendants to immediately disclose information on the method of execution that will be used for his execution scheduled on December 6, 2018, to wit:

<u>Documents related to the July 5th lethal injection protocol</u>
(a)  Identify the drugs that will be used for Mr. Miller's execution that are manufactured and the drugs that are compounded.
(b)  Photographs of the drugs to be used for Mr. Miller's execution that depict each drugs' identity, concentration, expiration date and/or beyond use date.
(c)  Copies of the permanently bound ledger containing an inventory or record of the lethal injection drugs from January 1, 2018, to the present.[5]
(d)  Results of independent testing for potency, sterility, and endotoxins of execution drugs that (1) will be used for Mr. Miller's execution, and (2) were used for the execution of Billy Ray Irick on August 9, 2018.[6]
(e)  Licensing and credentials of any pharmacy, pharmacist and drug supplier that provide drugs for use in Mr. Miller's execution. This request includes documentation that the drugs are compounded in a clean sterile environment in compliance with pharmaceutical standards for identity, strength, quality,

---

[4] The unconstitutionality of electrocution does magnify the harm arising from any waiver of rights that results from the threat of the midazolam lethal injection protocol.
[5] *See* July 5th Protocol, Doc.1-5 PageID# 411.
[6] *See* July 5th Protocol, Doc.1-5 PageID# 410.

{5}

  and purity of the compounded drug that are consistent with the USP guidelines and accreditation Departments and licensing regulations applicable to pharmacies compounding sterile preparations.[7]

(f)  Any disciplinary actions and disciplinary records of any pharmacy, pharmacist and drug supplier that provides drugs for use in Mr. Miller's execution.

(g)  Documents or records pertaining to the preparation and training of personnel to carry out Mr. Miller's execution, including the personnel and/or criminal history records of all such persons.

Documents related to the electrocution protocol

(a)  Chronological Execution Report completed for the execution of Edmund Zagorski on November 1, 2018.[8]

(b)  Day of Execution - Electrocution Execution Recorder Checklist completed for the execution of Edmund Zagorski on November 1, 2018.[9]

(c)  Photographs of the body of Edmund Zagorski and Execution Chamber prior to removal of the body and photographs taken by the medical examiner.[10]

(d)  All documents or records pertaining to the preparation and training of personnel to carry out any electrocution in Tennessee, including the personnel and/or criminal history records of all such persons involved in any electrocution.

(e)  All documents or records pertaining to any correspondence, telephone call, e-mail, discussion, analysis, or meeting between any employee of the Department of Correction and any other person concerning the electrocution protocol and the testing and/or modification of equipment.

  Miller also respectfully requests an order (2) delaying the effective date of the Affidavit Concerning Execution Method until three-days after the date that information is disclosed.[11]

---

[7] *See* July 5th Protocol, Doc.1-5 PageID# 410, 469-474.

[8] *See* Electrocution Protocol, Doc.1-2 PageID# 212

[9] *See* Electrocution Protocol, Doc.1-2 PageID# 213-215

[10] *See* Electrocution Protocol, Doc.1-2 PageID# 214

[11] Miller originally requested a three-day extension of the effective date, up to 5:00 pm on November 29, 2018. His prayer for relief has been modified to insure that he receives the benefit of three-days' time to review the facts that will be disclosed by Defendants and deliberate on his decision regarding the Affidavit Concerning Execution Method.

{6}

{7}

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: s/Stephen M. Kissinger
Stephen M. Kissinger,
Tenn. BPR # 037082
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Phone: (865) 637-7979
Facsimile: (865) 637-7999
Stephen_Kissinger@fd.org

*Attorney for Plaintiffs*
{7}

# CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2018, this *Reply to Response to Emergency Motion for Order for Immediate Disclosure of Information on the Method of Execution that Will be Used for December 6th Execution Date and Motion for Extension of the November 26th Deadline* was filed electronically via the Court's electronic filing system upon the following person. Parties may access this filing through the Court's electronic filing system.

>Scott C. Sutherland
>Assistant Attorney General
>Law Enforcement Division
>P.O. Box 20207
>Nashville, TN 37202
>(615) 741-2164
>Scott.Sutherland@ag.tn.gov
>
>Jennifer L. Smith
>Tennessee Attorney General's Office
>P O Box 20207
>Nashville, TN 37202
>(615) 741-3491
>Email: jennifer.smith@ag.tn.gov
>
>Robert W. Mitchell
>Tennessee Attorney General's Office
>P O Box 20207
>Nashville, TN 37202-0207
>(615) 741-3491
>Fax: (615) 532-6023
>Email: robert.mitchell@ag.tn.gov

>s/Stephen M. Kissinger
>Stephen M. Kissinger