## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **TERRY LYNN KING,** | ) | |
| | ) | <u>**CAPITAL CASE**</u> |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:18-cv-01234** |
| | ) | |
| **TONY PARKER, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Terry Lynn King, a Tennessee inmate sentenced to death for first-degree murder, filed his Amended Complaint for Injunctive Relief ("the Complaint") on January 25, 2019. (Doc. No. 51.) Plaintiff sues Tony Parker, the Commissioner of the Tennessee Department of Correction (TDOC), and Tony Mays, the Warden of Riverbend Maximum Security Institution, where Plaintiff is incarcerated on death row. He seeks a preliminary and permanent injunction against his execution by any method currently provided by Tennessee law. Defendants move under Rule 12 of the Federal Rules of Civil Procedure to dismiss the complaint for lack of jurisdiction and failure to state a claim for which relief can be granted. (Doc. No. 53.) With the Court's permission, they have filed an amended memorandum in support of their motion. (Doc. No. 61.) Plaintiff has responded in opposition, and Defendants have replied in support of their motion. (Doc. Nos. 65, 68.) For the following reasons, Defendants' motion will be **GRANTED IN PART**, and this matter will proceed only on Count 3.

I.     <u>Legal Standards</u>

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss...generally come in two varieties: a facial attack or a factual attack." *Gentek*

*Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* "When considering a factual attack upon the court's jurisdiction, the court may weigh the evidence, and no presumption of truth applies to the plaintiff's factual allegations." *Hickam v. Segars*, 905 F.Supp.2d 835, 838 (M.D. Tenn. 2012) (citing *Gentek*, 491 F.3d at 330). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007). In deciding a motion to dismiss, the Court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

As a general rule, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under [Federal Rule of Civil Procedure] 56." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). The

2

term "pleadings" encompasses both the complaint and the answer, Fed. R. Civ. P. 7(a), and a copy of any exhibit thereto. Fed. R. Civ. P. 10(c). However, the Court of Appeals has held that "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (holding that a district court may consider documents referenced in the pleadings that are "integral to the claims" in deciding motion to dismiss); *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (noting that in deciding a motion to dismiss "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice").

Plaintiff sues under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

II.    Facts and Procedural Background

In 1983, when Plaintiff committed the crime for which he was convicted and sentenced to death, *see King v. State*, 989 S.W.2d 319, 322 (Tenn. 1999), Tennessee law provided, as it had since at least 1932, that inmates sentenced to death would be executed by means of electrocution:

3

Whenever any person is sentenced to the punishment of death, the court shall direct that the person be put to death by electrocution, and that the body be subjected to shock by a sufficient current of electricity until dead.

Tenn. Code Ann. § 40-23-114 (1982). In keeping with this law, after the jury reached its verdict on sentencing, the trial judge ordered "that the defendant shall be put to death by electrocution in the mode prescribed by law." (Doc. No. 48-2 at 1.)

In 1998, the Tennessee legislature revised the relevant statute to provide that the method of execution for anyone who was sentenced to death for an offense committed on or after January 1, 1999, would be lethal injection, and that inmates sentenced to death for offenses committed before that date could elect to be executed by lethal injection by signing a written waiver of the right to be executed by electrocution:

(a) For any person who commits an offense prior to January 1, 1999, for which such person is sentenced to the punishment of death, the court shall direct that the person be put to death by electrocution, and that the body be subjected to shock by a sufficient current of electricity until dead.

(b) For any person who commits an offense on or after January 1, 1999, for which such person is sentenced to the punishment of death, the court shall direct that the person be put to death by lethal injection.

(c) Any person who commits an offense prior to January 1, 1999, for which such person is sentenced to the punishment of death may elect to be executed by lethal injection by signing a written waiver waiving the right to be executed by the method of execution in effect at the time the offense was committed.

(d) The department of correction is authorized to promulgate necessary rules and regulations to facilitate the implementation of subsections (b) and (c).

(e) If the method of execution established by subsections (b) and (c) is for any reason determined by a court of competent jurisdiction to be unconstitutional, the law establishing the method of execution as death by electrocution is revived and electrocution shall be the method of execution in this state. All statutory procedures, rules and departmental policy enacted or promulgated to effectuate a sentence of death by electrocution shall also be revived and shall be in full force and effect.

Tenn. Code Ann. § 40-23-114 (1998); 1998 Tennessee Laws Pub. Ch. 982 (H.B. 2085).

4

The legislature amended the statute again in 2000 to reverse the presumptive method of execution for older convictions, providing that the default method of execution for all inmates sentenced to death is lethal injection, but that inmates whose offenses predate January 1, 1999, may elect to be executed by electrocution by signing a written waiver of the right to lethal injection:

(a) For any person who commits an offense prior to January 1, 1999, for which such person is sentenced to the punishment of death, the method for carrying out this sentence shall be by lethal injection.

(b) For any person who commits an offense on or after January 1, 1999, for which such person is sentenced to the punishment of death, the method for carrying out this sentence shall be by lethal injection.

(c) Any person who commits an offense prior to January 1, 1999, for which such person is sentenced to the punishment of death may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection.

(d) The department of correction is authorized to promulgate necessary rules and regulations to facilitate the implementation of this section.

