IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| TERRY LYNN KING, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TONY PARKER, et al., ) <br> ) <br> Defendants. ) | **CAPITAL CASE** <br><br> Case No. 3:18-cv-01234 <br><br> JUDGE CAMPBELL |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO RECONSIDER**

Defendants Tony Parker, Commissioner of the Tennessee Department of Correction ("TDOC"), and Tony Mays, Warden of Riverbend Maximum Security Institution, respectfully request under Fed. R. Civ. P. 54(b) that the Court reconsider its recent discovery order, (D.E. 108), for the reasons set forth below.

**PROCEDURAL BACKGROUND**

In Count Three, the sole remaining count of the Complaint, Plaintiff, a death-row inmate, challenges Tennessee's three-drug lethal injection protocol ("the Protocol") on the grounds that it violates the Eighth and Fourteenth Amendments. (D.E. 51, PageID# 2211.) He alleges that the Protocol is unconstitutional as written and as applied. (D.E. 51, PageID# 2251–68.) The allegations Plaintiff categorizes as presenting his as-applied challenge are: (1) the execution team might improperly administer the lethal injection chemicals; (2) Plaintiff's breathing might be impaired during the execution; (3) Plaintiff might experience a paradoxical effect from the injection of midazolam; (4) the restraints on Plaintiff's hands and fingers might cause him to suffer; (5) the execution team might not actually prepare two sets of lethal injection chemicals; and (6) if

1

the lethal injection chemicals are improperly stored and transported, it would create a substantial risk of severe pain. (D.E. 51, PageID# 2251–68.) But, in fact, these allegations merely present potential failings that could happen in his execution (maladministration claims) yet provide no factors, unique to the plaintiff, that would transform his claim into an as-applied challenge.

Responding to these allegations, Defendants previously filed a motion for judgment on the pleadings in which they argued that Plaintiff's purported as-applied challenges about the risks of maladministration are, in fact, non-viable facial challenges to the Protocol. (D.E. 87, 88.) While this motion for judgment on the pleadings was pending, Defendants filed a motion for a protective order that addressed, among other issues, the irrelevancy of the discovery Plaintiff seeks concerning his allegations about the risks of maladministration. (D.E. 90–91, 97, 100.)

After these motions were fully briefed, the Court ruled on Defendants' motion for judgment on the pleadings and stated as follows regarding Plaintiff's allegations about the risks of maladministration:

> [T]he allegations in question *do not appear to the Court to assert an independent claim for relief based on the risks of maladministration*. Instead, those allegations simply assert facts Plaintiff believes to be relevant to his burden to show that execution with midazolam is sure or very likely to cause needless pain and suffering. *Whether the alleged facts support Plaintiff's claim or are even relevant to it are matters to be determined at a later date*. The Court sees no need at this time to proceed paragraph by paragraph through Plaintiff's surviving claim to determine the legal viability of each allegation.

(D.E. 101, PageID# 5030–31) (emphasis added).

In a separate, later order, the Court ruled on the motion for a protective order and held that (1) discovery related to Plaintiff's allegation that the execution team might improperly administer the lethal injection chemicals is "[]not . . . irrelevant" to Plaintiff's Eighth Amendment challenge and (2) discovery related to Plaintiff's allegation that there is a substantial risk Plaintiff will experience pain if the lethal injection chemicals are improperly stored and transported is "relevant

2

to Plaintiff's Eighth Amendment claims." (D.E. 107, PageID# 5115, 5117.) The Court's order requires Defendants to produce information about the skills, training, and experience of the current execution team members as well as information about the purchase, compounding, transportation, and storage of the lethal injection chemicals. *Id.*

Defendants respectfully move the Court to reconsider this holding.

## LEGAL STANDARD

"While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, '[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.'" *Parker v. Robertson*, 34 F. Supp. 3d 859, 860–61 (M.D. Tenn. 2014) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). "Courts traditionally will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice." *Trimboli v. Old Republic Ins. Co.*, No. 3:18-CV-00346, 2020 WL 3546810, at *4 (M.D. Tenn. June 30, 2020).

## ARGUMENT

Defendants should not be required to produce information that relates to allegations the Court has yet to deem relevant to Plaintiff's challenge to the Protocol as written, and the Court has authority to reconsider its order to the contrary. Discovery is limited to that which is relevant to a claim in the case, and it is a clear error of law to require a party to provide discovery that is irrelevant to the claim in a case. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's *claim* . . . ." (emphasis added)). The

3

discovery that has been ordered is not relevant to the only remaining claim in this case—a facial challenge to the Protocol.

