# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY LYNN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-01234 |
| | ) | Judge Campbell/Frensley |
| TONY PARKER, et al., | ) | |
| | ) | |
| Defendants. | ) | **CAPITAL CASE** |

## ORDER

## I.  INTRODUCTION

In this capital case, Plaintiff Terry Lynn King filed suit against Defendants Tony Parker, Commissioner of the Tennessee Department of Correction ("TDOC") and Tony Mays, Warden of Riverbend Maximum Security Institution ("RMSI") to challenge the constitutionality of Tennessee's July 5, 2018 Execution Protocol and Procedures "the July 5th Protocol") on its face and as applied.  Docket No. 51 (Amended Complaint).  Fact discovery closed on October 22, 2021.  Docket No. 151.  The case is set to begin trial on August 3, 2022.  Docket No. 125.

This matter is now before the Court upon a discovery dispute set forth in a Joint Discovery Dispute Statement filed by the Parties.  Docket No. 163.  For the reasons set forth below, the Court will require Defendants to file an affidavit or declaration related to their document production and privilege log.

## II.  LAW AND ANALYSIS

### A.  Discovery Requests and Motions to Compel

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery.  Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1).  The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added).  "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court." *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135

F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1). The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted). "Relevance for purposes of discovery is broadly construed and the information sought need not be admissible to be discoverable." *T.C. ex rel S.C. v. Metro Gov't of Nashville & Davidson Cty.*, No. 3:17-01098, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at *17 (M.D. Tenn. July 9, 2018). "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5 (internal quotation marks and citation omitted).

The Court has the authority under Rule 26(b)(2)(C) to limit the frequency or the extent of discovery otherwise allowed by the rules. The Sixth Circuit has observed that "the desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Surles v. Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007), *quoting Scales v. J. C. Bradford*, 925 F. 2d 901, 906 (6th Cir. 1996). As to the judge's role in discovery disputes, "[t]he revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery." *Surles,* 474 F. 3d at 305.

B. **The Discovery Requests at Issue**

> **REQUEST FOR PRODUCTION NO. 7:** Produce all documents, communications, and materials in your custody, possession, or control used in or relating to developing, drafting, revising, or implementing the July 5th Protocol.

3

. . .

**REQUEST FOR PRODUCTION NO. 11:** Produce all documents, communications, and materials that you reviewed in determining whether you are in compliance with federal and Tennessee law in implementing the July 5th Protocol.

. . .

**REQUEST FOR PRODUCTION NO. 12:** Produce all documents, communications, and materials in your custody, possession, or control relating to any other method of execution other than the July 5th Protocol for the period of January 1, 2011 to present.

. . .

**REQUEST FOR PRODUCTION NO. 13:** Produce all documents, communications, or materials in your custody, possession, or control relating to any investigation, sanctions, or adverse action taken by or against any state or federal agency arising out of or relating to any execution for the period of January 1, 2011 to present.

. . .

**REQUEST FOR PRODUCTION NO. 14:** Produce all documents that Defendants, TDOC, or RMSI have produced or released pursuant to any Tennessee Public Records Act requests relating to any executions, drugs used in executions, and execution protocols for the period of January 1, 2011 to present.[1]

Docket No. 163, p. 2-5 (footnote omitted).

**C. The Parties' Discovery Dispute**

Fact discovery in this matter has now closed, and the Parties disagree as to whether Defendants have sufficiently met their obligations. Plaintiff contends that: 1) Defendants have not produced all responsive documents and must further explain their process for searching for

---

[1] The Parties have agreed to narrow the time period for this request to January 1, 2016 to present. Docket No. 163, p. 5.

and producing documents; and 2) Defendants' one-item privilege log is insufficient and must be supplemented.  Docket No. 163.  Defendants argue that Plaintiff's objections are untimely, and that in any event, there are no more responsive documents to produce nor privileged documents to log.  *Id.*

1. **Defendants' Process and Additional Responsive Documents**

    As a preliminary matter, Defendants argue that Plaintiff's objections to their search and production efforts are untimely.  *Id.* at 13-15, 17-18.  Defendants assert that Plaintiff "did not inquire into the details of these efforts until October 21, 2021—three years after bringing this action, two years after discovery commenced, eight months after current counsel appeared, and the day before discovery closed after the third unopposed extension of time." *Id.* at 15 (footnote omitted).  "Neither two years ago, when Plaintiff served his first sets of interrogatories, requests for access, and requests for production, nor this year, when Plaintiff's current counsel served 14 new interrogatories, 148 new requests for admission, and 14 new requests for production, did Plaintiff seek discovery about discovery." *Id.* at 17.  "Indeed, Plaintiff never served any discovery request on Defendants[] seeking discovery about discovery." *Id.*  For his part, Plaintiff contends that "these issues have only recently come to light due to Defendants' continued delay in providing discovery." *Id.* at 9.

