IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **TERRY LYNN KING,** | ) | |
| | ) | |
| Plaintiff, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | Case No. 3:18-cv-01234 |
| | ) | |
| **TONY PARKER, et al.,** | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

## SWORN STATEMENT OF DEBRA K. INGLIS

I, Debra K. Inglis, state as follows:

1. I am an adult over eighteen years of age, competent to testify, and have personal knowledge of the facts stated herein.

2. I am an attorney licensed in the State of Tennessee. Since April 1994, I have occupied the role of General Counsel for the Tennessee Department of Corrections (the "Department").

3. As part of my duties as General Counsel, I manage and supervise the Department's involvement in litigation challenging the constitutionality of Tennessee's procedures for execution by lethal injection. This includes coordinating with the Tennessee Attorney General's Office (the "AG") during the course of litigation, advising the Department and its executives regarding the status of litigation, interviewing and instructing document custodians regarding the collection and preservation of documents, searching for and collecting documents responsive to litigation matters, and providing those documents to the AG for use and production in litigation.

4. As part of my duties, I also manage and supervise the Department's responses to requests made under the Tennessee Public Records Act ("TPRA"). This includes cataloging the TPRA

requests, searching for and collecting the responsive documents, reviewing the documents for privilege or a legal basis for withholding the documents from any response, providing responses to the TPRA request, and cataloging those responses.

5. As explained in my December 1, 2021 declaration (D.E. 163-8), relevant to this litigation the Department has engaged in two methods of document collection and preservation in order to provide the AG's office with files responsive to Plaintiff's discovery requests. The first method involves identifying custodians relevant to this litigation and preserving their files, and, as discovery requests are generated in the course of litigation, collecting and producing to the AG's office the responsive documents. The second method involves identifying TPRA requests and their responses that involve execution and reproducing those requests and responses in this litigation.

6. Prior to the Court's January 25, 2022 order (D.E. 167), documents withheld on the basis of privilege generated after the filing of the complaint were not logged, based on reliance on the Court's Administrative Order 174-1, paragraph 8(b). Reliance on this privilege was communicated to Plaintiff's counsel. *See*, *e.g.*, D.E. 163-1, PageID# 5418.

7. However, the Court's January 25, 2022 order required Defendants to file an affidavit or declaration stating "that they have not discovered any other responsive documents that they are withholding on the basis of any privilege assertion." (D.E. 167, PageID# 5476.) As a result of this directive, Defendants determined that the Court required them to log all documents withheld on the basis of privilege—including those generated after the filing of the complaint—and so Defendants conducted a supplemental search to comply with their understanding of the Court's order.

8. Second and likewise, Defendants had previously relied on the Court's protective order (D.E. 107 and 108) as protecting from disclosure all "communications", "transactions", and "services" between TDOC and the Pharmacy. (D.E. 107, PageID# 5101-5102.) Plaintiff had previously moved to compel further disclosure of such documents in response to Plaintiff's interrogatories and corresponding requests for production, and that motion to compel was denied. (D.E. 108.)

9. Even after entry of the protective order, though, Defendants have produced over 107 pages of documents and communications between TDOC and the pharmacy. *See*, *e.g.*, Sept. 21, 2021 Def. 2nd Int. & RFP & RFA 000047-63, 86 – 139; Defts. Supp. Resp. 11.18.2021 000001-000038. Nonetheless, because the Court in its January 25, 2022 order stated that Defendants' reliance on these documents was an "erroneous interpretation" of the protective order, (D.E. 167, PageID# 5475), Defendants have conducted a supplemental search to provide requested documents that Defendants had believed were protected by the Court's protective order.

10. Third, because Defendants have supplemented their privilege log and conducted the described supplemental searches, Defendants also reviewed the inboxes of the following individuals for responsive documents (the results of which are summarized on the chart attached as Exhibit A):

- Defendant and Former Commissioner[1] Tony Parker;
- Defendant and Warden of Riverbend Maximum Security Institution Tony Mays;
- General Counsel Debbie Inglis; and
- The Drug Procurer.

11. A total of 564,867 documents were compiled, and the following search terms were run:

- "Lethal injection"
- "Execution protocol" ~ 2
- "Execution method" ~ 2

---

[1] Commissioner Parker retired in November 2021; Lisa Helton is the Interim Commissioner.

- Midazolam
- "Vecuronium bromide"
- "Potassium chloride"
- Pentobarbital
- "Terry King"
- "Terry Lynn King"
- Irick
- "Donnie Johnson"

12. These search terms resulted in a total of 3,948 documents for review. After deduplication, there were 3,802 documents to review.

13. After review, it was determined that 2,475 documents were nonresponsive to the requests in this case; 1,141 documents were responsive but privileged; and 186 documents were categorized as responsive and nonprivileged.

15. Further, of the 186 responsive and nonprivileged documents, 33 are at best marginally responsive because they relate to Google or other news alerts; 4 because they are notification letters to victims' family members about upcoming executions and a closely related communication; and 7 were provided to Plaintiff in previous productions.

16. In addition to the searches of inboxes and the pharmacy-related search detailed above, my office also searched through the file room mentioned in my December 1, 2021 declaration for any additional responsive documents that have not been turned over. Each potentially responsive file was reviewed for documents that may be responsive but had not been produced. Based on that supplemental search, 18 pages of documents were located and are being produced. These documents consist of 11 pages of voucher payments that correspond to documents produced in Defendants' initial disclosures; 2 pages where inmate Irick expressed his desire that no autopsy be performed on his body; 3 pages of an attorney-client email chain; and 2 pages detailing inmate Irick's use of time during the 72 hours leading up to his execution.

17. In addition to the searches detailed above, after an interview, the drug procurer produced screenshots of text messages between the drug procurer and the pharmacist.

18. A supplemental production and a supplemental privilege log have been produced.

19. As a result of these supplemental searches performed to comply with Defendants' understanding of the Court's January 25 order, Defendants are not withholding any additional documents based on any privilege assertion other than those that are logged on the supplemental privilege log. Nor are Defendants withholding responsive documents that have not been produced.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 14, 2022.

*Debra K. Inglis*
Debra K. Inglis
General Counsel
Tennessee Department of Correction

# Results of Document Search



**Total Documents Searched: 500,000**