# EXHIBIT
# 5

# KING

## vs.

## PARKER, et al.

---

### Volume II

# TONY PARKER

# November 22, 2021



Terri Beckham, RPR, RMR, CRR

Chattanooga (423)266-2332    Jackson (731)425-1222
Knoxville (865)329-9919    Nashville (615)595-0073    Memphis (901)522-4477
www.elitereportingservices.com

1

2          IN THE UNITED STATES DISTRICT COURT
3        FOR THE MIDDLE DISTRICT OF TENNESSEE
             NASHVILLE DIVISION

4  _____

5  TERRY LYNN KING,

6              Plaintiff,

7  vs.                    Case No. 3:18-cv-01234

8  TONY PARKER, et al.,

9              Defendants.
10 _____

11

12

13              Video Deposition of:

14              TONY PARKER
                Volume 2
15
                Taken on behalf of the Plaintiff
16
                November 22, 2021
17              Commencing at 11:36 a.m.

18

19

20

21

22 _____

        Elite-Brentwood Reporting Services
23        www.elitereportingservices.com
          Terri Beckham, RMR, CRR, LCR
24            P.O. Box 292382
          Nashville, Tennessee 37229
25            (615)595-0073

```
 1              A P P E A R A N C E S

 2    For the Plaintiff:

 3              DAVID R. ESQUIVEL
                JEREMY GUNN
 4              Attorneys at Law
                Bass, Berry & Sims PLC
 5              150 Third Avenue South, Suite 2800
                Nashville, Tennessee 37201
 6              615.742.6200
                desquivel@bassberry.com
 7              jeremy.gunn@bassberry.com

 8
      For the Defendants:
 9
                SCOTT C. SUTHERLAND
10              Deputy Attorney General
                Tennessee Attorney General's Office
11              P.O. Box 20207
                Nashville, Tennessee 37202
12              615.532.7688
                Scott.Sutherland@ag.tn.gov
13
                ROBERT W. MITCHELL
14              DEAN ATYIA
                CODY BRANDON
15              Assistant Attorneys General
                Tennessee Attorney General's Office
16              P.O. Box 20207
                Nashville, Tennessee 37202
17              615.741.2009
                Robert.Mitchell@ag.tn.gov
18              Dean.Atyia@ag.tn.gov
                Cody.Brandon@ag.tn.gov
19

20    Also present:

21              Augusta Smith, Videographer

22

23

24

25
```

I N D E X

                                                           Page

Examination
By Mr. Esquivel                                             174


                    E X H I B I T S

                                                           Page

Exhibit No. 83                                             175
      Declaration of Tony C. Parker

1                     S T I P U L A T I O N S

2

3

4

5          The Video Deposition of Tony Parker,

6   Volume 2, was taken by counsel for the Plaintiff,

7   at Bass, Berry & Sims, 150 Third Avenue South,

8   Suite 2800, Nashville, Tennessee, on November 22,

9   2021, for all purposes under the Federal Rules of

10  Civil Procedure.

11          All formalities as to caption, notice,

12  statement of appearance, et cetera, are waived.

13  All objections, except as to the form of the

14  question, are reserved to the hearing, and that

15  said deposition may be read and used in evidence in

16  said cause of action in any trial thereon or any

17  proceeding herein.

18              It is agreed that Terri Beckham, RMR,

19  CRR, Notary Public and Licensed Court Reporter for

20  the State of Tennessee, may swear the witness, and

21  that the reading and signing of the completed

22  deposition by the witness were waived.

