# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **TERRY LYNN KING,** | ) | |
| | ) | **Civil Action No. 3:18-cv-01234** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | <u>**CAPITAL CASE**</u> |
| | ) | |
| **TONY PARKER, et al.,** | ) | Judge William L. Campbell, Jr. |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
## MOTION FOR ADDITIONAL DISCOVERY AND SANCTIONS

Pursuant to Local Rule 7.01(a)(4), Plaintiff Terry King submits this reply memorandum in support of his Motion for Additional Discovery and Sanctions. (D.E. 180.) Defendants' Response to Plaintiff's Motion (D.E. 193) is notable for what it declines to address. First, the Response makes no attempt to explain the frequent representations by Ms. Inglis and counsel for Defendants that all responsive documents had been produced when, at the time they made those representations, Defendants had failed to identify and search hundreds of thousands of emails. Second, the Response does not explain Defendants' misstatements to Plaintiff and the Court, including a sworn statement that one of the defendants, Commissioner Parker, did not possess emails related to executions. *See* Inglis Dec. (D.E. 163-8) at ¶ 11, PageID# 5458 ("I understand from my interactions with Commissioner Parker that he does not have emails related to executions . . . .") That statement was false; Commissioner Parker had a number of emails related to executions, which were only revealed after this Court issued an order. Had Plaintiff not pressed Defendants over the past several months, they never would have come to light.

1

The parties held many meet and confers about these issues. Plaintiff has been asking Defendants about electronic discovery issues, including the identity of custodians whose files were searched and the search terms used, since October 2021 at the latest. (D.E. 163-1 at 5, PageID# 5420; 163-2 at 5, PageID# 5427.) Plaintiff has "made repeated, unfruitful attempts to resolve discovery issues and to obtain information missing from [Defendants'] disclosures before the motions for sanctions were filed." *Agilysys, Inc. v. Hall*, 2019 WL 3483173, at *3 (N.D. Ga. May 29, 2019). Those efforts resulted in more obfuscation, and the Response perpetuates the same pattern.

### A. Defendants misrepresented their discovery efforts to Plaintiff and the Court.

This dispute is about misrepresentations Defendants have made. Their defense is that the standard for compliance in discovery is reasonableness. Misrepresentations are not reasonable. Defendants rely on a comment to Rule 26(g)(3) that says, "what is reasonable is a matter for the court to decide on the totality of the circumstances," which addresses reasonableness of discovery *requests* rather discovery *responses*. But Defendants fail to quote the same source on the applicable requirement: "the signature [on responses] certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g)(3), cmt. to 1983 amendments. This is not a case where a party acted reasonably by fully disclosing what it had at the outset then producing a portion of what it held based on negotiated search terms. This is a case where Defendants misrepresented what was searched and available to be searched, even in the face of diligent and persistent inquiry by Plaintiff's counsel.[1]

---

[1] Defendants also point to *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 93 (D.D.C. 2017), to claim searches must only be reasonable. But that presumes a timely search was conducted at all. Here, it never was. Similarly, in another "reasonableness" case relied upon by Defendants,

Defendants' counsel and Ms. Inglis have repeatedly represented to Plaintiff and the Court that everything responsive had been produced. (D.E. 163-1 at 5, PageID# 5421; D.E. 163-2, at PageID# 5432; D.E. 163-8 at ¶ 27, PageID# 5460; D.E. 174 at ¶ 19, PageID# 5531.) And while Defendants rely on Ms. Inglis's declarations to show how much work they have done in discovery, (D.E. 193 at 9, PageID# 11413), those declarations contained statements that turned out to be untrue, most notably the assertions that Commissioner Parker had no emails related to executions (*E.g.*, D.E. 180 at 7, PageID# 5562) and that Warden Mays "engage[s] on a very limited basis in written communications regarding execution but instead compile[s] execution documentation in paper format . . . ." (Inglis Dec. (D.E. 163-8) at ¶ 9, PageID# 5457). *Cf.* Examples of Warden Mays emails (attached hereto as Exhibit 1).

Contrary to Defendants' suggestion, Plaintiff's counsel could not have deposed Ms. Inglis about discovery. (D.E. 193 at 7, PageID# 11411.) First, Defendants repeatedly refused to provide search terms and custodians when asked. (D.E. 163-1 at 5, PageID# 5420; 163-2 at 5, PageID# 5427.) Second, it was only months after her deposition that Plaintiff learned Ms. Inglis, not the Attorney General's Office, had been supervising discovery collection efforts. (D.E. 163-8 at ¶¶ 3, 5, PageID# 5455–56.) These misrepresentations echo a problematic reading of the Rules in a similar case imposing much more severe sanctions than are sought here:

> Union counsel's repeated representations *of full production* were made in response to Met counsel's continuing high-decibel allegations of failure to make adequate inquiry and repeated demonstrations of incomplete compliance and non-compliance with discovery requests. Met counsel's questions began soon after discovery commenced and continued unabated throughout the case. Union counsel

---

the documents in question existed only in hard copy form, and the court explicitly cautioned: "More generally, it is not the court's role to dictate how a party should search for relevant information *absent a showing that the party has abdicated its responsibility*." *Agerbrink v. Model Serv. LLC*, No. 14CIV7841JPOJCF, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017). Here, there is explicit evidence Defendants have abdicated their responsibilities.

