# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY LYNN KING, | ) | |
| Plaintiff, | ) | Civil Action No. 3:18-cv-01234 |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| TONY PARKER, et al., | ) | Judge William L. Campbell, Jr. |
| Defendants. | ) | |

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DENY OR DEFER CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(d)

---

Having steadfastly refused to provide information about their discovery in conferences with Plaintiff and misrepresented to Plaintiff and the Court the severe limitations of their discovery efforts, Defendants now force Plaintiff to respond to their Motion for Summary Judgment (the "MSJ" (D.E. 182–84)) without the benefit of essential discovery within their sole custody.[1] Pertinent to this issue and earlier today, the Court ruled in effect that Defendants must provide additional discovery. In an order filed this afternoon, the Magistrate Judge ordered Defendants to confer with Plaintiff "as to additional search terms to run on [Defendants'] newly-identified relevant electronic information," which is one of the subjects of this motion. (D.E. 198, PageID# 11705.) The Court further ordered the parties to meet and confer on "measures designed to

---

[1] Even as Defendants claimed they had inadequate resources to properly respond to Plaintiff's discovery requests served months before (D.E. 193, PageID #11405-06), Defendants moved for summary judgment based in part on the dearth of discovery they provided on issues relating to, for instance, their ability to obtain certain drugs. (D.E. 182–84, PageID# 5689-90.) This evidence is essential for Plaintiff to fully pursue his case.

1

increase transparency regarding Defendants' discovery efforts," citing the Court's agreement with Plaintiff that the electronic search terms suggested in his Motion for Additional Discovery and Sanctions (D.E. 179) were "fairly obvious" search terms that should have been run. The Magistrate Judge also cited this Court's prior finding that "Plaintiff was justified in his concerns that Defendants had not provided all relevant discovery, the privilege log was incomplete, and Defendants had not conducted electronic searches designed to identify all relevant documents." *Id.*[2]

Despite his best efforts, Plaintiff has been unable to obtain from Defendants essential evidence he would use to oppose the MSJ due to Defendants' previous refusals to be forthcoming on the issues raised herein. Now that Defendants have been ordered to meet and confer on these issues and provide further discovery, Plaintiff looks forward to advancing these issues. But there is likely insufficient time to delay consideration of the MSJ until the parties meet and confer, proceed with discovery (or brief any unresolved issues after the meet-and-confer, *then* proceed with discovery), and for Plaintiff to supplement or amend his opposition to the MSJ. Plaintiff's only recourse is to ask the Court to deny the MSJ in its entirety pursuant to Rule 56(d).

Nonetheless, Plaintiff has filed his opposition to the MSJ contemporaneously with this motion. Plaintiff's opposition to the MSJ provides amply sufficient reason by itself for the Court to deny Defendants summary judgment. Plaintiff files *this* motion because Defendant has failed to provide all the discovery to which Plaintiff is entitled and with which Plaintiff could present a more complete opposition to the MSJ as laid out herein.

---

[2] The Magistrate Judge denied Plaintiff's motion for additional discovery and sanctions without prejudice, finding that the Court was not sure that "this dispute is beyond the ability of the Parties to resolve." (*Id*. PageID# 11705.)

2

Specifically, in order to present a full defense, Plaintiff requires (1) information on Defendants' discovery efforts, which will necessitate deposition testimony from Debra Inglis, General Counsel and Deputy Commissioner of the Department of Correction, who led Defendants' discovery efforts; (2) electronically stored information identified through search terms directed at obtaining email communications central to Plaintiff's claims, including emails discussing the availability of the alternative methods of execution; and (3) a revised privilege log providing the information required to analyze the assertion of privilege, including what privilege is asserted for each documents and the parties copied on all communications.[3] This information will be essential to Plaintiff's ability to adequately prepare for trial. It would also enable Plaintiff to defend against Defendants' MSJ with the benefit of all discovery to which he is rightfully entitled. Therefore, if the Court declines to deny the MSJ under Rule 56(d), Plaintiff asks in the alternative that the Court defer ruling on the MSJ until Plaintiff can obtain the limited additional discovery he needs to enable him to present the fullest possible opposition to the MSJ either through the process the Magistrate Judge laid out in his latest order or by Defendants' compliance with any specific discovery requirements ordered by the Court in response to this Motion.

## FACTUAL BACKGROUND

### A. Claims in this Matter

Tennessee's three-drug lethal injection protocol for executions consists of a 500 milligram dose of the sedative midazolam, followed by 100 milligrams of the paralytic vecuronium bromide,

---

[3] So that the Court may make a specific ruling on the limited discovery needed to enable Plaintiff to present a full response, and to comply with the requirement that he state with particularity his need for further discovery, s*ee Williams v. Goodyear Tire & Rubber Co.*, 2012 WL 1228860, at *3 (W.D. Tenn. Apr. 11, 2012) (requiring a motion properly "demonstrate[s] [a movant's] need for further discovery with particularity"), Plaintiff has outlined the specific discovery that he submits will be sufficient for these purposes.

