UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY LYNN KING, | ) | |
| | ) | Civil Action No. 3:18-cv-01234 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| TONY PARKER, et al., | ) | Judge William L. Campbell, Jr. |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF SARAH B. MILLER IN SUPPORT OF PLAINTIFF'S MOTION TO DENY OR DEFER CONSIDERATION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(d)**

I, Sarah B. Miller, declares as follows:

1. I am over the age of 18, am of sound mind, and have personal knowledge of the facts testified to herein, all of which are true. I am an attorney licensed to practice law in Tennessee and am co-counsel of record for the Plaintiff, Terry Lynn King. I am a member at the law firm of Bass, Berry & Sims PLC, which was retained to represent Mr. King along with Federal Community Defender Office for the Eastern District of Pennsylvania and Sherrard Roe Voight & Harbison, PLC. This declaration is offered to support Mr. King's Motion to Deny or Defer Considering Defendants' Motion for Summary Judgment Pursuant to Rule 56(d).

2. I am familiar with the discovery conducted in this matter and the disputes that have been litigated throughout the course of our representation. Mr. King has been diligent in seeking relevant, discoverable information bearing on his claims. That discovery remains outstanding is solely a product of the roadblocks Defendants have erected.

1

3. Following entry of an initial case management order on August 9, 2019 (D.E. 82), Mr. King propounded discovery requests. Defendants responded to Mr. King's discovery requests on January 8, 2020, but refused to provide responses to a number of items in order (or so they claimed) to protect the persons who carried out executions.

4. In March 2021, current counsel with the Federal Community Defender Office was substituted into the case.

5. Mr. King's new counsel promptly reached out to Defendants' counsel to obtain deposition dates, but Defendants' counsel refused over the next two months to agree to topics for a Rule 30(b)(6) deposition of the Tennessee Department of Correction, which carries out executions, finally asking Mr. King's counsel not to take the deposition at all in exchange for consent to Mr. King's taking more than ten depositions. After that matter was resolved, Plaintiff's counsel took 15 fact depositions in an abbreviated timeline to meet the operative scheduling order.

6. While responding to Defendants' counsel's attempts to limit deposition testimony, Mr. King's counsel was also preparing additional discovery requests, which were served on July 30, 2021.

7. Defendants finally responded to these discovery requests on September 21, 2021, after two extensions were granted by counsel for Mr. King.

8. Upon receiving Defendants' discovery responses, including their single-item privilege log, my colleague and co-counsel, Jeremy Gunn, emailed Defendants' counsel on October 21, 2021 to explain the many problems with the discovery. (D.E. 163-2 at 3-7, PageID# 5425-9.)

9. At the meet and confer on these issues on November 3, 2021, we sought on behalf of Mr. King, among other things, an explanation for the short privilege log and information about what custodians Defendants' counsel identified and how and where they searched for documents.

10. Late in the day on December 1, 2021, the date that the Joint Discovery Dispute Statement was due, Defendants' counsel forwarded me an affidavit from Debra Inglis, the General Counsel and Deputy Commissioner of the Department of Correction, providing the first explanation ever given of Defendants' discovery process (the "December 1 Affidavit"). (D.E. 163-8.) For instance, the December 1 Affidavit clarified that Ms. Inglis was in charge of discovery, (D.E. 163-8 at ¶¶ 3, 5, PageID# 5455-56), in contravention of her testimony in October 2021 that she had not reviewed the discovery in this case. (D.E. 195-1, PageID# 11533 (deposition excerpt).)

11. Ms. Inglis filed a second sworn statement on February 14, 2022 (the "February 14 Affidavit") which describes in limited detail the parameters of the electronic search that Defendants conducted for the first time. (D.E. 174.)

12. After reviewing Ms. Inglis's February 14 Affidavit, I and my co-counsel learned for the first time that Defendants' counsel never conducted any electronic discovery prior to the Court's January 25, 2022 Order. We also learned of the deficiencies in the electronic search parameters, which only utilized minimal search terms and custodians. That same day, Defendants made a supplemental document production and also produced a privilege log comprising 1,150 entries.

13. When we reviewed the privilege log, we determined it suffered from a number of deficiencies, including, among other things, that it did not indicate what privileges or doctrines were being asserted to protect certain communications, or which participants in the communications were lawyers, and, thus did not "enable other parties to assess the claim" as

3

required by Rule 26 of the Federal Rules of Civil Procedure. A true and correct copy of Defendants' February 14 privilege log is attached hereto as <u>Exhibit 1</u>.

