IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **TERRY LYNN KING,** | ) | |
| | ) | |
| Plaintiff, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | Case No. 3:18-cv-01234 |
| | ) | |
| **TONY PARKER, et al.,** | ) | JUDGE CAMPBELL |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

For the following reasons, the arguments in Plaintiff's response regarding his proposed alternatives (D.E. 202) are unavailing and Defendants' motion for summary judgment (D.E. 182, 183) should be granted.

**ARGUMENT**

**I. Plaintiff Has Failed to Satisfy His Burden to Prove that Pentobarbital Is Available for Use in Tennessee Executions.**

Plaintiff has the burden to "plead *and prove*" that pentobarbital is "a known *and available* alternative." *Glossip v. Gross*, 576 U.S. 863, 880 (2015) (emphasis added). Plaintiff has failed to do so. Plaintiff has not identified a single source that is willing to provide pentobarbital for use in Tennessee executions. (D.E. 200, PageID# 11839-40 (denying that pentobarbital is unavailable but, nonetheless, failing to identify a source willing to provide it for use in Tennessee executions).) Instead, Plaintiff argues that pentobarbital is available in Tennessee because *other jurisdictions* use it in executions and, according to the U.S. Department of Justice Office of Legal Counsel ("OLC"), it may be imported. (D.E. 202, PageID# 12596-99.)

This argument might be sufficient to plausibly *plead* availability, *Middlebrooks v. Parker*, 15 F.4th 784, 792 (6th Cir. 2021), but it is not sufficient to actually *prove* availability. The Sixth Circuit has ruled that the fact that "other states" use pentobarbital for executions is insufficient to prove availability in a specific state because saying "other states" can obtain it is "quite different from saying that any given state can actually locate those pharmacies and readily obtain the drugs." *In re Ohio Execution Protocol* ("*Fears v. Morgan*"), 860 F.3d 881, 891 (6th Cir. 2017); *see also Sutton v. Parker*, 800 F. App'x 397, 401 (6th Cir. 2020) ("The OLC opinion does not shift the regulatory landscape surrounding pentobarbital so considerably as to permit Tennessee to obtain the drug through 'ordinary transactional effort,' as required by *Glossip*." (quoting *Fears*, 860 F.3d at 891)).

Plaintiff attempts to disclaim that he has the burden to prove availability, arguing instead that Defendants must prove *un*availability. But he is simply wrong on the law. First, Plaintiff argues that, under *Glossip*, "pentobarbital cannot be considered 'unavailable' to Defendants if they are not in fact trying to obtain it." (D.E. 202, PageID# 12596.) In other words, Plaintiff asserts not only that Defendants have an obligation to search for drugs that are not used in Tennessee executions (but, nonetheless, are necessary to his proposed alternatives), but also that the onus is on Defendants to prove the sufficiency of their search in order to foreclose summary judgment. (*Id.*) This is not what *Glossip* held.

In *Glossip*, the Supreme Court repeatedly stated that it is the inmate challenging the State's method of execution who must prove an available alternative. 576 U.S. at 867, 878-80. Certainly, the Court referenced a State's "good-faith efforts" to obtain pentobarbital, but the Court did *not* find that the State had an obligation to search for pentobarbital, much less to prove the sufficiency of its searches. *Id.* at 879. Rather, it ruled that the evidence of the State's fruitless searches simply
2

This argument might be sufficient to plausibly *plead* availability, *Middlebrooks v. Parker*, 15 F.4th 784, 792 (6th Cir. 2021), but it is not sufficient to actually *prove* availability. The Sixth Circuit has ruled that the fact that "other states" use pentobarbital for executions is insufficient to prove availability in a specific state because saying "other states" can obtain it is "quite different from saying that any given state can actually locate those pharmacies and readily obtain the drugs." *In re Ohio Execution Protocol* ("*Fears v. Morgan*"), 860 F.3d 881, 891 (6th Cir. 2017); *see also Sutton v. Parker*, 800 F. App'x 397, 401 (6th Cir. 2020) ("The OLC opinion does not shift the regulatory landscape surrounding pentobarbital so considerably as to permit Tennessee to obtain the drug through 'ordinary transactional effort,' as required by *Glossip*." (quoting *Fears*, 860 F.3d at 891)).

