IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **TERRY LYNN KING,** | ) | |
| | ) | |
| Plaintiff, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | Case No. 3:18-cv-01234 |
| | ) | |
| **LISA HELTON, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **DONALD MIDDLEBROOKS,** | ) | |
| | ) | |
| Plaintiff, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | Case No. 3:19-cv-01139 |
| | ) | |
| **LISA HELTON, et al.,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO STAY PROCEEDINGS

Defendants Lisa Helton and Tony Mays respectfully file this memorandum of law in support of their Motion for Stay of Proceedings. Defendants request that the Court stay all deadlines, discovery, and proceedings in *King* and *Middlebrooks* until the conclusion of the independent investigation into the lethal injection process in Tennessee and the timely completion of related corrective action.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs, Tennessee death-row inmates, have brought challenges to the constitutionality of Tennessee's primary method of execution—a three-drug lethal injection protocol that is laid out in a document the Tennessee Department of Correction ("TDOC") released on July 5, 2018 ("the Protocol"). (*Middlebrooks v. Helton*, No. 3:19-cv-01139, D.E. 13, PageID# 156, 195-97; *King v. Helton*, No. 3:18-cv-01234, D.E. 51, PageID# 2142.) Plaintiffs contend that the Protocol is facially unconstitutional due to the combination of drugs used in the Protocol. (*Middlebrooks*, D.E. 13, PageID# 197; *King*, D.E. 51, PageID# 2211-2268.)

In *King*, Defendants moved for summary judgment on March 16, 2022, and King responded in opposition to Defendants' motion. (D.E. 182, 183, 202.) King has also moved the Court to deny or defer consideration of the pending motion for summary judgment due to concerns King has regarding discovery. (D.E. 203, 204.) Defendants initially opposed this motion (D.E. 208) but have since agreed to King's request that the Court defer ruling on summary judgment (D.E. 212). Now, simultaneously with the filing of this motion and memorandum, Defendants have moved to withdraw this motion for summary judgment.

*Middlebrooks* was recently consolidated with *King*[1] and counsel for all parties have been preparing to conduct limited additional discovery related to the availability of pentobarbital as an alternative method of execution. Pending deadlines in *Middlebrooks* include completion of all non-written discovery and depositions of all fact witnesses by May 31, 2022, as well as completion of expert depositions by June 24, 2022. (D.E. 50, PageID# 469-70.)

---

[1] Both *King* and *Middlebrooks* are currently scheduled for trial on October 4, 2022. (*Middlebrooks*, D.E. 51; *King*, D.E. 206.)

On April 21, 2022, another death-row inmate, Oscar Smith, was scheduled to be executed. That afternoon, Tennessee Governor Bill Lee issued a temporary reprieve of Mr. Smith's execution due to "an oversight in preparation for lethal injection." (Press Release, Office of the Governor, [Statement on Oscar Smith Temporary Reprieve (tn.gov)](https://tn.gov) (Apr. 21, 2022) (attached as Exhibit 1).)

On May 2, 2022, Governor Lee explained that the lethal injection chemicals to be used in the April 21 execution were tested for "potency and sterility but not endotoxins." (Press Release, Office of the Governor, [Gov. Lee Calls for Independent Review Following Smith Reprieve (tn.gov)](https://tn.gov) (May 2, 2022) (attached as Exhibit 2).) As a result of this circumstance, and due to a desire "to leave no question that procedures are correctly followed" in Tennessee executions, Governor Lee has directed former U.S. Attorney Ed Stanton to conduct an independent investigation of the following:

- Circumstances that led to testing the lethal injection chemicals for only potency and sterility but not endotoxins preparing for the April 21 execution

- Clarity of the lethal injection process manual that was last updated in 2018, and adherence to testing policies since the update

- [TDOC] staffing considerations

(*Id.*) In light of this independent investigation, Governor Lee has announced his intent to "pause" of all "scheduled executions through the end of 2022" to allow time for completion of the investigation and time for "corrective action to be put in place." (*Id.*)[2]

It is, thus, clearly contemplated that the independent investigation will result in changes to the ways in which TDOC conducts lethal injection procedures, the ways in which those procedures

---

[2] Prior to the issuance of this press release, Middlebrooks was scheduled to be executed on December 8, 2022. (*Middlebrooks*, D.E. 50, PageID# 471.) However, due to the reprieve granted by Governor Lee, Middlebrooks's execution is no longer scheduled. (Reprieves, The State of Tennessee Executive Chamber (May 3, 2022) (attached as Exhibit 3).)