(e) If lethal injection or electrocution is held to be unconstitutional by the Tennessee supreme court under the Constitution of Tennessee, or held to be unconstitutional by the United States supreme court under the United States Constitution, or if the United States supreme court declines to review any judgment holding lethal injection or electrocution to be unconstitutional under the United States Constitution made by the Tennessee supreme court or the United States court of appeals that has jurisdiction over Tennessee, or if the Tennessee supreme court declines to review any judgment by the Tennessee court of criminal appeals holding lethal injection or electrocution to be unconstitutional under the United States or Tennessee Constitution, all persons sentenced to death for a capital crime shall be executed by any constitutional method of execution. No sentence of death shall be reduced as a result of a determination that a method of execution is declared unconstitutional under the Constitution of Tennessee or the Constitution of the United States. In any case in which an execution method is declared unconstitutional, the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.

Tenn. Code Ann. § 40-23-114 (2000); 2000 Tennessee Laws Pub. Ch. 614 (H.B. 2978).

And finally, in 2014, the legislature added a provision to the statute about defaulting to electrocution if the ingredients to carry out a lethal injection are unavailable. Tenn. Code Ann. §

5

40-23-114 (2014); 2014 Tennessee Laws Pub. Ch. 1014 (S.B. 2580). This version of the statute remains in effect today.

Pursuant to every version of the statute in effect since 1998, the TDOC devised a series of protocols to carry out executions in Tennessee. TDOC maintains protocols for both lethal injection and electrocution. (Doc. Nos. 51-1, 51-4.) In compliance with the authorizing statute, the current protocols give death row inmates sentenced before January 1, 1999, the option of being executed by electrocution. (Doc. No. 51-1 at 13 ¶2, 80; Doc. No. 51-4 at 13 ¶2, 87.)

The lethal injection protocols adopted in 2013, 2014, and 2015 all called for execution by a lethal dose of the barbiturate pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018), *reh'g denied*, 138 S. Ct. 1183 (2018). On January 8, 2018, TDOC revised its lethal injection protocol to provide for two alternative methods of execution: Protocol A, comprised of a lethal dose of pentobarbital; and Protocol B, comprised of a dose of midazolam, followed by vecuronium bromide, and then potassium chloride, in that order. (Doc. No. 51-3 at 34.) On July 5, 2018, TDOC revised the lethal injection protocol again to eliminate Protocol A, leaving only the midazolam-based three-drug protocol to be used in all lethal injections. (Doc. No. 51-4 at 34.)

Groups of Tennessee death row inmates filed lawsuits in state court challenging the constitutionality of the pentobarbital protocol and the midazolam three-drug protocol. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn. 2018), *cert denied*, No. 18-8332, 2019 WL 2078094 (U.S. May 13, 2019), *cert. denied sub nom. Zagorski v. Parker*, 139 S. Ct. 11 (2018), and *cert. denied sub nom. Miller v. Parker*, 139 S. Ct. 626 (2018); *West*, 519 S.W.3d at 563. The inmates lost both lawsuits. Plaintiff King was not a plaintiff in either state-court suit.

6

Plaintiff King and three other inmates initiated this action on November 2, 2018, alleging violations of their constitutional rights in connection with their anticipated executions and seeking a temporary restraining order or preliminary injunction. (Doc. No. 1.) On November 15, 2018, the Court enjoined Defendants from proceeding with any Plaintiff's execution without providing telephone access to his attorney-witness, but held that Plaintiffs had insufficient likelihood of success on their Ex Post Facto, Eighth Amendment, and coerced-waiver claims to warrant further preliminary relief. (Doc. No. 20.) The United States Court of Appeals affirmed that ruling. *Miller v. Parker*, 910 F.3d 259, 260 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 399 (2018). After Mr. Miller's execution on December 6, 2018, the Court severed the claims of the remaining three inmates (Doc. No. 47), and only Plaintiff King's case remains pending in this action. Plaintiff filed an Amended Complaint for Injunctive Relief on January 25, 2019 (Doc. No. 51), which is the subject of Defendants' pending Motion to Dismiss. (Doc. No. 53.)

III.    Discussion

Plaintiff sues Tony Parker, the Commissioner of the TDOC, in his official capacity as the official who seeks to execute Plaintiff pursuant to the current execution protocol and will oversee the execution. He also sues Tony Mays, the Warden of Riverbend Maximum Security Institution, in his official capacity as the official who is "directly in charge" of Plaintiff's execution. (Doc. No. 51 at 5.) He seeks a preliminary and permanent injunction preventing Defendants from executing him by the current lethal injection protocol, executing him by electrocution, executing him in any manner that violates the Ex Post Facto Clause and is contrary to the sentence imposed on him, and executing him in any manner without allowing him to have two attorney witnesses with immediate access to a telephone and each other throughout the execution. (*Id.* at 139–40.) Defendants move

7

to dismiss all claims on the grounds of lack of jurisdiction and/or failure to state a claim. (Doc. No. 53.)

A.    Res Judicata

There is a threshold dispute between the parties about whether the doctrine of res judicata applies to this litigation.  Res judicata, in its narrowest sense, is "the preclusion of claims that have once been litigated or could have been litigated" in a previous lawsuit. *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003).  It "rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996).  Federal courts must apply res judicata in a manner "to give the same effect to the Tennessee state court judgment as would another Tennessee state court." *Hutcherson*, 326 F.3d at 758.