### A. Plaintiff's maladministration claim presents a facial challenge to the Protocol.

In the context of method-of-execution challenges, the Supreme Court has recognized two types of claims: facial challenges and as-applied challenges. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019). Generally, facial challenges oppose a method of execution protocol *as written* and allege that even if perfectly followed, the protocol presents an unconstitutional risk of pain. *Glossip v. Gross*, 135 S. Ct. 2726, 2735, 2740 (2015). Relevant to as-written facial challenges are the words of the Protocol itself and the details of the training required by the Protocol to be provided to the persons and entities responsible for carrying out the Protocol. *See West v. Schofield*, 460 S.W.3d 113, 126 (Tenn. 2015) ("The Protocol must be assessed on its face against the constitutional challenges levied by the Plaintiffs.")

As-applied challenges allege that a method of execution is unconstitutional as applied to a specific inmate due to the particular circumstances of the inmate, such as the inmate's "unique medical condition." *Bucklew*, 139 S. Ct. at 1126; *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012) ("While a facial challenge invokes the rights of others, an as-applied challenge is confined to the *particular circumstance* of the plaintiff." (emphasis added)); *see also West*, 460 S.W.3d at 130–31 ("[T]he Complaint contains no specific allegation as to how the Protocol is unconstitutional as applied to any individual Plaintiff. Therefore, we question whether the allegations of the Complaint actually are sufficient to constitute an as-applied challenge to the Protocol." (footnote omitted)).

Allegations that an execution protocol will be maladministered, like those in Count Three of Plaintiff's complaint, are *facial* challenges—they concern the circumstances of all death row

inmates. Typically, allegations about the risks of maladministration fail as a matter of law when the execution protocol at issue contains sufficient safeguards to reduce a risk of maladministration to a constitutionally acceptable level.[1] *Baze v. Rees*, 553 U.S. 35, 55–56 (2008) ("In light of these safeguards, we cannot say that the risks identified by petitioners are so substantial or imminent as to amount to an Eighth Amendment violation."). Indeed, *Baze* "has all but foreclosed" allegations of maladministration. *Cooey v. Strickland*, 589 F.3d 210, 225 (6th Cir. 2009). It is only after a Court determines the safeguards contained in an execution protocol are insufficient to guard against alleged risks of maladministration that information related to allegations about the risks of maladministration, such as the backgrounds of specific execution team members, might become relevant to a case. *Cooey*, 589 F.3d at 223–27.

**B.     The ordered discovery is not relevant to Plaintiff's facial challenge.**

In ruling on Defendants' motion for judgment on the pleadings, the Court found that Plaintiff's challenge to the three-drug protocol as written states a claim upon which relief can be granted. (D.E. 101, PageID# 5025–30.) The Court then determined that the allegations related to maladministration, while not sufficient to state an independent basis for relief under the Eighth

---

[1] The Supreme Court has indicated that in certain circumstances allegations about a risk of maladministration might be constitutionally cognizable even when the execution protocol at issue contains sufficient safeguards against the potential risk, but the allegations in such cases must be quite severe. *See Baze*, 553 U.S. at 50 ("As Justice Frankfurter noted in a separate opinion based on the Due Process Clause, however, 'a hypothetical situation' involving 'a series of abortive attempts at electrocution' would present a different case. . . . In other words, an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" (citations omitted)). And according to the Sixth Circuit, in such circumstances, inmates must allege a pattern of reckless or intentional misconduct on the part of the state— allegations of negligence are insufficient. *Cooey*, 589 F.3d at 225 ("Speculations, or even proof, of medical negligence in the past or in the future are not sufficient to render a facially constitutionally sound protocol unconstitutional."). Plaintiff's allegations do not meet these standards.

Amendment, might be relevant to the facial challenge to the Protocol as written. (D.E. 101, PageID# 5030–31.) The Court stated in its order, "[w]hether the alleged facts [about the risks of maladministration] support Plaintiff's claim or are even relevant to it are matters to be determined at a later date." (D.E. 101, PageID# 5031).

Even though the Court has not determined that the discovery Plaintiff seeks is relevant to his facial challenge to the Protocol as written, the Court has now ordered Defendants to provide discovery about the allegations of the risks of maladministration. The discovery that has been ordered is not relevant to Plaintiff's claim that the Protocol is unconstitutional on its face.