    While the Parties might have been better served by dealing with the mechanics of discovery earlier on in this case (including, for example, developing an ESI protocol), the Court finds that Plaintiff's objections to Defendants' process are not untimely.  Indeed, it would have been difficult for Plaintiff to assess the sufficiency of Defendants' production until fact discovery concluded.  Therefore, the Court will consider Plaintiff's assertions.

Plaintiff contends that "[i]t is evident from Defendants' piecemeal productions that they have failed to engage in a systemic and thorough search for responsive documents and that they are only producing documents that Plaintiff's counsel specifically requests in correspondences." Docket No. 163, p. 6, *citing* Docket No. 163-4. As support for this contention, Plaintiff cites certain items, that, he argues, exemplify this failure:

> For instance, two weeks ago—nearly a month after the close of fact discovery—Defendants produced supplemental documents to certain requests. One document produced referenced a set of potency testing results for midazolam and potassium chloride (two of the three drugs used in the current execution protocol). Another document indicates that Defendants have the lab report for this potency testing in their possession. Ex. F. Although clearly responsive to Plaintiff's requests, Defendants have failed to produce the lab report for this potency testing.

*Id.* at 10, *citing* Docket No. 163-6. Plaintiff argues that "[t]his gap in Defendants' production, which is emblematic of their discovery efforts, makes Plaintiff question how Defendants searched for responsive documents." *Id.*

Regarding Defendants' search process, Plaintiff contends that "Defendants have failed to disclose standard information about how they searched for responsive documents sufficient to allow Plaintiff to evaluate the adequacy of their searches." Docket No. 163, p. 6. Plaintiff asserts that while on certain dates, Defendants "informed Plaintiff that they were unaware of 'additional responsive documents . . .' for certain requests for production . . . [t]his, however, cannot be reconciled with Defendants' earlier responses to those same requests" because they "have never produced *any* responses to those requests . . . ." *Id.* at 7 (emphasis in original). Plaintiff asserts that Defendants are "unable or unwilling to explain this discrepancy" which "indicates that counsel has not undertaken the reasonable the reasonable effort required of it by the Rules of Civil Procedure and Administrative Order 174-1." *Id.* at 7-8. Plaintiff argues that

he is unable to determine whether Defendants have met their obligations because "counsel for the Defendants refused to disclose which custodians' files were searched for responsive documents and what search terms were used to search for responsive documents. . . ." *Id.* at 8. Plaintiff argues that while the Protective Order allows Defendants to avoid revealing certain information, "[t]he order does not, as Defendants now contend, permit Defendants to ignore their e-discovery preservation and production obligations entirely." *Id.*

Plaintiff further argues that "[i]t is not sufficient for defense counsel to simply state that they have received representations from Defendants about the extent of discoverable information and taken these representations at face value." *Id.* at 10. Plaintiff asks the Court to order Defendants to produce responsive documents as well as "an Affidavit or Declaration identifying the legal hold issued, the custodians searched, the search terms used, what records they searched, and how many responsive documents were found." *Id.* at 11 (footnote omitted).

Defendants maintain that they "implemented a multifaceted methodology designed to preserve all potentially relevant documents and to diligently search for and produce any responsive documents." They argue that "[n]ow, without a formal discovery request, Plaintiff wants Defendants to summarize the years of production and witnesses involved" and that "[b]ecause Plaintiff had ample opportunity to inquire obtain [*sic*] the information he now seeks, the Court should deny Plaintiff's request for additional discovery." *Id.* at 18. Defendants maintain that they "are not aware of additional documents that should be produced." *Id.* at 18. Nevertheless, Defendants have set forth details of their process, based on the Declaration of Debra Inglis, TDOC General Counsel. *Id.* at 18-23, *citing* Docket No. 163-8 (Inglis Declaration).