23

24

25

Elite-Brentwood Reporting Services
www.EliteReportingServices.com

```
 1                        * * *

 2              THE VIDEOGRAPHER:  We are now on the

 3    record.  Today is Monday, the 22nd of November,

 4    2021, and the time indicated on the video screen is

 5    11:36 a.m.

 6              This is the continuation of the video

 7    deposition of the commissioner of the Tennessee

 8    Department of Corrections, Tony Parker, in the

 9    matter of Terry Lynn King versus Tony Parker et al.,

10    Case No. 3:18-CV-01234, filed in the United States

11    District Court, Middle District of Tennessee,

12    Nashville, Tennessee division.

13              This deposition is being held today in

14    the office of Bass Berry & Sims at 150 Third Avenue

15    South in Nashville, Tennessee.

16              My name is Augusta Smith, videographer,

17    and the court reporter is Terri Beckham, both in

18    association with Elite-Brentwood Reporting Services.

19              At this time I'll have counsel identify

20    yourselves and state whom you represent.  We'll

21    start with the noticing attorney.

22              MR. ESQUIVEL:  David Esquivel with Bass

23    Berry & Sims, representing the plaintiff, Terry

24    King.

25              MR. MITCHELL:  Rob Mitchell with the
```

```
1    Tennessee Attorney General's office, representing

2    defendant Tony Parker and defendant Warden Tony

3    Mays.

4              THE VIDEOGRAPHER:  Will the court

5    reporter please swear in the witness.

6

7                        *  *  *

8                    TONY PARKER

9    having been duly sworn, testified as follows:

10

11                    EXAMINATION

12   QUESTIONS BY MR. ESQUIVEL:

13   Q.    Mr. Parker, good morning.  Thank you for

14   coming back.

15   A.    Yes, sir.

16   Q.    We're here this morning to ask some followup

17   questions to your deposition that took place about a

18   month ago.

19         As you remember, I was asking you questions

20   about your conversation with governors Haslam and

21   Lee, and on the advice of your counsel you didn't

22   answer those questions, invoking the privilege.

23         Since that time we've had the opportunity to

24   present that issue to the Court, and the Court has

25   allowed us to reopen the deposition, finding that
```

Elite Reporting Services * (615) 595-0073
www.EliteReportingServices.com

```
 1    those questions were proper.  So that's what we're

 2    going to do here this morning.

 3          Is that your understanding of what the

 4    purpose of today's deposition is?

 5    A.    Yes, it is.

 6    Q.    Is there any reason why you can't give

 7    truthful and accurate testimony this morning?

 8    A.    No.

 9    Q.    Did you do anything to prepare for today's

10    deposition?

11    A.    I did not.

12    Q.    Did you meet with your counsel?

13    A.    I have not met with anybody nor spoken to

14    anybody about this deposition.

15              (WHEREUPON, the above-mentioned

16    document was marked as Exhibit Number 83.)

17    BY MR. ESQUIVEL:

18    Q.    The court reporter has given you a document

19    that's marked Exhibit 83.  Do you see that that?

20    A.    I do.

21    Q.    What is that document?

22    A.    It's a declaration, my declaration, regarding

23    my conversations with Governor Haslam and Governor

24    Lee.

25    Q.    And on the third page of that document, is
```

1  that your signature?

2  A.    It is.

3  Q.    And did you sign this document under the

4  penalty of perjury?

5  A.    I did.

6  Q.    I want to go through the declaration and ask

7  you some questions about these conversations that

8  are contained in your declaration.

9  A.    Okay.

10  Q.    Starting with your conversations with

11  Governor Lee, as I understand it from your

12  declaration, you recall having had only one

13  conversation with Governor Lee about executions; is

14  that right?

15  A.    That's correct.

16  Q.    And in that conversation you all discussed

17  three different areas, and I want to ask you about

18  each one of those in turn.

19         You say in your declaration that you and

20  Governor Lee discussed the importance of providing

21  spiritual counseling to inmates with imminent

22  execution dates.  Can you tell me about the

23  substance of the conversation on that point?

24  A.    As most people know, Governor Lee is a very

25  spiritual man and governor.  He's a Christian, as I

Case 3:18-cv-01234 Document Report Filed Services Page (605) 10 of 28 PageID #: 6176
Elite Reporting Services
www.EliteReportingServices.com

1    am.  The conversation centered around inmates having

2    access, make sure they had access to a spiritual

3    advisor and wanting, you know, to make sure that --

4    the gist of the conversation was basically that

5    inmates had someone, a spiritual advisor, to speak

6    to, to talk to, to make sure that, as Governor Lee

7    believes and I believe, that someone facing death

8    should make sure that they've made -- had the

9    opportunity to make decisions that could determine

10   their fate after they leave this world.  And

11   basically that was it.

12   Q.    Do you recall specifically what you said

13   during the course of that conversation on that

14   issue?

15   A.    I don't remember the details exactly what I

16   said.  The gist, though, of the conversation was all

17   around the issue of inmates having access to a

18   spiritual advisor, not wanting to see any inmate

19   that is facing death to not have the opportunity to

20   discuss and talk about decisions that we as

21   Christians believe determines where you'll spend

22   eternity.  That was the gist of the conversation.