3

> were given numerous last clear chances to comply with their discovery obligations.
> *That, in response, Local 100's counsel continually professed full compliance—falsely and, as confirmed by compliance discovery, without making a reasonable inquiry—constitutes such gross negligence as to rise to intentional misconduct.*

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) (emphasis added); *see also First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 2015 WL 5159140, at *3 (M.D. Fla. Sept. 2, 2015) ("[T]he repeated supplementation is an indication of an inadequate initial investigation followed by a disjointed effort to search for responsive documents only after the Court stepped in to address the deficiencies."). This kind of misconduct and its consequences are at issue, not the reasonableness of Plaintiff's requests.

### B. Defendants' discovery misconduct violates this Court's orders, and courts invoke their authority under Rule 37(b)(2) even absent a specific order.

Defendants argue that they have disobeyed no court order, thus sanctions under Rule 37(b)(2) are inappropriate. (D.E. 193 at 6, PageID# 11410.) However, Defendants ignore the clear discovery mandates contained in the Court's previous orders. Defendants continue to rely on the Court's order protecting the *identities* of participants in the search of lethal injection chemicals (D.E. 108) as shielding from discovery *any communications* between the Department of Corrections and potential suppliers of lethal injection chemicals. Defendants' motion leading to the entry of that order only concerned participants' identities; it did not seek to shield substantive communications. The Court's Order assumed that Defendants would produce all non-privileged documents and information responsive to Plaintiff's discovery requests, except for participants' identities. By refusing to produce—or even to search for—responsive documents until months after the fact discovery deadline, Defendants violated that order.[2] Even if that were not so, courts

---

[2] Defendants' discovery misconduct also violated the Court scheduling order, which required the parties to "complete all written discovery" by October 22, 2021 (D.E. 151), as well as

4

in similar circumstances have relied on the trial court's inherent power to regulate discovery and misconduct to order sanctions under Rule 37(b). *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("Courts have held that rule 37(b) sanctions can be imposed even without an existing order to compel."); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984); *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83 (S.D.N.Y. 1994) (quoted in 8B FED. PRAC. & PROC. *Civ*. § 2282 n.1 (3d ed.)).

When Judge Frensley issued an Order (D.E. 167) in response to the Joint Discovery Dispute Statement, Plaintiff's counsel assumed Ms. Inglis would simply restate what she had already said under oath – that everything had been produced. Plaintiff had no idea that the universe of documents withheld under Defendants' "erroneous" reading of the protective order constituted the entirety of electronic discovery. Defendants violated not only the Court's protective order by expanding it past all recognition (D.E. 107), but also the Court's scheduling order (D.E. 151), as well as Administrative Order 174-1. This is more than sufficient for relief under Rule 37 and the Court's inherent authority.

## **CONCLUSION**

Defendants' reliance on the protective order to ignore electronic discovery is unjustified. The protective order limits disclosure of the identities of individuals involved in executions. It does not excuse Defendants' obligation to search for, and produce or log, electronically-stored information. To shield hundreds of thousands of communications based on that order was intentionally obstructive. Plaintiff respectfully submits that the requested sanctions are appropriate and necessary to minimize prejudice to him caused by Defendants' discovery misconduct.

---

Administrative Order No. 174-1, which requires the parties "to discuss potential methodologies for identifying ESI for production."

Dated: April 6, 2022

Respectfully submitted,

*/s/ David R. Esquivel*
David R. Esquivel (TN # 21459)
Sarah B. Miller (TN # 33441)
Jeremy A. Gunn (PA # 320056)
Michael C. Tackeff (TN # 36953)
BASS, BERRY & SIMS PLC
150 Third Ave. South #2800
Nashville, TN 37201
Telephone: (615) 742-6200
desquivel@bassberry.com
smiller@bassberry.com
michael.tackeff@bassberry.com
jeremy.gunn@bassberry.com

-and-

Alex Kursman (PA Bar No. 306613)
Lynne Leonard (PA Bar No. 318897)
Hayden Nelson-Major (PA Bar No. 320024)
Anastassia Baldrige (PA Bar No. 329703)
Assistant Federal Defenders
Federal Community Defender Office for the
    Eastern District of Pennsylvania
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
(215) 928-0520

-and-

Amy Rao Mohan (TN # 31238)
Christopher C. Sabis (TN # 30032)
Alice Haston (TN # 38708)
SHERRARD ROE VOIGHT &
HARBISON, PLC
150 Third Ave. South, Suite 1100
Nashville, TN 37201
Telephone: (615) 742-4545
amohan@srvhlaw.com
csabis@srvhlaw.com
ahaston@srvhlaw.com

*Counsel for Terry Lynn King*

6

# CERTIFICATE OF SERVICE

       I certify that on April 6, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt which includes:

Cody N. Brandon
Miranda H. Jones
Robert W. Mitchell
Scott C. Sutherland
Mallory K. Schiller
Dean S. Atyia
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202-0207

                                            */s/ David R. Esquivel*
                                            David R. Esquivel