3

and then 240 milligrams of the heart-stopping agent potassium chloride. (D.E. 1-4, p. 34; D.E. 101, PageID# 5025.) Tennessee's protocol violates the Eighth Amendment because (1) the protocol is sure or very likely to cause serious illness and needless suffering because midazolam will not prevent him from experiencing the constitutionally unacceptable pain of the other two drugs, (2) the "safeguards" in the protocol are illusory and medically insufficient to ensure a prisoner does not experience pain and suffering, (3) Defendants and other members of the execution team do not follow the instructions and requirements of the protocol, and (4) alternative methods of execution are readily available and pose substantially lower risk of pain and suffering. (D.E. 51, Page ID# 2211–68.)

**B.    Procedural History**

This case was originally filed in 2018, but briefing on motions to dismiss (and amended motions to dismiss) continued nonstop until Defendants filed their first answers in July 2019. (D.E. 71-72.) During that time, Defendants also moved to "bifurcate" discovery in an effort to withhold discovery relevant to the risk that the protocol at issue will cause imminent danger of serious illness and needless suffering. (D.E. 76.)

Following entry of an initial case management order on August 9, 2019 (D.E. 82), Plaintiff promptly issued discovery requests. (Declaration of Sarah B. Miller (hereinafter, "Miller Decl.,") ¶ 3.) Defendants responded on January 8, 2020, but refused to provide responses to a number of requests, they claimed in order to protect the persons who carried out executions. (*Id.*, ¶ 3.) Defendants filed a motion for a telephone conference (D.E. 85) and Plaintiff filed a motion seeking to simply brief the matter (D.E. 86). Two days after Plaintiff responded to Defendants' motion for conference, before the parties had even briefed the discovery dispute, Defendants filed a motion for judgment on the pleadings on March 13, 2020 (D.E. 87), again seeking dismissal without

4

having to undertake discovery, which the Court denied on April 24, 2019. (D.E. 101.) The parties subsequently briefed competing motions to compel (Plaintiff) and for a protective order (Defendants), and the Court ruled on July 20, 2020, granting in part Plaintiff's motion to compel and requiring Defendants to use pseudonyms for individuals involved in carrying out executions in Tennessee. (D.E. 107.) Defendants moved for reconsideration of that decision (D.E. 110), and only supplemented their discovery after that motion was denied on August 13, 2020 (D.E. 112). After continued objections from Defendants to Plaintiff's proposed depositions, on September 10, 2020, the parties conducted a meet and confer regarding depositions. *See* Joint Motion to Continue Trial Date and Amend Scheduling Order (D.E. 113).

In March 2021, current counsel with the Federal Community Defender Office was substituted for Plaintiff's prior counsel. (D.E. 116.) Plaintiff filed an unopposed motion to amend the scheduling order to allow his new counsel to review the case file and get up to speed. (D.E. 123.) Plaintiff's new counsel promptly reached out to Defendants' counsel to obtain deposition dates, but Defendants refused over the next two months to agree to topics for a Rule 30(b)(6) deposition of the Tennessee Department of Correction, which carries out executions, finally asking Plaintiff's counsel not to take the deposition at all in exchange for Defendants agreeing to allow Plaintiff to take more than ten depositions. (Miller Decl., ¶ 5.) After the Court resolved that dispute (D.E. 143), Plaintiff's counsel took 15 fact depositions in an abbreviated time frame to meet the requirements of the scheduling order.[4] (Miller Decl., ¶ 5.)

---

[4] In one of those depositions, Defendant Parker was instructed by his counsel not to answer certain questions, ostensibly based on the deliberative process privilege but without providing information to support that claim, requiring Plaintiff to seek an emergency hearing and additional briefing. (D.E. 147-48, 150-56, 158-62.) The Court found that Defendant's reliance on the deliberative process privilege was improper (D.E. 156) and has yet to rule on a motion for fees (D.E. 158).

5

While responding to Defendants' attempts to limit deposition testimony, Plaintiff's counsel was also preparing additional discovery requests, which were served on July 30, 2021. (*Id.*, ¶ 6.) Defendants responded to this discovery on September 21, 2021, after two extensions from Plaintiff. (*Id.*, ¶ 7.) Upon receiving Defendants' discovery responses, including their one-item privilege log, Plaintiff emailed Defendants' counsel on October 21, 2021 to explain the many problems with the discovery. At the meet and confer on these issues on November 3, 2021, Plaintiff's counsel sought, among other things, an explanation for the short privilege log and information about what custodians Defendants identified and how and where they searched for documents. (*Id.*, ¶ 8.)