14. On February 22, 2022, Defendants made another supplemental document production, which we promptly reviewed.

15. My colleague and co-counsel for Mr. King, David Esquivel, informed Defendants' counsel of the deficiencies in the privilege log in a letter dated March 10, 2022. A true and correct copy of the March 10 letter from Mr. Esquivel is attached hereto as <u>Exhibit 2</u>.

16. In response to Mr. Esquivel's March 10 letter regarding the deficiencies in Defendants' privilege log, Defendants' counsel claimed they had a "regenerated" privilege log they were reviewing more than two weeks ago, on March 28, 2022. A true and correct copy of the communications regarding the privilege log with Defendants' counsel is attached hereto as <u>Exhibit 3</u>. To date, Defendants' counsel still have not provided the requested information.

17. These are basic examples of the deficiencies in Defendants' discovery efforts, and other examples can be found in the numerous briefs filed before the Court. I along with my co-counsel have been diligent throughout the process of attempting to obtain basic discovery from Defendants. Since discovery has commenced, we have propounded interrogatories, requests for admission, and document requests upon Defendants. Additionally, my co-counsel and I have taken 15 fact depositions, deposed Defendants' experts, and spent considerable time and effort bringing the Court's attention to relevant discovery disputes when no other resolution was possible.

18. In order to present a full defense, Mr. King needs Defendants to (1) produce Ms. Inglis for a deposition regarding Defendants' discovery efforts; (2) run new search terms directed at obtaining electronic communications relating to the lethal injection protocol and readily available alternative methods; and (3) provide a privilege log which states the privileges or

doctrines asserted and all other information required to analyze the assertion of the privilege or doctrine.

19. Without searches with additional terms that better encompass the pertinent realm of responsive documents, Mr. King may be unable to comprehensively and thoroughly oppose Defendants' arguments seeking summary judgment on grounds that (1) the administration of midazolam and the Tennessee protocol's safeguards protect against the risk of pain and (2) Mr. King has not met his burden to prove a feasible alternative.

20. Plaintiff would propose the following terms:

*Terms Necessary to Search Regarding Availability and Viability of Alternative Methods*

- "firing squad"
- "back of the head"
- Digoxin
- Diazepam
- Morphine
- Amitriptyline
- Phenobarbital
- Pento!
- Pharmacist
- Procur!


*Terms Necessary to Search Regarding Risks of Current Protocol Drugs*

- Benzodiazepine (the class of drugs that includes midazolam, the first drug in the protocol)
- Paralytic (the class of drug that includes vecuronium bromide, the second drug in the protocol)
- "ceiling effect" (a common descriptor repeatedly used in Defendants' MSJ to indicate that midazolam cannot render a patient insensate to pain at any dose)
- GABA (pain receptors that Defendants discuss in their MSJ in their argument that midazolam *can* render a patient insensate to pain)
- "pulmonary edema" (a potential effect of midazolam)
- "paradoxical reaction" (a potential effect of midazolam)
- Vecuronium
- VB (shorthand for vecuronium bromide)
- MDZ (shorthand for midazolam)
- Protocol

5

Case 3:18-cv-01234   Document 205   Filed 04/13/22   Page 5 of 10 PageID #: 12642

*Terms Necessary to Search Regarding Whether Defendants Follow the Safeguards and Requirements of the Protocol*

- Compounding
- Active Pharmaceutical Ingredients
- iterations of names of executed men (e.g., Sutton and Irick)
- Conscious!
- Steril!
- Potent
- Potency
- Log[1]

21. Allowing Mr. King to gather all responsive documents using the proper search terms would allow Mr. King to obtain information regarding (1) the development of the challenged three-drug execution protocol, (2) Defendants' attempts at procuring lethal injection drugs relevant to Mr. King's proposed alternative execution methods, (3) whether Defendants were aware that a midazolam-based protocol could cause pain to inmates during an execution, and (4) whether Defendants' failures to properly transport, store, prepare, compound, test, and administer the drugs causes a substantial risk of botched executions.

22. The proposed discovery may show the availability of and lack of risks of pain from other methods of execution, which are in no way accounted for in the search terms Defendants' counsel unilaterally chose without any consultation with Plaintiff's counsel. The desired discovery is necessary to oppose Defendants' Motion for Summary Judgment and has the potential to influence the Court's ruling on topics such as (1) the risk of severe pain suffered under the protocol, (2) the risk of improper administration of lethal injections drugs and any resulting pain and suffering, and (3) the viability of readily available alternative methods that would result in less pain and suffering.