Plaintiff attempts to disclaim that he has the burden to prove availability, arguing instead that Defendants must prove *un*availability. But he is simply wrong on the law. First, Plaintiff argues that, under *Glossip*, "pentobarbital cannot be considered 'unavailable' to Defendants if they are not in fact trying to obtain it." (D.E. 202, PageID# 12596.) In other words, Plaintiff asserts not only that Defendants have an obligation to search for drugs that are not used in Tennessee executions (but, nonetheless, are necessary to his proposed alternatives), but also that the onus is on Defendants to prove the sufficiency of their search in order to foreclose summary judgment. (*Id.*) This is not what *Glossip* held.

In *Glossip*, the Supreme Court repeatedly stated that it is the inmate challenging the State's method of execution who must prove an available alternative. 576 U.S. at 867, 878-80. Certainly, the Court referenced a State's "good-faith efforts" to obtain pentobarbital, but the Court did *not* find that the State had an obligation to search for pentobarbital, much less to prove the sufficiency of its searches. *Id.* at 879. Rather, it ruled that the evidence of the State's fruitless searches simply

supported the conclusion that the death-row inmates had failed to prove pentobarbital was available. *Id*. Likewise, here, the evidence that Defendants have made unsuccessful, good faith efforts to obtain pentobarbital further supports the conclusion that Plaintiff has failed to meet his burden to prove it is available. (D.E. 200, PageID# 11842 ¶ 349 (conceding that the Pharmacy was unable to order commercially available pentobarbital as recently as March 2021); 11843 ¶ 352 (conceding that in August 2021 Commissioner Parker contacted another State in search of pentobarbital and was told that no one had a viable source for Tennessee to obtain either commercially manufactured or compounded pentobarbital).)

Second, Plaintiff asserts that by "disputing" that pentobarbital is unavailable, he is "establishing that Tennessee has no 'legitimate penological justification'" for declining to adopt it as an alternative. (D.E. 202, PageID# 12596 n.11.) This conflates separate requirements in prong two of the *Baze-Glossip* test. In order to prove an alternative, a death-row inmate must show **both** that the proposed alternative is "available" **and** that a State lacks a "legitimate reason" for refusing to adopt it. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019). The burden on both showings never shifts to the State. Nonetheless, Plaintiff refuses to prove availability and instead merely disputes the sufficiency of Defendants' searches, insisting that the State must prove unavailability. (D.E. 202, PageID# 12596 ("[P]entobarbital cannot be considered 'unavailable' to Defendants if they are not in fact trying to obtain it.").) Plaintiff, therefore, has failed to satisfy his burden to affirmatively prove that pentobarbital is available to Tennessee, and summary judgment should be granted to Defendants.

3
Case 3:18-cv-01234   Document 207   Filed 04/27/22   Page 3 of 10 PageID #: 12677

## II. Plaintiff Has Failed to Prove that the Firing-Squad Alternative Would Substantially Reduce the Alleged Risk of Pain from the Protocol or that It Can Be Readily Implemented.

Plaintiff argues an inmate will experience only minor physical suffering when executed by firing squad and that Tennessee can readily implement this alternative. Both arguments are unavailing.

First, Plaintiff claims that execution by firing squad poses a "relatively minor" risk of suffering. (D.E. 202, PageID# 12601 (quoting D.E. 200, PageID# 11831 ¶ 308).) However, Plaintiff's concessions bely this claim. Plaintiff asserts cardiovascular incapacitation is necessary for loss of consciousness so an inmate will not experience pain (D.E. 200, PageID# 11831 ¶ 308; D.E. 202, PageID# 12601), yet Plaintiff does not dispute that gunshot wounds to "eighty percent" of the chest "will not produce anything close to" cardiovascular incapacitation (D.E. 200, PageID# 11833 ¶¶ 315-16; D.E. 202, PageID# 12601.) He does not dispute that "people have survived an initial volley of bullets" from a firing squad. (D.E. 200, PageID# 11831 ¶ 309.) And he does not dispute that the execution team in Utah waits three minutes before even examining an inmate to determine if the initial volley of bullets killed the inmate. (*Id.* at 11829 ¶ 302.) In light of these concessions, Plaintiff has not proven that the risk of pain from death by firing squad is substantially lower than an alleged risk of pain from enforcing the Protocol. *See McGehee v. Hutchinson*, 463 F. Supp. 3d 870, 903-04, 915-16 (E.D. Ark. 2020) (finding, based on similar proof and testimony from one of Plaintiff's experts that the death-row inmate failed to prove a firing-squad alternative would reduce a substantial risk of severe pain), *app. filed*, No. 21-1965 (8th Cir. Apr. 30, 2021).