are staffed, and the personnel responsible for implementing those procedures. Because of these contemplated changes—and for the reasons explained below—all deadlines, discovery, and proceedings in this case should be stayed until the investigation is complete.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Entry of an order staying proceedings "ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quoting *Ohio Environmental Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)). When considering whether to grant a stay, a court weighs three factors: "(1) any prejudice to the non-moving party if a stay is granted, (2) any prejudice to the moving party if a stay is not granted, and (3) the extent to which judicial economy and efficiency would be served by the entry of a stay." *Does #1-3 v. Lee*, No. 3:19-CV-00532, 2020 WL 4904663, at *1 (M.D. Tenn. Feb. 18, 2020) (quoting *Tennessee ex rel. Cooper v. McGraw-Hill Cos., Inc.*, No. 3:13-00193, 2013 WL 1785512, at *6 (M.D. Tenn. Apr. 25, 2013)).

## ARGUMENT

Here, all three factors—prejudice to the non-moving party, prejudice to the moving party, and judicial economy and efficiency—weigh heavily in favor of staying this case. A stay would thus be beneficial to the parties as well as the Court.

First, a stay would serve the interests of judicial economy and efficiency. Absent a stay, the Court (and all the parties) will likely be engaging in complex and protracted litigation with the distinct probability that the corrective action required after the independent investigation will

materially affect the course of the litigation. (Exhibit 2.) Plaintiffs may seek to amend their complaints to account for changes to the Protocol or TDOC personnel resulting from the independent investigation. And regardless, any changed procedures or personnel will no doubt play a significant role in the Court's resolution of Plaintiffs' claims.

A stay would thus guard against the rendering of what could effectively be an advisory opinion regarding the constitutionality of the current Protocol, rather than an opinion about the protocol that replaces it and will be the operative protocol for Plaintiffs. *See Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995) (noting how, under Article III, courts must "avoid issuing advisory opinions based upon hypothetical situations"); *Associated Gen. Contractors of Am., Cent. Ohio Div. v. City of Columbus*, 147 F. Supp. 2d 864, 871 (S.D. Ohio 2001) (noting that the mootness doctrine, along with standing and ripeness "guard[s] against the issuing of advisory opinions"). Similarly, a stay is also appropriate because it may allow the Court to avoid unnecessarily or prematurely ruling on a constitutional issue. "Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues." *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936)). Thus, proceeding with a trial before the investigation is concluded and resulting changes are made to the execution procedures and personnel would be premature because the aftermath of the investigation will materially affect the Court's evaluation of the issues in these two cases. Indeed, this Court has stayed proceedings under similar circumstances. *See Does #1-3*, 2020 WL 4904663, at *1 ("[T]he most efficient use of the Court's and the parties' resources is to temporarily stay all proceedings and deadlines in this case. Otherwise, as Defendants correctly note, all parties and the Court risk engaging in unnecessary litigation and class discovery with the

possibility that the entire action would be mooted by the Tennessee General Assembly enacting these bills.").

Even proceeding with discovery during the investigation would result in a needless use of judicial resources due to the likelihood of the parties encountering intractable conflicts about confidentiality, privilege, and the need to ensure that the investigation remains independent. In light of how the parties have already called on the Court to resolve a multitude of prior discovery issues, *see e.g. King*, D.E. 108, 143, 161, 167, 189; *Middlebrooks*, D.E. 57, there is little reason to doubt that the Court would be drawn into future discovery disputes related to the independent investigation and be forced to rule on issues that may be avoided if the discovery is halted until the investigation is completed and corrective action has been taken.

Second, if a stay is not granted, Defendants would suffer considerable prejudice. As is clear from the Governor's statement, the corrective action taken as a result of whatever the investigation uncovers is likely to impact procedures and personnel involved in Tennessee executions. Thus, it would be a fruitless expenditure of resources for the parties to engage in discovery and preparation for trial right now because, once the investigation is concluded, some of that discovery—for example, potential staffing changes, the extent of adherence to outdated procedures—may well become largely irrelevant.