Tennessee courts have "a long-standing tradition in upholding judgments" pursuant to res judicata. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 400 (Tenn. Ct. App. 2009).  In rejecting a party's arguments for adopting several exceptions to res judicata, the Tennessee Court of Appeals quoted the Tennessee Supreme Court regarding the policy in favor of a strong res judicata doctrine:

> The policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'. . ..
>
> . . . It is not material on this point whether the finding of the jury was Right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial

8

proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

*Id.* at 400–01 (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)).

Defendants assert that Counts 1 and 3–7 are barred by the doctrine of res judicata as a result of the *Abdur'Rahman* litigation in state court and should be dismissed for lack of subject matter jurisdiction. (Doc. No. 61 at 11–19.)  Plaintiff responds that res judicata does not apply to this case because he was not a plaintiff or in privity with the plaintiffs in *Abdur'Rahman*. (Doc. No. 58 at 12–16.)

Defendants argue that res judicata applies to Plaintiff because he and the *Abdur'Rahman* plaintiffs shared the same interest in the subject matter of the state-court litigation, and he was "adequately represented" by the state-court plaintiffs. (Doc. No. 13–14.)  They correctly point out that Tennessee abolished the strict mutuality requirement for collateral estoppel in 2016, when the Tennessee Supreme Court decided that collateral estoppel could apply in a civil case based on a prior criminal judgment. *See Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016).  But in *Bowen* the party against whom estoppel was asserted was a party to the previous case.  The cases concerning whether estoppel may be asserted against a litigant who was *not* a party to a prior case dictate against preclusion in this matter.

In *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793 (1996), the Supreme Court observed that while states may devise their own rules about the application of estoppel, those rules are subject to the parties' fundamental due process rights. *Id.* at 797–98.  "As a consequence, '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'" *Id.* at 798 (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).  The Court explained that the concept of privity had grown to bind litigants who were not personally parties to prior litigation, but that "there are clearly constitutional limits on the 'privity'

9

exception." *Id.* Accordingly, the Court found that the plaintiffs in the case before it had not been "adequately represented" for preclusion purposes in a previous case because they had not received notice that the previous case could determine their legal rights, the parties in the prior suit did not purport to represent their rights, and the judgment issued did not purport to bind them. *Id.* at 799–802.

More recently, in *Taylor v. Sturgell*, 553 U.S. 880 (2008), the Supreme Court began with the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 884 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). In *Taylor*, an antique aircraft owner, Herrick, had sought information about the type of plane he owned through a Freedom of Information Act (FOIA) request to the Federal Aviation Administration. The FAA denied Herrick's request, and he filed a lawsuit challenging the denial, which he ultimately lost. *Taylor*, 553 U.S. at 885–87. Less than a month later, Mr. Taylor, who was a friend of Herrick's, a fellow member of an Antique Aircraft Association, and was helping Herrick restore his airplane, submitted a FOIA request for the same documents Herrick had just lost his suit to acquire. *Id.* at 887, 889. Taylor also filed suit after the FAA denied his FOIA request. *Id.* at 888. He was represented by the same attorney as Herrick and was provided with the materials Herrick had obtained through discovery in his lawsuit. *Id.* at 889.

Nevertheless, the Supreme Court found that none of those circumstances brought the case within the six recognized exceptions to the rule against preclusion of a nonparty. *Id.* at 893–905. Those exceptions apply when: (1) a nonparty agrees to be bound by a determination; (2) there is a "pre-existing substantive legal relationship between the person to be bound and a party to the judgment"; (3) the nonparty was "adequately represented" by a party with the same interests, as in

the case of a class action or suit brought by a trustee or guardian; (4) the nonparty controlled the litigation; (5) the original party is using the nonparty as a proxy to relitigate; and (6) a statute precludes further litigation, as in bankruptcy and probate proceedings. *Id.* at 894–95. In the case before the Court, Taylor had not agreed to be bound by the result of the first lawsuit, and he had no "substantive legal relationship" with Herrick. He had not exercised control over the first litigation, there was no evidence that he was relitigating the issue as Herrick's agent or proxy,[1] and his suit was not foreclosed by any statutory scheme. *Id.* at 893–95, 904–05. The circumstances of the case came closest to the "adequate representation" exception, but the Supreme Court held that exception only applies "if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (citations omitted). Accordingly, the Court held that it was

> clear that preclusion cannot be justified on the theory that Taylor was adequately represented in Herrick's suit. Nothing in the record indicates that Herrick understood himself to be suing on Taylor's behalf, that Taylor even knew of Herrick's suit, or that the [first court] took special care to protect Taylor's interests. Under our pathmarking precedent, therefore, Herrick's representation was not 'adequate.'

*Id.* at 905.

The Court rejected a broader "virtual representation" exception under which Taylor's suit might have been precluded based only on the plaintiffs' "identity of interests" and other non-mandatory factors, including a close relationship and implication of a "public law" issue. *Id.* at 888, 905. In doing so, the Court acknowledged that, under its holding, "it is theoretically possible that several persons could coordinate to mount a series of repetitive lawsuits." *Id.* at 903. But it

---

[1] The Court's remand left open the defendant's opportunity to develop evidence that Taylor was acting as the first plaintiff's "undisclosed agent." *Id.* at 905.

was "not convinced that this risk justifies departure from the usual rules governing nonparty preclusion":

> First, *stare decisis* will allow courts swiftly to dispose of repetitive suits brought in the same circuit. Second, even when *stare decisis* is not dispositive, 'the human tendency not to waste money will deter the bringing of suits based on claims or issues that have already been adversely determined against others.'