Information about the training and experience of individual members of the execution team and details about storage and transportation of the lethal injection chemicals is not relevant to Plaintiff's challenge to the Protocol as written. *West*, 460 S.W.3d at 126. This discovery is only relevant, if at all, to Plaintiff's allegations about the risks of maladministration. *See* (D.E. 107, PageID# 5115, 5117) (describing the requested discovery as relevant to Plaintiff's allegations that "TDOC's execution team is not properly trained and has failed in the past to follow the lethal-injection execution protocol as written"). But before requiring discovery related to allegations about the risks of maladministration, the Court should determine whether the Protocol itself is facially insufficient to guard against such allegations. *See Cooey*, 589 F.3d at 225.

Indeed, in a remarkably similar case, the Eighth Circuit considered this exact issue and concluded that discovery is inappropriate in these circumstances. In *Clemons v. Crawford*, 585 F.3d 1119, 1128 (8th Cir. 2009), *cited with approval in Cooey*, 589 F.3d at 221, 224, the plaintiffs—death row inmates—brought an Eighth Amendment method-of-execution challenge in which they alleged Missouri's execution team was insufficiently trained and, consequently, there was a substantial risk the execution team would deviate from the execution protocol as written.

*Id.* at 1122. The defendants moved for judgment on the pleadings, and the district court initially denied "but later reconsidered *sua sponte* and granted" the defendants' motion. *Id.* On appeal, the plaintiffs argued that the district court should have permitted them to discover "the backgrounds or characteristics of individual members of Missouri's execution team." *Id.* at 1128. But the Eighth Circuit affirmed the district court, holding that the case should be dismissed since Missouri's protocol contained sufficient safeguards against the risks of maladministration and, consequently, plaintiffs were not entitled to discovery about the individual members of the execution team. *Id.*

*Clemmons* demonstrates that reconsideration is appropriate here, just as it was in that case. By refraining from determining "[w]hether the alleged facts [about the risks of maladministration] support Plaintiff's claim or are even relevant," (D.E. 101, PageID# 5030–31), and instead, requiring Defendants to provide discovery related to Plaintiff's risk of maladministration claims, the discovery order deviates not only from Sixth Circuit precedent and persuasive precedent from other circuits, *see Cooey*, 589 F.3d at 225; *Clemons*, 585 F.3d at 1128, but also from the requirements of the Federal Rules of Civil Procedure.

The order contravenes Fed. R. Civ. P. 12(b)(6) by requiring discovery related to allegations that have not been determined to state a claim upon which relief can be granted. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of Fed. R. Civ. P. 12(b)(6) 'is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987))); *see also Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases

7

that will not survive summary judgment."). And the order deviates from Fed. R. Civ. P. 26 by requiring production of information that is irrelevant to the only challenge the Court has determined to state a claim upon which relief can be granted—Plaintiff's facial challenge to the Protocol as written. (D.E. 101, PageID# 5030.)

In sum, the portion of the discovery order requiring disclosure of this information should be reconsidered and vacated, because requiring Defendants to produce this information is a clear error of law.

## CONCLUSION

For these reasons, Defendants' motion to reconsider should be granted.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
Scott.Sutherland@ag.tn.gov

s/ *Rob Mitchell*
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Robert.Mitchell@ag.tn.gov

s/ *Miranda Jones*
MIRANDA JONES
Assistant Attorney General
B.P.R. No. 36070
Miranda.Jones@ag.tn.gov

Law Enforcement and
Special Prosecutions Div.
Office of the Attorney General
and Reporter
P.O. Box 20207

Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-4892

## CERTIFICATE OF CONSULTATION

Pursuant to Local Rule 7.01(a), I certify that on August 5, 2020, and August 7, 2020, I consulted with opposing counsel, Mr. Stephen M. Kissinger, concerning this motion, and we were unable to reach an agreement.

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that on the 7th day of August 2020, a copy of the foregoing memorandum of law was filed and served by operation of the Court's ECF/PACER system on the following counsel for the Plaintiff: Stephen M. Kissinger, Asst. Federal Community Defender, 800 S. Gay Street, Suite 2400, Knoxville, TN 37929.

s/ *Scott C. Sutherland*
SCOTT C. SUTHERLAND
Deputy Attorney General