7

The Court finds that the Inglis Declaration adequately describes the process that Defendants have utilized to search for and produce relevant information. *See* Docket No. 163-8. Plaintiff has not demonstrated that Defendants' process is insufficient. Absent more convincing evidence from Plaintiff, the Court finds persuasive Ms. Inglis's Declaration, given under oath, that she is not aware of any additional responsive information. Docket No. 163-8. Nevertheless, Plaintiff has identified particular documents that, if they exist, would appear to be relevant and responsive. These include documents from the deposition of the Pharmacist (described in Docket No. 163-1) and the lab report of drug potency (referenced in Docket No. 163-6). While Defendants assert that they have already produced "many of these allegedly withheld documents in Bates-stamped productions in this case," the Inglis Declaration does not specifically discuss the production of these particular documents. *Id.* at 24; *see* Docket No. 163-8. Therefore, Defendants must file an affidavit or declaration stating under oath that they have produced all nonprivileged documents within their possession, custody, or control that are responsive to Requests for Production Nos. 7, 11, 12, 13, and 14.

2. **Supplementation of Privilege Log**

Plaintiff contends that "the fact [that] Defendants' privilege log produced in this action has only one entry . . . further suggests that Defendants have not conducted a sufficiently robust process for identifying responsive material." Docket No. 163, p. 6, *citing* Docket No. 163-3. Additionally, Plaintiff maintains that:

> The requests for production now at issue encompass a span of approximately ten years and include drafts of the execution protocol written by Debbie Inglis, general counsel for TDOC. When asked about the drafting process, Inglis testified that the drafting of Tennessee's execution protocol was a "group effort based on the drug procurer's information received from the pharmacist and information received from other states." Ex. G, Inglis Dep. 56:11-21. This type of collaboration would necessarily

> result in electronic files and communications being transmitted and received, and a proper response to Plaintiff's request for production would account for these documents.

*Id.* at 12, *citing* Docket No. 163-7.

Defendants respond that while "Plaintiff argues he is entitled to a privilege log with more entries . . . there are no additional entries to include," citing Administrative Order 174-1 (Defendants assert that no privileged documents generated after the filing of the complaint were produced or logged, with the sole exception of an email that was part of a document that was produced in error) and the Court's Protective Order, which, Defendants argue, "further excluded from production communications and transactions between any employee of TDOC and the pharmacy, as well as other, potential suppliers of lethal injection chemicals." *Id.* at 24-25, *citing* Docket No. 108. Regarding Plaintiff's other arguments, Defendants assert that "Plaintiff suggests that the existence of the one email on the privilege log implies the existence of others, and argues that the drafting of Tennessee's execution protocol being a group effort means it 'would necessarily result in electronic files and communications being transmitted and received,' but that simply is not true." *Id.* at 25.

While Plaintiff's belief in the existence of other privileged documents is not enough to undermine Defendants' adamant insistence that they do not exist, Defendants' assertion that an updated privilege log is unnecessary because no other privileged documents were discovered in the search and production process is similarly insufficient in light of certain ambiguities. This includes Defendants' erroneous interpretation of the Court's Protective Order, which does not, as Defendants assert, "exclude[] from production communications and transactions between any employee of TDOC and the pharmacy, as well as other, potential suppliers of lethal injection chemicals." *Id.* at 24-25. Instead, the Court's Order specifically protects from disclosure the

9

Case 3:18-cv-01234 Document 167 Filed 01/25/22 Page 9 of 10 PageID #: 5475

identities (and information likely to uncover the identities) of those individuals involved in Tennessee's executions. Docket Nos. 107, 108. Further, a one-item privilege log is indeed unusual, and the Inglis Declaration does not specifically address the issue of privileged documents. Therefore, within ten days of the issuance of this Order, Defendants must file with the Court an affidavit or declaration stating, under oath, that they have not discovered any other responsive documents that they are withholding on the basis of any privilege assertion.

### III. CONCLUSION

For the foregoing reasons, the Court will not order any additional discovery production at this time. But, Defendants must file an affidavit or declaration stating under oath that they have produced all nonprivileged documents within their possession, custody, or control that are responsive to Requests for Production Nos. 7, 11, 12, 13, and 14 and that they have not discovered any other responsive documents that they are withholding on the basis of any privilege assertion.

IT IS SO ORDERED.

**Jeffery S. Frensley**
**United States Magistrate Judge**