23   Q.    Did you describe for Governor Lee what the

24   process was for providing spiritual counseling to

25   inmates who face an imminent execution?

```
1   A.    I did not.  I think, again, the conversation
2   was around just the fact that -- my assurance that
3   inmates had opportunities to hear the gospel, to
4   hear -- I know Warden Mays himself, he's made it
5   clear to me he's a Christian.  I know Warden Mays.
6   That we want to make sure inmates have access to
7   spiritual advisors, to even, you know, just like
8   with Warden Mays, being the warden, make sure that
9   these people have access to spiritual advisors to
10  answer any questions or to let them talk about, you
11  know, what their feelings are.
12  Q.    Do inmates who face imminent executions have
13  access to spiritual advisors?
14  A.    Yes.
15  Q.    Can you describe for me generally what that
16  access consists of?
17        MR. MITCHELL:  I object.  That's beyond
18  the scope of the Court's order.  I'll let the
19  commissioner answer that, but that is beyond the
20  scope of the Court's limine order.
21        THE WITNESS:  They have access, daily
22  access and right up until an hour or two before
23  execution, access to a spiritual advisor.  And
24  certainly Warden Mays, I know, goes out of his way
25  to assure that, you know, inmates have that access.
```

1  BY MR. ESQUIVEL:

2  Q.     After this conversation with Governor Lee,

3  did you make any changes in this area, meaning

4  inmates' access to spiritual advisors?

5  A.     No, I did not.

6  Q.     I want to go now to the second topic of

7  conversation with Governor Lee.  This is in

8  paragraph 9 of your declaration.

9  A.     Okay.

10  Q.     You said that you discussed how your

11  religious convictions influenced you and Governor

12  Lee to want spiritual counseling for inmates.

13        What did Governor Lee say to you about how

14  his religious convictions influenced him to want

15  spiritual counseling?

16  A.     Well, as I've said, Governor Lee has made it

17  very public he's a man of faith, a Christian.  As a

18  Christian he would believe that inmates should

19  obviously accept Christ as their savior to be saved

20  and to have everlasting life.  That was a

21  conversation that me and him shared together.  We

22  have mutual feelings.

23        The specifics of what he said or what I said

24  I can't remember exactly, but it was the fact that,

25  again, I assured him that inmates had access to

Case 3:18-cv-01234 Document Report Filed 03/17/22 Page 13 of 28 PageID #: 6179
Elite Brentwood Reporting Services (615) 595-0073
www.EliteReportingServices.com

1  spiritual advisors and that it was important to me

2  as commissioner, it was important to the warden,

3  and he seemed satisfied with that.

4  Q.    When did this conversation take place?

5  A.    It would have been prior to the first

6  execution that Governor Lee had under his term as

7  governor.  I don't remember the exact time or date.

8  Q.    The third thing that you all talked about was

9  the State of Tennessee's responsibility in carrying

10  out death sentences.

11      What did Governor Lee tell you about that

12  topic?

13  A.    He didn't -- best of my recollection, he

14  didn't tell me anything about that topic.  I think I

15  shared with him, as commissioner of the department

16  and having been through some executions, that I

17  realized and -- that it was the State of Tennessee's

18  duty and my responsibility to ensure, you know,

19  executions as ordered by the Court were carried out

20  per protocol.

21      That was basically it.  Governor Lee didn't

22  share a lot about that, really, to me, that I

23  remember.

24  Q.    Did he share anything about that?

25  A.    Not that I can remember.

Case 3:18-cv-01234  Document 302-5  Filed 03/17/22  Page 14 of 28  PageID #: 6734
Elite Court Reporting Services  (615) 595-0073
www.EliteReportingServices.com

```
 1   Q.      Do you recall whether you said anything else

 2   to Governor Lee in that conversation about the

 3   State's responsibility in carrying out that

 4   sentence?

 5   A.      No.  No, again, I think the -- the gist of

 6   the conversation was about making sure inmates had

 7   access to spiritual advisors and that, as

 8   commissioner of the department and as the Department

 9   of Corrections was responsible for overseeing the

10   judicial-ordered executions of people in Tennessee.

11   Q.      Do you recall any other conversation with

12   Governor Lee about executions, aside from the one

13   you've testified to now?

14   A.      I do not.

15   Q.      Have you had any conversations with Governor

16   Lee since you submitted this declaration about

17   executions?

18   A.      I have not.

19   Q.      Have you had -- did you have -- have you had

20   any written communications with Governor Lee about

21   executions?

22   A.      I have not.

23   Q.      Have you had any electronic communications by

24   email, text or any other electronic means about

25   executions with Governor Lee?
```