After Defendants repeatedly considered over months whether to provide this information and ultimately refused, Plaintiff pushed for the parties to file a joint discovery dispute statement on December 1, 2021, in which Plaintiff disputed the adequacy of Defendants' document searches and the completeness of their single-entry privilege log. (D.E. 163.) Late in the day of filing, Defendants provided an affidavit from Ms. Inglis providing Defendants the first (albeit incomplete) explanation of Defendants' discovery process. *Id.* at 5455-5460 (the "December 1 Affidavit"). In contravention of her October 2021 testimony that she had not reviewed the discovery, the December 1 Affidavit stated that Ms. Inglis was the individual primarily responsible for discovery in this case. *Id.* (Miller Decl., ¶ 10.) The December 1 Affidavit also contained several material misstatements. (D.E. 179.) For instance, Ms. Inglis stated under oath that both Warden Mays and now former Commissioner Parker do not have emails related to executions and that Warden Mays did not even have electronic documents related to executions except for calendar invitations. *See* December 1 Affidavit ¶¶ 5-11. That is not true. (D.E. 179.) Ms. Inglis'

6

assertion that she was "not aware of any additional responsive information" beyond what had already been produced, *id.* ¶ 27, was therefore, at best, highly misinformed.

In lieu of holding a conference on these issues, the Court issued an order on January 25, 2022. (D.E. 167.) The Court stated that it found the December 1 Affidavit persuasive because it was given under oath, but that, given Plaintiff's identification of "particular documents that, if they exist, would appear to be relevant and responsive," Defendants must "file an affidavit or declaration stating under oath that they have produced all nonprivileged documents within their possession, custody, or control that are responsive to Requests for Production Nos. 7, 11, 12, 13, and 14" and that they had logged all documents withheld as privileged within ten days.[5] (*Id.* at PageID# 5475.) Concerned that Defendants would simply reiterate that they had provided all responsive documents without offering any information to support that claim, Plaintiff filed an objection to the order seeking additional information about Defendants' searches, additional documents, and an updated privilege log. (D.E. 173.)

After seeking an extension of another ten days (D.E. 170), Defendants filed another affidavit from Ms. Inglis (D.E. 174, the "February 14 Affidavit") indicating not that Defendants had provided all responsive discovery and a complete privilege log, but that they had conducted electronic searches and produced responsive electronically stored documents ***for the first time in this case*** after the January 25, 2022 order was issued. The February 14 Affidavit also stated that they had added 1,141 entries to their single-entry privilege log.[6] At the same time, they made a

---

[5] The Court specifically noted that the issues raised by Plaintiff were timely as "it would have been difficult for Plaintiff to assess the sufficiency of Defendants' production until fact discovery concluded." (D.E. 167, PageID# 5471.)

[6] After Defendants filed the February 14 Affidavit, the Court mooted Plaintiff's objection and noted: "Plaintiff was justified in his concerns that Defendants had not provided all relevant discovery, the privilege log was incomplete, and Defendants had not conducted electronic searches designed to identify all privileged documents." (D.E. 178, PageID# 5551-52.)

7

production of relevant documents.  They also, for the first time, provided their eleven-item search

term list (used for the first time in the prior two weeks to conduct searches), which failed to include

obvious vital terms that Plaintiff submits are necessary for a reasonable search in response to his

discovery requests:

*Terms Necessary to Search Regarding Availability and Viability of Alternative Methods*

- "firing squad"
- "back of the head"
- Digoxin
- Diazepam
- Morphine
- Amitriptyline
- Phenobarbital
- Pento!
- Pharmacist
- Procur!

*Terms Necessary to Search Regarding Risks of Current Protocol Drugs*

- Benzodiazepine (the class of drugs that includes midazolam, the first drug in the protocol)
- Paralytic (the type of drug that includes vecuronium bromide, the second drug in the protocol)
- "ceiling effect" (a descriptor commonly used in Defendants' MSJ to indicate that at a certain point, increasing the dose of midazolam will provide no further therapeutic effect)
- GABA (pain receptors that Defendants reference in their MSJ to argue midazolam *can* render a patient insensate to pain)
- "pulmonary edema" (a potential effect of midazolam)
- "paradoxical reaction" (a potential effect of midazolam)
- Vecuronium
- VB (shorthand for vecuronium bromide)
- MDZ! (shorthand for midazolam)
- Protocol

*Terms Necessary to Search Regarding Whether Defendants Follow the Safeguards and Requirements of the Protocol*

- Compounding
- Active Pharmaceutical Ingredients

8

- API
- iterations of names of executed men (e.g., Sutton and Irick)
- Conscious!
- Steril!
- Potent
- Potency
- Log[7]

To address these deficiencies, Plaintiff then filed a Motion for Additional Discovery and Sanctions.[8] (D.E. 179.) The Magistrate Judge has now ruled on that motion, directing Defendants to confer with Plaintiff's counsel on search terms and "measures designed to increase transparency regarding Defendants' discovery efforts." (D.E. 198 at 5, PageID# 11705.) The Magistrate Judge cited Judge Campbell's order that Plaintiff was "justified in his concerns that Defendants had not provided all relevant discovery, the privilege log was incomplete, and Defendants had not conducted electronic searches designed to identify all relevant documents." The Magistrate Judge "agree[d] with Plaintiff that the potential search terms identified in his Supporting Memorandum are 'fairly obvious.'" The Magistrate Judge's ruling contemplates that after meeting and conferring, Defendants will search for and produce additional discovery, which may yield information for the Court to consider before ruling on the MSJ.