---

[1] Plaintiff provides this list to ensure the specificity required under Rule 56(d), but Plaintiff would have been open to collaborating on a list and remains open to doing so, as long as the list is sufficiently comprehensive to identify all responsive documents.

23. For example, the requested discovery is needed to oppose Defendants' arguments about the viability of use of a firing squad, which Defendants support with TDOC's Rule 30(b)(6) testimony (D.E. 184, SUMF# 281-86, including the conclusory statement that "TDOC is not able to execute someone by method of firing squad," #285), their assumptions from and misrepresentations of testimony by the Utah Department of Corrections about how Utah utilizes a firing squad (*id.* # 287-302), and testimony from their experts (*id.* # 303-325), *see, e.g.*, D.E. 184. While Plaintiff has obtained independent evidence that shows a firing squad is more humane than the current protocol and is readily available, he has had to do so without the benefit of internal TDOC documents or even knowing whether any exist as Defendants have not searched for "firing squad" or any iteration of that term in their electronic documents.

24. Likewise, Defendants' support for their argument that a single bullet to the back of the head is not a viable alternative relies solely on TDOC 30(b)(6) testimony that the Department is not aware of another state that has adopted an execution protocol that utilizes that method (D.E. 184, SUMF# 278) and testimony from experts (*id.* # 279-281). While Plaintiff has responded and shown there are disputed issues of fact, he has had to do so without the benefit of any internal TDOC documents analyzing the feasibility of using this method and without knowledge of whether such documents exist, as Defendants have not searched for them.

25. Likewise, Plaintiff has had to respond to Defendants' statement that "[t]he record lacks any evidence that Defendants can obtain secobarbital, digoxin, morphine sulfate, and propranolol for use in executions through ordinary transactional effort" (relying solely on TDOC and expert testimony), without the benefit of any documents from TDOC because Defendants did not run a search for the name of *any* of the drugs, and, in any event, as discussed in Plaintiff's Opposition, many of those drugs are not in the death with dignity cocktail Plaintiff is proposing

7

(and which Defendants have deposed Plaintiff's expert about), which contains digoxin, diazepam, morphine, amitriptyline, and phenobarbital. (D.E. 184, SUMF# 326.) Again, Plaintiff has provided sufficient evidence to refute this bald assertion, but only Defendants would have evidence of whether they were able to obtain these drugs and chose not to, which Defendants have not searched for in discovery.

26. Defendants' summary judgment motion is held up with unsupported testimony, and Defendants have failed to conduct even the most basic searches to enable the parties and the Court to know whether they have relevant documents on these subjects.

27. The only way for Mr. King to obtain these facts is to obtain the documents, which are in the exclusive control of Defendants. Mr. King and his counsel have diligently pursued these documents for months to no avail.

28. In order to present a full and complete opposition to Defendants' MSJ, and to adequately prepare for trial, Plaintiff requires:

   a. Deposition testimony from the Department about what it has and has not done to provide responsive discovery;

   b. Documents reviewed and produced after a reasonable electronic document search of all potential custodians with relevant information designed to encompass the claims and defenses in this case; and

   c. A proper privilege log that specifically describes withheld documents and the bases for Defendants withholding them.

29. On April 13, 2022, the Magistrate Judge entered an order directing Defendants to confer with Plaintiff's counsel on search terms and "measures designed to increase transparency regarding Defendants' discovery efforts." (D.E. 198 at 5, PageID# 11705.) The Magistrate Judge

cited Judge Campbell's order that Plaintiff was "justified in his concerns that Defendants had not provided all relevant discovery, the privilege log was incomplete, and Defendants had not conducted electronic searches designed to identify all relevant documents." The Magistrate Judge "agree[d] with Plaintiff that the potential search terms identified in his Supporting Memorandum are 'fairly obvious.'" The Magistrate Judge's ruling contemplates that after meeting and conferring, Defendants will search for and produce additional discovery, which may yield information for the Court to consider before ruling on the MSJ.

30. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this April 13, 2022.

*/s/ Sarah B. Miller*
Sarah B. Miller

## CERTIFICATE OF SERVICE

       I certify that on April 13, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt which includes:

Cody N. Brandon
Miranda H. Jones
Robert W. Mitchell
Scott C. Sutherland
Mallory K. Schiller
Dean S. Atyia
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202-0207

                                                          */s/ Sarah B. Miller*
                                                          Sarah B. Miller