Second, Plaintiff argues that the firing-squad alternative can be readily implemented. But to make this showing, Plaintiff must prove the State can implement this alternative "relatively easily and reasonably quickly." *Bucklew*, 139 S. Ct. at 1129 (quoting *McGehee v. Hutchinson*,

854 F.3d 488, 493 (8th Cir. 2017)). Plaintiff's evidence shows the opposite. Plaintiff concedes that it takes an estimated "1,180 'man hours'" to conduct a single firing-squad execution in Utah. (D.E. 200, PageID# 11827 ¶¶ 290-91.) He even elaborates upon many details he asserts are necessary for creation of firing squad chamber, including providing the execution team with "major caliber, center-fired rifles" and installing "a tubular steel chair using Nylon straps, bolting the chair into a steel riser, placing two-by-fours and a four-by-eight sheet of [2- or 2.5-inch] Kevlar behind the chair, placing about 8 sandbags stacked on each side of the chair, having cinderblock walls, making the windows bulletproof, and providing goggles and headgear/earmuffs for the firing squad." (D.E. 200, PageID# 11824 ¶ 283.) Instead of showing that this alternative can be carried out "relatively easily and reasonably quickly," *Bucklew*, 139 S. Ct. at 1129 (quoting *McGehee*, 854 F.3d at 493), Plaintiff has proven that it would take extensive time and labor to implement this method of execution, *see McGehee*, 854 F.3d at 494 ("[A firing squad] requires trained marksmen who are willing to participate and is allegedly painless only if volleys are targeted precisely. The record comes short of establishing a significant possibility that use of a firing squad is readily implemented and would significantly reduce a substantial risk of severe pain.").

### III. Three of the Proposed Alternatives—Single Bullet to the Back of the Head, Oral Administration of Drugs, and the Two-Drug Protocol—Are Not Viable Because No Other State Has Used Them.

The Supreme Court has determined, more than once, that "choosing not to be the first to experiment with a new method of execution is a legitimate reason" for a State "to reject" a proposed alternative. *Bucklew*, 139 S. Ct. at 1130. Nonetheless, Plaintiff argues that Defendants should be required to use three different alternatives that, indisputably, no other State has

employed as a method of execution: single bullet to the back of the head, oral administration of drugs, and a two-drug protocol consisting of midazolam and potassium chloride. (D.E. 202, PageID# 12594, 12604-05.) To support his argument, Plaintiff argues (1) that one of the opinions Defendants have relied on is "not binding" because it is from the Eighth Circuit and (2) that the Sixth Circuit has opined that death-row inmates may "look outside of already authorized methods as well." (*Id.* at 12604 (quoting *In re Smith*, 806 F. App'x 462, 464 (6th Cir. 2020).)

Regarding the first argument, the Supreme Court's determination in *Bucklew* was that the fact that a method of execution is untested is a legitimate reason for a State to refuse to adopt the method as an alternative. *See* D.E. 183, PageID# 5680-81, 5687 (citing *Bucklew*, 139 S. Ct. at 1125, 1129-30). The Eighth Circuit opinion that Defendants cited—*Johnson v. Precythe*, 954 F.3d 1098 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1622 (2021)—simply applies the Supreme Court's conclusion in *Bucklew* that a death-row inmate must propose an alternative that has been successfully used as a method of execution in another state. *See Johnson*, 954 F.3d at 1102 ("We now conclude that the intervening decision in *Bucklew* requires a different conclusion on the second element of Johnson's claim, because nitrogen-induced hypoxia is an 'entirely new method' of execution that has 'never been used to carry out an execution' and has 'no track record of successful use.'" (quoting *Bucklew*, 139 S. Ct. at 1130)).