Further, the parties will need to complete additional discovery based on information the investigation reveals as well as the corrective action that occurs because of the investigation. Plaintiffs will undoubtedly want to re-depose certain witnesses based upon information from the investigation and to conduct depositions of new employees following corrective action taken as a result of the investigation's findings. Proceeding with the case before the conclusion of the

6

investigation and resulting changes and corrective action would be an enormous waste of the parties' and the Court's time and resources.

And this premature discovery would also threaten the integrity of the third-party investigation. Mr. Stanton will need full access to the resources, records, and personnel of TDOC. But if Defendants are forced to simultaneously respond to Plaintiffs' interrogatories, fulfill document requests, submit to depositions, and so on, Defendants will inevitably be unable to timely and ably fulfill all of Mr. Stanton's requests and inquiries while also, of course, carrying out their normal duties.

Third, any risk of prejudice to Plaintiffs by staying the case is far lower than the risk of prejudice to Defendants by not staying the case. There is little or no risk of prejudice to the Plaintiffs. After Governor Lee issued reprieves this week, neither Plaintiff has a scheduled execution, *see* Exhibit 2 ("We will pause scheduled executions through the end of 2022 . . . ."); Exhibit 3 (Reprieves), and it is unlikely that the Tennessee Supreme Court would set new execution dates until the completion of the investigation and the subsequent corrective action. Even if the Supreme Court immediately sets new dates, Governor Lee has already made it clear that he intends for the investigation to be complete and for the corrective action to be "put in place" before any executions proceed. (Exhibit 2.) Moreover, in *Middlebrooks* the Court entered—and Defendants did not oppose[3]—an order requiring the preservation of certain evidence, as requested by Middlebrooks. (D.E. 57, 55.) Hence, the risk of prejudice to Plaintiffs does not outweigh the need to preserve the resources of the Court and the parties.

---

[3] D.E. 56.

7
Case 3:18-cv-01234   Document 220   Filed 05/06/22   Page 7 of 9 PageID #: 12755

## CONCLUSION

For these reasons, Defendants' motion should be granted and all deadlines, discovery, and proceedings in *King* and *Middlebrooks* should be stayed until the conclusion of the independent investigation and the timely completion of related corrective action.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Rob Mitchell*
ROB MITCHELL (32266)
Senior Assistant Attorney General
SCOTT C. SUTHERLAND (29013)
Deputy Attorney General
MIRANDA JONES (36070)
*MALLORY SCHILLER (36191)
CODY N. BRANDON (037504)
*DEAN S. ATYIA (039683)
Assistant Attorneys General
Law Enforcement and
Special Prosecutions Div.
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-6023
Fax (615) 532-4892

Robert.Mitchell@ag.tn.gov
Scott.Sutherland@ag.tn.gov
Miranda.Jones@ag.tn.gov
Mallory.Schiller@ag.tn.gov
Cody.Brandon@ag.tn.gov
Dean.Atyia@ag.tn.gov
*Counsel for Defendants in King and Middlebrooks*
*\*Counsel for Defendants in* King

# CERTIFICATE OF SERVICE

I certify that on May 6, 2022, a copy of the foregoing was filed and served via the Court's CM/ECF system on the following counsel for *Middlebrooks*:

Kelly Henry
Supervisory Asst. Federal Community Defender,
810 Broadway, Suite 200,
Nashville, TN 37203
615-695-6906
Kelley_Henry@fd.org

And on the following counsel for *King*:

Alex Kursman
Lynne Leonard
Anastassia Baldridge
Hayden Nelson-Major
Assistant Federal Defenders
Federal Community Defender for the E.D. Penn.
Suite 545 West, The Curtis
601 Walnut St.
Philadelphia, PA 19106
(215) 928-0520
alex_kursman@fd.org
lynne_leonard@fd.org
ana_baldridge@fd.org
hayden_nelson-major@fd.org

David Esquivel
Sarah Miller
Jeremy Gunn
Michael Tackeff

Bass, Berry & Sims 150 Third Ave. South
Nashville, TN 37201
(615) 742-6200
desquivel@bassberry.com
smiller@bassberry.com
jeremy.gunn@bassberry.com
michael.tackeff@bassberry.com

Alice Haston
Amy Rao Mohan
Christopher C. Sabis
Sherrard Roe Voight & Harbison, PLC
150 Third Ave. South
Suite 1100
Nashville, TN 37201
(615) 742-4539
ahaston@srvhlaw.com
amohan@srvhlaw.com
csabis@srvhlaw.com

      s/ *Rob Mitchell*
      ROB MITCHELL