*Id.* at 903–04 (quoting D. Shapiro, Civil Procedure: Preclusion in Civil Actions 97 (2001)).  That human tendency obviously poses no disincentive to indigent inmates who are involved in capital punishment litigation, the cost of which is typically borne by the government.  *Taylor* clearly indicates, however, that the possibility of repetitive litigation in this narrow category of cases is outweighed by the parties' fundamental right to due process.

The Tennessee Court of Appeals observed last year that "in *Taylor*, the [United States Supreme] Court made clear that representation of a nonparty is 'adequate' for preclusion purposes if: (1) the interest of the nonparty and its representative are aligned; (2) either the party understood itself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty; and (3) notice of the original suit has been given to the persons alleged to have been represented." *Johnson v. General Motors Corp.*, No. E2017-01642-COA-R3-CV, 2018 WL 5292108, at *5 (Tenn. App. Jul. 18, 2018).  It found all three factors satisfied in the case before it, where the plaintiffs in the previous lawsuit "knew they were acting as representatives" and were part of a joint prosecution agreement with the current plaintiffs, the court presiding over the previous lawsuit took steps specifically to protect the rights of the non-parties, including entry of a "Joint Coordination Order," and it was undisputed that the current plaintiffs had notice of the previous case. *Id.* at 5–6.

Defendants argue that *Johnson* supports preclusion in this case.  But with regard to the second and third factors of the test enunciated in *Johnson*, Defendants simply point to Plaintiff's

12

representation by the same counsel who was involved in the prior suit and assert that "there is every reason to believe" that Plaintiff had notice of the previous suit. (Doc. No. 61 at 13.)  *Taylor* itself dictates that sharing an attorney in common is not sufficient to establish that a second plaintiff was represented in the first litigation.  And Defendants' speculation about the likelihood that Plaintiff had notice of the state-court litigation does not satisfy their burden of establishing every element needed for preclusion to bar this case.

Defendants also rely on *Sumlin v. Krehbiel*, 876 F.Supp.1080 (E.D. Mo. 1994), in which a federal district court held res judicata barred a lawsuit by inmate-plaintiffs the court deemed to be in privity with inmate-plaintiffs who lost a previous case about the same subject matter.  The court acknowledged that some of the current plaintiffs were not parties to the earlier case, but found them to be in privity with each other based on their "close relationship, bordering on near identity" and "closely related . . . interests" as past or present inmates of the same prison, and the fact that the record indicated the current plaintiffs had notice of the previous case.  *Id.* at 1081.  *Sumlin* predates both *Richards* and *Taylor* and is likely abrogated by those decisions.  Moreover, even if *Sumlin* were otherwise persuasive, there was clear evidence in *Sumlin* that the current plaintiffs had notice of the first case.  There is no similar evidence of notice in this case.

Finally, the Court finds the Eleventh Circuit decision in *Grayson v. Warden*, 859 F.3d 1204 (11th Cir. 2017), to be persuasive authority in this matter.  *Grayson* involved an Eighth Amendment challenge by Alabama death row inmates to Alabama's midazolam-based lethal injection protocol that was "practically identical" to another Alabama inmate's lawsuit that was decided first. *Id.* at 1215.  The district court found that the *Grayson* appellants were precluded from litigating the question of whether another method of execution—lethal injection by pentobarbital—was readily available, because the court had already decided that issue in *Arthur v.*

*Dunn*, No. 2:11-cv-438, 2016 WL 1551475 (M.D. Ala. Apr. 15, 2016), *aff'd sub nom., Arthur v. Comm'r*, 840 F.3d 1268 (11th Cir. 2016). *Grayson*, 859 F.3d at 1223. The Eleventh Circuit vacated the district court's ruling because the *Grayson* appellants were not in privity with Arthur. *Id.* at 1224. The court acknowledged the six privity exceptions discussed in *Taylor*, including adequate representation, and found that none applied:

> Nothing in the record indicates . . . that Appellants consented to be bound by *Arthur*'s resolution, had any legal relationship with Arthur, were represented by him in any capacity, or had any control over his claim. Nor is there any suggestion Arthur was attempting to relitigate his claim by using Appellants as proxies. And no statute prevents successive nonparty litigation in this context. *Arthur* can therefore have no preclusive effect in Appellants' cases.

*Id.* All of those conclusions apply equally in this case.

Accordingly, the *Abdur'Rahman* state-court judgment has no preclusive effect on this case, and Defendants' motion to dismiss any of Plaintiff's claims on that basis is denied.

B.     Count 1 — Ex Post Facto Violation

The Ex Post Facto Clause in Article 1, Section 10 of the United States Constitution prohibits "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70 (1925)). The ex post facto prohibition also applies to retrospective administrative rules and regulations that "increase the punishment for a crime after its commission." *See Garner v. Jones*, 529 U.S. 244, 249 (2000) (applying ex post facto analysis to amended rule of Georgia Board of Pardons and Paroles).