Case 3:18-cv-01234 Elite Reporting Services • (615) 595-0073 Page 15 of 28 PageID #: 6179
Case 3:18-cv-01234 Document 326-3 Filed 06/17/22 Page 65 of 285 PageID #: 6179
www.EliteReportingServices.com

```
 1  A.      I have had no form of communication, written,
 2  texts, sign language or anything else with Governor
 3  Lee about executions in Tennessee.
 4  Q.      No smoke signals?
 5  A.      No smoke signals.
 6  Q.      Now, your declaration also talks about two
 7  conversations you had with Governor Haslam about
 8  execution.  The first you said was informing
 9  Governor Haslam why TDOC was going to begin
10  researching lethal injection protocols besides the
11  one drug, pentobarbital, protocol.
12          Tell me what you informed Governor Haslam
13  during that conversation.
14  A.      That basically the Department of Corrections
15  could not obtain the pentobarbital and that we would
16  have to look for another form of drugs for lethal
17  injection.  That was the -- that was primarily the
18  conversation.
19  Q.      Did you tell Governor Haslam why
20  pentobarbital was unavailable?
21  A.      I just told him that we could not obtain it
22  and we had made, you know, efforts to obtain it, we
23  had tried to obtain it.  And that I had someone on
24  staff, that was one of their primary
25  responsibilities, to obtain the drug, and they were
```

Case 3:18-cv-01234 Document 362 Filed 03/17/22 Page 16 of 28 PageID #: 6772
EliteReportingServices.com
www.EliteReportingServices.com

```
 1   unsuccessful.
 2          That was the conversation regarding
 3   pentobarbital.
 4   Q.     Did you specify for Governor Haslam exactly
 5   what means or method you had used to try to secure
 6   pentobarbital?
 7   A.     I may have.  I don't think -- I don't
 8   remember having that conversation.  It would have
 9   been logical, probably, for me to talk about the
10   efforts we had made, but I don't remember the
11   details of that.  I just remember making sure that
12   he knew that we could not obtain pentobarbital and
13   had not been able to for some time and that we were
14   going to have to look at a different method.
15   Q.     Do you recall whether Governor Haslam asked
16   you any questions during the course of this
17   conversation?
18   A.     I do not.
19   Q.     Do you recall whether you had any questions
20   for Governor Haslam during this conversation?
21   A.     I don't remember any questions I had for him.
22   It was basically to let him -- to make sure he knew
23   and understood that we could not get pentobarbital.
24   Q.     And after you informed him about this, what
25   did Governor Haslam say?
```

Elite Reporting Services (615) 595-0073
www.EliteReportingServices.com

1  A.     I don't -- he didn't really have -- didn't

2  give me any directive one way or another.  There was

3  no directive.  It was more, again, of my informing

4  him of the situation.  I don't remember any specific

5  questions he had for me.

6  Q.     What was the purpose of informing Governor

7  Haslam about this?

8  A.     Well, obviously we had a protocol that was in

9  place that the governor knew we had a protocol in

10 place.  To change the protocol would be our

11 responsibility at the department, my responsibility.

12 And as commissioner, my thought that the governor

13 should know that the current drugs, as listed, we

14 did not have access to.  I wanted to make sure he

15 knew that.

16 Q.     Were you seeking his input or advice in terms

17 of securing alternate drugs or potentially the

18 availability of pentobarbital?

19 A.     Well, I think my primary goal was to make

20 sure he was informed, make sure that he knew.  As

21 far as what my motive was, that was the primary

22 motive.  Obviously, I mean, if he had objected or

23 had some other ideas I'm -- would have said that,

24 but he didn't -- that wasn't the conversation.

25 Q.     And did you also inform Governor Haslam in

Case 3:18-cv-01234 Document 227 Filed 03/17/22 Page 18 of 28 PageID #: 6784
Elite Brentwood Reporting Services (615) 595-0073
www.EliteReportingServices.com

1    this conversation that the Department of Correction

2    was considering looking at alternate drugs?

3    A.      I may have -- I don't remember saying that.

4    I just -- I remember the gist was that we could not

5    get pentobarbital, it was not available, and that

6    obviously if we went forward with a lethal injection

7    protocol that we could deliver, that we would have

8    to find alternate drugs if pentobarbital was not

9    available.

10   Q.      Let me ask you to look at paragraph 15 of

11   your declaration, just to make sure I understand the

12   whole scope of the conversation.

13          You said in your declaration that you

14   informed then-Governor Haslam that TDOC was unable

15   to procure pentobarbital for use in executions and

16   that TDOC was considering looking at alternative

17   drugs.

18   A.      Uh-huh.

19   Q.      It's that last part.  I want to know what you

20   had in mind when you signed this declaration, what

21   you remember about informing the governor about

22   alternate drugs.

23   A.      Basically that we would have to find

24   alternate drugs to pentobarbital because

25   pentobarbital was not available.