When Plaintiff's counsel reviewed the privilege log provided with the February 14 Affidavit, they determined it, too, suffered from numerous deficiencies, including, among other things, that it did not indicate what privileges or doctrines were being asserted to protect each underlying communication or which participants in the communications were lawyers, and, thus

---

[7] Plaintiff provides this list to ensure the specificity required under Rule 56(d), but Plaintiff would have been open to collaborating on a list and remains open to doing so, as long as the list is sufficiently comprehensive to provide reasonable access.

[8] The same day, Defendants filed their MSJ, seeking rulings that the protocol did not pose a substantial risk of severe pain and suffering and that none of the alternative methods of execution Plaintiff proposed is feasible, readily available, and significantly reduces a substantial risk of severe pain. *Id.*

9

did not "enable other parties to assess the claim" as required by Fed. R. Civ. P. 26(b)(5)(A)(ii). (Miller Decl., ¶ 14-16, Exh. 1, 2.) Plaintiff's counsel informed Defendants of these deficiencies in a letter on March 10, but Defendants *still* have not provided the requested information, despite claiming they had a "regenerated" privilege log they were reviewing more than two weeks ago, on March 28. (*Id.*, ¶ 16, Exh. 3.)

## LEGAL STANDARD

"[W]hen a party moves for summary judgment under Federal Rule of Civil Procedure 56, Rule 56(d) allows the 'nonmovant [to] show[ ] by affidavit . . . that, for specified reasons, it cannot present facts essential to justify its opposition,' and upon such showing, 'the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order..'" *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(d)). "The affidavit must indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Id.* (quotation omitted). "The purpose behind Rule 56(d) is to ensure the plaintiffs receive 'a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment.'" *Id.* at 490 (overturning denial of a Rule 56(d) motion) (quotation omitted).

In deciding whether a court has correctly decided such a motion, the Sixth Circuit considers:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*Id.* at 491. While "[t]he party opposing a motion for summary judgment . . . possesses no absolute right to additional time for discovery under Rule 56," such a motion "should be granted almost as

10

a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Id*. at 490-91 (quotations omitted).

## ARGUMENT

### A. The Court Should Grant Plaintiff's Rule 56(d) Motion Following Defendants' Discovery Abuses

Defendants' discovery abuses are remarkable, and the record is clear now that Defendants possess additional electronically stored information regarding the lethal injection protocol. Plaintiff is entitled to *all* electronic communications located through an appropriately comprehensive search that has been conducted with adequate search terms for electronically stored information. Owing to the misrepresentations by Defendants and Ms. Inglis, Plaintiff is also entitled to testimony from Ms. Inglis regarding efforts taken to date, custodians identified, and the substance of custodial interviews to determine what additional searches must be undertaken. Plaintiff is also entitled to information about Defendants' belated and inadequate privilege log sufficient to determine what the withheld documents are and whether they are actually privileged. This information is essential to allow Plaintiff to provide a comprehensive response to Defendants' MSJ. (D.E. 183, PageID #5651.)

### B. Plaintiff Has Complied with Rule 56(d)'s Substantive and Procedural Components

As a threshold matter, Plaintiff has complied with the technical requirements of Rule 56(d) by filing this Motion demonstrating with particularity his need for further discovery. *See Williams v. Goodyear Tire & Rubber Co.*, 2012 WL 1228860, at *3 (W.D. Tenn. Apr. 11, 2012) (requiring a motion properly "demonstrate[s] [a movant's] need for further discovery with particularity"). Further, he has concurrently filed the Miller Declaration indicating his need for discovery, the facts he hopes to uncover, and why he has not previously discovered the information. (Miller Decl., ¶

18-28); *see Clifford v. Church Mut. Ins. Co.*, 2014 WL 5529664, at *2 (S.D. Ohio Nov. 3, 2014) (the required affidavit or declaration must "indicate to the district court [the party's] need for discovery, what material facts [the party] hopes to uncover, and why [the party] has not previously discovered the information.") (quoting *Cacevic*, 226 F.3d at 488). In both filings, Plaintiff explains with precision how the desired discovery would help clarify the issues underlying the pending MSJ and allow him to fully and comprehensively oppose the MSJ. (Miller Decl., ¶ 19-29); *see Ball*, 385 F.3d at 721; *Summers*, 368 F.3d at 887.

### C. The *Plott* Factors Weigh Heavily in Favor of Relief

The *Plott* factors govern the Court's consideration of this motion and weigh heavily in favor of granting Rule 56(d) relief. *See, e.g.*, *Brooks v. Sanofi-Aventis U.S., LLC*, 2015 WL 4399617, at *3 (S.D. Ohio July 17, 2015) (granting Rule 56(d) relief after finding that two of the five *Plott* factors weighed clearly in favor of relief and noting that, on balance, the weight of the factors permitted additional discovery).