As to the second argument, Plaintiff's citation to *In re Smith* misconstrues the reasoning of that case by taking it out of context. The Sixth Circuit did not, as Plaintiff implies, directly contradict *Bucklew's* finding that States have a legitimate penological reason to reject untested alternatives. Instead, in *In re Smith*, the Sixth Circuit was talking about a different factor in the second prong of the *Baze-Glossip* test. Specifically, the Sixth Circuit noted, when summarizing the holding in *Bucklew*, that a death-row inmate could point to an alternative that is not authorized

in one State but is "a well-established protocol in another State" in order to support an argument that the method is "readily available."[1] 806 F. App'x at 464 (quoting *Bucklew*, 139 S. Ct. at 1128). Hence, Plaintiff's citation to this case does not support his argument that the novelty of a method is no longer a legitimate penological reason to reject it.

### IV. Plaintiff Cannot Rely on an Unpled Alternative to Avoid Summary Judgment.

Summary judgment of the oral-cocktail alternative is appropriate not only because it is untested as a method of execution, *see Bucklew*, 139 S. Ct. at 1130, but also because it is an entirely unpled alternative in which Plaintiff proposes a new combination of drugs.

Here, the Amended Complaint unambiguously alleged two methods for the oral-cocktail alternative: (1) "Oral administration of midazolam, digoxin, morphine sulfate, and propranolol in sweet liquid such as fruit juice," or (2) "Lethal dose (no less than 9000 mg) of secobarbital injected orally in four ounces of sweet liquid such as fruit juice." (D.E. 51, PageID# 2223 ¶¶ 399, 401.) However, Plaintiff retained experts to discuss the efficacy of an oral cocktail containing a combination of digoxin, diazepam, morphine, amitriptyline, and phenobarbital ("DDMAPh"). (D.E. 200, PageID# 11729-30.) This is not an alternative pled in the Amended Complaint. (D.E. 51, PageID# 2223-2226 ¶¶ 399-415.) Thus, this alternative is not properly before the Court and cannot be a basis for denying summary judgment.

Sixth Circuit precedent bars a plaintiff from expanding a claim to include a new theory at the summary judgment stage of a proceeding. *See Vonderhaar v. Waymire*, 797 F. App'x 981,

---

[1] It is unclear if the Court was referring to the availability factor or the "readily implemented" factor, but the latter seems more likely, since that factor means that the proposal for the alternative "must be sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly." *Bucklew*, 139 S. Ct. at 1129 (internal quotation marks and citations omitted).

990-91 (6th Cir. 2020); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (finding a party cannot raise a new claim "at the summary judgment stage" if the party "neglected to include such a claim in [the] complaint").

Plaintiff argues that Defendants had "sufficient notice" of this new chemical combination because the Amended Complaint referred to Death with Dignity laws. (D.E. 202, PageID# 12605 n.13.) Count Three of the Amended Complaint referenced "Death with Dignity laws" only once, in passing, to mention that states have used oral cocktails for euthanasia. (D.E. 51, PageID# 2224 ¶ 402.) The Amended Complaint did not, as Plaintiff proposes, allege an alternative based on any "current method of Death with Dignity laws." (D.E. 202, PageID# 12606 n.13.) The Amended Complaint certainly does not mention a DDMAPh alternative. Thus, this alternative has not been pled and cannot be a basis for Plaintiff to survive summary judgment. *Vonderhaar*, 797 F. App'x at 990-91; *Bridgeport Music, Inc.*, 508 F.3d at 400.

Plaintiff also argues that the "course of the proceedings test" applies here and, because Defendants had opportunity to examine Plaintiff's experts about DDMAPh, they had adequate notice of DDMAPh as an alternative. (D.E. 202, PageID# 12606 n.13.) But the "course of the proceedings test" does not apply in this context. Only when a complaint is "ambiguous" and "leaves the possibility open" that a plaintiff may raise a particular argument does the Sixth Circuit allow for the undeveloped claim to be asserted in a response to summary judgment. *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 435-36 (6th Cir. 2012) (quoting *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009)).