Plaintiff alleges that lethal injection pursuant to the current TDOC protocol violates the Ex Post Facto Clause because it "constitutes harsher punishment than execution by electrocution, the

14

punishment to be inflicted on Plaintiff King at the time of his crimes." (Doc. No. 51 at 20.) Specifically, he alleges that electrocution "involves a significantly shorter duration of pain and suffering than lethal injection" under the current protocol and that "Defendants should be preliminarily and then permanently enjoined from carrying out Plaintiff's execution under a midazolam-based, three-drug protocol." (*Id.* at 25.)

Aside from their assertion of res judicata, which the Court has rejected, Defendants move to dismiss this claim on the bases that Plaintiff still has the option of execution by electrocution and the claim otherwise fails to state a claim. (Doc. No. 61 at 7–9, 20–22.) Defendants rely in part on *Malloy v. South Carolina*, 237 U.S. 180 (1915), in which the Supreme Court held that South Carolina's switch from hanging to electrocution between the petitioner's crime and his sentencing was not an ex post facto violation because the new statute "did not change the penalty—death— for murder, but only the mode of producing" it. *Id.* at 185. In reaching its decision, the Court observed the "well grounded belief that electrocution is less painful and more humane than hanging." *Id.* Similarly, lethal injection replaced electrocution as the most prevalent method of execution when "some States once again sought a more humane way to carry out death sentences." *Glossip v. Gross*, 135 S. Ct. 2726, 2732 (2015); *see also Baze v. Rees*, 553 U.S. 35, 42 (2008) (recounting that many states switched to lethal injection in response to public calls to make executions more humane than electrocution).

Plaintiff responds to the effect that application of *Malloy* requires a factual evaluation of whether Tennessee's current lethal injection protocol is more or less humane than electrocution. (Doc. No. 65 at 31.) It is unnecessary in this case, however, for the Court to resolve that dispute, because Tennessee law still provides the option of the older method of execution that Plaintiff argues is more humane.

15

As explained above, Tennessee's current statute and regulations retain the option of Plaintiff's being executed by electrocution, which was the method of execution in place at the time of his crimes. The current scheme materially differs from that in place at the time of Plaintiff's crimes only by providing an additional method—lethal injection—that Plaintiff can avoid by choosing electrocution. The addition of another option cannot possibly be said to constitute an increase in punishment for Plaintiff's crimes. "The mere existence of the option is not a violation of [a condemned inmate's] constitutional rights." *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) (rejecting ex post facto challenge to Arizona's law allowing inmates sentenced before adoption of lethal injection to choose previous execution method of lethal gas).

This Court has previously held that the choice provided to inmates like Plaintiff under Tennessee law "does not make the death penalty punishment more burdensome or otherwise violate the Ex Post Facto Clause." *Johnson v. Bell*, 457 F. Supp. 2d 839, 841–42 (M.D. Tenn. 2006). Nothing about Plaintiff's current allegations alters that conclusion. Plaintiff alleges that Tennessee's current lethal injection protocol is more painful than its previous lethal injection protocols and takes longer than electrocution. But because Tennessee law still allows Plaintiff the option of electrocution, any details concerning the lethal injection option are immaterial to his ex post facto claim.

Plaintiff attempts to distinguish *Poland* and *Johnson* by arguing that they involved claims that the statutory choice itself violated the Ex Post Facto Clause, while he claims that the current method of lethal injection violates the Ex Post Facto Clause. (Doc. No. 65 at 33–34.) For purposes of this analysis, however, that is a distinction without a difference. Plaintiff's method of execution in 1983 would have been electrocution, and his method of execution now will still be electrocution,

16

if he so chooses. His punishment has only increased if the very act of choosing electrocution increases it, which was the argument rejected in *Poland* and *Johnson*.

Tennessee's current method-of-execution scheme does not increase the punishment for Plaintiff's crimes, and his ex post facto claim is dismissed.

B.    <u>Count 2 — Electrocution Violates 8th Amendment</u>

Plaintiff alleges that Tennessee's method of electrocution constitutes cruel and unusual punishment prohibited by the Eighth Amendment.[2] Defendants argue that this claim is not ripe for adjudication because none of the following events has occurred that would trigger Plaintiff's execution via electrocution under state law: "(1) [Plaintiff] . . . signs a written waiver electing to be executed by electrocution, Tenn. Code Ann. § 40-23-114(b); (2) lethal injection is held unconstitutional by the Tennessee Supreme Court under the Tennessee Constitution or by the U.S. Supreme Court under the U.S. Constitution, *id.* § 40-23-114(e); or (3) the TDOC Commissioner certifies to the Governor that he is unable to carry out the sentence because 'one or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable,' *id.*" (Doc. No. 61 at 9–10.)

---

[2] In each of Plaintiff's cruel-and-unusual-punishment claims, he alleges violation of both the Eighth and Fourteenth Amendments. But if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Accordingly, inmates' claims of cruel and unusual punishment sound solely under the Eighth Amendment. *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) ("The Supreme Court has indicated that 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . ..' [*Whitley v.*] *Albers*, 475 U.S. [312,] 327 [(1986)]. Under the circumstances, the plaintiff's section 1983 claim in a case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights. *Cf. Graham* [*v. Connor*], 490 U.S. 386, ―― [(1989)].").