Case 3:18-cv-01234 Document Report Filed 06/17/22 Page 19 of 28 PageID #: 6779
Elite Reporting Services * (615) 595-0073
www.EliteReportingServices.com

1  Q.     Did you give some examples or leads as to

2  what alternate drugs you were considering?

3  A.     No, I don't remember doing that.  I just -- I

4  just remember telling -- you know, again, advising

5  him that pento was not available and that, unless we

6  were able to get pentobarbital, we would have to

7  use -- look at alternate drugs to replace the

8  pentobarbital in a lethal injection protocol.

9  Q.     When you were having this conversation with

10 Governor Haslam did you yourself have in mind

11 alternate drugs that you and the department were

12 pursuing?

13 A.     You mean specific drugs?

14 Q.     Yes.

15 A.     No.  At that time I don't remember having any

16 drugs that I had settled on that would -- that I

17 could present to him, no, I do not.

18 Q.     When did you have this conversation with

19 Governor Haslam?

20 A.     I don't -- I don't remember.

21 Q.     Do you know an approximate time period or

22 with reference to some event that was happening?

23 A.     Well, obviously it would have been before we

24 changed the protocol, but I -- you're asking me to

25 remember a date and time I just -- I don't know.

1    Q.    I understand.  If that's the best you can

2    remember, then that's understandable.

3          Did you have any other conversations with

4    Governor Haslam about executions?

5    A.    Not specifically other than the other

6    conversation that he thanked me and the members of

7    the team for our participation in the protocol.

8    Q.    And aside from that conversation can you

9    recall any other conversation you had with Governor

10   Haslam about executions?

11   A.    None.

12   Q.    Did you and the governor exchange any written

13   communications about executions?

14   A.    No, we did not.

15   Q.    Did you exchange any electronic

16   communications about executions?

17   A.    No, we did not.

18             MR. ESQUIVEL:  Can we go off the record?

19             THE VIDEOGRAPHER:  One moment, please.

20   Going off the record at 11:55 a.m.

21             (Recess observed from 11:55 a.m. to

22   11:58 a.m.)

23             THE VIDEOGRAPHER:  Back on the record at

24   11:58 a.m.

25   ///

Elite Brentwood Reporting Services (615) 595-0073
www.EliteReportingServices.com

```
1   BY MR. ESQUIVEL:

2   Q.      Mr. Parker, I have just a couple of followup

3   questions on timing.

4   A.      Okay.

5   Q.      Your second conversation with Governor Haslam

6   where he thanked you and senior TDOC staff, do you

7   remember when -- well, it said that that was -- took

8   place after an execution.  Do you remember whose

9   execution that was?

10  A.      I do not.

11  Q.      And do you have any general time period as to

12  when that execution took place?

13  A.      I'm sorry, I do not.

14  Q.      Do you know how much time elapsed, generally

15  or specifically, between your first conversation

16  with Governor Haslam about executions and this

17  second conversation?

18  A.      I do not.

19          MR. ESQUIVEL:  That's all the questions

20  I have, Commissioner.  Thank you very much for

21  coming back.

22          THE WITNESS:  Thank you.

23          THE VIDEOGRAPHER:  All right.  If there

24  are no further questions, this concludes the

25  deposition.  The time is 11:59 a.m.
```

Elite Brentwood Reporting Services  (615) 595-0073
www.EliteReportingServices.com

1      THE REPORTER:  Do you want this

2   transcribed?

3          MR. ESQUIVEL:  Yes.

4          THE REPORTER:  Do you want a copy?

5          MR. MITCHELL:  Yes, please.

6           FURTHER DEPONENT SAITH NOT

7        (Proceedings concluded at 11:59 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:18-cv-01234 Document Reporting Services Page 23 of 28 PageID #: 6789
Elite Brentwood Court Reporting Services (615) 595-0073
www.EliteReportingServices.com

```
 1                    REPORTER'S CERTIFICATE

 2

 3   STATE OF TENNESSEE

 4   COUNTY OF Davidson

 5

 6           I, Terri Beckham, RMR, CRR, and licensed

 7   Court Reporter, with offices in Nashville,

 8   Tennessee, hereby certify that I reported the

 9   foregoing deposition of TONY PARKER, Volume 2, by

10   machine shorthand to the best of my skills and

11   abilities, and thereafter the same was reduced to

12   typewritten form by me.  I am not related to any of

13   the parties named herein, nor their counsel, and

14   have no interest, financial or otherwise, in the

15   outcome of the proceedings.

16           I further certify that in order for this
     document to be considered a true and correct copy,
17   it must bear my original signature, and that any
     unauthorized reproduction in whole or in part
18   and/or transfer of this document is not authorized,
     will not be considered authentic, and will be in
19   violation of Tennessee Code Annotated 39-14-104,
     Theft of Services.
20

21

22   Terri Beckham, RMR, CRR, LCR
     Elite-Brentwood Reporting Services
23   Notary Public State of Tennessee

24   My Notary Public Commission Expires 3/6/2022
     LCR 355 - Expires: 6/30/2022
25
```