### 1. Plaintiff Recently Learned About Outstanding Discovery and Promptly Sought Relief from this Court.

The first factor, timeliness, weighs strongly in Plaintiff's favor. Plaintiff learned of these issues mere weeks ago because Defendants previously refused to describe their discovery efforts and repeatedly misrepresented that they had provided all responsive material, including under oath to the Court. (D.E. 179.) As the court reasoned in *Wilson*, 2018 WL 4743063, at *5, "[t]his is not a situation where [Plaintiff] knew about the discovery [he] sought and failed to take advantage of discovery." Instead, Plaintiff attempted to test Defendants' repeated representations that they had produced all documents responsive to Plaintiff's discovery requests throughout expert and fact discovery, sought court intervention on more than one occasion, and continues to seek ultimate

relief. (*e.g.*, D.E. 163-2, PageID# 5432 (Nov. 9, 2021 email); D.E. 163-8, PageID# 5460, at ¶ 27 (Inglis Dec. 1, 2021 Decl.).)

In her December 1 Affidavit, filed as an attachment to Defendants' portion of the parties' Joint Discovery Dispute Statement, Ms. Inglis finally provided a partial explanation of Defendants' discovery efforts, stating that the Department had spent "two months of document collection and preservation" of files from three individuals: then-Commissioner Parker, Warden Mays, and the individual referred to as the Drug Procurer for purposes of this litigation. (D.E. 163-8, ¶¶ 8-12, PageID# 5457-58.) She also stated that none of these individuals had emails responsive to the discovery requests and indicated that an additional nine individuals had no documents responsive to the requests. *Id.*, at ¶¶ 8-18. However, the revised privilege log and subsequent production, later served to satisfy the Court's order, showed conclusively that Ms. Inglis's statements that Commissioner Parker and Warden Mays did not have responsive emails were categorically untrue. Ms. Inglis further indicated in her December 1 Affidavit that she was "not aware of any additional responsive information" besides what had been provided up to that date. But her February 14 Affidavit, filed to satisfy the same order, also showed that Defendants ***had not conducted any electronic discovery*** prior to the Court's January 25, 2022 Order, and that they knew they had to do so in order to certify that they had "produced all nonprivileged documents within their possession, custody, or control that are responsive to Requests for Production Nos. 7, 11, 12, 13, and 14" as required by the Court's Order. (D.E. 167, PageID# 5475–76; D.E. 174, PageID# 5529, at ¶ 10.) Further, because Defendants had (unilaterally) created search terms only in response to the Court's January 25 Order, Plaintiff could not have learned of the deficiencies in the electronic search parameters prior to receiving the February 14 Affidavit. (Miller Decl., ¶ 12; D.E. 174, PageID# 5529–30, at ¶¶ 10–11.)

Also on February 14, Defendant TDOC made a supplemental production of documents, apparently to in order to comply with the Court's order that they certify they had produced all responsive information. The production included (a) emails that directly contradicted Ms. Inglis's December 1 Affidavit as they clearly show Commissioner Parker received emails regarding executions (D.E. 181-1) and (b) screenshots of text messages between the Drug Procurer and the Pharmacist that were belatedly produced "after an interview" occurred, and which were clearly responsive and would have generated multiple lines of questioning at relevant depositions. (D.E. 180, Page ID#5566–67.). Defendants made another supplemental production on February 22, 2022 despite Ms. Inglis's February 14 assertion that all responsive documents had been produced. (D.E. 174, PageID#5531, at ¶ 19; D.E. 176.)

After Plaintiff reviewed the supplemental document productions and determined conclusively that at least some parts of Ms. Inglis's sworn statements were untrue, on March 16, 2022, Plaintiff promptly moved the Court to permit him to conduct additional discovery and impose sanctions based on Defendants' misconduct. (D.E. 179, 180.); *cf. Miller v. Delaware Cty. Comm'rs*, 2015 WL 2194789, at *3 (S.D. Ohio May 11, 2015) (denying Rule 56(d) relief in part because plaintiffs knew about the discovery at issue but waited nearly ten months to conduct discovery). Plaintiff also carefully reviewed the privilege log and notified opposing counsel of the many additional deficiencies therein and continues to urge Defendants to provide an adequate log. (Miller Decl., ¶ 16.) The only delay has been on the part of Defendants.

Hours before this filing, the Magistrate Judge noted both the need for transparency regarding Defendants' discovery efforts and for Defendants to meet and confer on search terms for their newly-disclosed electronically stored information. The Magistrate Judge ordered the parties to meet and confer on these issues, denying Plaintiff's motion for discovery without

14

prejudice so it could be brought again if those discussions did not yield satisfactory results. (D.E. 198.) Thus, Plaintiff only now has the opportunity to learn the information it has been seeking from Defendants since at least October last year. Given this long sequence of events, the timeliness factor weighs heavily in favor of allowing Plaintiff to gather this discovery.

## 2. The Requested Discovery May Materially Affect the Court's Ruling on Defendants' Motion for Summary Judgment.

The second *Plott* factor is whether the desired discovery has the potential to influence the Court's summary judgment ruling. In other words, the Court must evaluate whether the requested discovery is not wholly "irrelevant to the underlying issues to be decided." *Gonzalez v. Great Am. Ins. Co.*, 2018 WL 660639, at *4 (W.D. Ky. Feb. 1, 2018) (quoting *Brown v. Tax Ease Lien Servicing, LLC*, 2017 WL 6940734, at *9 (W.D. Ky. May 25, 2017)).