Because the Amended Complaint does not "leave[] the possibility open" that DDMAPh or some other chemical combination might function as an alternative, there is not cause to consider
8

990-91 (6th Cir. 2020); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (finding a party cannot raise a new claim "at the summary judgment stage" if the party "neglected to include such a claim in [the] complaint").

Plaintiff argues that Defendants had "sufficient notice" of this new chemical combination because the Amended Complaint referred to Death with Dignity laws. (D.E. 202, PageID# 12605 n.13.) Count Three of the Amended Complaint referenced "Death with Dignity laws" only once, in passing, to mention that states have used oral cocktails for euthanasia. (D.E. 51, PageID# 2224 ¶ 402.) The Amended Complaint did not, as Plaintiff proposes, allege an alternative based on any "current method of Death with Dignity laws." (D.E. 202, PageID# 12606 n.13.) The Amended Complaint certainly does not mention a DDMAPh alternative. Thus, this alternative has not been pled and cannot be a basis for Plaintiff to survive summary judgment. *Vonderhaar*, 797 F. App'x at 990-91; *Bridgeport Music, Inc.*, 508 F.3d at 400.

Plaintiff also argues that the "course of the proceedings test" applies here and, because Defendants had opportunity to examine Plaintiff's experts about DDMAPh, they had adequate notice of DDMAPh as an alternative. (D.E. 202, PageID# 12606 n.13.) But the "course of the proceedings test" does not apply in this context. Only when a complaint is "ambiguous" and "leaves the possibility open" that a plaintiff may raise a particular argument does the Sixth Circuit allow for the undeveloped claim to be asserted in a response to summary judgment. *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 435-36 (6th Cir. 2012) (quoting *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009)).

Because the Amended Complaint does not "leave[] the possibility open" that DDMAPh or some other chemical combination might function as an alternative, there is not cause to consider

whether the "course of the proceedings" addressed a different chemical combination. *Id.* at 435-36; *see also Tucker*, 407 F.3d at 789 (finding a new claim could not be considered when raised in response to a motion for summary judgment even though "the evidence in the present case suggest[ed]" that the claim was "colorable").

## CONCLUSION

Plaintiff has not proven a single viable alternative, and thus, summary judgment should be granted to the Defendants.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Rob Mitchell*
ROB MITCHELL (32266)
Senior Assistant Attorney General
SCOTT C. SUTHERLAND (29013)
Deputy Attorney General
MIRANDA JONES (36070)
MALLORY SCHILLER (36191)
CODY N. BRANDON (037504)
DEAN S. ATYIA (039683)
Assistant Attorneys General
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-6023
Fax (615) 532-4892

Robert.Mitchell@ag.tn.gov
Scott.Sutherland@ag.tn.gov
Miranda.Jones@ag.tn.gov
Mallory.Schiller@ag.tn.gov
Cody.Brandon@ag.tn.gov
Dean.Atyia@ag.tn.gov

# CERTIFICATE OF SERVICE

I certify that on April 27, 2022, a copy of the foregoing was filed and served via the Court's CM/ECF system on the following:

Alex Kursman
Lynne Leonard
Anastassia Baldridge
Hayden Nelson-Major
Assistant Federal Defenders
Federal Community Defender for the E.D. Penn.
Suite 545 West, The Curtis
601 Walnut St.
Philadelphia, PA 19106
(215) 928-0520
alex_kursman@fd.org
lynne_leonard@fd.org
ana_baldridge@fd.org
hayden_nelson-major@fd.org

David Esquivel
Sarah Miller
Jeremy Gunn
Michael Tackeff

Bass, Berry & Sims 150 Third Ave. South
Nashville, TN 37201
(615) 742-6200
desquivel@bassberry.com
smiller@bassberry.com
jeremy.gunn@bassberry.com
michael.tackeff@bassberry.com

Alice Haston
Amy Rao Mohan
Christopher C. Sabis
Sherrard Roe Voight & Harbison, PLC
150 Third Ave. South
Suite 1100
Nashville, TN 37201
(615) 742-4539
ahaston@srvhlaw.com
amohan@srvhlaw.com
csabis@srvhlaw.com

    s/ *Rob Mitchell*
    ROB MITCHELL