Plaintiff responds that the contingent nature of his claim is not determinative because "ripeness contemplates whether the contingency likely will arise." (Doc. No. 65 at 41.)  He argues that the likelihood of such contingencies occurring in this case is a factual question that requires further development. (*Id.*)  He further asserts that the facts alleged in connection with Counts 1, 3, and 4 of his amended complaint establish the likelihood that Tennessee's current lethal injection protocol is unconstitutional and that, therefore, Tennessee will attempt to carry out his execution by electrocution. (*Id.* at 42–43.)

A claim must present a real and present dispute for this Court to have jurisdiction to hear it:

> The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions.  Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.

*Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992) (punctuation and citations omitted).  "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  A plaintiff basing a claim on an anticipated future injury must demonstrate that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 607–08 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

This Court rejected a challenge to the constitutionality of electrocution in Tennessee as unripe under similar circumstances several years ago:

> Petitioner does not have a current claim with regard to electrocution, because current Tennessee law provides for execution of the death sentence by lethal injection. Tenn. Code Ann. § 40–23–114(a) (2000). Because he committed his offense prior to January 1, 1999, Petitioner may elect by written waiver to be

executed by electrocution instead of lethal injection. Tenn. Code Ann. § 40–23–114(b). Should he choose to make such a waiver, Petitioner would waive any claim that electrocution is unconstitutional. *See Stewart v. LaGrand*, 526 U.S. 115, 119 (1999). A recent amendment to the controlling statute provides that execution by electrocution is otherwise authorized only in the event that lethal injection is held to be unconstitutional by a court of competent jurisdiction or the Commissioner of the Tennessee Department of Correction certifies to the governor that an essential lethal injection ingredient is unavailable. Tenn. Code Ann. § 40–23–114(d). In the absence of any allegation that either of those triggering events has happened, any challenge to the constitutionality of electrocution is not ripe for review.

Moreover, the Supreme Court found execution of the death penalty by electrocution to be constitutional in 1890, *see In re Kemmler*, 136 U.S. 436, 449 (1890), and no federal court since that time has held it to be unconstitutional. *But see State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (Neb. 2008) (finding electrocution unconstitutional under Nebraska constitution). The Sixth Circuit has reiterated its rejection of such a claim as recently as 2004, *see Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004), and at least one district court in Tennessee has rejected such a challenge within the last three years, *see Morris v. Bell*, No. 07–1084–JDB, 2011 WL 7758570, at *68 (W.D. Tenn. Sept. 29, 2011).

*Duncan v. Carpenter*, No. 3:88-00992, 2014 WL 3905440, at *42–43 (M.D. Tenn. Aug. 11, 2014) (Nixon, S.J.); *see also Stanford v. Parker*, 266 F.3d 442, 462 (6th Cir. 2001) (rejecting Eighth Amendment challenge to electrocution by inmate who had not elected it because the plaintiff's "argument ignores the fact that he need not be electrocuted" and because by choosing electrocution he would "waive any objection" to it). The following year, the Tennessee Supreme Court ruled that constitutional challenges to electrocution "depend entirely on future and contingent events that have not occurred and may never occur, and as a result, are unripe and nonjusticiable." *West v. Schofield*, 468 S.W.3d 482, 494 (Tenn. 2015).

For those same reasons, Plaintiff's claim is not ripe for review. Plaintiff's reliance on his claims in Counts 1, 3, and 4 does not change this outcome. Counts 1 and 4 are being dismissed for the reasons explained herein. And while Count 3 will survive the motion to dismiss, the ultimate outcome of that claim is far too speculative at this point to make Count 2 ripe. Accordingly, Plaintiff has not demonstrated a "substantial risk" of any event that would trigger

19

Tennessee's statutory default to electrocution for his execution, and this claim is dismissed without prejudice.

C.    Count 3 — Lethal Injection Protocol Violates 8th Amendment

Plaintiff alleges that the current three-drug protocol violates the Eighth Amendment and offers multiple alternative methods of execution that he says "substantially reduce the constitutionally-unacceptable risk of inflicting unnecessary and serious pain" created by the protocol. (Doc. No. 51 at 73–130.)

Defendants' sole asserted basis for dismissal of Count 3 is that it is barred by res judicata because it is the same Eighth Amendment claim that was adjudicated in state court. (Doc. No. 61 at 11, 16–17.)  For the reasons explained above, that argument is unavailing, and Defendants' motion will be denied with respect to this claim.

D.    Count 4 — Due Process Violation

Plaintiff alleges that the trial judge who sentenced him specifically ordered that he "shall be put to death by electrocution in the mode prescribed by law." (Doc. No. 51 at 130.)  He claims that the current three-drug lethal injection protocol "constitutes an increase in the punishment imposed" in that sentence and "is, therefore, a violation of the Due Process Clause." (*Id.* at 130–31.)

This claim is effectively a re-packaged version of Plaintiff's ex post facto claim in Count 1, and will be dismissed for the reasons already explained.

E.    Count 5 — Execution Violates the 8th Amendment

Plaintiff alleges that execution by any method constitutes cruel and unusual punishment prohibited by the Eighth Amendment. (Doc. No. 51 at 131–36.)  Defendants assert that this claim

20

must be dismissed as barred by the statute of limitations and for failure to state a claim. (Doc. No. 61 at 23.)