Case 3:18-cv-01234 Document 105-5 Filed 03/17/22 Page 145 of 205 PageID #: 6794
Elite-Brentwood Reporting Services (615) 595-0073
www.EliteReportingServices.com

**Exhibits**

**Ex 83 -**
**Tony Parker**
171:10 175:16,19

---

**1**

**11:36** 173:5
**11:55** 187:20,21
**11:58** 187:22,24
**11:59** 188:25
189:7
**15** 185:10
**150** 173:14

---

**2**

**2021** 173:4
**22nd** 173:3

---

**3**

**3:18-CV-01234**
173:10

---

**8**

**83** 175:16,19

---

**9**

**9** 179:8

---

**A**

**a.m.** 173:5 187:20,
21,22,24 188:25
189:7
**above-**
**mentioned**
175:15
**accept** 179:19
**access** 177:2,17
178:6,9,13,16,21,
22,23,25 179:4,25

181:7 184:14
**accurate** 175:7
**advice** 174:21
184:16
**advising** 186:4
**advisor** 177:3,5,
18 178:23
**advisors** 178:7,9,
13 179:4 180:1
181:7
**allowed** 174:25
**alternate** 184:17
185:2,8,22,24
186:2,7,11
**alternative**
185:16
**approximate**
186:21
**area** 179:3
**areas** 176:17
**association**
173:18
**assurance** 178:2
**assure** 178:25
**assured** 179:25
**attorney** 173:21
174:1
**Augusta** 173:16
**availability**
184:18
**Avenue** 173:14

---

**B**

**back** 174:14
187:23 188:21
**basically** 177:4,
11 180:21 182:14
183:22 185:23
**Bass** 173:14,22
**Beckham** 173:17
**begin** 182:9
**believes** 177:7

**Berry** 173:14,23

---

**C**

**carried** 180:19
**carrying** 180:9
181:3
**Case** 173:10
**centered** 177:1
**change** 184:10
**changed** 186:24
**Christ** 179:19
**Christian** 176:25
178:5 179:17,18
**Christians**
177:21
**clear** 178:5
**commissioner**
173:7 178:19
180:2,15 181:8
184:12 188:20
**communication**
182:1
**communications**
181:20,23 187:13,
16
**concluded** 189:7
**concludes**
188:24
**consists** 178:16
**contained** 176:8
**continuation**
173:6
**conversation**
174:20 176:13,16,
23 177:1,4,13,16,
22 178:1 179:2,7,
21 180:4 181:2,6,
11 182:13,18
183:2,8,17,20
184:24 185:1,12
186:9,18 187:6,8,
9 188:5,15,17
**conversations**
175:23 176:7,10
181:15 182:7

**187:3**
**convictions**
179:11,14
**copy** 189:4
**correct** 176:15
**Correction** 185:1
**Corrections**
173:8 181:9
182:14
**counsel** 173:19
174:21 175:12
**counseling**
176:21 177:24
179:12,15
**couple** 188:2
**court** 173:11,17
174:4,24 175:18
180:19
**Court's** 178:18,20
**current** 184:13

---

**D**

**daily** 178:21
**date** 180:7 186:25
**dates** 176:22
**David** 173:22
**death** 177:7,19
180:10
**decisions** 177:9,
20
**declaration**
175:22 176:6,8,
12,19 179:8
181:16 182:6
185:11,13,20
**defendant** 174:2
**deliver** 185:7
**department**
173:8 180:15
181:8 182:14
184:11 185:1
186:11
**DEPONENT**
189:6