Without searches with additional terms that would yield responsive documents on key issues in this case, Plaintiff is unable to comprehensively oppose Defendants' arguments. To provide a full and comprehensive response to the MSJ, Plaintiff needs access to responsive documents identified using search terms that would actually return documents showing (1) the risk of severe pain suffered by the protocol, (2) the risk of improper administration of lethal injections drugs and any resulting pain and suffering, and (3) the viability of readily available alternative methods that would result in less pain and suffering. (Miller Decl., ¶ 19-22.) The proposed terms are likely to show the availability of and reduced risk of pain from other methods of execution, which are in no way accounted for in the search terms Plaintiff unilaterally (and very belatedly) chose. (*Id.*, ¶ 19-22.); *see generally Baze v. Rees*, 553, U.S. 35, 55 (2008).

Certain TDOC communications could create additional genuine issues of material fact regarding whether alternative execution methods are readily available. For example, Defendants assert that a firing squad execution cannot be "readily implemented" because it will be expensive

and requires TDOC to construct new facilities. Defs. Br. at 36. While Plaintiff has provided evidence in his opposition to the MSJ showing that Defendants have the means and budget to implement a firing squad protocol (Opp. II.C.), he had to do so without any communications or other documents from TDOC regarding their analysis of this alternative, because TDOC has not even conducted a basic internal search for any documents responsive to the term "firing squad". *See* Doc. Inglis Sworn Statement, 174 at pg. 3, PageID No. 5529-30. In fact, TDOC has not searched Commissioner Parker's, Warden Mays's, General Counsel Inglis's, or anyone else's communications related to implementing a firing squad execution. *Id.* The same is true for an execution by a single bullet to the back of the head. *See* Defs. Br. at 35.

As another example, Defendants also claim that Plaintiff has failed to show that TDOC can obtain secobarbital, digoxin, morphine sulfate, and propranolol for use in oral euthanasia cocktails through ordinary transactional effort. Defs. Br. at 40. Plaintiff has provided evidence in his opposition that these drugs are widely available, (Opp. II.E.), but without the benefit of documents obtained from a search with the names of ***any,*** much less all, of the proposed oral cocktail drugs to determine if TDOC has considered using an oral cocktail, Plaintiff cannot be sure whether TDOC has, in fact, determined that it *can* obtain these drugs but chooses not to. In any event, most of those drugs are not even in the current death with dignity protocol proposed by Plaintiff, which consists of digoxin, diazepam, morphine, amitriptyline, and phenobarbital. Defendants have not searched the names of any of these drugs either.

These documents should be produced because they could materially affect the Court's ruling by satisfying the two prongs of the relevant test. *See Wilson*, 2018 WL 4743063, at *6 (finding that the requested discovery would potentially materially affect the Court's ruling); *accord Lupo v. Willis L. Firm, LLC*, 2020 WL 6044084, at *6 (S.D. Ohio Oct. 13, 2020) ("In sum,

16

the Court finds that at least some of the requested discovery has the potential to affect the outcome of this case, and the Court need not further address the merits at this juncture. Accordingly, this factor tilts slightly in Plaintiff's favor."); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 421 (6th Cir. 2008) (holding that the district court's denial of plaintiffs' motion for additional discovery was an abuse of discretion).[9]

Plaintiff has always been and continues to be entitled to discovery that would allow him to further develop the relevant facts regarding drug procurement, so-called "safeguards", and the feasibility of alternative execution methods.

### 3. Fact Discovery Spanned Twenty-Four Months and Expert Discovery Spanned Twenty-Eight Months, Which Was a Reasonable Length of Time Given the Facts and Circumstances.

The third *Plott* factor considers how long the discovery period lasted. Discovery in this case commenced on August 9, 2019. (D.E. 82.) Fact discovery closed on October 22, 2021 (except for the Parker deposition, which was completed on November 22, 2021) and expert discovery closed on February 11, 2022. (D.E. 151, 161, 169, 188.) Not accounting for Defendants' belated productions, fact and expert discovery spanned twenty-four (24) and twenty-eight (28) months, respectively.

---

[9] *See also, e.g.*, *Cline v. Dart Transit Co.*, 804 F. App'x 307, 316 (6th Cir. 2020) ("Given the *Plott* Factors that weigh in plaintiffs' favor, plaintiffs did not have 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment. . . . Granting summary judgement in defendants' favor and denying plaintiffs' Rule 56(d) motion before there was a full opportunity to conduct discovery was clearly unreasonable and an abuse of discretion.") (citing *Doe*, 928 F.3d at 496 (internal citations and quotations omitted)); *LaFountain v. Harry*, 2015 WL 5749469, at *5 (W.D. Mich. Sept. 30, 2015) (denying defendants' motion for summary judgment and reasoning "[t]he documents requested in the subpoenas could provide a basis for plaintiff to contest the facts as set forth in defendants' affidavits."); *Pearl v. Walmart Supercenter Store No. 1266*, 2020 WL 5733195, at *3 (M.D. La. Sept. 24, 2020 (denying motion for summary judgment without prejudice to refile after discovery is completed and permitting plaintiff to conduct additional discovery and depositions).