Defendants correctly assert that "it is settled that capital punishment is constitutional." (Doc. No. 13 at 23 (quoting *Glossip v. Gross*, 135 S. Ct. 2726, 2732 (2015).)  Plaintiff responds, relying on *Trop v. Dulles*, 356 U.S. 86 (1958), that Supreme Court cases upholding the constitutionality of various methods of execution do not foreclose his claim because "[t]he infliction of any punishment resulting in death violates evolving standards [of decency] that define the Eighth Amendment." (Doc. No. 65 at 49.)  But those standards had not evolved to that point as of a few months ago, when a majority of the Supreme Court unequivocally stated that "[t]he Constitution allows capital punishment." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019).  To the contrary, the Court cautioned that "[u]nder our Constitution, the question of capital punishment belongs to the people and their representatives, not the courts, to resolve," and that "the judiciary bears no license to end a debate reserved for the people and their representatives." *Id.* at 1123, 1135; *See also In re Lombardi*, 741 F.3d 888, 895 (8th Cir. 2014) ("Any allegation that all methods of execution are unconstitutional, therefore, does not state a plausible claim under the Eighth Amendment.").  Accordingly, Plaintiff's claim to the contrary fails as a matter of law.

In light of this conclusion, it is unnecessary for the Court to address the parties' dispute about the application of the statute of limitations to Plaintiff's claim.

F.     Count 6 — Unconstitutional Coercion

Plaintiff alleges that the current three-drug lethal injection protocol unconstitutionally coerces him—by its lengthier infliction of severe pain as compared to electrocution—to waive his right to challenge the constitutionality of electrocution by affirmatively choosing electrocution as

21

the method of his execution. (Doc. No. 51 at 136.)  He claims that this coerced waiver violates his right to due process under the Fourteenth Amendment. (*Id.* at 145.)

Some legal background is necessary to understand this claim.  In 1999, an Arizona inmate had a similar choice between two methods of execution and elected to be executed with lethal gas—a method that had already been found to be unconstitutional by the Ninth Circuit.  When he later filed suit to challenge the constitutionality of execution by lethal gas, the Supreme Court held that "[b]y declaring his method of execution, picking lethal gas over the State's default form of execution—lethal injection—Walter LaGrand has waived any objection he might have to it." *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999).  Thus, the waiver on which Plaintiff's claim is based is not found in Tennessee's execution statute or its lethal injection protocol, but is purely a function of the law as announced by the Supreme Court.

Defendants assert that this claim fails to state a claim for which relief can be granted. (Doc. No. 13 at 18, 24.)  The Court agrees.  As the Court indicated in denying a preliminary injunction on this claim in November 2018, *Stewart v. LaGrand* itself forecloses the claim. *See* Memorandum and Order at 9, *Miller v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 15, 2018).  Plaintiff attempts to distinguish the case by asserting that LaGrand chose a method of execution that was "then-thought to be harsher" than the alternative (Doc. No. 65 at 51), but the Supreme Court found the waiver arose from the choice itself, not the relative merits of the method chosen.  As this Court previously explained with regard to this same claim:

> Plaintiffs do not allege anything that differentiates their circumstances from LaGrand's. They allege that Tennessee's current lethal injection protocol is worse than electrocution, but surely LaGrand and any other inmate who elects a secondary method of execution does so because he believes the other option worse. They lament the consequent loss of the right to challenge the constitutionality of electrocution, but that loss is not as great as LaGrand's lost opportunity to challenge a method of execution that had already been found unconstitutional. In materially

22

indistinguishable circumstances, this Court is not in a position to hold that a waiver imposed by Supreme Court precedent is unconstitutional.

Memorandum and Order at 9, *Miller v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 15, 2018). On appeal from that ruling, the Sixth Circuit rejected the claim that Defendants "improperly compelled [Appellant] to choose between two unconstitutional methods of execution" because "this court has concluded that neither of these methods violates the Constitution." *Miller v. Parker*, 910 F.3d 259, 261 (6th Cir.), *cert. denied*, 139 S. Ct. 399 (2018).

Plaintiff's claim invokes the doctrine of unconstitutional conditions, which the Sixth Circuit has recently explained at some length:

> The United States Constitution does not contain an Unconstitutional Conditions Clause. What it does contain is a series of individual rights guarantees, most prominently those in the first eight provisions of the Bill of Rights and those in the Fourteenth Amendment. . . . What makes a condition unconstitutional turns . . . on a pre-existing obligation not to violate constitutional rights. The government may not deny an individual a benefit, even one an individual has no entitlement to, on a basis that infringes his constitutional rights. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). . . . In the words of the Supreme Court, the principle 'forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.' *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).
> . . .
> [T]he State may not condition a benefit by requiring the recipients to sacrifice their constitutional rights. *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983). Just as the State may not directly order someone to stop exercising his rights, it may not coerce him into 'giving them up' by denying the benefits if he exercises those rights. *Koontz*, 570 U.S. at 604, 612.

*Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911–12 (6th Cir. 2019). Viewed in that context, Plaintiff's claim is that Defendants are conditioning the *benefit* of electrocution on the *waiver* of his right to assert the unconstitutionality of electrocution in court. That claim fails on its merits for several reasons.

First, as discussed above, the Defendants do not extract any waiver of a legal challenge to electrocution from Plaintiff as a condition of choosing electrocution. No such waiver is required

23

by Tennessee's statute, TDOC's protocol, or the election form itself. The only waiver expressly included in the election form is the waiver of the right to be executed by lethal injection. (Doc. No. 51-4 at 87.) Accordingly, Defendants are not imposing any unconstitutional condition on Plaintiff.