**deposition** 173:7, 13 174:17,25 175:4,10,14 188:25

**describe** 177:23 178:15

**details** 177:15 183:11

**determine** 177:9

**determines** 177:21

**directive** 184:2,3

**discuss** 177:20

**discussed** 176:16,20 179:10

**District** 173:11

**division** 173:12

**document** 175:16,18,21,25 176:3

**drug** 182:11,25

**drugs** 182:16 184:13,17 185:2, 8,17,22,24 186:2, 7,11,13,16

**duly** 174:9

**duty** 180:18

**E**

**efforts** 182:22 183:10

**elapsed** 188:14

**electronic** 181:23,24 187:15

**Elite-brentwood** 173:18

**email** 181:24

**ensure** 180:18

**Esquivel** 173:22 174:12 175:17 179:1 187:18 188:1,19 189:3

**et al** 173:9

**eternity** 177:22

**event** 186:22

**everlasting** 179:20

**exact** 180:7

**EXAMINATION** 174:11

**examples** 186:1

**exchange** 187:12,15

**execution** 176:22 177:25 178:23 180:6 182:8 188:8,9,12

**executions** 176:13 178:10 180:16,19 181:10, 12,17,21,25 182:3 185:15 187:4,10, 13,16 188:16

**Exhibit** 175:16,19

**F**

**face** 177:25 178:12

**facing** 177:7,19

**fact** 178:2 179:24

**faith** 179:17

**fate** 177:10

**feelings** 178:11 179:22

**filed** 173:10

**find** 185:8,23

**finding** 174:25

**followup** 174:16 188:2

**form** 182:1,16

**forward** 185:6

**G**

**general** 188:11

**General's** 174:1

**generally** 178:15 188:14

**gist** 177:4,16,22 181:5 185:4

**give** 175:6 184:2 186:1

**goal** 184:19

**good** 174:13

**gospel** 178:3

**governor** 175:23 176:11,13,20,24, 25 177:6,23 179:2,7,11,13,16 180:6,7,11,21 181:2,12,15,20,25 182:2,7,9,12,19 183:4,15,20,25 184:6,9,12,25 185:21 186:10,19 187:4,9,12 188:5, 16

**governors** 174:20

**H**

**happening** 186:22

**Haslam** 174:20 175:23 182:7,9, 12,19 183:4,15, 20,25 184:7,25 185:14 186:10,19 187:4,10 188:5,16

**hear** 178:3,4

**held** 173:13

**hour** 178:22

**I**

**ideas** 184:23

**identify** 173:19

**imminent** 176:21 177:25 178:12

**importance** 176:20

**important** 180:1, 2

**influenced** 179:11,14

**inform** 184:25

**informed** 182:12 183:24 184:20 185:14

**informing** 182:8 184:3,6 185:21

**injection** 182:10, 17 185:6 186:8

**inmate** 177:18

**inmates** 176:21 177:1,5,17,25 178:3,6,12,25 179:12,18,25 181:6

**inmates'** 179:4

**input** 184:16

**invoking** 174:22

**issue** 174:24 177:14,17

**J**

**judicial-ordered** 181:10

**K**

**King** 173:9,24

**knew** 183:12,22 184:9,15,20

**L**

**language** 182:2

**leads** 186:1

**leave** 177:10

**Lee** 174:21 175:24 176:11,13,20,24 177:6,23 179:2,7, 12,13,16 180:6, 11,21 181:2,12, 16,20,25 182:3

Elite-Brentwood Reporting Services (615)595-0073
www.EliteReportingServices.com

**lethal** 182:10,16
185:6 186:8

**life** 179:20

**limine** 178:20

**listed** 184:13

**logical** 183:9

**lot** 180:22

**Lynn** 173:9

**M**

**made** 177:8 178:4
179:16 182:22
183:10

**make** 177:2,3,6,8,
9 178:6,8 179:3
183:22 184:14,19,
20 185:11

**making** 181:6
183:11

**man** 176:25
179:17

**marked** 175:16,19

**matter** 173:9

**Mays** 174:3 178:4,
5,8,24

**meaning** 179:3

**means** 181:24
183:5

**meet** 175:12

**members** 187:6

**met** 175:13

**method** 183:5,14

**Middle** 173:11

**mind** 185:20
186:10

**Mitchell** 173:25
178:17 189:5

**moment** 187:19

**Monday** 173:3

**month** 174:18

**morning** 174:13,

16 175:2,7

**motive** 184:21,22

**mutual** 179:22

**N**

**Nashville** 173:12,
15

**noticing** 173:21

**November** 173:3

**Number** 175:16

**O**

**object** 178:17

**objected** 184:22

**observed** 187:21

**obtain** 182:15,21,
22,23,25 183:12

**office** 173:14
174:1

**opportunities**
178:3

**opportunity**
174:23 177:9,19

**order** 178:18,20

**ordered** 180:19

**overseeing** 181:9

**P**

**paragraph** 179:8
185:10

**Parker** 173:8,9
174:2,8,13 188:2

**part** 185:19

**participation**
187:7

**penalty** 176:4

**pento** 186:5

**pentobarbital**
182:11,15,20
183:3,6,12,23
184:18 185:5,8,

15,24,25 186:6,8

**people** 176:24
178:9 181:10

**period** 186:21
188:11

**perjury** 176:4

**place** 174:17
180:4 184:9,10
188:8,12

**plaintiff** 173:23

**point** 176:23

**potentially**
184:17

**prepare** 175:9

**present** 174:24
186:17

**primarily** 182:17

**primary** 182:24
184:19,21

**prior** 180:5

**privilege** 174:22

**proceedings**
189:7

**process** 177:24

**procure** 185:15

**proper** 175:1

**protocol** 180:20
182:11 184:8,9,10
185:7 186:8,24
187:7

**protocols** 182:10

**providing** 176:20
177:24

**public** 179:17

**purpose** 175:4
184:6

**pursuing** 186:12

**Q**

**questions**
174:12,17,19,22
175:1 176:7
178:10 183:16,19,

21 184:5 188:3,
19,24

**R**

**realized** 180:17

**reason** 175:6

**recall** 176:12
177:12 181:1,11
183:15,19 187:9

**recess** 187:21

**recollection**
180:13

**record** 173:3
187:18,20,23

**reference** 186:22

**religious** 179:11,
14

**remember**
174:19 177:15
179:24 180:7,23,
25 183:8,10,11,21
184:4 185:3,4,21
186:3,4,15,20,25
187:2 188:7,8

**reopen** 174:25

**replace** 186:7

**reporter** 173:17
174:5 175:18
189:1,4

**Reporting** 173:18

**represent** 173:20

**representing**
173:23 174:1

**researching**
182:10

**responsibilities**
182:25

**responsibility**
180:9,18 181:3
184:11

**responsible**
181:9

**Rob** 173:25

Case 3:18-cv-01234 Document Rep 3 Filed 03/17/22 Page 215 of 528 PageID #: 6767
ELITE-Brentwood Reporting Services *(615) 595-0073
www.EliteReportingServices.com

**S**

**SAITH** 189:6

**satisfied** 180:3

**saved** 179:19

**savior** 179:19

**scope** 178:18,20 185:12

**screen** 173:4

**secure** 183:5

**securing** 184:17

**seeking** 184:16

**senior** 188:6

**sentence** 181:4

**sentences** 180:10

**Services** 173:18

**settled** 186:16

**share** 180:22,24

**shared** 179:21 180:15

**sign** 176:3 182:2

**signals** 182:4,5

**signature** 176:1

**signed** 185:20

**Sims** 173:14,23

**sir** 174:15

**situation** 184:4

**Smith** 173:16

**smoke** 182:4,5

**South** 173:15

**speak** 177:5

**specific** 184:4 186:13

**specifically** 177:12 187:5 188:15

**specifics** 179:23

**spend** 177:21

**spiritual** 176:21, 25 177:2,5,18,24 178:7,9,13,23 179:4,12,15 180:1 181:7

**spoken** 175:13

**staff** 182:24 188:6

**start** 173:21

**Starting** 176:10

**state** 173:20 180:9,17

**State's** 181:3

**States** 173:10

**submitted** 181:16

**substance** 176:23

**swear** 174:5

**sworn** 174:9

**T**

**talk** 177:6,20 178:10 183:9

**talked** 180:8

**talks** 182:6

**TDOC** 182:9 185:14,16 188:6

**team** 187:7

**telling** 186:4

**Tennessee** 173:7,11,12,15 174:1 181:10 182:3

**Tennessee's** 180:9,17

**term** 180:6

**terms** 184:16

**Terri** 173:17

**Terry** 173:9,23

**testified** 174:9 181:13

**testimony** 175:7

**text** 181:24

**texts** 182:2

**thanked** 187:6 188:6

**then-governor** 185:14

**thing** 180:8

**thought** 184:12

**time** 173:4,19 174:23 180:7 183:13 186:15,21, 25 188:11,14,25

**timing** 188:3

**today** 173:3,13

**today's** 175:4,9

**told** 182:21

**Tony** 173:8,9 174:2,8

**topic** 179:6 180:12,14

**transcribed** 189:2

**truthful** 175:7

**turn** 176:18

**U**

**Uh-huh** 185:18

**unable** 185:14

**unavailable** 182:20

**understand** 176:11 185:11 187:1

**understandable** 187:2

**understanding** 175:3

**understood** 183:23

**United** 173:10

**unsuccessful** 183:1

**V**

**versus** 173:9

**video** 173:4,6

**W**

**wanted** 184:14

**wanting** 177:3,18

**warden** 174:2 178:4,5,8,24 180:2

**world** 177:10

**written** 181:20 182:1 187:12

Elite-Brentwood Court Reporting Services/615-595-0073
www.EliteReportingServices.com