"Because 'what constitutes a reasonable length of time for the duration of discovery is so particular to the facts and circumstances of a given case,' there is no bright-line rule for the Court to follow" in analyzing this factor. *Quartermouse v. Bullitt Cty. Fiscal Ct.*, 2020 WL 12309716, at *4 (W.D. Ky. Aug. 25, 2020) (quoting *Doe*, 928 F.3d at 494). The Sixth Circuit has found, for instance, that a discovery period of two years, along with certain extenuating factors, did not weigh against finding a motion for summary judgment premature. *See Doe*, 928 F.3d at 494. Here, in light of the complexity of this lethal injection protocol challenge, which includes conducting discovery during the COVID-19 pandemic, addressing numerous discovery disputes, substituting counsel for Plaintiff, taking more than a dozen depositions in an abbreviated time frame, and, most critically, untangling Defendants' dilatory practices and misrepresentations, twenty-four months for fact discovery and twenty-eight months for expert discovery are reasonable lengths of time under the circumstances. Courts routinely take extenuating circumstances such as these into account in analyzing this factor. *See Keene v. Wellpath Corp.*, 2022 WL 492974, at *5 (W.D. Ky. Feb. 17, 2022) ("Therefore, the length of discovery period in light of Plaintiff's incarceration, COVID-19 restrictions, and pleading practice associated with Wellpath's Motion to Dismiss tips the third factor in favor of reopening discovery."); *accord Comco-OneWorld, Inc. v. Radford Quarries, Inc.*, 2018 WL 10151221, at *2 (M.D. Tenn. Apr. 12, 2018) (Campbell, J.) (granting Rule 56(d) motion and reasoning "Defendants have not had sufficient time to complete discovery to determine if Plaintiff has standing to bring this claim").

Discovery has been conducted by both parties throughout the discovery period; however, as it just recently was brought to Plaintiff's attention that Defendants did not in fact conduct reasonable searches for responsive documents, this factor weighs in favor of reopening discovery.

### 4. Plaintiff Diligently Pursued Discovery and Was Far from Dilatory in His Discovery Efforts.

The fourth factor, by far the most important, considers whether the party seeking discovery was dilatory in its discovery efforts. "The Sixth Circuit consistently holds that '[a] . . . motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Keene*, 2022 WL 492974, at *5 (quoting *Doe*, 928 F.3d at 490–91). Here, Plaintiff was not dilatory in his efforts and vigorously pursued discovery. Indeed, since discovery has commenced, Plaintiff has propounded interrogatories, requests for admission, and document requests upon Defendants. Additionally, Plaintiff has taken approximately 15 fact depositions, has deposed Defendants' experts, and has spent considerable time and effort bringing the Court's attention to relevant discovery disputes when no other resolution was possible. (Miller Decl., ¶¶ 5, 27.)

Moreover, as the Court previously noted, "[w]hile the Parties might have been better served by dealing with the mechanics of discovery earlier on in this case (including, for example, developing an ESI protocol)," it also "would have been difficult for Plaintiff to assess the sufficiency of Defendants' production until fact discovery concluded." *King v. Parker*, 2022 WL 229215, at *3 (M.D. Tenn. Jan. 25, 2022). Here, not only was Plaintiff unable to assess the sufficiency of Defendants' production until fact discovery concluded, but Defendants had not even produced all their documents when discovery concluded. As soon as these documents were produced in February 2022, Plaintiff promptly reviewed them and brought the issues associated with the productions to the Court's attention. *Accord Cline*, 804 F. App'x at 315 ("[B]ecause the standard is not perfection and because nearly all of plaintiffs' discovery efforts were not dilatory, this *Plott* Factor weighs in plaintiffs' favor."). The Court has now concluded that the terms Plaintiff moved to require Defendants to search were "obvious" and that more transparency was

19

needed into Defendants' discovery efforts. (D.E. 198.) Plaintiff will remain diligent in seeking the discovery he is entitled to, discovery that reasonable efforts by Defendants would yield, and he should be afforded the chance to obtain it before a dispositive ruling by this Court.

> **5. Defendants Responded to Discovery Requests But Failed to Comply with their Concurrent Obligation to Search for and Produce Responsive Documents.**

As to the fifth factor, Defendants hid the ball (or, in this case, documents) from the outset, and this factor strongly weighs in favor of denying the MSJ outright, as well as reopening discovery. Although Defendants responded to Plaintiff's propounded discovery requests, such responses were essentially meaningless because Defendants did not concurrently comply with their discovery obligations. This factor weighs heavily in favor of granting this motion.

Plaintiff doggedly pursued discovery in this case, conducting prompt reviews and analyses of discovery provided, instigating and participating in numerous meet and confers over a variety of deficiencies and objections by Defendants, and moving to compel documents and testimony as appropriate from the Court. Plaintiff's counsel conducted all fact depositions in a short window, followed by another short window dense with expert depositions. And it is only through Plaintiff's counsel's close attention to inconsistencies that slipped through Defendants' carefully limited discovery and refusals to confer openly about their discovery efforts that Plaintiff was able to determine some, but likely not all, of the deficiencies in Defendants' efforts, including that their statements to counsel and this Court were inaccurate.

Defendants not only ignored their discovery duties to diligently search for responsive materials when responding to discovery requests but also misconstrued the efforts they made to Plaintiff and to this Court. Rather than simply searching for and producing all responsive, non-privileged documents, Defendants' noncompliant discovery conduct drew out disputes for months

and wasted valuable judicial and party time and resources in the interim. *Cf. Alvarado Martinez*, 2020 WL 3316115, at *10 (finding this factor weighed in favor of granting the Rule 56(d) motion and noting that plaintiffs "have filed a number of motions for protective orders against Mr. Drywall's discovery requests in this action, two of which are still pending" and plaintiffs did not contest Mr. Drywall's argument that they "refused to make themselves available to resolve discovery disputes, which prolonged those disputes").

In that same vein, fundamental fairness warrants denying the MSJ outright and reopening discovery. Defendants should not get to reap the benefit of filing for summary judgment while Plaintiff remains disadvantaged due to Defendants' conduct. *See Second Ave Museum, LLC v. RDN Heritage, LLC*, 2021 WL 6689670, at *3 (M.D. Tenn. Mar. 31, 2021) (granting the Rule 56(d) motion "in the interest of judicial economy and fairness to the plaintiff"); *see also Capitani v. World of Miniature Bears, Inc.*, 2020 WL 6439512, at *1 (M.D. Tenn. Apr. 17, 2020) (holding that the litigant should have been afforded a full opportunity to obtain discovery and depose witnesses before being forced to respond to a summary judgment motion).

In sum, the factors all weigh in favor of granting Plaintiff relief and allowing him to engage in limited additional discovery. *See United States ex rel. Hayward v. Savaseniorcare, LLC*, No. 2018 WL 2382100, at *1 (M.D. Tenn. Mar. 1, 2018) (Campbell, J.) (granting Rule 56(d) motion and concluding "that Plaintiffs should be permitted to engage in additional discovery in this case in order to respond to the pending summary judgment motions").

Given the tight timeline of this case, and the fact that the parties find themselves in this position due to Defendants' conduct, Plaintiff asks the Court to deny summary judgment for the reasons cited in this motion, as it has the authority to do under Rule 56(d). *See, e.g.*, *In re Levaquin Prod. Liab. Lit.*, 726 F. Supp. 2d 1025, 1038 (D. Minn. 2010) (denying summary judgment after

finding that the affidavit presented specific reasons for the litigant's "inability to present facts essential to his opposition to the motion for summary judgment on these counts" and that it suggested "that discovery will enable [him] to show that there are genuine issues of material fact as to these claims").

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court grant this Motion and either deny the MSJ in its entirety or defer ruling on it until Plaintiff has had time to amend or revise his opposition to the MSJ following additional conferral with Defendants and any necessary briefing and production of outstanding discovery pursuant to the Magistrate Judge's order or until Defendants have (1) produced Ms. Inglis for a deposition regarding Defendants' discovery efforts; (2) run new, mutually agreed upon search terms directed at obtaining electronic communications relating to the lethal injection protocol and readily available alternative methods; and (3) provided a privilege log which states the privilege or doctrine asserted and all other information required to analyze the privilege.

Dated: April 13, 2022

Respectfully submitted,

*/s/ David R. Esquivel*
David R. Esquivel (TN # 21459)
Sarah B. Miller (TN # 33441)
Jeremy A. Gunn (PA # 320056)
Michael C. Tackeff (TN # 36953)
BASS, BERRY & SIMS PLC
150 Third Ave. South #2800
Nashville, TN 37201
Telephone: (615) 742-6200
desquivel@bassberry.com
smiller@bassberry.com
michael.tackeff@bassberry.com
jeremy.gunn@bassberry.com

22

*-and-*

Alex Kursman (PA Bar No. 306613)
Lynne Leonard (PA Bar No. 318897)
Hayden Nelson-Major (PA Bar No. 320024)
Anastassia Baldrige (PA Bar No. 329703)
Assistant Federal Defenders
Federal Community Defender Office for the
    Eastern District of Pennsylvania
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
(215) 928-0520

*-and-*

Amy Rao Mohan (TN # 31238)
Christopher C. Sabis (TN # 30032)
Alice Haston (TN # 38708)
SHERRARD ROE VOIGHT &
HARBISON, PLC
150 Third Ave. South, Suite 1100
Nashville, TN 37201
Telephone: (615) 742-4545
amohan@srvhlaw.com
csabis@srvhlaw.com
ahaston@srvhlaw.com

*Counsel for Terry Lynn King*

## CERTIFICATE OF SERVICE

I certify that on April 13, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt which includes:

Cody N. Brandon
Miranda H. Jones
Robert W. Mitchell
Scott C. Sutherland
Mallory K. Schiller
Dean S. Atyia
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202-0207

*/s/ David R. Esquivel*
David R. Esquivel