Second, as the Supreme Court's decision in *Stewart v. LaGrand* suggests, it is simply untenable for Plaintiff to simultaneously assert a right to be electrocuted and challenge the constitutionality of his electrocution. Even assuming for the sake of argument that each of those claims would state a claim individually under existing law, and that they could be ripe at the same time, they cannot be asserted simultaneously. Plaintiff alleges that "[t]he jury and judge expressly sentenced Plaintiff King to death by electrocution, therefore, he must be executed by electrocution. . . . Absent such provisions in the protocol[3] Plaintiff King would be punished in accordance with the punishment imposed at the time of sentencing (electrocution), and, Plaintiff King would have a right to be heard on the constitutionality of that punishment." (Doc. No. 51 at 137–38.) Plaintiff's claim ignores the fact that constitutional rights can be mutually exclusive. For example, a criminal defendant has the right under the Fifth Amendment to remain silent and not "be a witness against himself." *Miranda v. Arizona*, 384 U.S. 436, 442 (1966) (quoting U.S. Const. amend. V). Conversely, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). But that does not mean that a defendant could effectively bring a halt to his prosecution by claiming that the state conditions the benefit of testifying on waiving the right to remain silent. Instead, the combined effect of both rights enables "a criminal defendant to ***choose*** between silence and testifying in his own behalf." *Ferguson v. State of Ga.*, 365 U.S. 570, 602 (1961) (Clark, J.,

---

[3] It is not clear which provisions of the protocol Plaintiff references here. As explained above, there is nothing in the TDOC protocol that imposes a waiver of Plaintiff's right to challenge electrocution as a method of execution.

24

concurring) (emphasis added). Being faced with a similar choice regarding his method of execution does not coerce Plaintiff to do anything or otherwise violate his constitutional rights.

And finally, the lynchpin of Plaintiff's claim is that Defendants are "threatening to unlawfully subject him" to the three-drug lethal injection protocol (Doc. No. 51 at 138), and that he may be wrongfully coerced into choosing electrocution by that "credible threat of legally unjustified violence." (Doc. No. 65 at 51.) But courts have repeatedly found execution with three-drug protocols including midazolam to be constitutionally permissible. *See Glossip v. Gross*, 135 S. Ct. 2726, 2739–40 (2015) (collecting cases and observing that "numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"); *Miller*, 910 F.3d at 261–62 (6th Cir. 2018) ("[T]his court has rejected a challenge to a similar Ohio lethal-injection protocol that, like the current Tennessee protocol, utilizes a large dose of the sedative midazolam as the first drug to render the prisoner unconscious."). Even if this Court might ultimately conclude otherwise upon further development of Count 3 (and that conclusion is affirmed on appeal), this claim would be moot because the specter of a midazolam injection would no longer be arguably coercing Plaintiff to do anything. For all of these reasons, Count 6 is dismissed.

G. Count 7 — Access to Courts and Right to Counsel

Plaintiff claims that his First Amendment right to access the courts guarantees him two attorney-witnesses to his execution, who must have immediate access to a telephone and to each other. (Doc. No. 51 at 139–42.) Defendants assert that this claim is non-justiciable, barred by the statute of limitations, and fails to state a claim. (Doc. No. 61 at 10, 24–25.)

25

First, Defendants assert that there is no case or controversy for the Court to adjudicate with respect to the telephone-access portion of this claim because they have agreed to provide Plaintiff's attorney-witness with access to a telephone throughout his execution. (Doc. No. 61 at 10.) Plaintiff responds that his claim is viable because this concession "can be reversed upon Defendants' whim," (Doc. No. 65 at 54), but he offers no basis to anticipate such a reversal. There is no statute or regulation preventing an attorney-witness's access to a prison telephone, *see* Memorandum and Order at 8, *Zagorski v. Haslam*, No. 3:18-cv-1205 (M.D. Tenn. Oct. 29, 2018) (Trauger, J.), and Defendants "affirmatively represent to the Court," subject to the requirements of Rule 11(b) of the Federal Rules of Civil Procedure, that "they will provide" such access. (Doc. No. 61 at 10.) Plaintiff does not identify any recent execution at which Defendants have failed to provide a telephone to an attorney-witness. The Court, therefore, agrees with Defendants that there is no live controversy with regard to telephone access subject to judicial review.

In light of the telephone access Defendants will provide to Plaintiff's attorney-witness, there does not appear to be any factual or constitutional basis for his demand for two such witnesses. Plaintiff affirmatively acknowledges that the telephone provided during previous executions is "on a wall inside the room where counsel viewed the execution," (Doc. No. 51 at 142), and he does not clearly allege any impediment to an attorney's simultaneously observing the execution while using the telephone. Plaintiff's allegations that he "requires the assistance of two defense attorneys during the execution" and that "[t]o provide adequate access to courts, two defense attorney witnesses must be present to view the execution" are wholly conclusory and fail to state a claim for which relief can be granted. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) ("We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not

suffice. The complaint's factual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.") (citations and internal quotation marks omitted).

Because Count 7 must be dismissed on these grounds, the Court finds it unnecessary to resolve the parties' dispute about the statute of limitations.

IV.    Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted in part, and Counts 1, 2, and 4–7 are dismissed. Defendants' motion is denied with respect to Count 3.


_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE